Kathleen E. Brody (Bar No. 026331)
Brenda Muñoz Furnish (Bar No. 027280)
ACLU Foundation of Arizona
3707 North 7th Street, Suite 235
Phoenix, AZ 85014
Telephone: 602-650-1854
Email: kbrody@acluaz.org
Email: bmfurnish@acluaz.org

David A. Lane (*pro hac vice* application to be submitted)
Andy McNulty (*pro hac vice* application to be submitted)
Kilmer, Lane & Newman, LLP
1543 Champa Street
Denver, Colorado 80202
Telephone: 303-571-1000
Email: dlane@kln-law.com
Email: amcnulty@kln-law.com

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona Attorneys for Criminal Justice; *et al.*,<br><br>     Plaintiffs,<br><br>v.<br><br>Doug Ducey, in his official capacity as Governor of the State of Arizona; *et al.*,<br><br>     Defendants. | No.:<br><br>**PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br><br>**(ORAL ARGUMENT REQUESTED)** |

Pursuant to Federal Rule of Civil Procedure 65, Plaintiffs respectfully move for a preliminary injunction enjoining Defendants and their agents from enforcing Arizona

1

Revised Statutes ("A.R.S.") § 13-4433(B) because it violates the free-speech rights of Plaintiffs—criminal-defense lawyers and others working on behalf of criminal defendants—because it prohibits them from initiating contact with crime victims except through the defendant's litigation adversary, the prosecutor.

## INTRODUCTION

"[A]ttorneys and other trial participants do not lose their constitutional rights at the courthouse door." *Levine v. United States Dist. Court for Cent. Dist.*, 764 F.2d 590, 595 (9th Cir. 1985); *see also* Freedman & Starwood, *Prior Restraints on Freedom of Expression by Defendants and Defense Attorneys: Ratio Decidendi v. Obiter Dictum*, 29 STAN. L. REV. 607, 614-18 (1977).

Plaintiff Arizona Attorneys for Criminal Justice ("AACJ") is a statewide not-for-profit membership organization of criminal-defense lawyers, law students, and associated professionals dedicated to protecting the rights of the accused in the courts and in the legislature, promoting excellence in the practice of criminal law through education, training, and mutual assistance, and fostering public awareness of citizens' rights, the criminal-justice system, and the role of the defense lawyer. AACJ's membership includes defense attorneys and others working on behalf of criminal defendants, including those threatened with the death penalty, as well as those accused of all manner of serious and petty offenses. The individual Plaintiffs are criminal-defense lawyers and investigators. A.R.S. § 13-4433(B) directly infringes and chills the free-speech rights of the individual Plaintiffs and of AACJ's members.

A.R.S. § 13-4433(B) violates Plaintiffs' First Amendment rights by imposing impermissible restrictions on their protected speech. Plaintiffs wish to speak with crime victims and the surviving family members of homicide victims. Yet they are chilled from engaging in such speech by A.R.S. § 13-4433(B), a statute that was intended to protect crime victims' rights but that goes far beyond what is necessary to do so. Under § 13-

2

4433(B), criminal-defense lawyers and others working with them may not speak to victims, including the families of deceased victims, without first obtaining the victim's permission through the prosecution. But prosecutors are under no duty to accurately convey a defense attorney's message to a victim. *See* A.R.S. § 13-4433(C). And prosecutors must also inform the victim of the victim's right to refuse an interview A.R.S. § 13-4433(B). In practice, victims who learn in this way that the defense team would like to speak with them rarely agree to do so.

Plaintiffs bring this civil-rights action for declaratory and injunctive relief to halt the ongoing and imminent violations of Plaintiffs' rights guaranteed by the First Amendment to the United States Constitution. A.R.S. § 13-4433(B) is a content-based and viewpoint-based restriction that creates a prior restraint on protected expression. It also violates the First Amendment because it is overbroad, sweeping within its ambit protected expression.

Fear of professional sanctions and criminal prosecution have deterred Plaintiffs from speaking both as part of the investigatory function of their profession and on matters of great public concern. Plaintiffs request that this Court preliminarily enjoin enforcement of A.R.S. § 13-4433(B) because they are likely to succeed on the merits of their claims, they are suffering continual harm to their constitutional rights so long as the law remains in effect, Defendants will suffer no comparable harm if an injunction is granted, and an injunction preventing enforcement of § 13-4433(B) overwhelmingly serves the public interest.

## BACKGROUND

In 1990, Arizona voters approved Proposition 104, the Victims' Bill of Rights ("VBR"), as an amendment to the state Constitution. The VBR is codified at Arizona Constitution Article 2, § 2.1. Among the provisions of the VBR is the right of a crime victim "[t]o be treated with fairness, respect, and dignity, and to be free from

intimidation, harassment, or abuse, throughout the criminal justice process." Ariz. Const. art. 2, § 2.1(a)(1). The VBR also provides a crime victim with the right "[t]o refuse an interview, deposition, or other discovery request by the defendant, the defendant's attorney, or other person acting on behalf of the defendant." Ariz. Const. art. 2, § 2.1(a)(5).

In 1991, Arizona enacted the Crime-Victims' Rights Implementation Act. Among the enactments was A.R.S. § 13-4433(B), which currently reads:

> The defendant, the defendant's attorney or an agent of the defendant shall only initiate contact with the victim through the prosecutor's office. The prosecutor's office shall promptly inform the victim of the defendant's request for an interview and shall advise the victim of the victim's right to refuse the interview.[1]

The statute defines "victim" as:

> a person against whom the criminal offense has been committed, including a minor, or if the person is killed or incapacitated, the person's spouse, parent, child, grandparent or sibling, any other person related to the person by consanguinity or affinity to the second degree or any other lawful representative of the person, except if the person or the person's spouse, parent, child, grandparent, sibling, other person related to the person by consanguinity or affinity to the second degree or other lawful representative is in custody for an offense or is the accused.

