BARBARA LAWALL
PIMA COUNTY ATTORNEY
*Jacob R. Lines, SBN 022560*
*Deputy County Attorney*
32 North Stone Avenue, Suite 1400
Tucson, Arizona  85701
Telephone: 520-724-5600
Jacob.Lines@pcao.pima.gov
*Attorney for Amicus Curiae*

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ARIZONA ATTORNEYS FOR CRIMINAL JUSTICE; CHRISTOPHER DUPONT; RICH ROBERTSON; RICHARD L. LOUGEE, RICHARD D. RANDALL; JEFFREY A. KIRCHLER; and JOHN CANBY,<br><br>       Plaintiffs,<br>  v.<br>DOUG DUCEY, in his official capacity as Governor of the State of Arizona; MARK BRNOVICH, in his official capacity as Attorney General of the State of Arizona,<br><br>       Defendant(s). | Case No.:  2:17-cv-01422-SPL<br><br>**BRIEF OF AMICUS CURIAE PIMA COUNTY ATTORNEY'S OFFICE** |

1

## **TABLE OF CONTENTS**

TABLE OF CONTENTS .............................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................................ ii

I.   IDENTITY AND INTERESTS OF AMICUS CURIAE ...................................................... 1

II.  ARGUMENT ...................................................................................................................... 1

A.R.S. § 13-4433(B) serves very important governmental interests.

CONCLUSION ......................................................................................................................... 4

# TABLE OF AUTHORITIES

Cases

*Maryland v. Craig,*

    497 U.S. 836 (1990) ...................................................................................... 2

*State ex rel. Romley v. Superior Court (Flores),*

    181 Ariz. 378, 891 P.2d 246 (App. 1995) ................................................... 1

Statutes

A.R.S. § 11-532 ................................................................................................ 1

A.R.S. § 13-4433(B) .................................................................................. 1, 3, 4

A.R.S. §§ 13-4401 ........................................................................................... 1

Ariz. Const. art. 12 § 3 .................................................................................... 1

Ariz. Const. art. 2, § 2.1 .................................................................................. 1

## I.   IDENTITY AND INTERESTS OF AMICUS CURIAE

The Pima County Attorney is the public prosecutor for the county of Pima. A.R.S. § 11-532; *see also* Ariz. Const. art. 12 § 3. The Pima County Attorney's Office (PCAO) prosecutes most felonies committed in Pima County and misdemeanors committed in unincorporated parts of the county. In this role, PCAO's duty is to ensure that justice is done for all the people of Arizona, including defendants and victims. *See State ex rel. Romley v. Superior Court (Flores)*, 181 Ariz. 378, 381-82, 891 P.2d 246, 249-50 (App. 1995). While PCAO does not represent victims, it does have constitutional and statutory duties to them. See Ariz. Const. art. 2, § 2.1 (crime victims' bill of rights); A.R.S. §§ 13-4401 to -4438 (crime victims' rights statutes).

PCAO prosecutes thousands of cases a year involving victims. The office has a Victim Services Division that fulfills its statutory duties to help victims. This division works with over 6,000 crime victims a year. For many victims, having contact with the accused can be traumatic. In the cases that a victim chooses to speak to the defense, most are domestic violence cases in which the victim contacts defense counsel (often at the urging of the accused) to try to undermine the prosecution.

This issue of whether A.R.S. § 13-4433(B) is constitutional has been raised in at least two cases in Pima County. In one, the trial court rejected the challenge. In the other case, the challenge was made moot by a plea agreement.  PCAO has a substantial interest in protecting victims and doing justice and believes that the provision at issue in this case helps achieve these legitimate goals in an important way.

Counsel for Plaintiffs and Defendants have consented to the filing of this brief.

## II.   ARGUMENT

**A.R.S. § 13-4433(B) serves very important governmental interests.**

The provision at issue here has three important parts: 1) the defendant and his agents can only contact the victim through the prosecutor's office, 2) the prosecutor must promptly relay the request to the victim, and 3) the prosecutor must advise the victim of his or her right to refuse. A.R.S. § 13-4433(B). The requirements advance important interests.

First, it is important to give a crime victim a layer of protection against direct unsolicited contact from the defendant and his agents. The victims are involuntary participants in a

1

criminal case – they did not choose to participate. They did not file a lawsuit like a civil plaintiff, nor did they commit a tort or breach a contract like a civil defendant. Their victimization was unwelcome in the first place, and spending their time and energy and emotional reserves on a criminal case is often just as unwelcome. Unsolicited contact from the defense team is alarming and intrusive and often serves to make the victim feel powerless and to relive the crime.

Moreover, there is real danger of traumatizing and re-victimizing victims, especially victims of sex crimes and violent crimes, by contact with the accused or his agents. There are even reports of some defense attorneys or investigators intentionally harassing or threatening victims to influence them to change their testimony or to ask the prosecutor to dismiss a case. The protection of child victims from such trauma has been recognized as a compelling state interest. *Maryland v. Craig*, 497 U.S. 836, 852-53 (1990). Indeed, the legislative history of this statute indicates that at least part of its purpose was to protect victims from further trauma and re-victimization. To that end, channeling requests to speak to a victim through the prosecutor, as the statute provides, serves very important interests. First, it ensures that the request is relayed to the victim through a less confrontational conduit. Second, it ensures that the request is accompanied by an explanation of the victim's rights. Third, it prevents the problems inherent in unregulated unsolicited contact.

