**ACLU Foundation of Arizona**
3707 North 7th Street, Suite 235
Phoenix, AZ 85014
Telephone: 602-650-1854

**Kathleen E. Brody** (State Bar No. 026331)
Email: kbrody@acluaz.org

**Brenda Muñoz Furnish** (State Bar No. 027280)
Email: bmfurnish@acluaz.org

**Kilmer, Lane & Newman, LLP**
1543 Champa Street
Denver, Colorado 80202
Telephone: 303-571-1000

**David A. Lane** (pro hac vice)
Email: dlane@kln-law.com

**Andrew McNulty** (pro hac vice)
Email: amcnulty@kln-law.com

**Lewis Roca Rothgerber Christie LLP**
201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

**Dan W. Goldfine** (State Bar No. 018788)
Direct Dial:  602.262.5392
Direct Fax:   602.262.5747
E-mail:       DGoldfine@lrrc.com

**Ian M. Fischer**  (State Bar No. 026239)
Direct Dial:  602.262.5724
Direct Fax:   602.262.5747
E-mail:       IFischer@lrrc.com

**Roy Herrera** (State Bar No. 032901)
Direct Dial:  602.262.5742
Direct Fax:   602.262.5747
E-mail:       RHerrera@lrrc.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona Attorneys for Criminal Justice; Christopher Dupont; Rich Robertson; Richard L. Lougee; Richard D. Randall; Jeffrey A. Kirchler; John Canby, | No.  2:17-cv-01422-SPL |
| Plaintiffs, | **OPPOSITION TO MOTION TO DISMISS** |
| vs. | (Assigned to the Honorable Steven P. Logan) |
| Mark Brnovich, in his official capacity as Attorney General of the State of Arizona, | |
| Defendant. | |

Defendant moves to dismiss Plaintiffs' Complaint under Rule 12(b)(1) based on (1) abstention under *Younger v. Harris*, (2) standing, and (3) ripeness.  He also moves under Rule 12(b)(7) for failure to join a party under Rule 19 and Rule 12(b)(6) for failure to state a claim.  Each of Defendant's arguments fail.

## **INTRODUCTION**

This action challenges the constitutionality of Arizona Revised Statute § 13-4433(B), which prohibits a criminal defendant's attorney and others working on a defense team from initiating contact with the victim of a crime, except through the office of the prosecutor who is prosecuting the defendant.   Because  § 13-4433(B) impermissibly prohibits and restricts speech by criminal-defense lawyers and members of the defense team by limiting to whom they may speak, with whom they make speak, and how, the statute violates the First Amendment of the United States Constitution.  In particular, § 13-4433(B) is an unlawful content-based and overbroad prior restraint on the speech of criminal-defense lawyers and others on the defense team that inhibits and outlaws speech fully protected by the First Amendment.  Given that no federal law and no other state's law empowers prosecutors – opposing counsel – to prevent criminal-defense counsel from exercising his or her First Amendment rights, and Arizona law prevents only the defense team[1] from contacting the victim, § 13-4433(B) is a prosecution-rights statute, not a victims-rights statute.

For Plaintiffs, and all other criminal-defense lawyers and individuals working on a criminal defendant's defense team, the ability to contact victims and their family members is a crucial part of the effective representation of the defendant.  It is an essential part of pre-trial investigation regarding culpability, other possible perpetrators, whether to advise clients to plead guilty, and potential mitigation evidence for sentencing purposes.   Likewise, it can be crucial for post-conviction work on behalf of a defendant, including when investigating claims of actual innocence.

---

[1] The media, prosecutors and their agents, and others are free to contact victims under Arizona law.

Not only does § 13-4433(B) impose a content-based prior restraint on speech by targeting speech based on the speaker, but, under Arizona law, prosecutors are under no duty to accurately convey Plaintiffs' message to a victim, or convey it at all, providing additional restrictions on Plaintiffs' speech. *See* A.R.S. § 13-4433(C). The prosecutor, thus, has complete control over critical witnesses in a contested matter, significantly impacting Plaintiffs' personal success, as well as that of their clients. Prosecutors must also inform the victim of the victim's right to refuse an interview. A.R.S. § 13-4433(B). In practice, victims who even learn that the defense team would like to speak with them rarely agree to do so.

Rather than recognizing Plaintiffs' First Amendment right to attempt to speak with any and all witnesses and other persons connected with a criminal case, § 13-4433(B) directly infringes Plaintiffs' free-speech rights. It chills Plaintiffs from attempting to speak to victims and, if they undertake the risk of attempting to contact a victim, such speech may subject them to professional discipline or criminal prosecution for violating the law. Fear of professional sanctions and criminal prosecution have deterred Plaintiffs from speaking both as part of the investigatory function of their profession and on matters of great public concern. The prohibited speech is entirely outside the courtroom and does not implicate the integrity of courtroom procedures. No federal or other state jurisdiction prohibits such speech. Plaintiffs have asked this Court to enjoin enforcement of § 13-4433(B) and declare the statute unconstitutional.