A.R.S. § 13-4401(19).

Thus, A.R.S. § 13-4433(B) prohibits criminal-defense lawyers and others working

---

[1] As enacted in 1991, A.R.S. § 13-4433(B) read: "The defendant, the defendant's attorney or another person acting on behalf of the defendant shall only contact the victim through the prosecutor's office. The prosecutor's office shall promptly inform the victim of the defendant's request for an interview and shall advise the victim of his right to refuse the interview." Laws 1991, Ch. 229, § 7, eff. Jan. 1, 1992. The provision was amended in 1992, Laws 1992, Ch. 209, § 24, again in 1999 to its current form, Laws 1999, Ch. 261, § 45.

on the defense team from speaking to a crime victim without using the prosecutor's office as a conduit for the communication. When a victim is killed or incapacitated, the defense team may not speak to anyone within two degrees of consanguinity or affinity to the victim without using the prosecutor's office as a conduit. And when a victim is a minor child, the defense team may not speak with the child victim or the child's parents or guardians.

In addition, A.R.S. § 13-4433 was amended in 1997 to allow a prosecutor to refuse to forward correspondence from the defense team to victims and their families, further limiting the speech of defense lawyers and the defense team. That provision, codified at A.R.S. § 13-4433(C), currently reads:

> The prosecutor shall not be required to forward any correspondence from the defendant, the defendant's attorney or an agent of the defendant to the victim or the victim's representative.

As a result, A.R.S. § 13-4433(B), when read in conjunction with § 13-4433(C), operates to prohibit defense lawyers and defense teams from contacting crime victims or their family members without the consent of the prosecutor, the defense team's litigation adversary. Prosecutors have taken the position that the requirement to obtain consent from the prosecutor to initiate contact with victims applies even when victims are represented separately by their own lawyers.

In practice, criminal-defense lawyers and their teams have been prohibited from speaking with crime victims. Almost always, the prosecutor—the litigation adversary of the individuals seeking to speak with the victim—informs the defense team that the victim has invoked his or her rights and does not wish to speak with the defense team. Defense teams have no way of knowing how the prosecutor conveyed to the victim the defense team's request to speak with him or her, or whether the request was actually conveyed at all. In some cases, defense teams determined that the prosecutor did not convey their request to speak to the victim.

Since A.R.S. § 13-4433(B) was enacted, several lawyers have been referred to the state bar for professional discipline in connection with alleged violations of the law, and some have been disciplined. At least one criminal-defense investigator has been criminally charged for influencing a witness based on an alleged violation of A.R.S. § 13-4433(B).

Arizona stands alone in prohibiting defense teams from initiating contact with crime victims. No other state restricts the speech of criminal-defense lawyers and other working with them like A.R.S. § 13-4433(B).

## ARGUMENT

Ordinarily, "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Where "the balance of hardships tips sharply in the plaintiff's favor," the plaintiff need only "demonstrate[] . . . that serious questions going to the merits were raised" to justify an injunction. *Alliance of the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011). When seeking a preliminary injunction "in the First Amendment context, the moving party bears the initial burden of making a colorable claim that its First Amendment rights have been infringed, or are threatened with infringement, at which point the burden shifts to the government to justify the restriction." *Thalheimer v. City of San Diego*, 645 F.3d 1109, 116 (9th Cir. 2011). Plaintiffs are entitled to a preliminary injunction because their First Amendment rights have been infringed and the government cannot justify the restriction that A.R.S. § 13-4433(B) places on Plaintiffs' speech.

6

1    **I.**     **Plaintiffs Are Likely to Succeed on the Merits of Their Claims That § 13-**
2         **4433(B) Violates the Free-Speech Protections of the First Amendment.[2]**

3         "[B]lanket rules restricting speech of defense attorneys should not be accepted

4 without careful First Amendment scrutiny." *Gentile v. State Bar of Nev.*, 501 U.S. 1030,

5 1056 (1991). A.R.S. § 13-4433(B) cannot withstand such scrutiny.

6         **A.**     **A.R.S. § 13-4433(B) Is an Unconstitutional Prior Restraint.**

7         A.R.S. § 13-4433(B) prevents the defense team from communicating with crime

8 victims without using the prosecutor—the defendant's litigation adversary—as the conduit.

9 As a practical matter, because the prosecutor has no obligation to convey the defense

10 team's message in the form in which it was delivered, *see* A.R.S. § 13-4433(C), A.R.S.

11 § 13-4433(B) gives the prosecution unbridled discretion to choose whether to deliver the

12 message at all. And experience shows that the message is rarely, if ever, delivered as

13 intended by the defense team. A.R.S. § 13-4433(B) is thus an unconstitutional prior

14 restraint that stops speech before it can occur. *See Alexander v. United States*, 509 U.S.

15 544, 549-50 (1993); validity." *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963);

16 *accord New York Times Co. v. United States*, 403 U.S. 713, 714 (1971) (per curiam); *see*

17 *also Long Beach Area Peace Network v. City of Long Near v. Minnesota*, 283 U.S. 697

18 (1931).

19 _____

20 [2] Plaintiffs have standing to bring this action. "When an individual is subject to [the
21 threatened enforcement of a law], an actual arrest, prosecution, or other enforcement
action is not a prerequisite to challenging the law." *Susan B. Anthony List v. Driehaus*,
22 134 S. Ct. 2334, 2342 (2014) (citing other Supreme Court cases as examples). A person
"c[an] bring a pre-enforcement suit when he 'has alleged an intention to engage in a
23 course of conduct arguably affected with a constitutional interest, but proscribed by a
24 statute, and there exists a credible threat of prosecution[.]'" *Id.* (citation omitted).
Plaintiff AACJ has standing to bring this action on behalf of its members. *See Associated*
25 *Gen. Contractors of Cal., Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1405–06 (9th
26 Cir. 1991).