In addition to protecting victims from trauma, the statute also protects victims from confusion. While PCAO has a duty to represent the interests of the public at large, to do justice, and to serve victims, a defense attorney, by contrast, has a duty only to represent the interests of his or her client and to endeavor to win the case. Victims, unfamiliar with the criminal justice system, might not realize that a defense attorney who contacts them is solely an advocate for the defendant, not someone with an obligation to ensure that the victim's rights are protected. The statute helps avoid confusion by ensuring that the request to speak is delivered by a person with a duty to more than the defendant, who will give greater attention to explaining the victim's rights.

PCAO's years of experience with witnesses informs its concerns regarding potential confusion. In many cases, witnesses (not victims) are contacted by defense counsel or defense

investigators. The witnesses are often confused about who the person represents, and many times the caller or visitor does not attempt to make that fact clear. Even though a representative may identify himself or herself by name and agency, an attorney with the "Pima County Public Defender" may appear to a witness to be the same as the "Pima County Attorney," and the witness may assume that any lawyer or investigator that calls works for the prosecution. There is also the very small percentage of cases in which an investigator is actually deceptive about who he works for. These are the problems faced by non-victim witnesses. Without the protection in A.R.S. § 13-4433(B), all of these problems would present themselves for victims as well.

The criminal justice system is already confusing for victims. Most are not trained in the law. Even after victims' rights are explained to them, it is difficult for laypeople to understand their rights. That is why prosecutors and victim advocates make themselves available to victims for questions and repeatedly explain and reaffirm what rights victims possess.

If a defense attorney or their agent has a right to contact a victim directly, it is highly unlikely that they will explain those rights to the victim or ensure that the victim truly wishes to speak to them before asking questions. They will not be under any obligation to obtain informed consent. And this is even without the rare case of deception – it can be difficult for a layperson to understand exactly who a person is and what their interest is.

Other questions are important to consider. Will one refusal be enough to ensure that the defense does not contact the victim again? How many chances will the defense have to call them?  How often will they be permitted to call or visit to see if the victim has changed their mind about speaking to them?

These fears are especially pronounced in domestic violence cases. In those cases, victims face enormous pressure – usually from the accused, but also often from other family members. They also face the pressure caused by economic concerns and the desire for their children to keep both parents when children are involved. Those victims are often more vulnerable than the average person. Sometimes they are children whose representative (usually a parent) favors the accused and thus does not protect the victim's interest against the accused's desires.

In many domestic violence cases, victims are already contacted by the accused (often in violation of court orders) and urged to recant or to become unavailable to testify. Much of this contact is already illegal, but it still happens. If the protection of section 13-4433(B) were struck down, the victim would know that the defense lawyer or investigator would be able to call them or knock on their door or come to their work to ask them to speak. And because the defense had a constitutional right to do this, all that the victim could do is say no and hope they don't come again. Thus, a person that has already been victimized would now need to screen their calls and avoid answering their door to exercise their victims' rights.

The result of this should be clear. Many victims that are already under enormous pressure would simply give up. It would affect many cases. And this effect would have nothing to do with the truth of the allegations in the case – it would have everything to do with the victim being worn down.

## CONCLUSION

A.R.S. § 13-4433(B) balances a defendant's interest in asking to speak to a victim with the victim's equally weighty right to refuse to speak. This layer of protection can be vital to the victim's wellbeing and to the integrity of the case. The statute fairly implements an appropriate balancing of interests of the victim and the accused defendant. Protecting and safeguarding the constitutional rights of victims is a compelling state interest. For these reasons, PCAO urges this Court to rule that the statute does not violate the First Amendment.

RESPECTFULLY SUBMITTED this 3rd day of July, 2017.

BARBARA LAWALL
PIMA COUNTY ATTORNEY


*/s/ Jacob R. Lines*
Jacob R. Lines (No. 22560)
Deputy Pima County Attorney
32 N. Stone Avenue, 1400
Tucson, AZ  85701
*Attorneys for Amicus Curiae*

4

1

**CERTIFICATE OF SERVICE**

2       I hereby certify that on this 3rd day of July, 2017, I electronically filed the foregoing with

3   the Clerk of the Court for the United States District Court for the District of Arizona using the

4   CM/ECF filing system.  Counsel for all parties are registered CM/ECF users and will be served

5   by the CM/ECF system pursuant to the notice of electronic filing.

6

7           */s/  Jacob R. Lines*
8           Jacob R. Lines
9           PIMA COUNTY ATTORNEY'S OFFICE
10          32 N. Stone Avenue, 1400
11          Tucson, Arizona 85701
12          (520) 724-5600