## I.   *YOUNGER* ABSTENTION DOES NOT APPLY HERE

A federal court's "obligation" to hear and decide a case within its jurisdiction is "virtually unflagging." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). Even parallel state-court proceedings do not detract from that obligation. *Id*. Rather, "only exceptional circumstances justify a federal court's refusal to decide a case in deference to the States." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989). "In the main, federal courts are obliged to decide cases within the scope of federal jurisdiction. Abstention is not in order simply

because a pending state-court proceeding involves the same subject matter." *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 588 (2013).

*Younger* abstention is appropriate **only** when **all** four requirements are met: "(1) a state-initiated proceeding is ongoing; (2) the proceeding implicates important state interests; (3) the federal plaintiff is not barred from litigating federal constitutional issues in the state proceeding; and (4) the federal court action would enjoin the proceeding or have the practical effect of doing so, i.e., would interfere with the state proceeding in a way that *Younger* disapproves." *San Jose Silicon Valley Chamber of Commerce Political Action Comm. v. City of San Jose*, 546 F.3d 1087, 1092 (9th Cir. 2008) (citations omitted).  None of the requirements are met here.

### A. State-initiated Proceedings Are Not Ongoing as No Plaintiff Is a Party to Any State Court Action

A state proceeding is considered "ongoing" for purposes of *Younger* abstention when it is "begun **against the federal plaintiffs** after the federal complaint is filed but before any proceedings of substance on the merits have taken place in the federal court." *Hicks v. Miranda*, 422 U.S. 332, 349 (1975) (emphasis added).

Defendant argues that the pending criminal proceedings in Arizona state courts in which **Plaintiffs represent criminal defendants** constitute ongoing state-initiated proceedings for purposes of *Younger*.  Doc. 31 at 4:14-20.  Defendant cites **no** authority for this extension.  There is none.  Although Plaintiffs represent criminal defendants in ongoing state court criminal proceedings, it is undisputed that Plaintiffs are not parties in those proceedings.  Doc. 31 at 4:14-20, 5:10-11 (conceding "Plaintiffs are attorneys for parties (and not technically parties) in the state proceedings" and arguing only that Plaintiffs "tak[e] part in [pending criminal proceedings]").  No state proceedings have "begun against [Plaintiffs] after the federal complaint [was] filed."

### B. This Suit Implicates No Important State Interests Which Would Impact Arizona's Ability to Prosecute Criminal Cases

In assessing a state's interest for purposes of *Younger*, courts "do not look narrowly to its interest in the outcome of the particular case," but rather, "the importance

1   of the generic proceedings to the State." *New Orleans Pub. Serv., Inc.*, 491 U.S. at 365.

2   Notwithstanding Defendant's argument to the contrary, Plaintiffs' claims do not

3   implicate the state's interest in enforcing its criminal laws because, regardless of the

4   outcome of this lawsuit, the state will remain free to prosecute people for criminal

5   violations.  *See* Doc. 31 at 4:21-25 (arguing state court criminal proceedings in which

6   Plaintiffs represent criminal defendants implicate important state interests by their very

7   nature).[2]  The relief sought in this lawsuit will not limit the state's criminal enforcement

8   power in any way or enjoin any ongoing criminal proceedings.  Thus, Defendant has

9   identified no important state interest that satisfies the second element required for

10  *Younger* abstention.

C.  **Plaintiffs Are Barred from Litigating Their Federal Constitutional Claims in Any Pending State Proceeding**

12      That Plaintiffs are not parties in the state-initiated proceedings matters a great

13  deal.  *See* Doc. 31 at 7 (arguing it does not matter).  *Younger* abstention generally does

14  not apply where the plaintiffs in the federal action "were not involved in the state

15  litigation." *See Green v. City of Tucson*, 255 F.3d 1086, 1099 (9th Cir. 2001), *overruled

16  on other grounds by Gilbertson v. Albright*, 381 F.3d 965, 968-69 (9th Cir. 2004) (en

17  banc); *see also Mass. Delivery Ass'n v. Coakley*, 671 F.3d 33, 45-46 (1st Cir. 2012)

18  ("[T]he circuits are in accord that the application of *Younger* to non-parties is proper

19  only in certain limited, exceptional circumstances.").  Where a federal plaintiff is not a

20  party to an ongoing state court proceeding, "[c]ongruence of interests" with the state

21  parties is not enough to trigger application of *Younger* abstention, "nor is identity of

22  counsel," but that a party "whose interest is so intertwined with those of the state court

23  party that direct interference with the state court proceeding is inevitable may, under

24  *Younger*, not proceed." *Green*, 255 F.3d at 1100.  While criminal-defense attorneys and

26  [2] *Sprint* and *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996), the cases on
27  which Defendant relies, do not actually say that criminal proceedings implicate
    important state interests by their very nature.  These cases stand only for the proposition
    that *Younger* may preclude federal intrusion into ongoing state criminal proceedings.
28  There is no such intrusion here.