The Supreme Court has repeatedly held that "[a]ny system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional *Beach*, 574 F.3d 1011, 1023 (9th Cir. 2009). For the reasons outlined below, Defendants cannot meet this especially significant burden.

**B.      A.R.S. § 13-4433(B) Restricts Plaintiffs' Speech.**

A.R.S. § 13-4433(B) restricts and censors defense attorneys' important communications by prohibiting defense counsel from initiating contact with crime victims directly. Instead, the prosecutor is not only the conduit for speech, but also the arbiter of whether the communication is actually delivered as intended, because the prosecutor has no obligation to accurately relay the defense team's message to victims. A.R.S. § 13-4433(C). If a crime victim informs the prosecutor that he or she does not wish to speak with the defense team, then the defense may not attempt to speak with the victim again. As a practical matter in this scenario, the defense team's ability to engage in speech directed at crime victims is completely barred.

The blanket prohibition on initial communications from defense counsel to crime victims robs Plaintiffs of an opportunity to speak with nuance about important issues or advocate on behalf of their clients. Defense counsel are prohibited from judging the credibility of a witness before trial, which can be gleaned from initial communications even if those communications only include a refusal to submit to further questioning. A.R.S. § 13-4433(B) also prevents defense counsel from using their interpersonal skills to establish rapport with a crime victim, which can lead that victim to agree to an interview or questioning. By prohibiting defense counsel from initiating a conversation with crime victims, A.R.S. § 13-4433(B) restricts Plaintiffs' speech.

A.R.S. § 13-4433(B) also has the effect of allowing the prosecution to effectively bar ***all*** communication between defense counsel and crime victims. *See* Stellisa Scott, *Beyond the Victims' Bill of Rights: The Shield Becomes a Sword*, 36 Ariz. L. Rev. 249,

8

262 (1994) ("concerns that prosecutors are utilizing the exclusive access provided by Section 13-4433 to improperly interfere with a victim's decision to grant a defense interview remain viable"). By allowing a prosecutor to be the gatekeeper for communications between defense counsel and crime victims, A.R.S. § 13-4433(B) as a practical matter results in almost no victims or family members ever talking to Plaintiffs because victims are almost never willing to speak with them after having been counseled by the prosecution. *See* A.R.S. § 13-4433(B) ("The prosecutor's office shall promptly inform the victim of the defendant's request for an interview and ***shall advise the victim of the victim's right to refuse the interview***.") (emphasis added). Instead of preventing only intimidating, abusive, or harassing contact with crime victims, A.R.S. § 13-4433(B) acts as a complete bar to Plaintiffs' speech. Putting a prosecutor in the middle of any speech between defense lawyers and crime victims restricts Plaintiffs ability to engage in protected speech.

    **C.**    **Speech Directed at Crime Victims Is Protected by the First Amendment.**

Plaintiffs are lawyers and investigators who defend individuals implicated in crimes ranging from petty offenses to capital murder. As a result, the nature of Plaintiffs' speech that is restricted by A.R.S. § 13-4433(B) varies greatly. *See Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 634 (1995) ("Speech by professionals obviously has many dimensions. There are circumstances in which we will accord speech by attorneys on public issues and matters of legal representation the strongest protection our Constitution has to offer."). At times, the speech would be as routine as interviewing an individual who has been burglarized. At other times, the speech would involve advocating to a murder victim's family members that the death penalty is immoral and that a sentence of death should be actively opposed. Both categories of speech are protected by the First Amendment.

9

"Being a member of a regulated profession does not . . . result in a surrender of First Amendment rights." *Conant v. Walters*, 309 F.3d 629, 637 (9th Cir. 2002); *see also Thomas v. Collins*, 323 U.S. 516, 531 (1945) (stating that "the rights of free speech and a free press are not confined to any field of human interest"). Attorneys, in particular, have the right to speak freely subject only to the government regulating with "narrow specificity." *NAACP v. Button*, 371 U.S. 415, 433, 438-39 (1963); *see also Conant*, 309 F.3d at 637. The Supreme Court has rejected the idea "that the practice of law brings with it comprehensive restrictions" on First Amendment rights. *Gentile*, 501 U.S. at 1054 (plurality opinion).

A.R.S. § 13-4433(B) strikes at core First Amendment interests of lawyers and those that work with them on behalf of criminal defendants. An integral component of the practice of law is the unfettered investigation of a case, which includes speaking to witnesses. The ability to investigate is crucial to effective advocacy and representation, particularly in criminal cases. *See Strickland v. Washington*, 466 U.S. 668, 691 (1984) ("counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary"). Attorneys must be able to speak frankly and openly to witnesses, who necessarily include victims.

Moreover, the Supreme Court has said that the American Bar Association Standards for Criminal Justice are "guides to determining what is reasonable" in criminal cases, *id.* at 688, and the ABA standards require that defense counsel in death-penalty cases "conduct in-person, face-to-face, one-on-one interviews with . . . witnesses . . . who would support a sentence less than death." ABA Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases 10.11(C) (2008). The Supreme Court specifically stated that investigations in death-penalty cases "should comprise efforts to discover *all reasonably available* mitigating evidence and evidence to rebut any aggravating evidence that may be introduced by the prosecutor." *Wiggins v. Smith*, 539

10

U.S. 510, 524 (2003) (quoting ABA Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases 11.4.1(C), p. 93 (1989), and adding emphasis). In capital cases in which the criminal defendant and murder victim are family members, the victims who the defense team are prohibited from contacting by § 13-4433(B) are the defendant's own family and the keepers of the key information that could save the defendant's life.

A.R.S. § 13-4433(B) also bars defense counsel from engaging in other types of communications with victims that might spare the defendant's life. Victim-impact testimony is admissible in death-penalty cases and of critical importance. *Payne v. Tennessee*, 501 U.S. 808, 825 (1991). Trying to persuade victims' families not to press for the death penalty is an essential aspect of defense counsel's job in representing a defendant on trial for his or her life. *See* ABA Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases 10.11(C) (2008). The First Amendment protects these important communications. *See Gentile*, 501 U.S. at 1057 ("The First Amendment does not permit suppression of speech because of its power to command assent.").