4

their clients both have an interest in the Sixth Amendment right to the effective assistance of counsel, those interests are not the subject of this proceeding.  Although Plaintiffs and their clients may have a congruence of interests regarding Plaintiffs' ability to contact victims, their interests in the constitutionality of the statute are not so intertwined that direct interference with the state court proceedings is inevitable.  Indeed, Plaintiffs challenge the constitutionality of the statute based on violations of **their own** First Amendment rights and seek to prevent Defendant from enforcing the statute, not to dismiss or enjoin any state court proceeding brought against any criminal defendant.

Defendant cites *Eng v. Cooley*, 552 F.3d 1062 (9th Cir. 2009), in support of his argument that a criminal defendant and his attorney's interest are intertwined. However, *Eng* made clear that a criminal defendant's interest in his attorney's First Amendment rights is separate from the attorney's own interest in those rights.  *Id*. at 1068 (criminal defendant and his attorney "**each** ha[d] a first person constitutional interest in [the attorney's] speech.") (emphasis added); *id.* at 1069 ("[A]n attorney's advocacy 'on behalf of' a client implicates the client's, **as well as** the attorney's, First Amendment interests[.]") (quoting  *Legal Services Corp. v. Velazquez*, 531 U.S. 533, 542 (2001)). Although a criminal defendant may have an interest in his attorney's speech, nothing prevents Plaintiffs from challenging a violation of their rights on their own and separate from a criminal defendant.[3]

---

[3] In *Spargo v. N.Y. State Comm'n on Judicial Conduct*, which Defendant also cites, two attorneys claimed standing based on their interest in receiving political speech from judges and judicial candidates.  351 F.3d 65 (2d Cir. 2003).  Because the attorney's claims were **entirely derivative** of a judge's pending First Amendment challenge in state disciplinary proceeding *Younger* abstention applied.  *Id.*  Unlike in *Spargo*, here, Plaintiffs' claims are not derivative of any criminal defendant's claims in a pending state court proceeding.  Rather, Plaintiffs seek relief for a violation of their own First Amendment rights.  Even if Plaintiffs' challenge is somehow parallel to any challenge in a state court proceeding, this is not enough to warrant *Younger* abstention. *See id.* at 83 ("[P]arallel challenges to the constitutionality of a state statute or policy are typically not barred by *Younger* absent other factors indicating that the plaintiffs' interests are legally interwoven or interconnected.").  *Stein v. Harris*, which Defendant also cites, applied *Younger* to a claim brought by an attorney's clients, who were not parties to a state proceeding against the attorney.  No. C 12-00985 CRB, 2012 WL 3202959, *7-8 (N.D. Cal. Aug. 3, 2012).  It did so not because of the attorney-client relationship, as

1   If Plaintiffs are prohibited from bringing their challenges through this lawsuit,

2   they would be forced to raise their challenges in every criminal case in which they

3   represent a criminal defendant.  This is not only unrealistic but would result in

4   inconsistent outcomes.  Given Plaintiffs are threatened with professional and criminal

5   sanctions based on violations of the statute,[4] inconsistent rulings would continue the

6   chilling effect which has precluded Plaintiffs from engaging in the First Amendment

7   protected speech of contacting and communicating with victims and their families.

8       **D.  <u>The Relief Sought Would Not Interfere with Any Pending Proceeding</u>**

9   Defendant treats this requisite in a manner that would eviscerate the limited nature

10  of the abstention.  *See* Doc. 31 at 6:1-15 (arguing it would displace state courts from

11  deciding the issue).[5]  *Younger* abstention is only appropriate in a narrow category of

12  circumstances in which the federal court action would actually "enjoin the [ongoing

13  state] proceeding, or have the practical effect of doing so." *Gilbertson*, 381 F.3d at 978.

14  The relief Plaintiffs seek here would not enjoin or have the practical effect of

15  enjoining any state court proceeding.  Regardless of whether this Court decides that

16  Plaintiffs may engage in the First Amendment activity of contacting and communicating

17  with victims and their families without the prosecutor acting as a conduit, each state

18

19  Defendant argues, but because the federal and state court proceedings **each involved**
20  **property that belonged to the clients** and the clients' requested relief included
    enjoining the state court action against their attorney. *Id.* In contrast, here, Plaintiffs do
    not challenge allegations made against their clients in state court.
21  [4] *See, e.g.*, *In re Smith*, No. 14-2162, 2015 WL 3602108, at *2 (Ariz. Disciplinary
    Comm'n May 4, 2015) (discipline based, *inter alia*, on violation of A.R.S. § 13-
22  4433(B)); *In re Krumwiede*, No. 11-2422, 2014 WL 983745, at *16 (Ariz. Disciplinary
    Comm'n Feb. 3, 2014) (same); *In re Carrasco*, No. 02-1896, 2004 WL 5730522, at *5
23  (Ariz. Disciplinary Comm'n May 28, 2004) (same).
    [5] Defendant also argues that Plaintiffs' claims should be dismissed under the *Rooker-*
24  *Feldman* doctrine.  The *Rooker-Feldman* doctrine bars a district court from exercising
    jurisdiction over an action explicitly styled as a direct appeal and over the de facto
25  equivalent of such an appeal.  *Cooper v. Ramos*, 704 F.3d 772, 777 (9th Cir. 2012).
    However, this doctrine "does not preclude a plaintiff from bringing an 'independent
26  claim' that, though similar or even identical to issues aired in state court, was not the
    subject of a previous judgment by the state court." *Id.* at 778.  Here, Plaintiffs'
27  constitutional challenge is not an appeal or de facto appeal of any previous judgment by
28  a state court so the *Rooker-Feldman* doctrine is inapplicable.