Indeed, such communications about the death penalty from the defense team to families of victims are political speech. "[S]peech concerning public affairs is more than self-expression; it is the essence of self-government." *Burson v. Freeman*, 504 U.S. 191, 196 (1992) (quotations omitted). "[S]peech is of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of general interest and of value and concern to the public[.]'" *Snyder v. Phelps*, 562 U.S. 443, 453 (2011) (citations and internal quotation marks omitted). No doubt, speech regarding the death penalty, particularly speech opposing the death penalty, touches on a matter of great public concern. And public debate over the death penalty has only intensified in the past decade. Defense attorneys' direct appeals to the families of murder victims in which the death penalty is sought,

therefore, "occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." *Id.* at 452 (quoting *Connick v. Myers*, 461 U.S. 138, 145 (1983)); *see also FCC v. League of Women Voters*, 468 U.S. 364, 381 (1984) ("Expression on public issues has always rested on the highest rung of the hierarchy of First Amendment values.") (quotation omitted); *In re Primus*, 436 U.S. 412, 422 (1978) (holding that speech "undertaken to express personal political beliefs and to advance the civil-liberties objectives" is entitled to full protection of the First Amendment).

### D.    A.R.S. § 13-4433(B) Is an Impermissible Content-Based and Viewpoint-Based Restriction on Speech.

The Supreme Court recently reaffirmed the longstanding principle that content-based restrictions elicit strict scrutiny. *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015); *see also, e.g.*, *Carey v. Brown*, 447 U.S. 455 (1980). *Reed* clarified that a restriction is content based if it draws distinctions "based on the message a speaker conveys" and that even "subtle" distinctions that define regulated expression "by its function or purpose . . . are distinctions based on the message a speaker conveys, and therefore, are subject to strict scrutiny." 135 S. Ct. at 2227; *accord* Cass R. Sunstein, *Democracy and the Problem of Free Speech* 169 (1993) ("When government regulates content, there is a large risk that the restriction really stems from something illegitimate: an effort to foreclose a controversial viewpoint, to stop people from being offended by certain topics and views, or to prevent people from being persuaded by what others have to say."); *see also Texas v. Johnson*, 491 U.S. 397, 412 (1989) ("the emotive impact of speech on its audience is not a secondary effect unrelated to the content of the expression itself") (internal quotations omitted). A.R.S. § 13-4433(B) is content based for at least two distinct reasons.

First, A.R.S. § 13-4433(B) unconstitutionally restricts expressive conduct based on the identity of the speaker—namely defense attorneys and others on the defense team.

*Cf. State v. Lee*, 226 Ariz. 234, 238, ¶ 10, 245 P.3d 919, 923 (App. 2011) (The "plain language" of the VBR's provision granting victims the right to refuse interviews with and discovery by the defense team "limits the scope of a victim's right only by the identity of the person requesting the interview—the defendant or the defendant's representative—and the identity of the person to whom the request is directed—a crime victim.").

"[S]peech restrictions based on the identity of the speaker are all too often simply a means to control content," so "laws favoring some speakers over others demand strict scrutiny when the legislature's speaker preference reflects a content preference." *Reed*, 135 S. Ct. at 2230 (citations omitted); *see also Wollschlaeger v. Governor*, 848 F.3d 1293, 1307 (11th Cir. 2017) (holding that state statute prohibiting doctors from inquiring and recording whether their patients were gun owners was a viewpoint- and content-based restriction on First Amendment protected speech because the statute applied "only to the speech of doctors and medical professionals[.]"). Numerous cases support the principle that the government may not favor certain speakers, with which it agrees, over other speakers, whose opinions and messages are not aligned with its goals. *See, e.g.*, *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995) ("In the realm of private speech or expression, government regulation may not favor one speaker over another."); *Turner Broadcasting Sys., Inc. v. FCC*, 512 U.S. 622, 658 (1994) ("[S]peaker-based laws demand strict scrutiny when they reflect the Government's preference for the substance of what the favored speakers have to say (or aversion to what the disfavored speakers have to say)."); *Police Dep't of Chi. v. Mosley*, 408 U.S. 92, 95-96 (1972) (holding that the "government may not grant the use of a forum to people whose views it finds acceptable, but deny use to those wishing to express less favored or more controversial views"); *Hoye v. City of Oakland*, 653 F.3d 835, 849 (9th. Cir. 2011) (holding that the "government may not favor speakers on one side of a public debate").

13

It could not be more clear that § 13-4433(B) is designed to place a government-favored speaker, the prosecutor who is litigating a criminal case on behalf of the state, in a better position than the defense team, the prosecutor's litigation adversary. Indeed, § 13-4433(B) not only favors prosecutors over defense teams by allowing prosecutors to speak when defense lawyers may not; it also makes prosecutors the arbiters of whether the defense team's message will be conveyed accurately and at all to the intended recipients, the victims. Such viewpoint discrimination aimed at suppressing speech that the government would rather not happen is not permitted by the First Amendment. *See McCullen v. Coakley*, 134 S. Ct. 2518, 2544 (2014) (Scalia, J., concurring) (reasoning that facially content-neutral abortion clinic buffer zone provision was content based because "[e]very objective indication show[ed] that the provision's primary purpose [wa]s to restrict speech that opposes abortion").