1  court proceeding in which Plaintiffs represent criminal defendants, including those

2  currently pending and those to be initiated in the future, will move forward.  That the

3  relief sought here might prevent state courts from deciding that particular issue

4  independently does not constitute sufficient interference to satisfy this element of the

5  *Younger* test.  *See AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1151 (9th Cir.

6  2007) (rejecting argument that "interference with ongoing state proceedings" occurs

7  whenever relief sought in federal court likely results in a judgment whose preclusive

8  effect would prevent the state court from independently adjudicating the issues before

9  it); *Spargo*, 351 F.3d at 82-83 (In applying *Younger* to third parties, courts should be

10  sensitive to the fact that there is "no doctrine requiring abstention merely because

11  resolution of a federal question may result in an overturning of a state policy.") (citation

12  omitted).  That the relief sought might prevent the Defendant from violating the free-

13  speech rights of criminal-defense attorneys to tip the scales in the state's favor in criminal

14  proceedings is not the type of interference at issue here.[6]

15  **II.    PLAINTIFFS HAVE STANDING TO ASSERT THEIR CLAIMS**

16  **A.  Plaintiffs Need Not Be Threatened with Prosecution to Have Standing to
      Bring a Pre-Enforcement Challenge to the Statute**

17  "Constitutional challenges based on the First Amendment present unique

18  standing considerations." *Ariz. Right to Life Political Action Comm. v. Bayless*, 320 F.3d

19  1002, 1006 (9th Cir. 2003).  "A plaintiff who mounts a pre-enforcement challenge to a

20  statute that he claims violates his freedom of speech need not show that the authorities

21  have threatened to prosecute him; the threat is latent in the existence of the statute." *Cal.*

22  *Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1095 (9th Cir. 2003) (internal

23  _____

24  [6] Because *Younger* does not apply here, whether an exception applies is irrelevant.  *See*
   Doc. 31 at 4:12-13 (arguing no exception to *Younger* applies).  Nonetheless, should the
   Court conclude that *Younger* is applicable, it should also find an exception to *Younger*

25  because the challenged statute is "'flagrantly and patently violative of express
   constitutional prohibitions in every clause, sentence and paragraph, and in whatever

26  manner and against whomever an effort might be made to apply it.'" *See Younger*, 401
   U.S. at 53-54 (quoting *Watson v. Buck*, 313 U.S. 387, 402 (1941)).  Plaintiffs have

27  sufficiently alleged that the statute in question violates express constitutional
   prohibitions.  Indeed, Plaintiffs allege the statute is an unlawful restraint on protected

28  speech, in violation of the First Amendment.  *See* Compl. ¶¶ 37-48.

quotation marks omitted).   "In an effort to avoid the chilling effect of sweeping restrictions, the Supreme Court has endorsed what might be called a 'hold your tongue and challenge now' approach rather than requiring litigants to speak first and take their chances with the consequences."   *Id.*   In pre-enforcement cases, the plaintiff may meet constitutional standing requirements by "demonstrat[ing] a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979); *see LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1154 (9th Cir. 2000).   A plaintiff must only allege "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and . . . a credible threat of prosecution thereunder."   *Id.*; *see also Canatella v. California*, 304 F.3d 843, 852-53 (9th Cir. 2001) (holding that the plaintiff had standing to challenge state bar statutes and professional rules that he could be subject to in the future).

Here, "[t]he State has not suggested that the [statute] will not be enforced, and [there is] no reason to assume otherwise."   *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988); *Babbitt*, 442 U.S. at 302 (standing found where terms of challenged provision covered plaintiff's speech and, despite lack of prior enforcement, "the State has not disavowed any intention of invoking" the law); *Humanitarian Law Project v. U.S. Dep't of Treasury*, 463 F. Supp. 2d 1049, 1069-70 (C.D. Cal. 2006) ("[A]bsent a disavowal by the Government of any intention to enforce this provision in the future, the passage of five years does not alone operate to render the possibility of enforcement not credible, especially in light of the relaxed standing requirement that applies in this First Amendment context."), *reconsidered on other grounds*, 484 F. Supp. 2d 1099 (C.D. Cal. 2007).   Because § 13-4433(B)'s threat is largely one of self-censorship, its harm "can be realized even without an actual prosecution."   *Id.*

Plaintiffs' Complaint alleges the injury necessary to establish standing because Plaintiffs allege: (1) "a reasonable likelihood that the government will enforce the challenged law against them," (2) an "inten[t] to violate the challenged law," and (3) that

the challenged law is applicable to them by its terms. *Lopez v. Candaele*, 630 F.3d 775, 786 (9th Cir. 2010).