Second, § 13-4433(B) is content based because it cannot be "justified without reference to the content of the regulated speech," and it was "adopted by the government because of disagreement with the message [the speech] conveys." *Reed*, 135 S. Ct. at 2227 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)) (internal quotation marks omitted). Plaintiffs seek to initiate communications with crime victims as part of their efforts to vindicate the constitutional rights of the criminal defendants they represent. Such speech could include discussing the facts of the alleged crime, investigating possible defenses, determining whether the government conducted a fair and adequate investigation into the alleged crime, discussing the background and characteristics of the defendant, and, in capital cases, discussing the moral and legal implications of a death sentence. Of course, all this speech–generally concerning the crime and the defendant–is aimed at ensuring that the criminal defendant is treated fairly by the criminal-justice system, including receiving a fair trial and receiving a fair and appropriate sentence, and sometimes securing dismissal of charges or acquittal after trial.

14

These aims may often be at odds with those of a prosecutor, who represents the state and may have as goals securing a conviction and imposing a harsh sentence on the defendant. Thus, § 13-4433(B) impermissibly regulates speech based on "disagreement with the message [the speech] conveys," that is, a message that undermines the state's goals in convicting and sentencing the defendant. *Reed*, 135 S. Ct. at 2227.

Therefore, A.R.S. § 13-4433(B) is a content-based regulation on expression that is "presumptively invalid," *R.A.V. v. St. Paul*, 505 U.S. 377, 382 (1992), and must elicit "the most exacting scrutiny." *Johnson*, 491 U.S. at 412; *Reed*, 135 S. Ct. at 2227.

### E.   A.R.S. § 13-4433(B) Is Not Narrowly Tailored to a Compelling Government Interest.

As a content-based restriction on speech, A.R.S. § 13-4433(B) is presumptively unconstitutional unless Defendants "prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Reed*, 135 S. Ct. at 2231; *accord Johnson*, 491 U.S. at 412. Content-based restrictions are constitutional "only so long as [they do] not unnecessarily infringe an individual's right to freedom of speech." *McCutcheon v. Fed. Election Comm'n*, 134 S. Ct. 1434, 1450 (2014) (plurality). That is, the restriction on speech must be "actually necessary" to achieve the government interest. *Brown v. Entm't Merchants Ass'n*, 131 S. Ct. 2729, 2738 (2011). "There must be a direct causal link between the restriction imposed and the injury to be prevented." *United States v. Alvarez*, 132 S. Ct. 2537, 2549 (2012) (plurality).

### 1.   A.R.S. § 13-4433(B) Is Not Narrowly Tailored to the State Interest in Protecting Victims Against Harassment.

The VBR and its implementing legislation were adopted "to provide crime victims with basic rights of respect, protection, participation and healing of their ordeals." *Champlin v. Sargeant*, 965 P.2d 763, 767 (Ariz. 1998) (quoting 1991 Ariz. Sess. Laws, ch. 229, § 2(2) (1st Reg. Sess.)) (internal quotation marks omitted). Thus, the VBR broadly recognizes that victims are entitled "[t]o be treated with fairness, respect, and

dignity, and to be free from intimidation, harassment, or abuse, throughout the criminal justice process." Ariz. Const. art. 2, § 2.1(A)(1). It also allows a victim "[t]o *refuse* an interview . . . request by the defendant, the defendant's attorney, or other person acting on behalf of the defendant." Ariz. Const. art. 2, § 2.1(A)(5) (emphasis added).

However, A.R.S. § 13-4433(B) is not narrowly tailored to Arizona's stated interest in ensuring that crime victims are "treated with fairness, respect, and dignity" and that they are spared from "intimidation, harassment, or abuse, throughout the criminal justice process." Ariz. Const. art. 2, § 2.1(A)(1). The statute does not spare crime victims from all communications about the crime; for instance, prosecutors and the media may still seek to communicate with victims without limitation. And prosecutors are required by the law to inform a victim when the defense team requests an interview. A.R.S. § 13-4433(B). The law simply prevents Plaintiffs and others working on behalf of criminal defendants from themselves initiating contact with crime victims, no matter how receptive crime victims might be to such communications.

Moreover, for those victims who are not entirely aligned with the prosecution, A.R.S. § 13-4433(B) does not shield them from "intimidation, harassment or abuse," but instead forces all initial defense-team contact with victims to go through the prosecutor, with whom victims may substantively disagree. *See State v. Murtagh*, 169 P.3d 602, 615 (Alaska 2007) ("[I]t is also true that some victims . . . feel harassed by the demands made on them by law enforcement personnel."). Those victims who are not aligned with the prosecution are thus forced to interact with prosecutors, which hardly protects defense-oriented victims.

Likewise, § 13-4433(B)'s proscription is not limited to speech that is disrespectful, intimidating, harassing, or abusive. Rather, it restricts *all* attempts by Plaintiffs to contact crime victims. This distinction is crucial for Plaintiffs who have no intention whatsoever to treat victims disrespectfully or abusively, or to intimidate or harass them. In fact,

16

Plaintiffs' wish to "win over" a victim so that they may have a respectful rapport during the litigation process; this is particularly important in a capital case, where convincing a murder victim's family to ask the prosecutor not to seek the death penalty can be a powerful tool in the defense team's effort to save their client's life. However, A.R.S. § 13-4433(B) prohibits the defense team from speaking with crime victims at all, even if they plan to do so with fairness, respect, and dignity, which would ostensibly advance the government interest expressed in the VBR. *See Champlin*, 965 P.2d at 767 ("[N]othing in the Victims' Bill of Rights . . . supports the argument that victims have a blanket right to be shielded from all contact with defendants or their attorneys until the time of trial."). Thus, the blanket ban on Plaintiffs' respectful, dignified, and fair speech aimed at victims shows that A.R.S. § 13-4433(B) is not narrowly tailored.