A government's past enforcement of a speech restriction is "strong evidence (although not dispositive) that pre-enforcement plaintiffs face a credible threat of adverse state action." *Id.* (citation omitted). Plaintiffs allege that criminal-defense attorneys and investigators "have been subjected to professional discipline and criminal charges for alleged violations of A.R.S. § 13-4433(B)." Compl. ¶ 9. This is borne out by public disciplinary records showing that the State of Arizona has initiated and disciplined defense attorneys for violations of the statute. *See In re Smith*, 2015 WL 3602108, at *2 (prosecutor argued that defense attorney violated A.R.S. § 13-4433(B) and defense attorney was subsequently disciplined); *In re Krumwiede*, 2014 WL 983745, at *16 (disciplining defense attorney for, *inter alia*, violating A.R.S. § 13-4433(B)); *In re Carrasco*, 2004 WL 5730522, at *5 (same).

"[P]laintiffs may carry their burden of establishing injury in fact when they provide adequate details about their intended speech." *Lopez*, 630 F.3d at 787. Examples from other cases satisfying this element include alleging an intent to engage in the production and distribution of political flyers prohibited by a challenged restriction on anonymous political speech, or an intent to spend a proscribed amount of money on political communications in violation of challenged campaign finance laws. *ACLU v. Heller*, 378 F.3d 979, 984 (9th Cir. 2004); *Getman*, 328 F.3d at 1093; *see also Lopez*, 630 F.3d at 787 (acknowledging *Heller* and *Getman* satisfy the requirement to "articulate a concrete plan to violate the law in question" (internal quotation marks omitted)). Plaintiffs have alleged throughout the Complaint a desire and intent to speak directly to crime victims in cases in which they are regularly involved. Compl. ¶¶ 10, 38–48. This includes, "making overtures to the family of the deceased" and "speaking to those crucial witnesses" related to the deceased victim in capital cases, and "interviewing victims whenever possible" and "approach[ing] crime victims to at least attempt to discuss the facts and circumstances of the alleged crime," in non-capital cases. *Id.* ¶¶ 40–42, 46.

9

By refraining from contacting victims directly, Plaintiffs have modified their conduct in response to the challenged statute, satisfying the injury-in-fact requirement. *See Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1034 (9th Cir. 2006) (finding injury-in-fact prong met where organization modified its behavior in response to challenged permit requirement).

Importantly, the law by its terms applies to Plaintiffs. The statute plainly proscribes communications by specific categories of persons, including criminal-defense attorneys and others working on defense teams, like Plaintiffs. *See, e.g.*, Compl. ¶¶ 47-48.

### B. Plaintiffs' Injuries Are Traceable to Defendant

There is a requisite causal connection between Defendant's responsibilities and Plaintiffs' injury "such that relief against [Defendant] would provide redress." *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 919 (9th Cir. 2004). A plaintiff seeking injunctive relief against the State need only "identify the law or policy challenged as a constitutional violation and name the party within the entity who can appropriately respond to injunctive relief." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1127 (9th Cir. 2013) (citations omitted).[7] Notwithstanding his argument to the contrary, Defendant's role is substantial and actionable, and he could appropriately respond to injunctive relief ordered by this Court.

As the chief legal officer of the state, Defendant may handle any criminal prosecution in Arizona. *See* A.R.S. § 41-193(A)(2) (Defendant shall, "[a]t the direction of the governor or when deemed necessary by the attorney general, prosecute and defend any proceeding in a state court other than the supreme court in which the state or an officer thereof is a party or has an interest"); *see also* Arizona Attorney General's Office,

---

[7] Under Arizona law, Defendant is properly named in a declaratory judgment action seeking to invalidate a state statute as unconstitutional. *Yes on Prop 200 v. Napolitano*, 160 P.3d 1216, 1227 (Ariz. App. 2007).

10

*Crime Victim's Guide*, P-000070 (2016), attached as Ex. 1.[8]  Indeed, Defendant's office "serves as the prosecutor for almost all felony direct appeals filed in criminal cases in Arizona," and handles capital habeas corpus litigation in this Court. *Id.* at P-000077, attached as Ex. 1.  Defendant also supervises and may assist all county attorneys in the state, giving him the authority to influence all criminal prosecutions in the state.  *See* A.R.S. § 41-193(A)(4) (Defendant shall "[e]xercise supervisory powers over county attorneys of the several counties in matters pertaining to that office and require reports relating to the public business thereof"); *id.* § 41-193(A)(5) (Defendant shall "[a]t the direction of the governor, or when deemed necessary, assist the county attorney of any county in the discharge of the county attorney's duties"); Compl. ¶ 25.

Defendant's Criminal Division also has a victims' rights program, through which he is responsible for "establish[ing] and administer[ing] an annual plan for assisting and monitoring state and local entities that are required to implement and comply with [Arizona's] victims' rights" laws.  A.R.S. § 41-191.06; Compl. ¶ 25.  Through the program, Defendant disburses monies from the victims' rights fund (established under A.R.S. § 41-191.08), provides training on victims' rights services, and audits state and local entities that receive state resources for victims' rights so as to "further uniformity, efficiency and compliance by state and local entities that are responsible for ensuring crime victims' access to justice." *Id.* § 41-191.06(A).