> **2.      There Are Other Means That Can Adequately Achieve the Government's Stated Purpose Without Violating Plaintiffs' Free-Speech Rights.**

While protecting crime victims from intimidation, harassment, and abuse is a worthy goal, A.R.S. § 13-4433(B) is not necessary to achieve that goal as demonstrated by measures in place currently that sufficiently achieve this objective. Indeed, harassment and intimidation are unlawful in Arizona. *See* A.R.S. § 13-2921 (defining the crime of harassment). And defense lawyers are subject to professional discipline for inappropriate conduct toward victims. *See* Ariz. R. Prof'l Conduct ("ER") 4.4(a) (lawyers may not "use means that have no substantial purpose other than to embarrass, delay, or burden any other person"). Likewise, private investigators may be subject to discipline for harassing or abusive behavior toward victims and others. *See* A.R.S. § 32-2457 (grounds for disciplinary action against private investigators); *see also* ER 5.5 (lawyer must make reasonable efforts to ensure that nonlawyers employed by or associated with the lawyer act consistently with lawyer's professional obligations; lawyer can be responsible for

conduct of employed or associated nonlawyers whose conduct would violate professional obligations).

There is, however, nothing inherently intimidating, harassing, or abusive when a defense lawyer or investigator initiates contact with a crime victim or family member. And, like any other person, the victim may simply say, "No thank you. I do not wish to talk with you about this incident." Such a declination to speak with members of the defense team should easily and promptly end the encounter. In fact, the Arizona Constitution already recognizes the right of crime victims to exercise this power by "refus[ing] an interview . . . request by the defendant, the defendant's attorney, or other person acting on behalf of the defendant." Ariz. Const. art. 2, § 2.1(a)(5). If Plaintiffs persist despite the entreaties of the crime victim or family member, criminal or professional sanctions may be imposed upon the offending Plaintiff.[3]

Given that a victim may simply decline a request to speak with the defense team, A.R.S. § 13-4433(B) seems to assume that criminal-defense lawyers and others working at their direction will not abide by ethical standards. Such an assumption puts our very system of justice at risk:

> If our adversary system is to function according to design, we must assume that an attorney will observe his responsibilities to the legal system, as well as to his client. [It is] difficult to conceive of any circumstances that would justify a court's limiting the attorney's opportunity to serve his client because of fear that he may disserve the system by violating accepted ethical standards.

*Geders v. United States*, 425 U.S. 80, 93 (1976) (Marshall, J., concurring).

---

[3] Even if a brief polite encounter with a member of the defense team should be deemed upsetting by a crime victim or family member, speech cannot be punished because it may have an adverse emotional impact on the audience. *Hustler Magazine v. Falwell*, 485 U.S. 46, 55 (1988). There is no "outrageousness" or "dignity" standard that would allow speech to be punished. *Id.*; *Boos v. Barry,* 485 U.S. 312, 322 (1987).

Indeed, neither the federal system nor any other state in the country restricts the defense team's communications with victims the way that Arizona does. For instance, the federal government recognizes in the Federal Crime Victim's Rights Act of 2004 that crime victims have "[t]he right to be treated with fairness and with respect for the victim's dignity and privacy." 18 U.S.C. § 3771(a)(8). But the federal scheme does not prohibit the defense team from initiating contact with victims, and in fact, defense-initiated victim outreach is common in federal cases. Likewise, other states also recognize the rights of crime victims to be free from harassment and intimidation. *E.g.*, Colo. Rev. Stat. Ann. § 24-4.1-302.5(1)(a); N.J. Stat. Ann. § 52:4B-36(c); S.C. Const. art. I, § 24(A)(1); Utah Const. art. I, § 28(1)(a). But no other state addresses this interest by requiring the defense team to initiate contact with crime victims through the prosecutor. Arizona "has available to it a variety of approaches that appear capable of serving its interests" without violating Plaintiffs' free-speech rights. *McCullen*, 134 S. Ct. at 2539.[4] That Arizona has gone beyond all other jurisdictions in its stated attempt to address this common concern shows that § 13-4433(B) is not narrowly tailored to that interest. *See Boos*, 485 U.S. at 329 (law is not narrowly tailored when "a less restrictive alternative is readily available").

---

[4] If Arizona is concerned with protecting crime victims from "intimidation, harassment, or abuse," it should simply enforce the Arizona Rules of Professional Conduct, which prohibit an attorney from contacting a witness using "means that have no substantial purpose other than to embarrass, delay, or burden any other person, or use methods of obtaining evidence that violate the legal rights of such a person." ER 4.4.

### 3. A.R.S. § 13-4433(B) Is Not Narrowly Tailored Because It Reaches Beyond Any Legitimate State Interest and Threatens Other Important Government Interests.

A.R.S. § 13-4433(B) also fails scrutiny because it threatens another widely recognized compelling government interest in First Amendment litigation: the administration of justice. "[I]t would be difficult to single out any aspect of government of higher concern and importance to the people than the manner in which criminal trials are conducted[.]" *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 575 (1980); *see also Landmark Communications, Inc. v. Virginia*, 435 U.S. 829, 838-839 (1978). In the administration of criminal justice, the Supreme Court has recognized that "[t]here can be no fair trial unless the accused receives the services of an effective and independent advocate." *Polk Cnty. v. Dodson*, 454 U.S. 312, 321-22 (1981).

A.R.S. § 13-4433(B) substantially impedes the effective assistance of counsel for the criminally accused and prevents defense counsel from fulfilling their constitutionally mandated duty to provide effective assistance to their clients; it likely violates criminal defendants' constitutional rights, suggesting it is not narrowly tailored to a compelling government interest. *See United States v. Cook*, 608 F.2d 1175, 1180 (9th Cir. 1979) ("As a general rule, a witness belongs neither to the government nor to the defense. Both sides have the right to interview witnesses before trial. Exceptions to this rule are justifiable only under the clearest and most compelling circumstances.") (citations and quotation marks omitted), *overruled on other grounds by Luce v. United States*, 469 U.S. 38, 1 (1984); *Porter v. McCollum*, 130 S. Ct. 447 (2009) (per curiam) (finding that an attorney's failure to interview witnesses in preparation for penalty phase of capital murder trial constituted ineffective assistance of counsel). Moreover, the Arizona Constitution mandates that the criminally accused have the right to not be deprived of liberty without due process of law and to counsel. Ariz. Const. art. II, §§ 4, 24. A.R.S.