With Defendant's office prosecuting many criminal matters in Arizona, handling almost all felony appeals in the state, and holding the authority to prosecute all cases, Defendant's office has the authority to serve or does serve as the conduit between defense counsel and victims in all criminal prosecutions. *See id.* § 13-4433(B) ("The defendant, the defendant's attorney or an agent of the defendant shall only initiate contact with the victim *through the prosecutor's office*.  *The prosecutor's office* shall promptly inform the victim of the defendant's request for an interview and shall advise

---

[8] When ruling on a jurisdictional challenge under Federal Rule of Civil Procedure 12(b)(1), "a court may look beyond the complaint and consider extrinsic evidence." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1141 n.5 (9th Cir. 2003).

the victim of the victim's right to refuse the interview.") (emphasis added).  Thus, Defendant is the official implementing the prior restraint Plaintiffs challenge. Additionally, through his general supervisory authority over county attorneys, and his administration of the victims' rights program, the Defendant has the authority to direct, monitor, train, and audit other prosecutors' offices' compliance with an injunction against § 13-4433(B) to ensure "uniformity, efficiency, and compliance" with the injunction.  *Id.* § 41-191.06(A).

In addition, Defendant has the authority to investigate an alleged victims' rights violation, whether or not it occurred in a case Defendant's office was handling.  *See State Victims' Rights Administrator: Compliance*, Arizona Attorney General, https://www.azag.gov/victim-services/victims-rights-enforcement-officer (last visited July 27, 2017); *see also* Arizona Attorney General's Office, *Crime Victim's Guide*, P-000083 (2016), attached as Ex. 1; Arizona Attorney General's Office, *Office of Victim Services*, P-000128 (2016), attached as Ex. 2.  Defendant will take action to "help ensure justice is served through upholding victims' rights." *See* Ex. 2.  This has included asserting victims' rights in court proceedings, which Defendant may do when and how he chooses.  *See State v. Lee*, 245 P.3d 919, 921 (Ariz. App. 2011) (attorney general had standing to assert victims' rights where victim did not specifically request the filing of a special action); *State ex rel. Hance v. Ariz. Bd. of Pardons & Paroles*, 875 P.2d 824, 828 (Ariz. App. 1993) ("The petitioner is the State of Arizona, through the Coconino County Attorney, asserting the rights of the crime victim.").[9]

Moreover, that Defendant would not adjudicate a violation of the statute is beside the point.  *See* Doc. 31 at 10:22-24 (arguing judges or the State Bar adjudicate a violation).  There is no requirement that Defendant be responsible for every single step in the enforcement and adjudicatory process in order to be a proper defendant in the suit. *See Planned Parenthood Ariz., Inc. v. Brnovich*, 172 F. Supp. 3d 1075, 1096 (D. Ariz.

---

[9] *See also, e.g.*, Ex. 1 at P-000091 (identifying victim's right to refuse an interview by the defendant as the responsibility of Defendant and the victim).

2016) ("Although he may not carry out the first or final act of discipline, Brnovich is conferred with sufficient statutory authority to prosecute physicians such that he has some connection with the enforcement of the Act, and there is a sufficient nexus between his conduct and Plaintiffs' alleged constitutional injuries.").  Defendant is the first step in the infringement of Plaintiffs' First Amendment rights, directly and as supervisor over the other prosecutor's offices.

### C.  A Favorable Decision Would Redress Plaintiffs' Injuries

Plaintiffs need not, as Defendant claims, challenge Arizona Rule of Criminal Procedure 39(b)(11) to fully redress the constitutional wrong against them. Defendant's argument otherwise cites inapposite case law and disregards controlling Arizona precedent regarding procedural rules adopted by the Arizona Legislature to implement the Victims' Bill of Rights ("VBR").

### 1)  *Plaintiffs Need Only Challenge A.R.S. § 13-4433(B)*

Invalidation of § 13-4433(B) would nullify Rule 39(b)(11) under Arizona law. Where a rule and statute conflict concerning the rights created by the VBR, the statute controls.  *See State v. Hansen*, 160 P.3d 166, 166 ¶ 1 (Ariz. 2007) (statute granting victims broader rights to collect restitution governs over conflicting rule); *Champlin v. Sargeant*, 965 P.2d 763, 765, 767 ¶¶ 9, 24 (Ariz. 1998) (statute providing lesser protection to victims permits defendant to depose victim over rule that would have prohibited it).[10]  If the statute is rendered invalid, any contrary rule would also be invalid. Under the authority granted the legislature by the VBR, challenging the validity of Rule

---

[10] Arizona Constitution art. II, § 2.1(11) says that "a victim of crime has a right . . . [t]o have all rules governing criminal procedure and the admissibility of evidence in all criminal proceedings protect victims' rights and to have these rules be subject to amendment or repeal **by the legislature** to ensure the protection of these rights", and § 2.1(D) says, "**[t]he legislature**, or the people by initiative or referendum, have the authority to enact substantive and procedural laws to define, implement, preserve and protect the rights guaranteed to victims by this section") (emphasis added).  *See State ex rel. Napolitano v. Brown*, 982 P.2d 815, 818 ¶ 11 (Ariz. 1999) ("Thus, the scope of legislative rulemaking power under the VBR extends to those rules that define, implement, preserve, and protect the specific rights unique and peculiar to crime victims, as guaranteed and created by the VBR.").