20

§ 13-4433(B)'s restrictions violate these guarantees.

Further, the American Bar Association has promulgated guidelines for the adequate and proper representation of defendants, which have been acknowledged by the Supreme Court as "guides to determining what is reasonable" in defending the accused. *Wiggins*, 539 U.S. at 524 (quoting *Strickland*, 466 U.S. at 68). The ABA Guidelines provide that "defense counsel must independently investigate the circumstances of the crime, and all evidence . . . purporting to inculpate the client," including interviewing "witnesses having purported knowledge of events surrounding the alleged offense itself," and in capital cases, the victim's family. *See* American Bar Association, *Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases* (2003), Introduction, 10.7(2)(a)(1), 10.11, 10.7, Commentary 2(a)(4). A.R.S. § 13-4433(B) prevents Plaintiffs from fulfilling these duties.

Moreover, A.R.S. § 13-4433(B), by foreclosing attorneys from contacting victims, prevents attorneys from "presenting all the reasonable and well-grounded arguments necessary for proper resolution of the case." *Legal Servs. Corp. v. Velazquez*, 531 U.S. 533, 545 (2001). A.R.S. § 13-4433(B) forecloses defense attorneys, including Plaintiffs, from preparing and presenting viable defenses by not allowing them to gather facts that could be dispositive for the outcome of a case. In that way, the statute "alters the traditional role" of defense attorneys by "prohibiting speech necessary to the proper functioning of those systems." *Id.* at 544. It significantly impairs judicial functions, in direct contravention to the compelling government interest in the administration of justice.

A.R.S. § 13-4433(B) also conflicts with the administration of justice by creating ethical problems for prosecutors. Prosecutors have no legitimate stake in preventing crime victims from speaking with defense counsel because prosecutors "have a special duty to seek justice, not merely to convict." *Connick v. Thompson*, 563 U.S. 51, 65-66

21

(2011) (citations omitted); *see also* ER 3.8 cmt. 1 ("A prosecutor has the responsibility of a minister of justice and not simply that of an advocate.").

> [P]rosecutorial control of victims' rights provides fertile ground for ethical conflicts of interest. It is a mistake to define the state and victims as nonadversaries simply because both are harmed by the criminal act and share an interest in punishment. Adversariness exists when prosecutors violate victims' rights. Moreover, the public prosecutor is obligated to the public interest.

Douglas E. Beloof, *The Third Wave of Crime Victim's Rights: Standing, Remedy, and Review*, 2005 B.Y.U. L. Rev. 255, 337 (2005). By giving prosecutors control over access to crime victims, A.R.S. § 13-4433(B) wrongly assumes both that prosecutors and victims will always be aligned and also that victims will always benefit from this overly paternalistic scheme. *See P.M. v. Gould*, 136 P.3d 223, 228 (Ariz. App. 2006) ("[T]he real issue in this dispute is not between the victim and the defendant, but between the victim and the state."); Ariz. R. Crim. P. 39(c)(3) ("In any event of any conflict of interest between the state . . . and the wishes of the victim the prosecutor shall have the responsibility to direct the victim to the appropriate legal referral, legal assistance, or legal aid agency.").

Ultimately, "[t]he restriction imposed by the statute here threatens severe impairment of the judicial function[,]"*Velazquez*, 531 U.S. at 545-46, runs counter to the compelling government interest of fairly administering justice, and cannot withstand strict scrutiny. *Cf. Miller v. Reed*, 176 F.3d 1202, 1207–08 (9th Cir. 1999) (law causing hybrid-rights violation triggers strict scrutiny).

### 4.   A.R.S. § 13-4433(B) Does Not Leave Open Ample Alternatives for Communication.

A.R.S. § 13-4433(B) fails First Amendment scrutiny also because it does not leave open ample alternatives channels of communication. "The First Amendment protects the right of every citizen to reach the minds of willing listeners and to do so there must be

opportunity to win their attention." *Heffron v. Int'l Soc. for Krishna Consciousness, Inc.*, 452 U.S. 640, 655 (1981) (citation and internal quotation marks omitted). The Supreme Court has long held that "one is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place." *Schneider v. New Jersey*, 308 U.S. 147, 151 (1939). "[E]ven regulations that do not foreclose an entire medium of expression, but merely shift the time, place, or manner of its use, must leave open ample alternative channels for communication." *City of LaDue v. Gilleo*, 512 U.S. 43, 56 (1994) (citation and internal quotation marks omitted).

"An alternative is not ample if the speaker is not permitted to reach the intended audience." *Bay Area Peace Navy v. United States*, 914 F.2d 1224, 1229 (9th Cir. 1990) (citation and internal quotation marks omitted). A.R.S. § 13-4433(B) prevents Plaintiffs from reaching their one intended audience: crime victims or their families. For example, in a death-penalty case, during the penalty phase, there are perhaps no more important witnesses than the victim's family members. While not specifically permitted to ask the jury to impose the death penalty, the victim's family can certainly telegraph to a jury either support for a death sentence or can provide testimony that speaks out against the inhumanity of the death penalty. Victims' family members' testimony holds great weight with juries, yet A.R.S. § 13-4433(B) prevents Plaintiffs from contacting them directly. When a person's loved one has died, the tone and content of the message to that person is important to gaining his or her trust or convincing the person to take a stand against the death penalty. There is no way that this message can be conveyed by a go-between, particularly when that messenger is tasked with ensuring that a death sentence is imposed. Allowing Plaintiffs to contact victims through prosecutors is thus not a viable alternative channel of communication.

1

2          **5.    A.R.S. § 13-4433(B) Is Overbroad.**

3          A.R.S. § 13-4433(B) reaches beyond what the government might permissibly

4    regulate—for example, harassment—and prohibits protected speech. It is thus

5    impermissibly overboard.