39(b)(11) in addition to that of § 13-4433(B) is unnecessary and not required by law. Defendant cites no authority to the contrary.

*Nuclear Information & Resource Service v. Nuclear Regulatory Commission*, 457 F.3d 941 (9th Cir. 2006) ("*NIRC*"), the only case on which Defendant relies for this argument, is inapposite. That case did **not** involve a facial constitutional challenge to a rule or statute, as is the case here. **Nor** did *NIRC* require that plaintiffs challenge all substantively identical provisions where the same defendant before the court would be responsible for carrying out either provision, as Defendant is here. *See supra* § II.B at 10-13 (discussing Defendant's prosecution of matters where the state is a party and authority regarding victims' rights laws and violations thereof). *NIRC* simply held that even if Nuclear Regulatory Commission regulations were invalidated on procedural grounds because the agency did not follow the proper rulemaking process, Department of Transportation regulations over the same subject would remain unchallenged and applicable. Here, if Plaintiffs prevail, Defendant would be enjoined from enforcing the requirement that defense teams initiate contact with a victim through the prosecutor's office, and the statute requiring this would be declared unconstitutional. *See* Compl. at 15:15-19 (requesting this relief). Rule 39(b)(11) would not permit Defendant to act in violation of the Constitution, or revive the constitutionality of § 13-4433(B).

### 2) *Other State Actors Could Not Enforce the Invalidated Statute, and the State Bar and State Court Judges Are Not Necessary Parties*

Defendant cites no authority for his assertion that all Arizona judges or the Arizona State Bar "could take action" for violations of § 13-4433(B) and would thus be the parties against whom an injunction would afford relief for Plaintiffs' injuries. Doc. 31 at 8:6-8. True, the State Bar and judges could adjudicate professional and legal proceedings, respectively, regarding a defense attorney's violation of § 13-4433(B).[11]

---

[11] The State Bar's adjudication would not be for a violation of the statute, but rather for a violation of an Ethical Rule flowing from the statutory violation. *See Carrasco*, 2004 WL 5730522, at *5 ("By engaging in conduct that involves interference with the administration of justice, including the violation of A.R.S. § 13-4433(B), Respondent violated ER 8.4(d)."). Judges similarly would simply determine if the statute had been

1    Each is just a step in an adjudicative chain, after Defendant enforced the statute in the

2    first instance as conduit and sought enforcement.  That the consequences of the violation

3    will be adjudicated by someone other than the party enforcing the action does not render

4    the adjudicator a necessary or indispensable party, either for purposes of Rule 19 or

5    Article III.

6         Rather a defendant's actions need not be "the very last step in the chain of

7    causation" in order for an injury to be fairly traceable to him.  *See Bennett v. Spear*, 520

8    U.S. 154, 168–69 (1997).  While "it does not suffice if the injury complained of is the

9    result of the *independent* action of some third party not before the court, that does not

10   exclude injury produced by determinative or coercive effect upon the action of someone

11   else."  *Id.* at 169 (internal quotation marks, citations, and alterations omitted).  In this

12   respect, Plaintiff's injury is caused by Defendant's determinative effect from acting as

13   the conduit, in the first instance, and bringing an enforcement action if he is not used as

14   the conduit; Defendant's enforcement of the statute in the first place is determinative of

15   whether a judge or other adjudicatory official must find a violation of the statute and

16   punish the violator accordingly.  Defendant's determinative conduct renders the injury

17   fairly traceable to him and suit against him is sufficient.  Frankly, it is Defendant's

18   ongoing gatekeeper role and omnipresent threat of prosecution incident to a violation of

19   § 13-4433(B) that acts as the illegal and unconstitutional prior restraint and First

20   Amendment violation.[12]

21   _____

22   violated.  Defendant highlights this latter point by arguing that "Plaintiffs have not
     demonstrated a credible threat of prosecution by the judges."  *See* Doc. 31 at 12:19.

23   Judges, of course, do not prosecute the law.  In Arizona, that is Defendant's obligation,
     which is why he is the appropriate party here.

24   [12] Although judges need not be joined here, if the Court held otherwise, they could be
     joined.  While "judges who are sued in their personal capacities for decisions made in

25   their judicial capacities are entitled to absolute judicial immunity," they are not immune
     from suit when sued in their official capacities for injunctive relief based on their

26   enforcement authority of court provisions.  *Nat'l Ass'n for Advancement of
     Multijurisdiction Practice v. Berch*, 973 F. Supp. 2d 1082, 1097 (D. Ariz. 2013); *Sup.*

27   *Ct. of Va. v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 736 (1980) (Virginia Supreme
     Court Justices proper defendants to suit for injunctive relief under § 1983 based on their

28   enforcement authority); *see also* 42 U.S.C § 1983 (only barring suit against a judicial
     officer "for an act or omission taken in such officer's judicial capacity").  In *Berch*, for

                                                15

### D. <u>Arizona Attorneys for Criminal Justice ("AACJ") Has Standing</u>

Defendant challenges AACJ's standing for the same reasons that they challenge the individual Plaintiffs' standing, and for the same reasons discussed above, that challenge fails. Defendant also argues that AACJ "failed to identify a single member who would have standing in his own right."  Doc. 31 at 13:9-10.  But AACJ does not need to name individual members here.