6          In a First Amendment challenge, "a law may be invalidated as overbroad if 'a

7    substantial number of its applications are unconstitutional, judged in relation to the

8    statute's plainly legitimate sweep.'" *United States v. Stevens*, 559 U.S. 460, 473 (2010)

9    (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 n.6

10   (2008)); *see also Grayned v. City of Rockford*, 408 U.S. 104, 114-15 (1972) ("The crucial

11   question, then, is whether the ordinance sweeps within its prohibitions what may not be

12   punished under the First and Fourteenth Amendments."). "[T]he first step in overbreadth

13   analysis is to construe the challenged statute; it is impossible to determine whether a

14   statute reaches too far without first knowing what the statute covers." *Stevens*, 559 U.S. at

15   474 (quoting *United States v. Williams*, 553 U.S. 285, 293 (2008)).

16         A.R.S. § 13-4433(B) creates a prohibition of substantial overbreadth. However

17   large the number of situations in which § 13-4433(B) could apply to speech and conduct

18   that the government might be allowed to restrict (like harassment), those situations are

19   dwarfed by others where protected speech is also prohibited. A.R.S. § 13-4433(B) is not

20   limited to harassment but instead prohibits ***any*** attempt by defense counsel to

21   communicate with a crime victim. A.R.S. §  13-4433(B) also  "has a substantial deterrent

22   effect on protected expression," but no Arizona court has limited its scope to allow

23   protected speech, and its language makes clear that it applies to all speech initiated by the

24   defense team to crime victims, regardless of context, location, or tone. *See Fratiello v.*

25   *Mancuso*, 653 F. Supp. 775, 791 (D.R.I. 1987) (statute overbroad that "has neither been

26   afforded a narrowing construction by the state courts sufficient to limit its application to

     unprotected expression nor is the provision readily susceptible to such an

                                           24

interpretation.").

A substantially overbroad statute is invalid under the First Amendment. *Stevens*, 130 S. Ct. at 1592. Because A.R.S. § 13-4433(B) prohibits respectful, polite speech directed at crime victims, including speech on topics of grave public concern, it burdens substantially more speech than necessary to further any government interest and is facially invalid.

## II. Plaintiffs Are Suffering Ongoing, Unconstitutional Restrictions on Their Speech, Which Constitutes Irreparable Harm.

Both the Supreme Court and the Ninth Circuit have repeatedly held that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see Klein v. City of San Clemente*, 584 F.3d 1196, 1207-08 (9th Cir. 2009); *Jacobsen v. U.S. Postal Service*, 812 F.2d 1151, 1154 (9th Cir. 1987). As discussed above, A.R.S. § 13-4433(B) violates the First Amendment because it is a content-based and overbroad prior restraint on speech that is not narrowly tailored to a compelling government interest and does not leave open ample alternatives for Plaintiffs' speech. Thus, each day that goes by without an injunction causes Plaintiffs ongoing, irreparable harm. *See Doe v. Harris*, 772 F.3d 563, 583 (9th Cir. 2014) ("A colorable First Amendment claim is irreparable injury sufficient to merit the grant of relief[.]") (citation and internal quotation marks omitted).

## III. The Balance of Equities Favors Enjoining A.R.S. § 13-4433(B).

"The balance of equities . . . generally favors the constitutionally-protected freedom of expression." *Phelps-Roper v. Nixon*, 545 F.3d 685, 690 (8th Cir. 2008). Any hardship to the state of Arizona because it is unable to enforce § 13-4433(B), which is likely unconstitutional, cannot outweigh the substantial and ongoing harms being suffered by Plaintiffs, particularly because Plaintiffs may be subject to criminal or professional sanctions for failure to comply with the law. *See Doe*, 772 F.3d at 583

(holding that the balance of equities favors granting a preliminary injunction when free speech rights are chilled by the prospect of sanctions for failure to comply with an unconstitutional law). Simply put, without an injunction, Plaintiffs' First Amendment rights will continue to be violated on an ongoing basis. The balance of equities favors an injunction.

**IV.   An Injunction Against § 13-4433(B) Serves the Public Interest.**

The Ninth Circuit has "consistently recognized the significant public interest in upholding free speech principles, [] as the ongoing enforcement of the potentially unconstitutional regulations . . . would infringe not only the free expression interests of [plaintiffs], but also the interests of other people subjected to the same restrictions." *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009) (quoting *Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 974 (9th Cir. 2002)) (internal quotation marks omitted). A.R.S. § 13-4433(B) violates the free-speech rights not only of the individual Plaintiffs and the more than 500 members of Plaintiff AACJ, but also of every criminal-defense attorney and other defense team member in the state of Arizona. Moreover, because the right to hear and the right to speak are two sides of the same coin, § 13-4433(B) restricts the First Amendment rights of crime victims, who have a corresponding right to receive communications from the defense team unimpeded by the prosecutor. *See Conant*, 309 F.3d at 643 ("It is well established that the right to hear—the right to receive information—is no less protected by the First Amendment than the right to speak."); *see also Lamont v. Postmaster General*, 381 U.S. 301, 308 (1965) (Brennan, J., concurring). ("It would be a barren marketplace of ideas that had only sellers and no buyers."). A preliminary injunction thus clearly serves the public interest.

26

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**CONCLUSION**

The Court should enter a preliminary injunction enjoining Defendants, their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them from enforcing the prohibition in A.R.S. § 13-4433(B) that restricts defense lawyers and others working on the defense team from initiating contact with the victim except through the prosecutor's office.

Dated this 8th day of May 2017.

By /s/*Kathleen E. Brody*
Kathleen E. Brody
Brenda Muñoz Furnish
ACLU Foundation of Arizona

David A. Lane (*pro hac vice* application to be submitted)
Andy McNulty (*pro hac vice* application to be submitted)
Kilmer, Lane & Newman, LLP

*Attorneys for Plaintiffs*