An organization does not need to identify members by name "[w]here it is relatively clear, rather than merely speculative, that one or more members have been or will be adversely affected by a defendant's action, and where the defendant need not know the identity of a particular member to understand and respond to an organization's claims of injury."  *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015); *Ass'n of Am. Physicians & Surgeons*, 901 F. Supp. 2d 19, 31 (D.D.C. 2012) ("At the pleading stage, the Court presumes the general allegations encompass specific facts necessary to support the claim, so the plaintiff need not identify an affected member by name." (citation omitted)).  AACJ alleged that its members include attorneys and allied professionals who work on behalf of clients in all types of criminal cases and have a desire and intent to speak directly to crime victims in cases in which they are regularly involved. Compl. ¶¶ 10, 16–17, 38–48. The statute is directed at these AACJ members. In any event, Plaintiff Richard Lougee is a member of AACJ, and has standing in his

example, the court allowed suit against the Arizona Supreme Court Justices in their official capacities.  973 F. Supp. 2d at 1097.

Even if the judges cannot be joined, equities demand the Court proceed with the existing parties.  Fed. R. Civ. P. 19(b).  No argument could be made that the judges would be prejudiced if the action proceeded without them.  The judges have no *per se* interest in the statute.  In addition, as discussed above, judgment by this Court in the judges' absence would be adequate, and if Defendant is correct both that the judges must be joined and that they cannot be joined, Plaintiffs would have no adequate remedy.  *See supra* § I.C (discussing Plaintiffs' lack of alternative forum).  Moreover, in *Berch*, as well as other suits where the Justices of the Arizona Supreme Court have been sued in their official capacities, Defendant defended the suit, and could adequately represent the judges' interests here.  *See* 973 F. Supp. 2d. at 1087; *Mothershed v. Justices of Sup. Ct.*, 410 F.3d 602, 604 (9th Cir. 2005); *Washington v. Daley*, 173 F.3d 1158, 1167 (9th Cir.1999) ("As a practical matter, an absent party's ability to protect its interest will not be impaired by its absence from the suit where its interest will be adequately represented by existing parties to the suit."); A.R.S. § 41-193 (Defendant must represent the state in any action in federal court).

16

own right.  *See* Decl. of Richard L. Lougee attached as Ex. 3.  AACJ also identifies additional members who are not Plaintiffs, but have standing in their own right for the same reasons as Mr. Lougee.  *See* Decl. of Rhonda Elaine Neff, attached as Ex. 4; Decl. of Steven P. Sherick, attached as Ex. 5; Decl. of Kindra Fleming, attached as Ex. 6; Decl. of Adam N. Bleier, attached as Ex. 7.

**III.    PLAINTIFFS HAVE STATED A CLAIM**

The question on Defendant's Rule 12(b)(6) motion is whether Plaintiffs have alleged sufficient facts to state a claim.  They have.  Defendant's 12(b)(6) arguments are really merits arguments, ones that will nevertheless fail.  *See* Doc. 31 at 13-17.  As such, Defendant fully set out these arguments in his Response to Plaintiffs' Motion for Preliminary Injunction.  *See* Doc. 31 at 13:23-26 (Motion to Dismiss just summarized the main points of these arguments).  Plaintiffs have fully responded to these arguments in their Reply in Support of Their Motion for Preliminary Injunction ("Reply"), filed contemporaneously with this Opposition, and incorporate that Reply here in full.  LRCiv 7.1(d).  Defendant's efforts to convince the Court to adjudicate the merits of Plaintiffs' claims under Rule 12 are improper and should be denied.  Plaintiffs have certainly stated a claim under the First Amendment of the United States Constitution.

**IV.    CONCLUSION**

The Court should deny Defendant's Motion to Dismiss in its entirety and permit this case to proceed.

17

DATED this 31st day of July, 2017.

ACLU FOUNDATION OF ARIZONA

By *Kathleen E. Brody*
     Kathleen E. Brody
     Brenda Muñoz Furnish

KILMER, LANE & NEWMAN, LLP

David A. Lane
Andrew McNulty

LEWIS ROCA ROTHGERBER CHRISTIE LLP

Dan W. Goldfine
Ian M. Fischer
Roy Herrera

*Attorneys for Plaintiffs*

1

**CERTIFICATE OF SERVICE**

2

      I hereby certify that on July 31, 2017 I electronically transmitted the attached

3

document to the Clerk's office using the CM/ECF System for filing. Notice of this

4

filing will be sent by email to all parties by operation of the Court's electronic filing

5

system or by mail as indicated on the Notice of Electronic Filing.

6

Dated this 31st day of July, 2017.

7

8

                                */s/Kathleen E. Brody*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28