# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

ARIZONA ATTORNEYS FOR CRIMINAL JUSTICE; *et al.*,

        Plaintiffs,

v.

MARK BRNOVICH, in his official capacity as Attorney General of the State of Arizona,

        Defendant.

Case No.:  2:17-cv-01422-SPL

## CORRECTED DECLARATION OF BRUNN W. ROYSDEN III[1]

I, Brunn W. Roysden III, declare as follows:

1.      I am an attorney admitted to practice before the United States District Court for the District of Arizona.  I am an attorney with the Arizona Office of the Attorney General, and represent Defendant Mark Brnovich in his official capacity as Attorney General.

2.      Attached hereto as Exhibit A is a copy of the relevant portions of the transcript from the deposition of Amy Michelle Kalman, who was the Rule 30(b)(6) designee for Plaintiff Arizona Attorneys for Criminal Justice, and which was conducted on January 10, 2018.

3.      Attached hereto as Exhibit B is a copy of the relevant portions of the transcript from the deposition of Plaintiff Richard Lougee, which was conducted on January 8, 2018.

4.      Attached hereto as Exhibit C is a copy of the relevant portions of the transcript from the deposition of Plaintiff Christopher Baird Dupont, which was conducted on January 10, 2018.  Also within Exhibit C is Exhibit 21 to the deposition of Mr. DuPont.

---

[1] This Corrected Declaration solely fixes a few missing, duplicate, and out-of-order pages in the attached exhibits (including missing cover and signature pages).  It also adds a Table of Contents on page 3 for the reader's convenience.  Undersigned counsel apologizes to the Court and opposing counsel for any confusion and inconvenience caused by the original Declaration.

5.      Attached hereto as Exhibit D is a copy of the relevant portions of the transcript from the deposition of Paul William Ahler, which was conducted on January 29, 2018.

6.      Attached hereto as Exhibit E is a copy of the relevant portions of the transcript from the deposition of Plaintiff John Adams Canby, which was conducted on December 5, 2017.

7.      Attached hereto as Exhibit F is a copy of the relevant portions of the transcript from the deposition of Plaintiff Richard David Randall, which was conducted on December 5, 2017.

8.      Attached hereto as Exhibit G a copy of the relevant portions of the transcript from the deposition of Plaintiff Jeffrey Kirchler, which was conducted on December 11, 2017.

9.      Attached hereto as Exhibit H a copy of the relevant portions of the transcript from the deposition of Plaintiff Richard Robertson, which was conducted on December 11, 2017.

I declare under penalty of perjury that the foregoing is true and correct, to the best of my knowledge, and that this declaration was issued on March 4, 2018, in Phoenix, Arizona.

<u>s/ Brunn W. Roysden III</u>

Brunn W. Roysden III

# TABLE OF CONTENTS FOR EXHIBITS

| Witness | Exhibit | PDF Starting Page Number |
|---|---|---|
| Ahler | Exhibit D | 116 |
| Canby | Exhibit E | 125 |
| Dupont | Exhibit C | 49 |
| Kalman/AACJ | Exhibit A | 4 |
| Kirchler | Exhibit G | 172 |
| Lougee | Exhibit B | 25 |
| Randall | Exhibit F | 153 |
| Robertson | Exhibit H | 188 |

# EXHIBIT A

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

|  |  |  |
|---|---|---|
| ARIZONA ATTORNEYS FOR CRIMINAL JUSTICE; et al., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 2:17-cv-01422-SPL |
| MARK BRNOVICH, in his official capacity as Attorney General of the State of Arizona, | ) ) ) ) | |
| Defendant. | ) ) ) | |

30(b)(6) DEPOSITION OF ARIZONA ATTORNEYS FOR CRIMINAL
JUSTICE BY AMY MICHELLE KALMAN, ESQ.

Phoenix, Arizona

January 10, 2018

Prepared by:

Meri Coash, RMR, CRR
Certified Reporter
Certification No. 50327

1                           I N D E X

2    WITNESS                                              PAGE

3     AMY MICHELLE KALMAN, ESQ.

4          Examination by Mr. Skinner                      4

5

6

7                        EXHIBITS MARKED

8    EXHIBITS                 DESCRIPTION                 PAGE

9     Exhibit 15    Defendant's Amended Notice of          6
                    Deposition Pursuant to Fed. R. Civ.
10                  P. 30(b)(6)

11    Exhibit 16    Order                                  67

12

13

14                  PREVIOUSLY MARKED EXHIBITS

15                  Randall Exhibit   2   Page  6
                    Randall Exhibit   4   Page 14
16                  Canby    Exhibit 5.1   Page 15
                    Randall Exhibit   6   Page 17

17

18

19

20

21

22

23

24

25

 1     30(b)(6) DEPOSITION OF ARIZONA ATTORNEYS FOR CRIMINAL

 2             JUSTICE BY AMY MICHELLE KALMAN, ESQ.,

 3   was taken on January 10, 2018, commencing at 9:06 a.m., at

 4   the law offices of Lewis Roca Rothgerber Christie, LLP,

 5   201 East Washington Street, Suite 1200, Phoenix, Arizona,

 6   before Meri Coash, a Certified Reporter in the State of

 7   Arizona.

 8

 9                       *    *    *

10   APPEARANCES:

11        For the Plaintiffs:
             LEWIS ROCA ROTHGERBER CHRISTIE, LLP
12           By:  Daniel A. Arellano, Esq.
                  Ian M. Fischer, Esq.
13                201 East Washington Street
                  Suite 1200
14                Phoenix, Arizona  85004
                  602-262-5311
15                DArellano@lrrc.com
                  IFischer@llrc.com
16

17        For the Defendant:
             OFFICE OF THE ARIZONA ATTORNEY GENERAL
18           By:  Oramel H. Skinner, Esq.
                  Brunn W. Roysden, III, Esq.
19                2005 North Central Avenue
                  Phoenix, Arizona  85007
20                602-542-8327
                  O.H.Skinner@azag.gov
21                Beau.Roysden@azag.gov

22        Also present:  Lauren Johnson

23

24

25

 1                  AMY MICHELLE KALMAN, ESQ.,

 2   the witness herein, having been first duly sworn by the

 3   Certified Reporter, was examined and testified as follows:

 4

09:06:50  5                        EXAMINATION

 6   BY MR. SKINNER:

 7        Q.    Good morning.

 8        A.    Good morning.

 9        Q.    Could you please state and spell your full name

09:07:00 10   for the record.

11        A.    Amy Michelle Kalman, A-m-y M-i-c-h-e-l-l-e

12   K-a-l-m-a-n.

13        Q.    You're a member of the state bar of Arizona,

14   correct?

09:07:10 15        A.    Yes.

16        Q.    And you're a practicing attorney, correct?

17        A.    Yes.

18        Q.    How long have you been a practicing attorney?

19        A.    Since January of 2007.

09:07:18 20        Q.    And you practice in the area of criminal law,

21   correct?

22        A.    Yes.

23        Q.    Have you ever appeared before as a witness in any

24   court proceedings?

09:07:24 25        A.    I was called as a witness in a petition for

1    testifying today on behalf of AACJ concerning Topic 8?

2        A.    Approximately two hours.

3        Q.    Did you, Amy Kalman, review any documents to

4    refresh your recollection in preparing for testifying

09:36:51  5    today on behalf of AACJ concerning Topic 8?

6        A.    No.

7        Q.    Whom did you, Amy Kalman, talk to about Topic 8

8    in preparing for today's deposition other than your

9    counsel?

09:37:02 10        A.    No one.

11        Q.    Have you ever been involved in any challenge to

12    any provisions of the Victims' Bill of Rights in any other

13    litigation?

14              MR. ARELLANO:  Objection.  Foundation.

09:37:12 15              THE WITNESS:  Our mem- -- Excuse me.  I'm

16    aware anecdotally that our members, on an individual basis

17    and as merits counsel for their own clients, have

18    challenged the provisions in a variety of contexts, but I

19    do not have specifics, and we do not keep records.

09:37:32 20    BY MR. SKINNER:

21        Q.    Have your members ever been involved in any

22    challenge to any provisions of the Victims' Bill of Rights

23    in Arizona state court proceedings?

24              MR. ARELLANO:  Objection.  Foundation.

09:37:42 25              THE WITNESS:  I believe the answer would be

1  yes.  Again, anecdotally.  But because our members are so

2  numerous and because we have been an organization for so

3  long, we would not keep records of such instances.

4  BY MR. SKINNER:

09:37:54  5      Q.   Setting aside records, you believe that your

6  members have been involved in challenges to provisions of

7  the Victims' Bill of Rights in state court proceedings in

8  Arizona?

9      A.   Yes.

09:38:05  10      Q.   Do you have any current plans to challenge any

11  provisions of the Victims' Bill of Rights in the future?

12           MR. ARELLANO:  Objection.  Foundation.

13           THE WITNESS:  I don't know.

14  BY MR. SKINNER:

09:38:20  15      Q.   Have you ever been involved in any challenge to

16  any provisions of the Victims' Rights Implementation Act

17  in any other litigation?

18           MR. ARELLANO:  Objection.  Foundation.

19           THE WITNESS:  I believe so.

09:38:29  20  BY MR. SKINNER:

21      Q.   Have you been involved in any challenge to any

22  provisions of the Victims' Rights Implementation Act in

23  state court proceedings in Arizona?

24           MR. ARELLANO:  Objection.  Foundation.

09:38:40  25           THE WITNESS:  I believe so.

1  criminal prosecution for such conduct) that have resulted

2  from A.R.S. 13-4433(B) and/or Arizona Rule of Criminal

3  Procedure 39(b)(11)."

4      Q.   What did you, Amy Kalman, do to prepare for

09:59:22 5  testifying today on behalf of the AACJ concerning Topic 3?

6      A.   I discussed the -- Topic 3 with my counsel.

7      Q.   Anything else?

8      A.   No.

9      Q.   Did you, Amy Kalman, review any documents to

09:59:32 10  refresh your recollection in preparing for testifying

11  today on behalf of the AACJ concerning Topic 3?

12     A.   No.

13     Q.   Other than your counsel, did you, Amy Kalman,

14  talk to anyone about Topic 3 in preparing for today's

09:59:45 15  deposition?

16     A.   No.

17     Q.   Your members currently represent defendants in

18  Arizona state court criminal cases with crime victims,

19  correct?

09:59:55 20          MR. ARELLANO:  Objection to form and

21  foundation.

22          THE WITNESS:  Yes.  But not exclusively.

23  BY MR. SKINNER:

24     Q.   In what courts do your members currently have

10:00:05 25  such criminal cases with crime victims?

1          MR. ARELLANO:  Objection to form and

2   foundation.

3          THE WITNESS:  My understanding is that our

4   members include federal practice, which I understand we're

10:00:15   5   not talking about.  We also have members who practice in

6   justice and municipal courts in addition to the superior

7   courts that you spoke of.

8   BY MR. SKINNER:

9     Q.    In about how many such criminal cases are your

10:00:28   10   members involved?

11          MR. ARELLANO:  Objection.  Foundation.

12          THE WITNESS:  I don't know.

13   BY MR. SKINNER:

14     Q.    Would it be hundreds?

10:00:35   15          MR. ARELLANO:  Objection.  Foundation.

16          THE WITNESS:  I would imagine that hundreds

17   is reasonable, but I do not know.  We do not keep records

18   of our individual members and their practices.

19   BY MR. SKINNER:

10:00:44   20     Q.    Would you be surprised if it was over a thousand?

21     A.    I would not.

22     Q.    Would you estimate that your members have some

23   criminal cases with crime victims in -- pending in state

24   court in Arizona where your members represent defendants

10:01:05   25   and the case has been pending with your members as counsel

 1    good stopping point, we're probably due for a break soon.

 2                   MR. SKINNER:   I think we've got two more

 3    questions.   Does that work?

 4                   THE WITNESS:   That's fine.

10:04:41  5    BY MR. SKINNER:

 6         Q.   I'm handing you now what we have previously

 7    discussed as Exhibit 2 to the deposition of Mr. Randall.

 8                   Could you please turn to paragraph 53.

 9                   Could you please read paragraph 53.

10:05:21 10         A.   "Because other defense lawyers and members of

11    defense teams have been threatened with professional and

12    criminal sanctions based on violations of

13    A.R.S. 13-4433(B), it carries with it a chilling effect

14    which precludes Plaintiffs and other persons of ordinary

10:05:40 15    firmness from engaging in the First Amendment protected

16    speech activity of contacting and communicating with

17    victims and their families."

18         Q.   What facts are you aware of that support the

19    first part of paragraph 53 of the complaint, in particular

10:05:54 20    the words "Because other defense lawyers and members of

21    defense teams have been threatened with professional and

22    criminal sanction based on violations of

23    A.R.S. 13-4433(B)"?

24                   MR. ARELLANO:   Objection.   Foundation.

10:06:06 25                   THE WITNESS:   Members have made complaints

1    about receiving such threats.

2    BY MR. SKINNER:

3         Q.    In what cases?

4         A.    I did not ask them for their case names or

10:06:15  5    specifics.

6         Q.    So as you sit here today, you cannot offer any

7    facts to support this statement?

8         A.    I cannot offer any details such as case names --

9                   MR. ARELLANO:  Objection to form and

10   foundation.

11                  THE court REPORTER:  So --

12                  THE WITNESS:  I cannot offer any details

13   such as case names or case numbers.

14   BY MR. SKINNER:

10:06:36 15       Q.    Can you provide the names of the members that

16   complained to you about this?

17                  MR. ARELLANO:  Objection to form and

18   foundation.

19                  THE WITNESS:  Not at this point.

10:06:43 20  BY MR. SKINNER:

21        Q.    Can you provide any information at all other than

22   the fact that you believe these cases exist?

23                  MR. ARELLANO:  Objection to form and

24   foundation.

10:06:50 25                  THE WITNESS:  No.

1    BY MR. SKINNER:

2        Q.   Are you aware of any attorney who has faced a bar

3    complaint for a violation of Ethical Rules 4.3, 4.4, or

4    8.4 simply based on directly initiating contact with a

10:30:11  5    crime victim?

6                MR. ARELLANO:  Objection to form and

7    foundation.

8                THE WITNESS:  I'm not so aware.

9    BY MR. SKINNER:

10:30:19 10        Q.   Turning back to Exhibit 15 --

11                MR. ROYSDEN:  Before we move on, could I

12    have that last question read back?

13                (The record was read by the court reporter

14             as follows:

15                QUESTION:  Are you aware of any attorney who

16             has faced a bar complaint for a violation of

17             Ethical Rules 4.3, 4.4, or 8.4 simply based on

18             directly initiating contact with a crime

19             victim?)

20                MR. ROYSDEN:  Thank you.

21    BY MR. SKINNER:

22        Q.   Could you please read Topic 12 that is listed

23    on -- on Exhibit 15.

24        A.   "AACJ's position on whether (and if so when)

10:31:00 25    A.R.S. 13-4433(B) and/or Arizona Rule of Criminal

1    interrogatories.

2        Q.   Any other documents?

3        A.   No.

4        Q.   Other than your counsel, did you, Amy Kalman,

10:47:15  5  talk to anyone else about Topic 14 in preparing for

6    today's deposition?

7        A.   No.

8        Q.   Does your participation in this case relate in

9    any way to advancing the rights or interests of criminal

10:47:32 10  defendants that your members represent in Arizona state

11   court proceedings?

12             MR. ARELLANO:  Objection to form and

13   foundation.

14             THE WITNESS:  I suppose I don't understand

10:47:40 15  the question.

16   BY MR. SKINNER:

17       Q.   You are a plaintiff in this case, correct?

18       A.   Yes.

19       Q.   Does your participation as a plaintiff in this

10:47:56 20  case relate in any way to advancing the rights or

21   interests of criminal defendants in Arizona state court

22   criminal proceedings?

23             MR. ARELLANO:  Objection to form and

24   foundation.

10:48:06 25             THE WITNESS:  Indirectly.

 1  BY MR. SKINNER:

 2      Q.   How so?

 3      A.   Our members wish to exercise their First

 4  Amendment rights.  In some instances, they may wish to

10:48:17  5  exercise their First Amendment rights for the benefit of

 6  their clients; therefore, there may be some indirect

 7  impact.  But the reason we are participating is because of

 8  our client -- our members' First Amendment rights.

 9      Q.   You're seeking injunctive relief in this case,

10:48:52 10  correct?

11                MR. ARELLANO:  Objection.  Form and

12  foundation.

13                THE WITNESS:  I believe so.

14  BY MR. SKINNER:

10:48:56 15      Q.   You are not seeking monetary damages in this

16  case, correct?

17                MR. ARELLANO:  Objection.  Form and

18  foundation.

19                THE WITNESS:  That is my understanding.

10:49:02 20  BY MR. SKINNER:

21      Q.   This case does not involve a claim alleging an

22  access to counsel violation, correct?

23                MR. ARELLANO:  Objection.  Form and

24  foundation.

10:49:11 25                THE WITNESS:  That is a legal question for

1    Pennsylvania v. Ritchie?

2              MR. ARELLANO:  Objection to form.

3              THE WITNESS:  Correct.  I do not believe I'm

4    in the position to answer that question.

10:50:16  5    BY MR. SKINNER:

6        Q.   You aren't challenging the validity of Ethical

7    Rule 4.2 in this case, correct?

8              MR. ARELLANO:  Objection.  Form and

9    foundation.

10:50:24 10              THE WITNESS:  That's a legal question.  I'm

11   not answering.

12   BY MR. SKINNER:

13       Q.   You have not sued the state bar of Arizona in

14   this case, correct?

10:50:43 15              MR. ARELLANO:  Objection.  Foundation.

16              THE WITNESS:  I believe that's correct.

17   BY MR. SKINNER:

18       Q.   You have not asked that any of the Arizona Rules

19   of Professional Conduct be enjoined in this case, correct?

10:50:54 20              MR. ARELLANO:  Objection.  Form and

21   foundation.

22              THE WITNESS:  Based on my review of the

23   pleadings, I believe that's correct.

24   BY MR. SKINNER:

10:51:05 25       Q.   In a case where a crime victim is represented by

1      A.    I discussed these questions with counsel.

2      Q.    Anything else?

3      A.    No.

4      Q.    Did you, Amy Kalman, review any documents to

11:10:54  5  refresh your recollection in preparing for testifying

6  today on behalf of AACJ concerning Topics 4 through 6?

7      A.    No.

8      Q.    Other than with your counsel, did you, Amy

9  Kalman, talk about Topic 4 with anyone else in preparing

11:11:08 10  for today's deposition?

11      A.    No.

12            MR. ARELLANO:  Counsel, do you want to take

13  a break before you go to another line of questioning?

14            MR. ROYSDEN:  Sure.  Why don't we go off the

11:11:31 15  record for a minute.

16            MR. SKINNER:  Sure.

17            (A recess ensued.)

18  BY MR. SKINNER:

19      Q.    What is Rhonda Elaine Neff's plan to contact

11:22:42 20  victims directly in cases where Rhonda Elaine Neff

21  represents the accused and were it not --  Stop.

22            What is Rhonda Elaine Neff's plan to contact

23  crime victims directly in cases where Rhonda Elaine Neff

24  represents the accused were it not for the restrictions of

11:23:16 25  A.R.S. 13-4433(B)?

|  |  |
|---|---|
| 1 | MR. ARELLANO:  Objection.  Form and |
| 2 | foundation. |
| 3 | THE WITNESS:  I don't know. |
| 4 | BY MR. SKINNER: |
| 11:23:21 5 | Q.   What is Steven P. Sherick's plan to contact the |
| 6 | crime victims directly in cases where Steven P. Sherick |
| 7 | represents the accused were it not for the restrictions of |
| 8 | A.R.S. 13-4433(B)? |
| 9 | MR. ARELLANO:  Objection.  Form and |
| 11:23:35 10 | foundation. |
| 11 | THE WITNESS:  I don't know. |
| 12 | BY MR. SKINNER: |
| 13 | Q.   What is Kindra Fleming's plan to contact crime |
| 14 | victims directly in cases where Kindra Fleming represents |
| 11:23:45 15 | the accused were it not for the restrictions of |
| 16 | A.R.S. 13-4433? |
| 17 | MR. ARELLANO:  Objection to form and |
| 18 | foundation. |
| 19 | THE WITNESS:  I don't know. |
| 11:23:52 20 | BY MR. SKINNER: |
| 21 | Q.   What is Adam Bleier's plan to contact crime |
| 22 | victims directly in cases where Adam Bleier represents the |
| 23 | accused were it not for the restrictions of |
| 24 | A.R.S. 13-4433(B)? |
| 11:24:05 25 | MR. ARELLANO:  Objection.  Form and |

          1   foundation.

          2                 THE WITNESS:  I don't know.

          3   BY MR. SKINNER:

          4        Q.   Does Rhonda Elaine Neff's plan to contact crime

11:24:18  5   victims directly in cases where Rhonda Elaine Neff

          6   represents the accused include asking the judge presiding

          7   in each particular case to authorize such contact?

          8                 MR. ARELLANO:  Objection to form and

          9   foundation.

11:24:30 10                 THE WITNESS:  I know of no such plan, and I

         11   don't know if so.

         12   BY MR. SKINNER:

         13        Q.   Does Steven P. Sherick's plan to contact crime

         14   victims directly in cases where Steven P. Sherick

11:24:46 15   represents the accused were it not for the restrictions of

         16   A.R.S. 13-4433(B) include asking the judge presiding in

         17   each particular case to authorize such contact?

         18                 MR. ARELLANO:  Objection to form and

         19   foundation.

11:24:58 20                 THE WITNESS:  I know of no such plan, and I

         21   don't know.

         22   BY MR. SKINNER:

         23        Q.   Does Kindra Fleming's plan to contact crime

         24   victims directly in cases where Kindra Fleming represents

11:25:11 25   the accused were it not for the restrictions of

1    A.R.S. 13-1433(B) include asking the judge presiding in

2    each particular case to authorize such contact?

3                    MR. ARELLANO:  Objection.  Form and

4    foundation.

11:25:22   5                    THE WITNESS:  I know of no such plan, and I

6    don't know.

7    BY MR. SKINNER:

8        Q.    Does Adam N. Bleier's plan to contact crime

9    victims directly in cases where Adam Bleier represents the

11:25:30  10   accused were it not for the restrictions of

11   A.R.S. 13-4433(B) including asking the judge presiding in

12   each particular case to authorize such contact?

13                    MR. ARELLANO:  Objection.  Form and

14   foundation.

11:25:40  15                    THE WITNESS:  I know of no such plan, and I

16   don't know.

17   BY MR. SKINNER:

18       Q.    The only judicial sanction at present for

19   directly initiating contact with a crime victim in

11:25:57  20   violation of A.R.S. 13-4433(B) without more would be an

21   admonition from the presiding state court judge to cease

22   such behavior, correct?

23                    MR. ARELLANO:  Objection to form and

24   foundation.

11:26:10  25                    THE WITNESS:  I don't know.

1              MR. FISCHER:  If you're done and that's what

2  you're trying to determine.

3              MR. SKINNER:  Could we do a quick pause

4  regardless?

11:45:18  5              (A recess ensued.)

6              MR. ROYSDEN:  I think that concludes our

7  questioning.

8              Do you have any redirect?

9              MR. ARELLANO:  No.

11:46:56 10              But the witness would like to read and sign.

11              MR. ROYSDEN:  Okay.  Then we will -- we will

12  adjourn subject to defendant seeking any necessary and

13  appropriate action regarding the "I don't know" answers

14  that have been provided today which may include defendant

11:47:04 15  treating that as a binding admission in this case.

16              That's it.

17              (The deposition was concluded at 11:47 a.m.)

18

19                  _____

20                AMY MICHELLE KALMAN, ESQ.

21

22

23

24

25

1  STATE OF ARIZONA    )

2  COUNTY OF MARICOPA  )

3             BE IT KNOWN the foregoing deposition was

4  taken by me pursuant to stipulation of counsel; that I was

5  then and there a Certified Reporter of the State of

6  Arizona, and by virtue thereof authorized to administer an

7  oath; that the witness before testifying was duly sworn by

8  me to testify to the whole truth; notice was provided that

9  the transcript was available for signature by the

10  deponent; that the questions propounded by counsel and the

11  answers of the witness thereto were taken down by me in

12  shorthand and thereafter transcribed into typewriting

13  under my direction; that the foregoing pages are a full,

14  true, and accurate transcript of all proceedings and

15  testimony had and adduced upon the taking of said

16  deposition, all to the best of my skill and ability.

17        I FURTHER CERTIFY that I am in no way related to

18  nor employed by any parties hereto nor am I in any way

19  interested in the outcome hereof.

20        DATED at Phoenix, Arizona, this 18th day of

21  January, 2018.

22

23                  _____
                    Meri Coash, RMR, CRR

24                    Certified Reporter #50327

25

# EXHIBIT B

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| ARIZONA ATTORNEYS FOR CRIMINAL JUSTICE; et al., ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | Case No. 2:17-cv-01422-SPL |
| MARK BRNOVICH, in his official capacity as Attorney General of the State of Arizona, ) ) ) ) | |
| Defendant. ) ) | |

DEPOSITION OF RICHARD LOUGEE, ESQ.

Phoenix, Arizona

January 8, 2018

Prepared by:

Meri Coash, RMR, CRR
Certified Reporter
Certification No. 50327

```
 1                    I N D E X

 2   WITNESS                                          PAGE

 3     RICHARD LOUGEE, ESQ.

 4         Examination by Mr. Baek                      4

 5

 6

 7                  EXHIBITS MARKED

 8   EXHIBITS              DESCRIPTION               PAGE

 9     Exhibit 13    Defendant's Amended Notice of     8
                     Deposition
10
       Exhibit 14    LinkedIn profile                  8
11

12

13
                 PREVIOUSLY MARKED EXHIBITS
14
                     Exhibit   2    Page 20
15                   Exhibit   3    Page 22
                     Exhibit   4    Page 26
16                   Exhibit 5.1    Page 27
                     Exhibit   6    Page 35
17                   Exhibit   7    Page 92

18

19

20

21

22

23

24

25
```

1              DEPOSITION OF RICHARD LOUGEE, ESQ.,

2    was taken on January 8, 2018, commencing at 9:03 a.m., at

3    the law offices of Lewis Roca Rothgerber Christie, LLP,

4    201 East Washington Street, Suite 1200, Phoenix, Arizona,

5    before Meri Coash, a Certified Reporter in the State of

6    Arizona.

7

8

9                         *    *    *

10   APPEARANCES:

11         For the Plaintiffs:
              LEWIS ROCA ROTHGERBER CHRISTIE, LLP
12            By:  Daniel A. Arellano, Esq.
                   201 East Washington Street
13                 Suite 1200
                   Phoenix, Arizona  85004
14                 602-262-5311
                   darellano@lrrc.com
15
           For the Defendant:
16            OFFICE OF THE ARIZONA ATTORNEY GENERAL
              By:  Richard L. Baek, Esq.
17                 Brunn W. Roysden, III, Esq.
                   2005 North Central Avenue
18                 Phoenix, Arizona  85007
                   602-542-8327
19                 richard.baek@azag.gov
                   beau.roysden@azag.gov
20

21

22

23

24

25

 1                    RICHARD LOUGEE, ESQ.,

 2    the witness herein, having been first duly sworn by the

 3    Certified Reporter, was examined and testified as follows:

 4

09:03:03  5                        EXAMINATION

 6    BY MR. BAEK:

 7        Q.    All right.  Good morning, Mr. Lougee.  Could you

 8    please start off by stating and spelling your full name

 9    for the record.

09:03:11 10        A.    Richard Lougee, L-o-u-g-e-e.

11        Q.    And you're a member of the State Bar of Arizona,

12    correct?

13        A.    I am.

14        Q.    And you are currently a practicing attorney?

09:03:24 15        A.    I am.

16        Q.    Have you ever appeared before as a witness in any

17    court proceeding?

18        A.    Yes.

19        Q.    When was that?

09:03:31 20        A.    I have appeared as a witness in Rule 32

21    proceedings -- those are postconviction proceedings in

22    criminal cases -- on many occasions.  And so it would be

23    difficult for me to remember when.

24                I've also appeared as an expert witness in

09:03:54 25    cases, normally in postconviction proceedings, many of

         1        A.    Yes.

         2        Q.    Are you challenging the constitutionality of

         3   Rule 39(b)(11) of the Arizona Rules of Criminal Procedure

         4   in this case?

09:47:51 5               MR. ARELLANO:  Objection.  Foundation.

         6               THE WITNESS:  To the extent it precludes me

         7   from making contact with victims, I am, yes.

         8   BY MR. BAEK:

         9        Q.    Are you challenging Rule 39(b)(11) in any way in

09:48:05 10  this case?

        11               MR. ARELLANO:  Objection.  Foundation.

        12               THE WITNESS:  Same -- same answer.

        13   BY MR. BAEK:

        14        Q.    Do you plan to continue complying with

09:48:12 15  Rule 39(b)(11) in your criminal cases unless and until the

        16   Arizona Supreme Court amends the rule or a court presiding

        17   in a particular case rules that compliance is not

        18   required?

        19        A.    Yes.

09:48:25 20              MR. ARELLANO:  Objection.  Form and

        21   foundation.

        22   BY MR. BAEK:

        23        Q.    Have you ever been involved in any challenge to

        24   Rule 39(b)(11) in any other litigation?

09:48:33 25              MR. ARELLANO:  Objection.  Foundation.

1    believe has lasted 10 years that you have represented?

2         A.    Actually, there may be another one, a Mexican

3    Capital Legal Assistance Program case in Yavapai County,

4    that was filed in 2008 also.

09:55:32  5         Q.    Any other cases that you recall 10 years or

6    older?

7         A.    Not -- not that old, no.

8         Q.    In terms of cases that you have had for five

9    years, approximately how many cases?

09:55:40  10        A.    Maybe three.

11        Q.    No more than five cases.  Is that a fair

12   statement?

13        A.    I don't believe more than five.

14        Q.    Have you ever made a request to initiate contact

09:56:17  15   with a victim pursuant to Arizona 13-4433(B) in a case in

16   which you represent a criminal defendant?

17        A.    Yes.

18        Q.    Has a victim ever affirm- -- affirmatively

19   reached out to contact you?

09:56:30  20        A.    Yes.

21        Q.    How many times has that occurred?

22        A.    I would have to guess.  I've had three in the

23   last year.  But it's fairly --  It's happened before.  I

24   can't tell you how many.

09:56:56  25        Q.    More than 10?

1     A.    Maybe all but two.

2     Q.    What is the -- what's the nature of the -- of

3   your remaining cases?

4     A.    I think I have a -- I should know this.  I think

10:19:27  5   I have an aggravated assault, and I believe I have a --

6   Actually, I think all of my cases are sex cases.  I can't

7   think of any other cases -- pending cases right now.  As

8   long as you're including commercial sexual exploitation,

9   which is child pornography; adult sexual assault; and

10:19:55 10   Chapter 14 offenses involving children, I think all of my

11   cases fall in that category.

12     Q.    Okay.  Do all of those cases involve a victim as

13   defined by statute?

14     A.    Well, the child pornography cases involve victims

10:20:10 15   but not victims that are accessible to the parties.

16     Q.    Fair enough.

17           Are you currently involved in any cases

18   where A.R.S. 13-4433(B) applies to you and you want to

19   initiate contact with the victim for reasons unrelated to

10:20:28 20   advancing the interests of your client?

21           MR. ARELLANO:  Objection.  Foundation.

22           THE WITNESS:  I don't understand that

23   question.

24   BY MR. BAEK:

10:20:42 25     Q.    So are you involved in any cases that involve a

1  victim, as defined by statute, where you wish to initiate
2  the victim --
3      A.    Initial contact with the victim?
4      Q.    Correct.
10:20:53 5              -- but your purpose in initiating contact
6  with that victim is unrelated to advancing the interests
7  of your client?
8      A.    No.
9              MR. ARELLANO:  Objection.  Foundation.
10:21:03 10              THE WITNESS:  I'm sorry.  No.
11  BY MR. BAEK:
12      Q.    Have you ever knowingly initiated contact with a
13  crime victim for a case in which you are not representing
14  the defendant?
10:21:15 15              MR. ARELLANO:  Objection.  Foundation and
16  form.
17              THE WITNESS:  Not that I can --  No.  No.
18  BY MR. BAEK:
19      Q.    Are you currently involved in or do you have a
10:21:27 20  concrete plan to be involved in any other representations
21  where A.R.S. 13-4433(B) applies to you that involve
22  circumstances materially different from those that we have
23  discussed?
24              MR. ARELLANO:  Objection.  Form and
10:21:40 25  foundation.

1          THE WITNESS:  I'm afraid I don't understand
2    the question.
3          MR. BAEK:  We'll strike that question.
4    BY MR. BAEK:
10:22:03 5    Q.   You are seeking injunctive relief in this case,
6    correct?
7    A.   Yes.
8          MR. ARELLANO:  Objection.  Foundation.
9          THE WITNESS:  I believe that's correct.
10:22:09 10    BY MR. BAEK:
11    Q.   Including future injunctive relief?
12          MR. ARELLANO:  Objection.  Foundation.
13          THE WITNESS:  I am uncertain as to the legal
14    repercussions of the complaint.
10:22:21 15    BY MR. BAEK:
16    Q.   Are you seeking, through this lawsuit, to enjoin
17    victims from notifying the Arizona state court directly if
18    they believe there's a violation of the A.R. --
19    A.R.S. 13-4433(B)?
10:22:34 20          MR. ARELLANO:  Objection.  Foundation.
21          THE WITNESS:  I don't believe so.
22    BY MR. BAEK:
23    Q.   Are you seeking, through this lawsuit, to enjoin
24    victims from notifying the state bar directly if they
10:22:48 25    believe that there's a violation of A.R.S. 13-4433(B)?

 1            MR. ARELLANO:  Objection.  Foundation.

 2            THE WITNESS:  I don't believe I'm seeking,

 3   in this lawsuit, to enjoin the victims to do anything.

 4   BY MR. BAEK:

10:23:07  5     Q.   Are you seeking, through this lawsuit, to enjoin

 6   victims from notifying the Arizona state court directly if

 7   they believe there's a violation of Arizona Rule of

 8   Criminal Procedure 39(b)(11)?

 9            MR. ARELLANO:  Objection.  Foundation.

10:23:18 10            THE WITNESS:  Same as my last answer:  No,

11   not that I know of.  No.

12   BY MR. BAEK:

13     Q.   And would that be the same in terms of their

14   ability to notify the state bar based upon Rule 39(b)(11)?

10:23:30 15            MR. ARELLANO:  Objection.  Foundation.

16            THE WITNESS:  Same answer.

17   BY MR. BAEK:

18     Q.   Is there anything currently preventing victims'

19   family members from notifying the Arizona state court

10:23:43 20   directly if they believe there's a violation of

21   A.R.S. 13-4433(B)?

22            MR. ARELLANO:  Objection.  Foundation.

23            THE WITNESS:  Not that I'm aware of.

24   BY MR. BAEK:

10:23:55 25     Q.   Are you seeking, through this lawsuit, to enjoin

1  victims' family members from doing that?

2            MR. ARELLANO:  Objection.  Foundation and

3  form.

4            THE WITNESS:  I'm not seeking, again, to

10:24:03 5  enjoin families or victims, no.

6  BY MR. BAEK:

7    Q.  Is there anything currently preventing victims'

8  private attorneys from notifying the Arizona state court

9  directly if they believe there's a violation of

10:24:29 10  A.R.S. 13-4433(B)?

11            MR. ARELLANO:  Objection.  Foundation and

12  form.

13            THE WITNESS:  Not that I know of.

14  BY MR. BAEK:

10:24:38 15    Q.  Are you seeking, through this lawsuit, to enjoin

16  victims' private attorneys from doing that?

17            MR. ARELLANO:  Objection.  Form and

18  foundation.

19            THE WITNESS:  I don't believe so, no.

10:24:47 20  BY MR. BAEK:

21    Q.  Through this lawsuit, are you seeking a ruling

22  from the district court that would preclude victims'

23  private attorneys from doing that?

24            MR. ARELLANO:  Objection.  Form and

10:25:01 25  foundation.

1                      THE WITNESS:  No.

2    BY MR. BAEK:

3        Q.   I would ask you the same question regarding

4    victims' private attorneys and their ability to notify the

10:25:16 5    Arizona state court directly if they believe there's a

6    violation of the Arizona Rule of Criminal Procedure

7    39(b)(11).  Is there anything preventing them from

8    notifying the court about violations of 39(b)(11)?

9                      MR. ARELLANO:  Objection.  Form and

10:25:32 10    foundation.

11                      THE WITNESS:  Not that I know of.

12    BY MR. BAEK:

13        Q.   Are you seeking to enjoin victims' private

14    attorneys from doing that through this lawsuit?

10:25:39 15                      MR. ARELLANO:  Objection.  Form and

16    foundation.

17                      THE WITNESS:  I don't believe so, no.

18    BY MR. BAEK:

19        Q.   And are you seeking, through this lawsuit, a

10:25:46 20    ruling from the district court that would preclude

21    victims' private attorneys from doing that?

22                      MR. ARELLANO:  Objection.  Form and

23    foundation.

24                      THE WITNESS:  I don't believe so, no.

25

1  BY MR. BAEK:

2      Q.   Is there anything preventing state court --

3  Arizona state court judges from ordering the defense to

4  cease and desist if they conclude there's a violation of

10:26:05  5  A.R.S. 13-4433(B) in any of their cases?

6              MR. ARELLANO:  Objection.  Form and

7  foundation.

8              THE WITNESS:  I don't know.

9  BY MR. BAEK:

10:26:16  10      Q.   Are you seeking, through this lawsuit, to enjoin

11  Arizona state court judges from taking any such actions in

12  regards to violations of A.R.S. 13-4433(B)?

13              MR. ARELLANO:  Objection.  Form and

14  foundation.

10:26:29  15              THE WITNESS:  I don't believe so.

16              (Mr. Roysden is no longer present.)

17  BY MR. BAEK:

18      Q.   Are you seeking, through this lawsuit, a ruling

19  from the district court that would preclude Arizona state

10:26:40  20  court judges from doing that?

21              MR. ARELLANO:  Objection.  Form and

22  foundation.

23              THE WITNESS:  I don't -- I don't know the

24  answer to that.

25

1  BY MR. BAEK:

2     Q.   Is there anything currently preventing Arizona

3  state court judges from ordering the defense to cease and

4  desist if they conclude there's a violation of Arizona

10:27:03  5  Rule of Criminal Procedure 39(b)(11) in any of your cases?

6              MR. ARELLANO:  Objection.  Form and

7  foundation.

8              THE WITNESS:  I don't know.

9  BY MR. BAEK:

10:27:11  10     Q.   Are you seeking, through this lawsuit, to enjoin

11  the Arizona state court judges from doing that?

12              MR. ARELLANO:  Objection.  Form and

13  foundation.

14              THE WITNESS:  I don't know.

10:27:20  15  BY MR. BAEK:

16     Q.   Is there anything currently preventing the State

17  Bar of Arizona from instituting disciplinary action

18  against you if it concludes that there has been a

19  violation of the Rules of Professional Conduct arising

10:27:37  20  from a violation of A.R.S. 13-4433(B)?

21              MR. ARELLANO:  Objection.  Foundation.

22              THE WITNESS:  Would you read that again?

23  BY MR. BAEK:

24     Q.   Is there anything currently preventing the State

10:27:47  25  Bar of Arizona from instituting disciplinary action

1    against you if it concludes that there's been a violation

2    of the Rules of Professional Conduct arising from a

3    violation of A.R.S. 13-4433(B)?

4        A.   I don't think so.

10:28:00  5        Q.   Are you seeking, through this lawsuit, to enjoin

6    the State Bar of Arizona from doing so?

7                 MR. ARELLANO:  Objection.  Foundation and

8    form.

9                 THE WITNESS:  Not -- not that I'm aware of.

10:28:15 10   BY MR. BAEK:

11       Q.   Are you seeking, through this lawsuit, to enjoin

12   the enforcement of any of the Arizona Rules of

13   Professional Conduct?

14                MR. ARELLANO:  Objection.  Foundation.

10:28:24 15                THE WITNESS:  I -- I don't know.

16   BY MR. BAEK:

17       Q.   Are you seeking, through this lawsuit, a ruling

18   from the district court that would preclude the State Bar

19   of Arizona from instituting discipline based upon a

10:28:42 20   violation of A.R.S. 13-4433(B)?

21                MR. ARELLANO:  Objection.  Foundation.

22                THE WITNESS:  I don't know the answer to

23   that.

24   BY MR. BAEK:

10:29:00 25       Q.   Is there anything currently preventing the State

 1    judge for any perceived violation of the Rules of

 2    Professional Conduct?

 3        A.    No.

 4        Q.    Or for the Rules of Criminal Procedure?

10:40:06  5        A.    No.

 6        Q.    Have you ever had a prosecutor threaten you with

 7    prosecution in any way related in any way to

 8    A.R.S. 13-4433(B)?

 9        A.    No.

10:40:19 10        Q.    Are you aware of prosecutor -- of a prosecutor

11    threatening anyone with a prosecution in any way related

12    to A.R.S. 13-4433(B)?

13                MR. ARELLANO:  Objection.  Foundation.

14                THE WITNESS:  I don't have personal

10:40:32 15    knowledge of it.  I've heard of it.

16    BY MR. BAEK:

17        Q.    Who did you hear this from?

18        A.    I can't remember the lawyer.  I remember there

19    was a murder case where an attorney was complaining

10:40:57 20    that --  Strike that.

21                I can't -- I can't recall.  I can't recall

22    the specifics of it.

23        Q.    Apart from that one case, any other instances

24    that you may be aware of where a prosecutor threatened

10:41:18 25    anyone with prosecution in relation to A.R.S. 13-4433(B)?

```
 1                    MR. ARELLANO:  Objection.  Foundation.
 2                    THE WITNESS:  I don't believe so, no.
 3    BY MR. BAEK:
 4        Q.   Does this case involve a claim that
      A.R.S. 13-4433(B) infringes the Sixth Amendment
 5
      confrontation rights of defendants under Pennsylvania v.
 6
 7    Ritchie?
 8                    MR. ARELLANO:  Objection.  Foundation.
 9                    THE WITNESS:  I don't know.  That's a legal
10    analysis.  I don't -- I don't know.
11    BY MR. BAEK:
12        Q.   When you conduct an interview in a criminal case,
13    you are doing so on behalf of your client and not speaking
14    on your own behalf, correct?
15                    MR. ARELLANO:  Objection.  Foundation.
16                    THE WITNESS:  The purpose of the contact
17    with the victim would primarily be to assist my client.
18    It could have collateral benefit for me.
19    BY MR. BAEK:
20        Q.   And when you propose discovery requests in a
21    criminal or a civil case, you are doing so on behalf of
22    your client and are not speaking in your own behalf.  Is
23    that correct?
24                    MR. ARELLANO:  Objection.  Foundation and
25    form.
```

The time stamps in the left margin: 10:53:31 (line 5), 10:53:45 (line 10), 10:53:57 (line 15), 10:54:24 (line 20), 10:54:34 (line 25).

1    based upon directly contacting a crime victim?

2                    MR. ARELLANO:  Objection.  Form and

3    foundation.

4                    THE WITNESS:  Not aware of any.

11:10:49 5    BY MR. BAEK:

6        Q.   You have not sued the State Bar of Arizona in

7    this case, correct?

8                    MR. ARELLANO:  Objection.  Foundation.

9                    THE WITNESS:  Correct.

11:10:54 10   BY MR. BAEK:

11       Q.   You have not asked that any of the Arizona Rules

12   of Professional Conduct be enjoined in this case, correct?

13                   MR. ARELLANO:  Objection.  Foundation.

14                   THE WITNESS:  Not that I'm aware of.

11:11:06 15   BY MR. BAEK:

16       Q.   If you were to merely directly initiate contact

17   with a crime victim and nothing more, what ethical rules

18   do you believe you are at risk of being in violation of?

19                   MR. ARELLANO:  Objection.  Foundation.

11:11:18 20                   THE WITNESS:  I'm trying to think.  I

21   believe I would be in violation of an ethical rule, but I

22   can't think of the rule right now.

23                   MR. ARELLANO:  Counsel, whenever you're at a

24   good stopping point, whenever we're done with this line of

11:12:07 25   questions, we're probably about due for our next break.

BY MR. BAEK:

Q.   The State Bar of Arizona and the Arizona Supreme
Court both played a role in promulgating the Arizona Rule
of Criminal Procedure 39(b)(11).  Is that a fair
statement?

MR. ARELLANO:  Objection.  Foundation.

THE WITNESS:  I have no personal knowledge
of that.  I would assume that's how that works.

BY MR. BAEK:

Q.   Arizona Rule of Criminal Procedure 39(b)(11) was
promulgated and exists separate and apart from
A.R.S. 13-4433(B).  Is that a fair statement?

MR. ARELLANO:  Objection.  Foundation.

THE WITNESS:  I believe that's true, yes.

BY MR. BAEK:

Q.   Do you have a plan in any of your current cases
to directly initiate contact with a victim in the event
enforcement of A.R.S. 13-4433(B) is enjoined by the court?

MR. ARELLANO:  Objection.  Foundation.

THE WITNESS:  I don't have a specific plan
now.  I would -- would formulate them if and when that
occurred.

BY MR. BAEK:

Q.   Should A.R.S. 13-4433(B) be enjoined, would you
come up with that plan in all your cases?

1          MR. ARELLANO:  Objection.  Foundation.

2          THE WITNESS:  I would consider that in all

3  my cases.  Whether I would, in fact, follow through and do

4  that in all my cases, it would depend on the facts of the

11:24:21  5  case.

6  BY MR. BAEK:

7      Q.   Your purpose in making contact with a victim in

8  cases where the victim is a witness is to assess the

9  victim's credibility and strength as a witness to aid in

11:24:44  10  your representation of your client.  Is that a fair

11  statement?

12          MR. ARELLANO:  Objection.  Form and

13  foundation.

14          THE WITNESS:  Yes.  Yeah, among other

11:24:53  15  things.

16  BY MR. BAEK:

17      Q.   In this litigation, you are seeking to enjoin the

18  attorney general from enforcing A.R.S. 13-4433(B).  Is

19  that correct?

11:25:03  20          MR. ARELLANO:  Objection.  Foundation.

21          THE WITNESS:  I will defer to my lawyers on

22  that.  That is a legal matter.  I don't know.

23  BY MR. BAEK:

24      Q.   In the event that enforcement of

11:25:21  25  A.R.S. 13-4433(B) was fully enjoined and you followed

1  through on a plan to begin directly initiating contact

2  with crime victims in cases where you represented a

3  criminal defendant, would you threaten any of those

4  victims?

11:25:35   5              MR. ARELLANO:  Objection.  Foundation and

6  form.

7              THE WITNESS:  Never.

8  BY MR. BAEK:

9      Q.   In that same instance where A.R.S. 13-4433(B) was

11:25:44  10  fully enjoined and you followed through with your plan to

11  directly initiate contact with crime victims in cases

12  where you represented a criminal defendant, do you plan on

13  informing the victim that they have a right to refuse to

14  talk to you?

11:25:58  15              MR. ARELLANO:  Objection.  Foundation and

16  form.

17              THE WITNESS:  I would talk to the victim in

18  a conversational way, and as a matter of courtesy, that

19  probably would come up.  I would want to make sure that

11:26:13  20  they knew that they didn't have to talk to me and that

21  they knew who I was.

22  BY MR. BAEK:

23      Q.   Would you bring that up at the outset of that

24  conversation?

11:26:25  25              MR. ARELLANO:  Objection.  Foundation.

1                    THE WITNESS:  I think so.

2                    MR. BAEK:  Okay.  Counsel, I think that's

3    all the questions I have.

4                    Mr. Lougee, thank you for your time.

11:53:10  5          I believe we can now adjourn this deposition

6    subject to the extant privilege issues that have arisen

7    during the course of these depositions.

8                    MR. ARELLANO:  Read and sign?

9                    THE WITNESS:  The witness would like to read

11:53:25 10   and sign.

11                   (The deposition was concluded at 11:53 a.m.)

12

13                                    _____

14                                        RICHARD LOUGEE, ESQ.

15

16

17

18

19

20

21

22

23

24

25

1    STATE OF ARIZONA     )

2    COUNTY OF MARICOPA   )

3              BE IT KNOWN the foregoing deposition was

4    taken by me pursuant to stipulation of counsel; that I was

5    then and there a Certified Reporter of the State of

6    Arizona, and by virtue thereof authorized to administer an

7    oath; that the witness before testifying was duly sworn by

8    me to testify to the whole truth; notice was provided that

9    the transcript was available for signature by the

10   deponent; that the questions propounded by counsel and the

11   answers of the witness thereto were taken down by me in

12   shorthand and thereafter transcribed into typewriting

13   under my direction; that the foregoing pages are a full,

14   true, and accurate transcript of all proceedings and

15   testimony had and adduced upon the taking of said

16   deposition, all to the best of my skill and ability.

17        I FURTHER CERTIFY that I am in no way related to

18   nor employed by any parties hereto nor am I in any way

19   interested in the outcome hereof.

20        DATED at Phoenix, Arizona, this 13th day of

21   January, 2018.

22

23   _____
     Meri Coash, RMR, CRR

24   Certified Reporter #50327

25

# EXHIBIT C

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

|  |  |  |
|---|---|---|
| | ) | |
| ARIZONA ATTORNEYS FOR CRIMINAL | ) | |
| JUSTICE; et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | 2:17-cv-01422-SPL |
| MARK BRNOVICH, in his official | ) | |
| capacity as Attorney General of | ) | |
| the State of Arizona, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

DEPOSITION OF CHRISTOPHER BAIRD DUPONT, ESQ.

Phoenix, Arizona

January 10, 2018

Prepared by:

Meri Coash, RMR, CRR
Certified Reporter
Certification No. 50327

```
 1                    I N D E X

 2   WITNESS                                      PAGE

 3    CHRISTOPHER BAIRD DUPONT, ESQ.

 4        Examination by Mr. Baek                  5

 5

 6

 7                  EXHIBITS MARKED

 8   EXHIBITS              DESCRIPTION            PAGE

 9    Exhibit 17     Defendant's Amended Notice of   9
                     Deposition
10
      Exhibit 18     LinkedIn profile              13
11
      Exhibit 19     Trautman Dupont, PLC, web page  14
12                   printout

13    Exhibit 20     Plaintiffs' Responses to State's  98
                     First Set of Interrogatories and
14                   Requests for Production

15    Exhibit 21     Motion to Declare A.R.S. §§    105
                     13-4431 and 4433(b)-(e) and
16                   Arizona Rule of Criminal
                     Procedure 39(b)(11)
17                   Unconstitutional P-000440 -
                     P-000487
18

19

20                PREVIOUSLY MARKED EXHIBITS
21
                     Exhibit 2     Page 21
22                   Exhibit 3     Page 23
                     Exhibit 4     Page 28
23                   Exhibit 5     Page 29
                     Exhibit 6     Page 34
24                   Exhibit 7     Page 95

25
```

```
 1                INSTRUCTIONS NOT TO ANSWER

 2                    Page  26   Line 23
                     Page  32   Line 11
 3                   Page  33   Line  9
                     Page  33   Line  9
 4                   Page  59   Line 12
                     Page 110   Line 21
 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          DEPOSITION OF CHRISTOPHER BAIRD DUPONT, ESQ.,

2   was taken on January 10, 2018, commencing at 1:32 p.m., at

3   the law offices of Lewis Roca Rothgerber Christie, LLP,

4   201 East Washington Street, Suite 1200, Phoenix, Arizona,

5   before Meri Coash, a Certified Reporter in the State of

6   Arizona.

7

8                      *    *    *

9   APPEARANCES:

10        For the Plaintiffs:
              LEWIS ROCA ROTHGERBER CHRISTIE, LLP
11        By:   Heather Stanton, Esq.
                  Daniel A. Arellano, Esq.
12                Ian M. Fischer, Esq.
                  201 East Washington Street
13                Suite 1200
                  Phoenix, Arizona  85004
14                602-262-5311
                  HStanton@lrrc.com
15                DArellano@lrrc.com
                  IFischer@llrc.com
16

17        For the Defendant:
              OFFICE OF THE ARIZONA ATTORNEY GENERAL
18        By:   Richard L. Baek, Esq.
                  Brunn W. Roysden, III, Esq.
19                Oramel H. Skinner, Esq.
                  2005 North Central Avenue
20                Phoenix, Arizona  85007
                  602-542-8327
21                Richard.Baek@azag.gov
                  Beau.Roysden@azag.gov
22                O.H.Skinner@azag.gov

23

24

25

1          (Mr. Fischer and Mr. Skinner are not

2   present.)

3

4          CHRISTOPHER BAIRD DUPONT, ESQ.,

5   the witness herein, having been first duly sworn by the

6   Certified Reporter, was examined and testified as follows:

7

8                    EXAMINATION

9   BY MR. BAEK:

13:32:32 10     Q.   Afternoon, Mr. Dupont.

11     A.   Good afternoon.

12     Q.   Could you please -- before we start, please state

13   and spell your full name for the record.

14     A.   Christopher, C-h-r-i-s-t-o-p-h-e-r; Baird,

13:32:46 15   B-a-i-r-d; Dupont, D-u-p-o-n-t.

16     Q.   And you are a member of the State Bar of Arizona,

17   correct?

18     A.   I am.

19     Q.   And you are a practicing attorney, correct?

13:32:54 20     A.   Yes.

21     Q.   Have you ever appeared before as a witness

22   in any -- as a witness in any court proceeding?

23     A.   Yes.

24     Q.   When?

13:33:02 25     A.   Well, maybe starting in --  I was a witness once

 1      A.   I'm not --

 2                MS. STANTON:  Objection.  Foundation.

 3                THE WITNESS:  I'm not sure.

 4   BY MR. BAEK:

14:15:53  5      Q.   Are you challenging Rule 39(b)(11) in any way in

 6   this case, constitutional or not?

 7      A.   I don't know.

 8                MS. STANTON:  Objection.  Foundation.

 9                THE WITNESS:  Excuse me.  I don't know.

14:16:01 10   BY MR. BAEK:

11      Q.   Do you plan to continue complying with

12   Rule 39(b)(11) in your criminal cases unless and until the

13   Arizona Supreme Court amends the rule or a court presiding

14   in a particular case rules that compliance is not

14:16:17 15   required?

16                MS. STANTON:  Objection.  Form and

17   foundation.

18                THE WITNESS:  Generally, yes.

19   BY MR. BAEK:

14:16:30 20      Q.   Given those two conditions, in -- in what

21   instances would you not comply with Rule 39(b)(11)?

22      A.   I don't know.

23      Q.   Have you ever been involved in any challenge to

24   Rule 39(b)(11) in any other litigation?

14:16:47 25      A.   I'm not sure the basis for the other ones --

1          MS. STANTON:  Objection.  Form and

2   foundation.

3          THE WITNESS:  I don't know.

4   BY MR. BAEK:

15:52:14 5     Q.   Could you please turn to page 14 of Exhibit 20.

6     A.   Yes.

7     Q.   Do you see where the interrogatory responses

8   discuss the DeMocker case?

9     A.   Yes.

15:52:31 10    Q.   You previously testified that you have knowledge

11  of the DeMocker case, correct?

12    A.   I have some knowledge about the DeMocker case,

13  yes.

14    Q.   And in DeMocker, the criminal defendant was your

15:52:45 15 client, correct?

16    A.   Incorrect.

17    Q.   I apologize.  In DeMocker, your client was the

18  victim, correct?

19    A.   There were two victims who were my clients in

15:52:58 20 that case.

21    Q.   And in DeMocker, it's the criminal defendant who

22  filed a First Amendment challenge to A.R.S. 13-4433(B),

23  among other statutes, correct?

24    A.   Correct.

15:53:12 25    Q.   Other than what's set forth on page 14, do you

 1    have any other information regarding your involvement in

 2    the DeMocker case relevant to this current litigation?

 3                    MS. STANTON:  Objection.  Form and

 4    foundation.

15:53:25  5                    THE WITNESS:  I don't know.

 6    BY MR. BAEK:

 7        Q.    Other than what's set forth on page 14, do you

 8    have any other information regarding your involvement in

 9    the DeMocker case that would in particular relate to

15:53:37 10   victims' rights?

11                    MS. STANTON:  Objection.  Form and

12    foundation.

13                    THE WITNESS:  Yes, I do have other

14    information related to victims' rights.  I represented

15:53:48 15   them as victims.

16    BY MR. BAEK:

17        Q.    In relation -- so what is --  Strike that.

18                    So other than what's set forth on page 14 in

19    the DeMocker case, what -- what other information do you

15:53:59 20   have regarding victims' rights?

21        A.    I know I had to -- I had to -- I filed a couple

22    of motions related to victims' rights in this case:  to

23    return property, for example, to the victims; a motion to

24    enforce victims' rights; to compel the prosecutor to honor

15:54:19 25   victims' rights.  I don't remember what else, but I

1    remember I filed several pleadings on behalf of the

2    victims in that case.

3        Q.    And are the three types of pleadings that you

4    currently mentioned all that you can remember in terms of

15:54:39 5    the pleadings that you filed on behalf of the victims?

6        A.    That's what I remember now, sitting here.

7        Q.    Other than what's set forth on page 14, do you

8    have any other information regarding your involvement in

9    the DeMocker case that would in particular relate to the

15:54:52 10   First Amendment?

11                MS. STANTON:  Objection.  Form and

12   foundation.

13                THE WITNESS:  Yeah, I don't -- I don't know.

14                (Deposition Exhibit 21 was marked for

15:54:57 15          identification.)

16   BY MR. BAEK:

17       Q.    All right.  I'm handing you what's been marked as

18   Exhibit 21.

19                THE WITNESS:  Do you want this back?

15:55:10 20               MR. BAEK:  No, that's fine.  Thank you.

21                THE WITNESS:  Do you want me to keep it?

22                MR. BAEK:  Just keep it with the binder.

23   Thank you.

24                THE WITNESS:  Certainly.

15:55:17 25               (Mr. Skinner left the room.)

1  BY MR. BAEK:

2      Q.   What are these documents?

3      A.   Well, they look like pleadings in the case of

4  State v. Steven Carroll DeMocker.

15:55:29 5      Q.   And just to make sure your copy is correct, does

6  the Bates range include the numbers P-000440 to P-000487?

7      A.   Looks like it, yeah.

8      Q.   Do you know who produced these documents?

9      A.   I don't.  I assume it was my attorneys.

15:55:54 10      Q.   And you agree that these are pleadings that were

11  filed in the DeMocker case?

12      A.   Well, I think so.  Yeah.  They -- they all look

13  like it, but I'm just seeing these --  Yeah, it looks like

14  it.

15:56:11 15      Q.   Could you please turn to P-000454?

16      A.   Yeah.

17      Q.   Does this page reflect where the criminal

18  defendant in the DeMocker case challenged

19  A.R.S. 13-4433(B) on the First Amendment grounds?

15:56:31 20      A.   I don't know.

21           MS. STANTON:  Objection.  Foundation.

22  BY MR. BAEK:

23      Q.   Could you please read for the record IV?

24      A.   Yeah.  All right.  Why -- why are you asking me

15:56:48 25  this?

1      Q.   I'm sorry.  Could you -- could you please read it
2   into the record?
3                MR. ARELLANO:  Counsel, you're asking him to
4   read the header or the entire section?
15:56:56  5                MR. BAEK:  Oh, I'm sorry.  Just the header
6   of IV.
7                THE WITNESS:  "Section 44" --  This is IV --
8   IV.  "Section 443(b) [sic] through (e) and Arizona Rule of
9   Criminal Procedure 39(b)(11) Violate the First Amendment
15:57:13 10   of the United States' Constitution and Article II of the
11   Arizona Constitution."
12   BY MR. BAEK:
13      Q.   Having read that, is it now your understanding in
14   the DeMocker case that the criminal defendant challenged
15:57:27 15   A.R.S. 1433(B) [sic] on the First Amendment grounds?
16                MS. STANTON:  Objection.  Foundation.
17                THE WITNESS:  I've -- I've read this and it
18   says what it says.  I have no opinion about it.
19   BY MR. BAEK:
15:57:37 20      Q.   Is there any legal bar to a criminal defendant
21   who is seeking permission to directly initiate contact
22   with a crime victim in connection with a criminal case
23   advancing a First Amendment overbreadth challenge to
24   A.R.S. 13-4433(B) in connection with that request to a
15:57:52 25   Superior court?

 1                  MS. STANTON:  Objection.  Form and
 2  foundation.
 3                  THE WITNESS:  Was this the --  Of a
 4  defendant making a First Amendment challenge or an
15:58:03  5  attorney making a First Amendment challenge?
 6  BY MR. BAEK:
 7      Q.   A criminal defendant.
 8      A.   I don't know.
 9      Q.   Is there any bar to an attorney making that same
15:58:13 10  challenge?
11                  MS. STANTON:  Objection.  Form and
12  foundation.
13                  THE WITNESS:  In a criminal case?
14  BY MR. BAEK:
15:58:17 15      Q.   Yes.
16      A.   I don't -- I don't know if an attorney has a
17  standing to assert their own rights in a criminal case.
18      Q.   Other than Maugaotega, Carreon, and DeMocker, are
19  there any other cases of which you are aware or for which
15:58:33 20  you've entered an appearance as an attorney wherein the
21  criminal defendant challenged the constitutionality of the
22  Victims' Bill of Rights?
23                  MS. STANTON:  Objection.  Attorney-client
24  and work-product privilege.
15:58:43 25                  You can answer consistent with ER 1.6.

1            THE WITNESS:  Well, I noticed there was a

2    case in here -- and I'm looking at Exhibit 20 -- State v.

3    Gonzalez-Dominguez.  I can see it on page 14.  I think

4    I -- I think I entered a limited appearance in that case

15:59:06  5    on behalf of the defendant, but that representation had

6    nothing to do with this motion.  I don't remember this

7    motion being filed in that case.

8    BY MR. BAEK:

9        Q.   So to your recollection, your involvement in

15:59:16  10    State v. Gonzalez-Dominguez -- did that have anything to

11    do with victims' rights in terms of your involvement?

12        A.   I don't remember.  I don't know.

13        Q.   Did it have anything to do with Rule 39(b)(11)?

14        A.   I don't -- I don't remember that motion being

15:59:34  15    filed in here or my representation to do with that.  I

16    also represented the Government of Mexico in that case, so

17    I don't remember what the victims' issues were.

18        Q.   So now including to that list Maugaotega,

19    Carreon, DeMocker, and Gonzalez-Dominguez, are there any

15:59:54  20    other cases which you are aware or for which you entered

21    an appearance as an attorney wherein the criminal

22    defendant challenged the constitutionality of the Victims'

23    Rights Implementation Act or 13-4433(B)?

24        A.   I can't remember.

16:00:08  25            MS. STANTON:  Objection.  Attorney-client

1    and work-product privilege.

2                    You can answer consistent with ER 1.6.

3                    THE WITNESS:  I can't -- I can't remember.

4    I don't know.

16:00:15  5  BY MR. BAEK:

6       Q.   Apart from those four cases, are there any other

7    cases where -- for which you entered an appearance as an

8    attorney where the criminal defendant challenged the

9    constitutionality of Rule 39(b)(11)?

16:00:28 10                    MS. STANTON:  Objection.  Attorney-client

11   and work-product privilege.

12                    THE WITNESS:  I don't remember.  I don't

13   know.

14   BY MR. BAEK:

16:00:34 15      Q.   Do you have a plan in any of your current cases

16   to directly initiate contact with a victim in the event

17   that enforcement of A.R.S. 13-4433(B) is enjoined by the

18   court?

19      A.   Yes.

16:00:49 20      Q.   Which cases?

21                    MS. STANTON:  Objection.  Attorney-client

22   and work-product privilege.

23                    THE WITNESS:  I'm not going to answer that

24   one.  Sorry.

25

1  BY MR. BAEK:

2      Q.   You're refusing to answer the question?

3      A.   I am.

4      Q.   And you're refusing to answer the question based

16:01:06  5  upon advice of counsel and privilege?

6      A.   The legal basis made by my counsel, yes.

7      Q.   Your purpose in making contact with the victim in

8  cases where the victim is a witness is to assess the

9  victim's credibility and strength as a witness to aid your

16:01:32 10  representation of your client, correct?

11              MS. STANTON:  Objection.  Form.

12              THE WITNESS:  There -- there could be a lot

13  of potential reasons to contact a victim.

14  BY MR. BAEK:

16:01:43 15      Q.   Is this a reason?

16      A.   It might be, yeah.

17      Q.   In this litigation, you're seeking to enjoin the

18  attorney general from enforcing A.R.S. 13-4433(B),

19  correct?

16:01:59 20              MS. STANTON:  Objection.  Foundation.

21              THE WITNESS:  I think so.  I don't know

22  exactly the mechanism.  Yeah.

23  BY MR. BAEK:

24      Q.   In the event enforcement of A.R.S. 13-4433(B) was

16:02:11 25  fully enjoined and you followed your plan to begin

1   directly initiating contact with crime victims in cases

2   where you represented a criminal defendant, would you

3   threaten any of those victims?

4                  MS. STANTON:  Objection.  Form and

16:02:23  5   foundation.

6                  THE WITNESS:  No.

7   BY MR. BAEK:

8       Q.   In the same instance, do you plan on informing

9   the victim that they have the right to refuse to talk to

16:02:34 10   you?

11                  MS. STANTON:  Objection.  Form and

12   foundation.

13                  THE WITNESS:  It depends.  I don't know.

14   BY MR. BAEK:

16:02:48 15       Q.   In the same situation, do you plan on clearly

16   identifying yourself as a defense attorney representing

17   your client?

18       A.   Yes.

19                  MS. STANTON:  Objection.  Form and

16:02:57 20   foundation.

21   BY MR. BAEK:

22       Q.   Would you do that at the outset of the

23   conversation?

24                  MS. STANTON:  Objection.  Foundation.

16:03:04 25                  THE WITNESS:  Yes.

1    A.   I don't know.

2    Q.   And if you won this lawsuit, that would not

3   prevent a victim or victim's parents from referring you to

4   the state bar for violating Arizona Rule of Criminal

16:15:29  5   Procedure 39(b)(11), correct?

6              MS. STANTON:  Objection.  Form and

7   foundation.

8              THE WITNESS:  I haven't thought about this

9   or looked at it that way, so I don't know.

16:15:44 10              MR. BAEK:  Okay.  I believe we can call it

11   the end of this deposition.

12              MR. ROYSDEN:  As we have with the other

13   depositions, for the record, we'll adjourn the deposition

14   subject to the privilege instructions and any document

16:15:56 15   productions.

16              MR. BAEK:  Okay.

17              THE WITNESS:  Do I need to know what that

18   means?

19              MS. STANTON:  No.

16:16:02 20              MR. ARELLANO:  The witness would like to

21   read and sign.

22              (The deposition was concluded at 4:16 p.m.)

23

24   _____

CHRISTOPHER BAIRD DUPONT, ESQ.

25

1   STATE OF ARIZONA      )

2   COUNTY OF MARICOPA   )

3              BE IT KNOWN the foregoing deposition was

4   taken by me pursuant to stipulation of counsel; that I was

5   then and there a Certified Reporter of the State of

6   Arizona, and by virtue thereof authorized to administer an

7   oath; that the witness before testifying was duly sworn by

8   me to testify to the whole truth; notice was provided that

9   the transcript was available for signature by the

10  deponent; that the questions propounded by counsel and the

11  answers of the witness thereto were taken down by me in

12  shorthand and thereafter transcribed into typewriting

13  under my direction; that the foregoing pages are a full,

14  true, and accurate transcript of all proceedings and

15  testimony had and adduced upon the taking of said

16  deposition, all to the best of my skill and ability.

17         I FURTHER CERTIFY that I am in no way related to

18  nor employed by any parties hereto nor am I in any way

19  interested in the outcome hereof.

20         DATED at Phoenix, Arizona, this 20th day of

21  January, 2018.

22

23  _____

24  Meri Coash, RMR, CRR
    Certified Reporter #50327

25

ORIGINAL FILED THIS _OCT 2 7 2009_
DAY OF ____
JEANNE HICKS
Clerk Superior Court, Yavapai County
By __R. Hamilton____

COPY

1  Larry A. Hammond, 004049
2  Anne M. Chapman, 025965
   OSBORN MALEDON, P.A.
3  2929 N. Central Avenue, 21st Floor
   Phoenix, Arizona 85012-2793
4  (602) 640-9000
5  lhammond@omlaw.com
   achapman@omlaw.com
6
   John M. Sears
7  107 North Cortez Street
   Suite 104
8  Prescott, Arizona 86301
   (928) 778-5208
9  John.Sears@azbar.org
10 Attorneys for Defendant
11
            IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
12
               IN AND FOR THE COUNTY OF YAVAPAI
13
   STATE OF ARIZONA          )  No. P1300CR20081339
14                           )
              Plaintiff,     )  Division 6
15                           )
   vs.                       )  **MOTION TO DECLARE A.R.S. §§**
16                           )  **13-4431 AND 4433(b)-(e) AND**
   STEVEN CARROLL DEMOCKER,  )  **ARIZONA RULE OF CRIMINAL**
17                           )  **PROCEDURE 39(b)11**
              Defendant.     )  **UNCONSTITUTIONAL**
18                           )
                             )  (Oral Argument and Evidentiary
19                           )  Hearing Requested)
                             )
20
21     Pursuant to Rule16 of the Arizona Rules of Criminal Procedure, due process, and
22 the Arizona and United States Constitutions, Defendant Steven DeMocker requests that
23 this Court declare Sections 13-4431 and 4433(b)-(e) of the Victims' Rights
24 Implementation Act ("VRA") and Arizona Rule of Criminal Procedure 39(b)(11)
25 unconstitutional. This Motion is supported by the following Memorandum and Points of
26 Authorities.
27
28


kwiktag *  094 417 994


EXHIBIT 21
NAME Dupont
Meri Coash 1-18-18

P-000440

## MEMORANDUM OF POINTS AND AUTHORITIES

The Arizona Legislature violated the Arizona Constitution by exceeding its limited rulemaking authority under the Victims' Bill of Rights ("VBR") in enacting Arizona Revised Code Sections 13- 4431 and 4433(b)-(e) of the VRA.

Sections 4431 and 4433(b)-(e) of the VRA as well as Arizona Rule of Criminal Procedure 39(b)(11) violate the United States and Arizona Constitutions because they interfere with victims' rights and contradict the Victims' Bill of Rights; they violate Mr. DeMocker's Sixth Amendment and due process rights; and the First Amendment to the United States Constitution and Article II and Section 6 of the Arizona Constitution.

## BACKGROUND

The Victims' Bill of Rights ("VBR") was enacted as an amendment to the Arizona constitution in 1990 and provides for certain enumerated rights for victims of crime. Ariz. Const. art. 2, § 2.1. Among the enumerated rights are the right to be treated fairly, with respect and dignity and to be free from intimidation, harassment or abuse; the right to receive certain information upon request; the right to be present, and be heard, at criminal proceedings; the right to refuse discovery requests made on behalf of the defendant; the right to confer with prosecutors; the right to read pre-sentence reports available to the defendant pertaining to the crime; the right to receive prompt restitution from the perpetrator or perpetrators; the right to a speedy trial and prompt and final conclusion; and the right to be informed of these rights. *See* Ariz. Const. art. 2, § 2.1(A)(1)-(12). The Amendment also provides that substantive and procedural laws to define, implement, preserve and protect the rights to victims under the law may be authorized by the Legislature or by initiative or referendum. *Id.* at (D).

Pursuant to this provision, the Arizona Legislature adopted A.R.S. §§ 13-4431 and 4433 as part of the implementing statutes for the Victim's Bill of Rights which are known collectively as the Victims' Rights Implementation Act. The VRA provides, in

2

accordance with the VBR, that absent consent, a victim cannot be compelled to submit to an interview by the defense. *See* A.R.S. § 13-4433(A). However, the implementing statutes go much further than the Victim's Bill of Rights and create barriers to outreach, contact and communication between the defense and a victim and insert the prosecutor as an intermediary to the defense/victim relationship. For example, the VRA provides that the defense can only initiate contact with a victim through a prosecutor's office. *Id.* at (B). In another provision well beyond what is provided for under the VBR, a prosecutor is not required to give the victim any written correspondence from the defense. *Id.* at (C). The implementing statutes also require a prosecutor to act as an intermediary between the victim and the defense in the event the victim does consent to be interviewed. *Id.* at (D). A prosecutor is also permitted to attend all defense interviews unless the victim directs otherwise. *Id.* And, a prosecutor is not required to advise the victim that she has a right to refuse a prosecutor's presence at interviews. *Id.* Finally, even if the victim decides that she does not want a prosecutor to attend a defense interview, the statute permits a prosecutor to record the interview. A.R.S. §13-4431, another statute purporting to implement the VBR, provides that the court is required to "provide appropriate safeguards" to minimize contact between the victim, the victim's immediate family or witnesses and the defendant's family and witnesses.

To implement the VBR and VRA, Arizona Rule of Criminal Procedure 39(b) was amended by the Arizona Supreme Court in 1991. The Rule provides, consistent with the VBR, that a victim has a right to refuse an interview by the defense. However, the Rule, in an effort to mirror the implementing statutes, goes beyond the VBR by providing that after charges are filed, "defense initiated requests to interview the victim shall be communicated to the victim through the prosecutor" and the victim's response "shall also be communicated through the prosecutor." Az. R. Crim. P. 39(b)(11). This

3

P-000442

provision is slightly more narrow than the VRA in that it prohibits only requests for interviews, as opposed to prohibiting all contact.

The Legislature violated the Arizona Constitution when it exceeded its limited rulemaking authority in enacting sections 1431 and 14433 (b)-(e) of the VRA by creating laws that do not define, implement, preserve or protect victims' rights as enumerated in the VBR. These provisions, along with Rule 39(b)(11) which was adopted to mirror the VRA, also violate both the Arizona and United States Constitutions by violating victims' rights and conflicting with the VBR; violating Mr. DeMocker's Sixth Amendment and due process rights; and violating the free speech guarantees of the First Amendment and Article II, Section 6 of the Arizona Constitution.

## ARGUMENT

**I.    The Legislature Exceeded its Limited Authority Under the Victims' Bill of Rights in Enacting Sections 4431 and 4433(b)-(e) of the Victims' Rights Implementation Act.**

The Arizona Constitution vests the power to make procedural rules exclusively with the Arizona Supreme Court. Ariz. Const. art. VI, § 5 ("The Supreme Court shall have: ... Power to make rules relative to all procedural matters in any court.") The rulemaking power is exclusive. *See State ex rel. Collins v. Seidel,* 142 Ariz. 587, 691 P.2d 678 (1984). It includes formulation of evidentiary rules. *Barsema v. Susong,* 156 Ariz. 309, 751 P.2d 969 (1988).

The Constitution also provides that the each of the three separate branches of government shall not interfere with the providence of the others. Ariz. Const. art. III. ("no one of such departments shall exercise the powers properly belonging to either of the others"). The legislature, therefore, does not have the authority to enact a statute "if it conflicts with or 'tends to engulf'" [the Supreme Court's] constitutionally vested

4

rulemaking authority." *State ex rel. Napolitano v. Brown,* 194 Ariz. 340, 342, 982 P.2d 801 817 (1999); citing *State v. Robinson,* 153 Ariz. 191, 197, 735 P.2d 801, 807 (1987).

"The legislature's power to promulgate rules under the VBR is not unlimited." *State v. Hansen,* 215 Ariz. 287, 290, 160 P.3d 166, 169 (2007). "[T]he scope of legislative rulemaking power under the VBR extends to those rules that define, implement, preserve, and protect the specific rights unique and peculiar to crime victims, as guaranteed and created by the VBR." *Id.* citing *State ex rel. Napolitano v. Brown,* 194 Ariz. 340, 343, 982 P.2d 801 818 (1999); *see also Slayton v. Shumway,* 166 Ariz. 87, 92, 800 P.2d 590, 595 (1990) (explaining that the legislature's rulemaking authority under the VBR extends only to "procedural rules pertaining to victims and not [to] the substantive general subject of the rulemaking power"). In *Champlin v. Sargeant,* 192 Ariz. 371, 373 n.2, 965 P.2d 763, 765 n. 2 (1998) the Supreme Court specified that the legislative rulemaking power under the VBR "extends only as far as necessary to protect rights *created* by the [VBR] and not beyond." (Emphasis added.)

A.R.S. §§ 13-4431 and 4433(b)-(e) do not "define, implement, preserve, or protect" the rights enumerated by the VBR. These sections provide as follows:

- A.R.S. § 13-4433(B) provides that the defense can only initiate contact with the victim through the prosecutor's office;
- A.R.S. § 13-4433(B) requires the prosecutor to advise the victim of her right to refuse a defense interview but does not require the prosecutor to advise the victim that she has a right to refuse the prosecutors presence at interviews;
- A.R.S. § 13-4433(C) provides that the prosecutor is not required to pass along written correspondence from the defense to the victim;

5

P-000444

- A.R.S. § 13-4433(D) requires the prosecutor to act as an intermediary between the victim and the defense in the event the victim does consent to be interviewed;

- A.R.S. § 13-4433(E) permits the prosecutor to record a victim interview even where the victim has elected that the prosecutor not attend the interview; and

- A.R.S. §13-4431 provides that the court is required to "provide appropriate safeguards" to minimize contact between the victim, the victim's immediate family or witnesses and the defendant's family and witnesses.

None of these provisions implement, preserve or protect the right to be treated fairly, with respect and dignity and to be free from intimidation, harassment or abuse; the right to receive certain information upon request; the right to be present, and be heard, at criminal proceedings; the right to refuse discovery requests made on behalf of the defendant; the right to confer with prosecutors; the right to read pre-sentence reports available to the defendant pertaining to the crime; the right to receive prompt restitution from the perpetrator or perpetrators; the right to a speedy trial and prompt and final conclusion; and the right to be informed of these rights.

Some provisions of the VRA are obviously for the benefit of the prosecution and not for the protection of victims' rights. These include requiring a prosecutor to advise the victim of her right to refuse a defense interview but not likewise advising the victim that she has a right to refuse a prosecutor's presence at interviews; granting a prosecutor complete control over what correspondence a victim receives from the defense; and permitting a prosecutor to record a victim interview even when the victim decides that that a prosecutor not attend the interview. These provisions do nothing to implement,

6

preserve or protect the rights created by the VBR and instead may in fact interfere with a victims' rights.

The interests of victims and prosecutors are not necessarily aligned. From the perspective of survivors, they are not members of the prosecution team nor clients of the prosecutors. Even if they were so aligned, the VBR does not provide that a victim should not be contacted by defense counsel, either in writing or otherwise. Nor does it provide that a victim is not free to meet with the defense without the interference, by presence or recording, of the prosecution. Yet the legislature, purportedly pursuant to its authority under the VBR, places a victim entirely under the control of the prosecution. The VBR does not provide, and it is not the case that a victim and the defense are to be separated or mediated by the prosecutors' office.

There is no enumerated right under the VBR for victims to not be contacted by the defense; to have a prosecutor act as an intermediary between the victim and the defense in the event the victim does consent to be interviewed; or to minimal contact between the victim, the victim's immediate family or witnesses and the defendant's family and witnesses. The Supreme Court has held that "nothing in the Victims' Bill of Rights or section 13-4433 supports the argument that victims have a blanket right to be shielded from all contact with defendants or their attorneys until the time of trial." *Champlin*, 192 Ariz. at 375, 965 P.2d at 767 (citing *State ex rel. Dean v. City Court*, 173 Ariz. 515, 516-17, 844 P.2d 1165, 1166-67 (App.1992) (holding that alleged victim may be compelled to testify at pretrial hearing)). The Arizona Supreme Court has acknowledged that victims are not represented by a prosecutor. *Romley v. Superior Court In and For the County of Maricopa*, 181 Ariz. 378, 382, 891 P.2d 246, 250 (1995) ("[T]he rule is well established that a prosecutor does not "represent" the victim in a criminal trial; therefore, the victim is not a "client" of the prosecutor.")

7

In *Brown,* the Arizona Supreme Court *en banc* reaffirmed that the legislature exceeds its rulemaking authority if a right is not explicitly created under the VBR's. *Brown,* 194 Ariz. 343, 982 P.2d 818. Specifically, the Court rejected as beyond the power of the Legislature its attempt to shorten time limits to file petitions for post conviction relief in capital cases from 120 days to 60 days in support of the VBR's provision that a victim has the right "[t]o a speedy trial or disposition and prompt and final conclusion of the case after the conviction and sentence." *Id.* The Court held that the reference to the victim's speedy trial right in the VBR "neither creates a right nor defines a right peculiar and unique to victims." *Brown,* 194 Ariz. 343, 982 P.2d 818. The Court also held that the rule was not necessary to ensure the rights enumerated under the Victim's Bill of Rights. *Id.* at 344, 982 P.2d 819.

A.R.S. §13-4431 and 4433(b)-(e) go well beyond the rights enumerated by the VBR and invade the Court's rulemaking authority by controlling a defendant's ability to investigate, discover and present evidence in her defense. The Court, and not the legislature, is empowered to formulate its own procedural rules. *Shumway,* 166 Ariz. at 91, 800 P.2d at 594. As the Supreme Court noted in *Shumway,* to survive constitutional scrutiny, the statutory enactment of the VBA must be limited to the rights created in the statute, "if broadly construed, the rulemaking provision of [the VBA] is a separation of powers provision that goes far beyond victims' concerns and therefore does not pertain to the same subject as the rights provisions of the proposal." *Id.*

The Supreme Court has not countenanced a blanket rule prohibiting defense contact with victims. Arizona Rule of Criminal Procedure Rule 39(b)(11) provides that defense requests to *interview* a victim shall be communicated through the prosecutor and the response shall likewise come through the prosecutor. This is not a blanket prohibition such as is contained in the VRA. Rule 39 likewise does not contain the following provisions that exceed the VBR: requiring a prosecutor to advise the victim of

8

her right to refuse a defense interview but not requiring the prosecutor to advise the victim that she has a right to refuse the prosecutors presence at interviews; permitting a prosecutor to withhold written correspondence from the defense to the victim; requiring a prosecutor to act as an intermediary between the victim and the defense in the event the victim does consent to be interviewed; permitting a prosecutor to record a victim interview even where the victim has elected that the prosecutor not attend the interview; or providing that the court is required to "provide appropriate safeguards" to minimize contact between the victim, the victim's immediate family or witnesses and the defendant's family and witnesses.

Sections 4431 and 4433(b)-(e) of the VRA invade the Court's rulemaking authority and exceed the authority granted to the legislature under the VBR. For these reasons, these provisions should be stricken as unconstitutional under Articles Three and Six of the Arizona Constitution.

**II.**   **Sections 4433(b)-(e) and Arizona Rule of Criminal Procedure 39(b)(11) Violate Victims' Rights and Conflict with the Victim's Bill of Rights.**

Under the VBR, both Katie and Charlotte DeMocker qualify as victims[1] and therefore have the rights, among others, to be treated fairly, with respect and dignity; to be free from intimidation, harassment or abuse; and the right to confer with the prosecution. *See* Ariz. Const. art. II, §2.1,1-12. Arizona Rule of Criminal Procedure 39(d) requires crime victims who desire to claim notification rights and privileges under Rule 39 to provide contact details to the state. Ariz. R. Crim. P. 39(d). The State is then to provide that information to the court and to the defendant. *Id.* Once this notification occurs, a victim is entitled to the rights under Rule 39. A.R.S. §13-4417 also provides that a victim shall provide a request for notice to the responsible agency.

---

[1] "Victim" is defined in the VBR as a person against whom the criminal offense has been committed or if the person is killed or incapacitated, the person's ... child ... except if the person is in custody for an offense or is the accused." Ariz. Const. art. II, § 2.1( c).

9

Once a victim invokes her rights, she is not able to have direct communication with the defense. Both Rule 39(b)(11) and Section 4433 prohibit the defense from contacting a victim and prohibit a victim from responding directly to defense initiated contact. In this case, the Yavapai County Attorney's Office designated Katie and Charlotte DeMocker as victims under the VRA without their consent or notification. This decision automatically resulted in the Court's issuing an order prohibiting contact between Katie and Charlotte DeMocker and their father. As a result, after losing their mother, Katie and Charlotte were prohibited from visiting their father in jail or speaking to him on the phone for almost a month after he was arrested. Both Katie and Charlotte DeMocker strongly support their father, believe in his innocence, wanted to visit him, needed his support and were denied this opportunity by the unilateral actions of the State and the application of Sections 4433 and Arizona Rule of Criminal Procedure 39(b)(11).

In order to have the contact they desired with their father, both Katie and Charlotte DeMocker were required to waive their rights pursuant to Rule 39(e) and have forfeited their rights under the VBR. Stated differently, section 4433(d) and Rule 39(b)(11), which were allegedly designed to implement the VBR, violated the VBR in this insistence. The Legislature does not have the authority to restrict rights created by the people through constitutional amendment. *See State v. Roscoe,* 185 Ariz. 68,72-73 912 P.2d 1297, 1301-02 (1996) citing *Turley v. Bolin,* 27 Ariz. App. 345, 554 P.2d 1288 (Ariz. App. 1976). *See also State v. Lamberton,* 183 Ariz. 47, 50, 899 P.2d 939, 942 (1995) ("[T]he implementing statutes and [court] rules cannot eliminate or narrow rights guaranteed by the state constitution."); *see also Marquez v. Rapid Harvest Co.,* 1 Ariz.App. 562, 565, 405 P.2d 814, 817 (1965) ("It is our absolute duty to protect constitutional rights."), citing *Bristor v. Cheatham,* 75 Ariz. 227, 234, 255 P.2d 173, 177 (1953)).

10

P-000449

The Court on November 17, 2008 modified Mr. DeMocker's release conditions to permit contact only after receiving letters from both Katie and Charlotte DeMocker opting out of victim's services. This result reveals both the bias and incorrect assumptions on which Section 4433(b) and Rule 39(b) are based and the basic way in which these implementing statutes and rules violate the very principles they were designed to protect. Victims' interests are not always aligned with the prosecution. A victim should not be required to waive her rights when her interests are not so aligned. This is precisely what is required by Sections 4433(b) and Rule 39.

The Arizona Supreme Court has invalidated provisions of the VRA and Rule 39(b) that conflict with the VBR. *Roscoe*, 185 Ariz. 68, 912 P.2d 1297. In *Roscoe* the court invalidated A.R.S. §13-4433(f) and Rule 39(b) which provided that a peace officer shall not be considered a victim. The Court held that victim is clearly defined by the VBR as are exceptions, "the plain language of this new amendment provides for only two types of people who are excluded from the protection of the Victims' Bill of Rights ... those in custody for an offense or those who are the accused." *Id.* at 71, 912 P.2d 1300 (internal citations and quotations omitted). Here, as with Section 4433(f), Section 4433(b) seeks to exclude from victim status those who desire direct contact with the defense. Section 4433(b) and Rule 39(b)(11) should be struck as violating the Constitution's requirement that a victim of a crime has the right "to be treated with fairness, respect, and dignity, and to be free from intimidation, harassment, or abuse, throughout the criminal justice process" and to "confer with the prosecution, after the crime against the victim has been charged, before trial or before any disposition of the case and to be informed of the disposition." These rights are not limited under the VBR to those victims who do not want contact with the defense. "The language of the constitutional provision is plain, and we may look no further." *Id.*

11

### III. Sections 4431 and 4433(b)-(e) and Arizona Rule of Criminal Procedure 39(b)(11) Improperly Interfere with Mr. DeMocker's Sixth Amendment and Due Process Rights.

Mr. DeMocker's Sixth Amendment and due process rights require that counsel fully investigate his case and have unadulterated access to witnesses so that he may prepare and present a defense. A defendant has a due process right, under the federal and Arizona constitutions, to present a defense. *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). To determine what is required to prepare a present a defense in a capital case, counsel are required under Rule 6.8 of the Arizona Rule of Criminal Procedure to "be familiar with and guided by" the American Bar Association Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases ("ABA Guidelines"). The ABA Guidelines have been acknowledged by the Supreme Court "as 'guides to determining what is reasonable'" in the representation of capital defendants. *Wiggins v. Smith*, 539 U.S. 510, 524 (2003) (quoting *Strickland*, 466 U.S. at 688); *see also Williams v. Taylor*, 529 U.S. 362, 396 (2000). *See ABA Revised Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases*, in 31 Hofstra L. Rev. 913 (2003).

The ABA Guidelines provide that counsel have an obligation to interview witnesses to the crime. *See American Bar Association, Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases* (2003) (Commentaries to Guidelines 10.7 & 10.11). The ABA Guidelines provide that "defense counsel must independently investigate the circumstances of the crime, and all evidence … purporting to inculpate the client." *See* ABA Guidelines, Commentary, Introduction. This duty includes interviewing "witnesses having purported knowledge of events surrounding the alleged offense itself." ABA Guidelines, 10.7(2)(a)(1). In this case, one of the surviving victims is also a witness to the crime because she was reportedly on the phone with Carol Kennedy when she was attacked. This victim witness is potentially a

12

witness at both the guilt-innocence and sentencing phases of the trial, thus contact is an essential part of investigating this death penalty case. The Arizona Court of Appeals has held that "except in the most unusual circumstances, it offends basic notions of minimal competence of representation for defense counsel to fail to interview any state witnesses prior to a major felony trial." *State v. Radjenovich,* 138 Ariz. 210, 274, 674 P.2d 333, 227 (1983). The Arizona Supreme Court agrees. *See e.g. State v. Schultz,* 140 Ariz. 222, 224, 681 P.2d 374, 377 (1984).

As the Arizona Court of Appeals recognized long ago, the prosecution must not interfere with a defense access to witnesses. "In the absence of an affirmative and convincing showing of exceptional circumstances or compelling reasons, a district attorney may not interfere with the pre-trial interrogation by a defense counsel of persons who may be called upon as a witness in the case." *Mota v. Buchanan,* 26 Ariz. App. 246, 547 P.2d 517 citing *Lewis v. Court of Common Pleas of Lebanon County,* 436 Pa. 296, 260 A.2d 184 (1969). *See also State v. Chaney,* 5 Ariz. App. 530, 428 P.2d 1004 (1967) (improper to discourage police officers from discussing case with defendant's counsel just prior to testifying); *Rosser v. State,* 45 Ariz. 264, 42 P.2d 613 (1935) (counsel for the adversary has every legal and ethical right to call upon any potential witness, prior to trial and interrogate him informally about his knowledge); *cf. State v. Warner,* 168 Ariz. 261, 812 P.2d 1079 (1990); *see generally* Robert N. Clinton, *The Right to Present a Defense: An Emergent Constitutional Guarantee in Criminal Trials,* 9 IND. L. REV. 711 (1976) (prosecutor engages in misconduct if he instructs witnesses not to speak to defense counsel). The Ninth Circuit agrees that both sides have the right to interview witnesses before trial. *See e.g. United States v. Cook,* 608 F.2d 1175 (9th Cir. 1980) (overruled on other grounds by *Luce v. United States,* 469 U.S. 38 (1984)). To interfere with this right there must be "clearest and most compelling circumstances." *See id.* at 1180, quoting *Dennis v. United States,* 384 U.S

13

855, 86 S Ct. 1840 (1966). Here the legislature took the right to refuse to be interviewed and expanded it into an invasion of the defense right to have access to witnesses.

Counsel is also required to seek out and interview members of the victim's family under the ABA Guidelines, barring exceptional circumstances. *See* ABA Guidelines, Guideline 10.7, Commentary 2(a)(4). Independent of the ABA Guideline requirements, the capital defense community has come to realize that their traditional view of survivors as clients of the prosecution is a mistake, both from the perspective of survivors and from the perspective of defending clients zealously. *See* Richard Burr, *Litigating with Victim Impact Testimony: The Serendipity that Has Come from Payne v. Tennessee*, 88 Cornell L. Rev. 517 (2003). Unless counsel develop a relationship with survivors, the defense may never know the broad and diverse range of interests and needs that survivors feel and are able to articulate. The development of a relationship based on respect and compassion for survivors may help survivors feel less like distraught bystanders and more like real participants in a process which usually affects them profoundly. *See* 88 Cornell L. Rev. 517 (2003).

Capital defense lawyers in the past have found it difficult to contact survivors because of the anger and hostility survivors often express toward the defendant and defense counsel, and because of defense counsels' perception that survivors want to relate only to prosecutors and law enforcement personnel. Over the past 10 years, however, capital defense counsel have learned that with expert assistance, they can be in contact with survivors and that many survivors are open to contact with the defense. When communication between survivors and defense teams is facilitated by someone who is specially trained and knowledgeable about the trauma survivors have experienced, is respectful of their needs and interests, and is skilled at working with survivors and defense teams in these areas, the result is often beneficial to both. *Cf.*

14

Commentary to ABA Guideline 10.9.1 ("approaches to the victim's family should be undertaken carefully and with sensitivity" and "[defense counsel] may consider seeking the assistance of . . . a defense-victim liaison . . . in the outreach effort"). With the help of a defense-initiated victim liaison, a relationship can often develop between defense teams and survivors that can help meet the needs of survivors and, by doing so, advance the interests of the defense. For these reasons, the work of defense-initiated victim liaisons has become an essential part of the defense function in capital cases.

Beyond permitting a victim an opportunity to refuse an interview, the suspect provisions prohibit contact between the defense and a victim and require a prosecutor to interfere with and control any communication between the defense and a victim. These provisions giving exclusive access to the prosecution also pose a risk that the prosecutor may improperly interfere with a victim's decision to grant a defense request to meet or for an interview. The prosecution and defense are necessarily at odds and the prosecution has every incentive to discourage a relationship between the defense and the victim. Section 4431 and 4433(b)-(e) and Arizona Rule of Criminal Procedure 39(b)(11) directly conflict with counsels' obligations under the Sixth Amendment, due process, the ABA Guidelines and Rule 6.8 of the Arizona Rules of Criminal Procedure.

**IV.    Section 4433(b)-(e) and Arizona Rule of Criminal Procedure 39(b)(11) Violate the First Amendment of the United States' Constitution and Article II of the Arizona Constitution.**

The provisions of the VRA and Rule 39(b)(11) violate the First and Fourteenth Amendments of the United States Constitution as well as Article II, §§ 4 and 6 of the Arizona Constitution because they are facially overbroad, not the least restrictive means and are an invalid prior restraint on speech. A.R.S. § 13-4433(B) provides that the defense "shall only initiate contact with the victim through the prosecutor's office" and thereby prohibits all direct contact between a victim and the defense. Arizona Rule of Criminal Procedure 39(b)(11) provides that "defense initiated requests to interview the

15

victim shall be communicated to the victim through the prosecutor" and "[t]he victim's response ... shall also be communicated through the prosecutor."

The First Amendment to the United States Constitution provides:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof, or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances.

Arizona's Constitution provides that "[e]very person may freely speak, write and publish on all subjects, being responsible for the abuse of that right." Ariz. Const. art. II, §6.

### 1. A.R.S. §13-4433(b) and Rule 39(b)(11) Are Overbroad Restraints on Free Speech.

The overbreadth doctrine states that a law regulating speech is overbroad "if it sweeps within its ambit a substantial amount of protected speech along with that which it may legitimately regulate." *Kolender v. Lawson*, 461 U.S. at 359, n.8; *Gooding v. Wilson, 405 U.S. 518, 521-22 (1972)*. A two-part test is used to determine if a statute violates the overbreath doctrine. First, no state action impinging on free speech will be sustained unless the government asserts a compelling interest to justify the impingement. *See NAACP v. Alabama*, 357 U.S. 449, 463 (1958). Second, the state may not prohibit broad classes of speech, if in so doing, a substantial amount of constitutionally protected speech is also prohibited.

Section 4433(b) and Rule 39 satisfy the first prong of the overbreadth analysis. Their primary purpose is to guarantee that crime victims be "treated with fairness, respect and dignity" and that they be "free from intimidation, harassment or abuse." The State's interest in protecting victims of crime may constitute a compelling governmental interest sufficient to justify some impingement on free speech. However, the Supreme Court has consistently held that the state may not prohibit broad classes of speech, even

16

when some of what is proscribed may indeed be legitimately regulated, if a substantial amount of constitutionally protected speech is likewise prohibited. Section 4433(b) and Rule 39(b)(11) fail to satisfy this second prong of the overbreadth analysis.

These provisions assume that in order to protect victim's rights, all contact between the victim and the defense must be prohibited. This is simply not true. The Federal Crime Victim's Rights Act of 2004, codified at 18 U.S.C. § 3771, provides victims' with the right to be treated with "fairness and with respect for the victim's dignity and privacy." 18 U.S.C. § 3771(a)(8). Other rights are enumerated including the right to be protected from the accused; the right to reasonable, accurate and timely notice of court proceedings; the right to be heard, to restitution, and to confer with the attorney for the Government; among others. *Id.* at (1)-(8). The Federal statute does not prohibit contact between victims and the defense. In fact, defense initiated victim outreach is often conducted in federal and other state cases and is contemplated by the ABA Guidelines.

Contact by defense counsel is constitutionally protected speech for which the government has no compelling interest to justify such an absolute restriction. *Cf. Talley v. California,* 362 U.S. 60 (1960) (invalidating an ordinance prohibiting the distribution of handbills because the breadth of its application went far beyond what was necessary to achieve a legitimate governmental purpose.) The *Talley* Court noted that although the ordinance was aimed at providing a way to identify those responsible for fraud, false advertising and libel; the ordinance was not limited. The Court held that the statute's interference with First Amendment freedoms went beyond what might be justified in the exercise of the State's legitimate interest. Section 13-4433 prohibiting all defense contact and Rule 39(b)(11) prohibiting all direct interview requests are likewise not narrowly tailored to further the State's interest in protecting victims of crime from further abuse. These provisions prohibit defense counsel from initiating any contact with a victim.

17

Moreover, the Supreme Court has consistently held that statutes restricting speech solely on the grounds that it is offensive or unseemly are unconstitutionally overbroad. For instance, in *City of Houston v. Hill,* 482 U.S. 451 (1987), *appeal dismissed, cert. denied,* 483 U.S. 1001 (1987), the Court struck down an ordinance making it unlawful for any person to "strike or in any manner oppose, molest, an abuse or interrupt any policemen in the execution of his duty." The Court reasoned that because the statute prohibited citizens from criticizing and insulting police officers which was constitutionally protected speech, the ordinance was overbroad. The fact that the statute also has a legitimate application in prohibiting conduct which is unprotected by the First Amendment was not enough to save it. Section 4433(b) and Rule 39(b)(11), likewise, sweep within their ambit a substantial amount of protected speech along with what might be legitimately regulated speech. Because they restrict both constitutionally protected and unprotected expression, they are constitutionally overbroad. The State may not expansively prohibit classes of speech in so broad a manner as to include both constitutionally protected and unprotected speech. Legislation which does so is overbroad and, accordingly, Section 4433(b) and Rule 39(b)(11) are overbroad. Mere overbreadth, however, is not sufficient to overturn legislation on constitutional grounds. It must be substantially overbroad.

### 2. Neither Section 13-3344(b) Nor Rule 39(b)(11) Are the Least Restrictive Alternative.

If a legitimate governmental objective can be achieved by means which are less burdensome on First Amendment expression than the means selected, government must use the less burdensome means. *Shelton v. Tucker,* 364 U.S. 479, 488 (1960) (footnote omitted). Section 13-4433(B) and Rule 39(b)(11) prohibit not only the defendant, but defense counsel or any other person acting on behalf of the defendant, from initiating contact with a victim (4433(b)) or to request an interview (Rule 39(b)(11)). The State's

18

legitimate interest in protecting victims can be achieved by means less restrictive than an expansive prohibition on any member of the defense contacting the victim.

Moreover, the State's interest in protecting victims from abuse can be realized without prohibiting defense counsel from contacting the victim. This objective can be attained by limits provided for under Arizona Rule of Criminal Procedure 39(b)(12) (a victim may specify a reasonable date, time, duration and location for an interview or deposition and may terminate the contact if not done in a dignified and professional manner.) The VBR is aimed at assuring that victims of crime will be "treated with fairness, respect, and dignity", and that they be free from "harassment intimidation, or abuse." Section 4433(b) and Rule 39(b)(11), however, are not so limited, and mandate that all contact by any member of the defense be suppressed. Such a generality is too remote to furnish a constitutionally acceptable justification for this all-embracing infringement on free speech.

Section 3344(b) and Rule 39(b)(11) are not narrowly tailored to serve the State's interest in protecting victims' rights as enumerated in the VBR, but encompass all classes of speech, including a substantial amount of constitutionally protected speech. Nor are they the least restrictive alternatives for advancing such interests. The objective of protecting crime victims from harassment or abuse by defense counsel does not justify prohibiting defense counsel from contacting the victim. The provisions' sweeping prohibitions are a substantially overbroad invasion of protected speech that cannot be justified by the governmental interest in protecting crime victims from harassment, abuse or intimidation. Thus, the provisions fail under an overbreadth analysis.

### 3. Section 4433(b) and Rule 39(b)(11) Are Unlawful Prior Restraints on Free Speech.

In determining the extent to which government may constitutionally interfere with free speech, a unanimous Supreme Court declared, that "[t]he question in every

19

case is whether the words used are used in such circumstances and are of such a nature as to create a clear and present danger that they will bring about the substantive evil that Congress has a right to prevent. It is a question of proximity and degree." *Schenck v. United States. Schenck v. United States*, 249 U.S. 47, 52 (1919). The Court held that to justify suppression of free speech there must be reasonable grounds to fear that serious evil will result if free speech is practiced and that the danger apprehended is imminent. *Whitney v. California, 274 U.S. 357, 376 (1927)*. An "undifferentiated fear or apprehension of disturbance" is not enough to overcome the right to free expression. *Tinker v. Des Moines Indep. Community School Dist., 393 U.S. 503, 508 (1969)*. There must be a clear and present danger that the conduct itself will bring about the substantive evil, and the substantive evil likely to result must be extremely serious and the degree of imminence extremely high before government may abridge free speech. *See Whitney v. California*, 274 U.S. 357, 374-376 (1927) (Brandeis, J., concurring). Thus, the rule emanating from the "clear and present danger" cases is that the substantive evil sought to be avoided must be extremely serious and the degree of imminence high before government action limiting speech will be sanctioned. *Bridges v. California*, 314 U.S. 252, 263 (1941).

The supposed evils that Section 4433(b) and Rule 39(b)(11) seek to obviate are not sufficiently exigent to warrant suppression of free speech. The requirement that a defense attorney's contact with a victim be channeled through the prosecutor presupposes that a victim is somehow harmed by direct contact with the defense attorney. However, it is not true that direct contact by the defense causes harm to the victim. Accordingly, the State is imposing prior restraints based merely upon an "undifferentiated fear or apprehension of disturbance." *Tinker v. Des Moines Indep. Community School Dist.*, 393 U.S. 503, 508 (1969).

20

In addition to infringing on free speech as protected by the U.S. Constitution, the Victims' Rights Implementation Act violates Article II, Section 6 of the Arizona Constitution. Arizona's free speech provision is generally interpreted to guarantee even broader free speech rights than those conferred by the United States Constitution. "[A]ny system of prior restraints ... comes to the Court bearing a heavy presumption against its constitutional validity." *Bantam Books, Inc. v. Sullivan, 372 U.S. at 70.* Section 4433(b) and Rule 39(b)(11) should be struck as violating the United States and Arizona Constitutions.

## CONCLUSION

For these reasons, Mr. DeMocker requests that this Court declare Section 4433(b)-(e) and Arizona Rule of Criminal Procedure 39(b)(11) unconstitutional.

DATED this —— day of October, 2009.

By: _____
John M. Sears
107 North Cortez Street, Suite 104
Prescott, Arizona 86301

OSBORN MALEDON, P.A.
Larry A. Hammond
Anne M. Chapman
2929 N. Central Avenue, Suite 2100
Phoenix, Arizona 85012-2793

Attorneys for Defendant

ORIGINAL of the foregoing filed
this 21 day of October, 2009, with:

Jeanne Hicks,

21

P-000460

1  Clerk of the Court
   Yavapai County Superior Court
2  120 S. Cortez
   Prescott, AZ  86303

3

4  COPIES of the foregoing hand delivered
   this _21_ day of October, 2009, to:

5

   The Hon. Thomas B. Lindberg
6  Judge of the Superior Court
   Division Six
7  120 S. Cortez
   Prescott, AZ  86303

8

   Joseph Butner, Esq.
9  Office of the Yavapai County Attorney
   Prescott courthouse drawer

10

11  _____

12  COPY of the foregoing has been sent
    by U.S. Mail this _21_ day of October,
13  2009 to:

14
    Terry Goddard, Arizona Attorney General
15  Mary O'Grady, Arizona Solicitor General
    1275 W. Washington
16  Phoenix, AZ 85007

17  Hon. Jim Weiers, Speaker
    of the Arizona House of Representatives
18  1700 W. Washington, Room 221
    Phoenix, AZ 85007

19

    Hon. Timothy S. Bee
20  President of the Arizona Senate
    1700 W. Washington, Room 204
21  Phoenix, AZ 85007

22

23  _____

24

25

26

27

28

22

ORIGINAL FILED THIS _____
DAY OF _____.
JEANNE HICKS
Clerk Superior Court
By N. Seguin

1   YAVAPAI COUNTY ATTORNEY'S OFFICE
    JOSEPH C. BUTNER SBN 005229
2   DEPUTY COUNTY ATTORNEY
    255 East Gurley Street
3   Prescott, AZ 86301
    Telephone: 928-771-3344
4   ycao@co.yavapai.az.us

5

6              IN THE SUPERIOR COURT OF STATE OF ARIZONA

7                  IN AND FOR THE COUNTY OF YAVAPAI

8

9   STATE OF ARIZONA,                    Cause No. P1300CR20081339

10              Plaintiff,               Division 6

11      v.                              STATE'S RESPONSE TO DEFENDANT'S
                                        MOTION TO DECLARE A.R.S. §§ 13-4431
12  STEVEN CARROLL DEMOCKER,            AND 4433(B)-(E) AND ARIZONA RULE
                                        OF CRIMINAL PROCEDURE 39(b)11
13              Defendant.              UNCONSTITUTIONAL

14

15          The State of Arizona, by and through Sheila Sullivan Polk, Yavapai County Attorney,

16  and her deputy undersigned, hereby submits its Response to Defendant's Motion to Declare

17  A.R.S. §§ 13-4431 and 4433(b)-(e) and Arizona Rule of Criminal Procedure 39(b)11

18  Unconstitutional and requests that Defendant's Motion be denied.  The State of Arizona's

19  Response is supported by the following Memorandum of Points and Authorities.

20

21              MEMORANDUM OF POINTS AND AUTHORITIES

22  FACTS:

23          On October 29, 2008, Charlotte DeMocker told the Yavapai County Victim Advocate

24  that she wanted contact with Defendant, her father, and did not require the services of a victim

25  advocate.  The advocate explained to Charlotte that she could request contact with Defendant

26  without "opting out," or waiving her victims' right.  Charlotte reiterated that she did not require

Office of the Yavapai County Attorney
255 E. Gurley Street, Suite 300
Prescott, AZ 86301
Phone: (928) 771-3344   Facsimile: (928) 771-3110

the assistance of Victim Service. On October 30, 2008, Katie sent an email to Victim Services indicating that she too was "opting out."

**LEGAL ARGUMENT:**

The Victims' Bill of Rights, Ariz. Const. art. II, § 2.1, (hereinafter VBR) was approved by the Arizona voters during the fall election of 1990. It became effective November 26, 1990. "Paragraphs one through nine of the VBR not only create rights, but create rights unique and peculiar to crime victims." *State ex rel. Napolitano v. Brown,* 194 Ariz. 340, 343, 982 P.2d 815, 818 (1999).

These nine paragraphs of the VBR provide that a victim of a crime has a right:

1. To be treated with fairness, respect, and dignity, and to be free from intimidation, harassment, or abuse, throughout the criminal justice process.

2. To be informed, upon request, when the accused or convicted person is released from custody or has escaped.

3. To be present at and, upon request, to be informed of all criminal proceedings where the defendant has a right to be present.

4. To be heard at any proceeding involving a post-arrest release decision, a negotiated plea, and sentencing.

5. To refuse an interview, deposition, or other discovery request by the defendant, the defendant's attorney, or other person acting on behalf of the defendant.

6. To confer with the prosecution, after the crime against the victim has been charged, before trial or before any disposition of the case and to be informed of the disposition.

Office of the Yavapai County Attorney
255 E. Gurley Street, Suite 300
Prescott, AZ 86301
Phone: (928) 771-3344    Facsimile: (928) 771-3110

P-000463

Office of the Yavapai County Attorney
255 E. Gurley Street, Suite 300
Prescott, AZ 86301
Phone: (928) 771-3344   Facsimile: (928) 771-3110

7. To read pre-sentence reports relating to the crime against the victim when they are available to the defendant.

8. To receive prompt restitution form the person of persons convicted of the criminal conduct that caused the victim's loss or injury.

9. To be heard at any post-conviction release from confinement is being considered.

Ariz. Const. art. II, Section 2.1(A)(1)-(9).

In *Brown*, the Arizona Supreme Court "concluded that the rulemaking power of the legislature granted by the VBR extends only to those 'procedural rules pertaining to victims and not with the substantive general subject of the rulemaking power,'" and "that the legislative rulemaking power under the VBR 'extends only as far as necessary to protect rights *created by* the [VBR] and not beyond.'" *Id.* (citations omitted)(emphasis in original). "[T]he scope of legislative rulemaking power under the VBR extends to those rules that define, implement, preserve, and protect the specific rights unique and peculiar to crime victims, as guaranteed and created by the VBR. *Id.* The statutes in Chapter 40 of Title 13 of the Arizona Revised Statutes are the procedural rules enacted by the Arizona legislature with those goals in mind. *Ariz. R. Crim. P.,* Rule 39 mirrors the VBR and its statutory progeny.

The State does not "represent" the victim as a client. In *State ex rel. Romley v. Superior Court [Wilkinson]*, 181 Ariz. 378, 891 P.2d 246 (App. 1995), the Court of Appeals recognized that the Victims' Bill of Rights imposed additional statutory duties on the prosecution, but stated, "the rule is well established that a prosecutor does not 'represent' the victim in a criminal trial; therefore, the victim is not a 'client' of the prosecutor." *Id.* at 382, 891 P.2d at 250. The Court reasoned that a defense attorney's responsibility is primarily towards the defendant, but the prosecutor's duty is to the State, representing society as a

- 3 -

P-000464

whole. The prosecutor's "duty is to see that justice is done on behalf of both the victim and the defendants":

> The prosecutor . . . enters a courtroom to speak for the People and not just some of the People. The prosecutor speaks not solely for the victim, or the police, or those who support them, but for all the People. That body of "The People" includes the defendant and his family and those who care about him. It also includes the vast majority of citizens who know nothing about a particular case, but who give over to the prosecutor the authority to seek a just result in their name.

*State ex rel. Romley v. Superior Court [Wilkinson]*, 181 Ariz. 378,891 P.2d 246, 250 (App. 1995) (citations omitted).

**I.    *A.R.S. §§ 13-4431 and 4433(B)-(E) do not violate Defendant's Sixth Amendment or Due Process Rights.***

A.R.S. § 13-4431 was enacted to protect a victim from possible harassment at all court proceedings. It is evident this statute was enacted to implement, preserve and protect a victim's right to be "free from intimidation, harassment, or abuse, throughout the criminal justice process." Ariz. Const. art. II, Section 2.1(A)(1). Defendant's claim that the legislature exceeded its scope by enacting A.R.S. 13-4431 is clearly without merit. In cases where the victim and defendant share a family and the victims have requested contact with the defendant, the court is not required to physically separate a family and will typically address the situation on a case by case basis.

As to A.R.S. § 13-4433(B)-(E), it is well established that a victim is not compelled to submit to a pre-trial interview and Arizona courts have repeatedly found that this was not a denial of a defendant's constitutional or due process rights. *See Lincoln v. Holt*, 215 Ariz. 21, 156 P.3d 438 (App. 2007) (the legislature did not exceed its authority by enacting statutes which allows a minor victim's parent who exercises victims' rights on behalf of the child to exercise all the victims' rights specified in A.R.S. § 13-4433 on the parent's own behalf);

Office of the Yavapai County Attorney
255 E. Gurley Street, Suite 300
Prescott, AZ 86301
Phone: (928) 771-3344    Facsimile: (928) 771-3110

- 4 -

P-000465

Office of the Yavapai County Attorney
255 E. Gurley Street, Suite 300
Prescott, AZ 86301
Phone: (928) 771-3344   Facsimile: (928) 771-3110

1   *State v. Roscoe*, 185 Ariz. 68, 912 P.2d 1297 (1996) (all victims, including peace officers

2   who became victims while acting in the scope of their official duties, have the right to refuse

3   a pre-trial interview)  Defendant's position that the prosecutor is the decision-maker and

4   gate-keeper regarding any and all contact between the defense and a victim is not supported

5   by Arizona law.

6

7          When a victim has asserted their rights, the only absolute statutory limitation between

8   the victim and the defense is that first contact must be initiated through the prosecutor's

9   office. A.R.S. § 13-4433(B).  In cases where a victim consents to an interview and agrees to

10  contact with the defense, the remainder of the decisions regarding the contact is at the sole

11  discretion of the *victim*, not the prosecutor.  For example, pursuant to A.R.S. § 13-4433(D), if

12  a victim consents to a defense interview, the victim chooses the time and place of the

13  interview and the prosecutor is only allowed to intervene at the request of the victim.  In fact,

14  A.R.S. § 13-4433(E) allows a victim to proceed with an interview without the presence of the

15  prosecutor or an agent from the prosecutor's office.  Only when a victim asserts their rights

16
17  does the prosecutor becomes a point of contact for the defense.

18  ***II.     Neither Katie nor Charlotte DeMocker was required to waive their victims'***

19         ***rights in order to have contact with their father.***

20         Pursuant to A.R.S. § 13-4402(A), "the rights and duties that are established by [the

21  victims' right statutes] arise upon the arrest or formal charging of the person or persons who

22  are alleged to be responsible for a criminal offense against the victim."  When, as in this case,

23  the victim of a crime "is killed or incapacitated, the person's spouse, parent, child,

24  grandparent or sibling" is automatically granted victim status.  A.R.S. § 13-4401(19).

25  Contrary to Defendant's assertion, the County Attorney's Office's did nothing to

26  purposefully ***designate*** the victim's daughters as victims.

- 5 -

P-000466

Office of the Yavapai County Attorney
255 E. Gurley Street, Suite 300
Prescott, AZ 86301
Phone: (928) 771-3344   Facsimile: (928) 771-3110

1    Contact between a victim and a defendant is not solely dependent upon whether a

2    victim chooses to assert their victims' right. An order barring a defendant from contacting a

3    victim is a standard condition of release in victim cases; however, as is often the case in

4    domestic violence or child abuse/neglect cases without serious injury, a defendant and/or a

5    victim may petition the court to modify conditions of release to allow communication and

6    contact between a defendant and the victim. This procedure is common where all parties

7    continue to live in the same household after the arrest specifically when the defendant is

8

9    released from custody.

10    Defendant was arrested on October 23, 2008. At his initial appearance on October

11    24, 2008, the Prescott Justice Court ordered that Defendant be held without bond and to have

12    no contact with Ruth Kennedy, the victim's mother, or Charlotte or Katie DeMocker, the

13    victim's and Defendant's daughters. On October 29, 2008, Charlotte DeMocker informed

14    Victim Services that she would not assert her victims' rights in order to have contact with her

15

16    father. Charlotte was told she need not waive her right in order to have contact and that

17    requesting contact with Defendant and waiving her victims' rights were not inextricably

18    linked. Charlotte reiterated she did not want to assert her victims' rights. On October 30,

19    2008, Katie DeMocker sent an email to Victim Services stating that she too was opting out.

20

21    On October 31, 2008, Defendant requested that the conditions of release be modified

22    to allow contact with his daughters. The request was granted by Court Order on November

23    17, 2008. The two-week delay in the decision was due to judicial reassignment after

24    Defendant, and then the State, noticed the assigned judge. Clearly, the daughters were not

25    required to waive their victims' rights in order to have contact with their father and, more

26

- 6 -

P-000467

Office of the Yavapai County Attorney
255 E. Gurley Street, Suite 300
Prescott, AZ 86301
Phone: (928) 771-3344  Facsimile: (928) 771-3110

1  importantly, *the waiver of their victims' rights did not override the court order prohibiting*

2  *contact between them.* Only the Court had the authority to modify conditions of release.

3  **CONCLUSION:**

4  Defendant has failed to demonstrate how the legislature exceeded its authority in

5  enacting A.R.S. §§ 13-4431 or 13-4433(B)-(E) or that these statutes and *Ariz. R. Crim. P.*, Rule

6  39(b)(11) interfere with his Sixth Amendment of Due Process Rights. Defendant's motion to

7  declare these statutes and *Ariz. R. Crim. P.*, Rule 39(b)(11) unconstitutional must fail.

8

9

10  RESPECTFULLY SUBMITTED this 5ᵗʰ November, 2009.

11

12

13  Sheila Sullivan Polk
    YAVAPAI COUNTY ATTORNEY

14

15  By: _____ (For)

16  Joseph C. Butner
    Deputy County Attorney

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

- 7 -

P-000468

COPIES of the foregoing delivered this
_5th_ day of November, 2009 to:

Honorable Thomas J. Lindberg
Division 6
Yavapai County Superior Court
(via email)

John Sears
107 North Cortez Street, Suite 104
Prescott, AZ 86301
Attorney for Defendant
(via email)

Larry Hammond
Anne Chapman
Osborn Maledon, P.A.
2929 North Central Ave, 21st Floor
Phoenix, AZ
Attorney for Defendant
(via email)

By: _Deb Cornell_

Office of the Yavapai County Attorney
255 E. Gurley Street, Suite 300
Prescott, AZ 86301
Phone: (928) 771-3344   Facsimile: (928) 771-3110

- 8 -

P-000469

ORIGINAL FILED THIS NOV. -9 2009
DAY OF _____
JEANNE HICKS
Clerk Superior Court
By ___Shauna Kelbaugh___
Deputy

1  Larry A. Hammond, 004049
2  Anne M. Chapman, 025965
   OSBORN MALEDON, P.A.
3  2929 N. Central Avenue, 21st Floor
   Phoenix, Arizona 85012-2793
4  (602) 640-9000
   lhammond@omlaw.com
5  achapman@omlaw.com

6
   John M. Sears
7  P.O. Box 4080
   Prescott, Arizona 86302
8  (928) 778-5208
   John.Sears@azbar.org
9
10 Attorneys for Defendant

11          IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

12              IN AND FOR THE COUNTY OF YAVAPAI

13 STATE OF ARIZONA                 )   No. P1300CR20081339
                                    )
14              Plaintiff,          )   Division 6
                                    )
15 vs.                              )   **REPLY IN SUPPORT OF**
                                    )   **DEFENDANT'S MOTION TO**
16 STEVEN CARROLL DEMOCKER,         )   **DECLARE A.R.S. §§ 13-4431 AND**
                                    )   **4433(b)-(e) AND ARIZONA RULE**
17              Defendant.          )   **OF CRIMINAL PROCEDURE**
                                    )   **39(B)11 UNCONSTITUTIONAL**
18                                  )
                                    )   (Oral Argument and Evidentiary
19                                      Hearing Requested)
20

21         Defendant Steven DeMocker, by and through counsel, hereby replies to the

22 State's response to his request that this Court declare Sections 13-4431 and 4433(b)-(e)

23 of the Victims' Rights Implementation Act ("VRA") and Arizona Rule of Criminal

24 Procedure 39(b)(11) unconstitutional. The State's response does not address or refute

25 key aspects the unconstitutionality of these provisions and misrepresents the facts with

26 respect to victims Katie and Charlotte DeMocker.

27                              **ARGUMENT**

28

I. **The Legislature Exceeded its Limited Authority Under the Victims'**
**Bill of Rights in Enacting Sections 4431 and 4433(b)-(e) of the**
**Victims' Rights Implementation Act**

The State's response acknowledges that the legislature's rulemaking power under the Victims' Bill of Rights ("VBR") is limited. (State's response at 3, *citing State ex rel. Napolitano v. Brown*, 194 Ariz. 340, 982 P.2d 815 (1999)). However, the State asserts that A.R.S. 13-4431 and 4433(b)-(e) are within the limited rulemaking authority of the legislature because a victim may not be compelled to submit to a pretrial interview and because victims have a right to be free from harassment. Those rights are explicitly provided for in the VBR. However, the limited legislative rulemaking authority requires that A.R.S. 13- 4431 and 4433(b)-(e) be specifically created to "define, implement, preserve, or protect" these rights. The State has made no attempt to explain how these provisions have anything to do with either of these rights. And in this case, the provisions have actually been at odds with the rights they are supposed to be designed to "define, implement, preserve, or protect."

The provisions at issue provide that the defense can only initiate contact with the victim through the prosecutor's office; requires the prosecutor to advise the victim of her right to refuse a defense interview but does not require the prosecutor to advise the victim that she has a right to refuse the prosecutors presence at interviews; provides that the prosecutor is not required to pass along written correspondence from the defense to the victim; requires the prosecutor to act as an intermediary between the victim and the defense in the event the victim does consent to be interviewed; permits the prosecutor to record a victim interview even where the victim has elected that the prosecutor not attend the interview; and provides that the court is required to "provide appropriate safeguards" to minimize contact between the victim, the victim's immediate family or witnesses and the defendant's family and witnesses. These provisions do not implement, preserve or protect the right to be free from intimidation, harassment or

2

P-000471

abuse or the right to refuse an interview. In fact, several provisions of the VRA are obviously for the benefit of the prosecution and not for the protection of victims' rights. This is undisputed in the State's response. The State's response also does not dispute that the interests of victims and prosecutors are not necessarily aligned.

These provisions go far beyond the rights enumerated in the VBR, do not support the rights in the VBR and, as is evident in this case, actually conflict with the rights provided to victims in the VBR. While the State responds that the prosecution is neither the "gate-keeper" or "decision-maker" under these statutes, (State's response at pg. 5), it does not dispute that under these provisions the only defense contact with a victim must be through a prosecutor, and the prosecutor is not required to give the victim any written correspondence from the defense. These provisions also require a prosecutor to act as an intermediary between the victim and the defense in the event the victim does consent to be interviewed, the prosecutor informs the defendant when and where the victim elects to be interviewed. Therefore, even when a victim does elect to be interviewed, the defense is not permitted to even schedule the interview with the victim. A prosecutor is also not required to advise the victim that she has a right to refuse a prosecutor's presence at interviews. Finally, even if the victim decides that she does not want a prosecutor to attend a defense interview, the statute permits a prosecutor to record the interview.

A.R.S. §13-4431 and 4433(b)-(e) go well beyond the rights enumerated by the VBR and invade the Court's rulemaking authority by controlling a defendant's ability to investigate, discover and present evidence in her defense. The court, and not the legislature, is empowered to formulate its own procedural rules. *Shumway*, 166 Ariz. at 91, 800 P.2d at 594. As the Supreme Court noted in *Shumway*, to survive constitutional scrutiny, the statutory enactment of the VBA must be limited to the rights created in the statute, "if broadly construed, the rulemaking provision of [the VBA] is a separation of

3

1
powers provision that goes far beyond victims' concerns and therefore does not pertain

2
to the same subject as the rights provisions of the proposal." *Id.* For these reasons,

3
these provisions should be stricken as unconstitutional under Articles Three and Six of

4
the Arizona Constitution.

5
    **II.**    **Sections 4433(b)-(e) and Arizona Rule of Criminal Procedure**

6
                **39(b)(11) Violate Victims' Rights and Conflict with the Victim's Bill**
                 **of Rights**

7

8
       Contrary to the State's assertion in its response that "the County Attorney's

9
Office did nothing to purposefully designate the victims daughters as victims" (State's

10
Response ag pg 5), at Mr. DeMocker's initial appearance on October 24, 2008,

11
Assistant Yavapai County Attorney Hughes requested that Mr. DeMocker have no

12
contact with Katie and Charlotte DeMocker. (Transcript of Initial Appearance at page

13
6, attached as Exhibit A). Mr. Sears explained that both Katie and Charlotte wanted to

14
have contact with their father and wanted to participate in the case. (Id.). In response

15
Mr. Hughes explained that "the victim's rights law is such that the victims are going to

16
have to opt out of – in other words, the victims are going to have to affirmatively ask to

17
have contact. They have not done that." (Id.). Judge Markham responded, "Okay. I

18
think – I think that that's kind of my understanding, too, Mr. Hughes. The ___ might be

19
that they opt out and do want contact with their father, but I will say, Mr. DeMocker,

20
until further notice, no contacting Ruth Simpson, or the mother of the victim, and no

21
contacting either Charlotte or Katie until further notice your daughters. *If they opt out*

22
*of the victims' rights provision and want contact,* they will certainly have the

23
opportunity to let everybody know that, and if they say that, certainly I would unring

24
that particular bell without contacting Charlotte and Katie if that was their wish." (Id.)

25
Pursuant to the County Attorney and Court's direction and the Victims Rights Act, both

26
Charlotte and Katie "opted out" of their rights under the VBR so that they could have

27
contact with their father.

                                      4

28

The direction of the Court and Mr. Hughes requiring Charlotte and Kate to "opt out" was consistent with what the Arizona legislature requires in A.R.S. 13-4433(b)-(e) and what the Arizona Supreme Court countenanced in Rule 39(b)(11)– in direct contradiction to the Victims' Bill of Rights' enumerated rights right to be treated fairly, with respect and dignity and to be free from intimidation, harassment or abuse; the right to receive certain information upon request; the right to be present, and be heard, at criminal proceedings; the right to refuse discovery requests made on behalf of the defendant; the right to confer with prosecutors; the right to read pre-sentence reports available to the defendant pertaining to the crime; the right to receive prompt restitution from the perpetrator or perpetrators; the right to a speedy trial and prompt and final conclusion; and the right to be informed of these rights. *See* Ariz. Const. art. 2, § 2.1(A)(1)-(12).

For this reason 4433(d) and Rule 39(b)(11), which were allegedly designed to implement the VBR, violated the VBR in this insistence. The legislature does not have the authority to restrict rights created by the people through constitutional amendment. *See State v. Roscoe*, 185 Ariz. 68,72-73 912 P.2d 1297, 1301-02 (1996) citing *Turley v. Bolin*, 27 Ariz. App. 345, 554 P.2d 1288 (Ariz. App. 1976).

The Arizona Supreme Court has invalidated provisions of the VRA and Rule 39(b) that conflict with the VBR. *Roscoe*, 185 Ariz. 68, 912 P.2d 1297. Section 4433(b) and Rule 39(b)(11) should be struck as violating the VBR by only providing rights to those victims who agree to be controlled by the prosecution. These rights in the VBR are not limited to this special class of victims. "The language of the constitutional provision is plain, and we may look no further." *Id.*

III.   **Sections 4431 and 4433(b)-(e) and Arizona Rule of Criminal Procedure 39(b)(11) Improperly Interfere with Mr. DeMocker's Sixth Amendment and Due Process Rights**

5

P-000474

The State's response does not dispute that Mr. DeMocker's Sixth Amendment and due process rights require that counsel fully investigate his case and have unadulterated access to witnesses so that he may prepare and present a defense. The State does not deny that a defendant has a due process right, under the federal and Arizona constitutions, to present a defense or that counsel have an obligation to interview witnesses to the crime and interview members of the victim's family and that the work of defense-initiated victim liaisons has become an essential part of the defense function in capital cases.

Instead the State cites to authority that a victim's right to refuse a pretrial interview does not violate due process. This authority is irrelevant and inapposite. A victim's right to refuse a pretrial interview has nothing to do with the Sixth Amendment and due process rights implicated by the prosecution's authority under these statutes to interfere with and control the interaction between the defense and a victim. The State's response also does not address that these provisions giving exclusive access to the prosecution also pose a risk that the prosecutor may improperly interfere with a victim's decision to grant a defense request to meet or for an interview. Section 4431 and 4433(b)-(e) and Arizona Rule of Criminal Procedure 39(b)(11) directly conflict with counsels' obligations under the Sixth Amendment, due process, the ABA Guidelines and Rule 6.8 of the Arizona Rules of Criminal Procedure.

**IV.     Section 4433(b)-(e) and Arizona Rule of Criminal Procedure 39(b)(11) Violate the First Amendment of the United States' Constitution and Article II of the Arizona Constitution**

The State's response makes absolutely no attempt to salvage the provisions of the VRA and Rule 39(b)(11) from the violations of the First and Fourteenth Amendments of the United States Constitution as well as Article II, §§ 4 and 6 of the Arizona Constitution because they are facially overbroad, not the least restrictive means and are an invalid prior restraint on speech.

6

Section 4433(b) and Rule 39(b)(11) fail to satisfy an overbreadth analysis. Contact by defense counsel is constitutionally protected speech for which the government has no compelling interest to justify such an absolute restriction. Section 13-4433 prohibiting all defense contact and Rule 39(b)(11) prohibiting all direct interview requests are likewise not narrowly tailored to further the state's interest in protecting victims of crime from further abuse. These provisions prohibit defense counsel from initiating any contact with a victim.

Moreover, Section 4433(b) and Rule 39(b)(11), restrict both constitutionally protected and unprotected expression, and are substantially overbroad. Section 13-4433(B) and Rule 39(b)(11) prohibit not only the defendant, but defense counsel or any other person acting on behalf of the defendant, from initiating contact with a victim (4433(b)) or to request an interview (Rule 39(b)(11)). The state's legitimate interest in protecting victims can be achieved by means less restrictive than an expansive prohibition on any member of the defense contacting the victim.

Moreover, the state's interest in protecting victims from abuse can be realized without prohibiting defense counsel from contacting the victim. This objective can be attained by limits provided for under Arizona Rule of Criminal Procedure 39(b)(12) (a victim may specify a reasonable date, time, duration and location for an interview or deposition and may terminate the contact if not done in a dignified and professional manner.)

Section 3344(b) and Rule 39(b)(11) are not narrowly tailored to serve the state's interest in protecting victims' rights as enumerated in the VBR, but encompass all classes of speech, including a substantial amount of constitutionally protected speech. Nor are they the least restrictive alternatives for advancing such interests. Thus, the provisions fail under an overbreadth analysis.

7

In addition to infringing on free speech as protected by the U.S. Constitution, the Victims' Rights Implementation Act violates Article II, Section 6 of the Arizona Constitution. Section 4433(b) and Rule 39(b)(11) should be struck as violating the United States and Arizona Constitutions.

## CONCLUSION

The legislature violated the Arizona Constitution when it exceeded its limited rulemaking authority in enacting sections 4431 and 4433(b)-(3) of the VRA. These provisions, along with Rule 39(b)(11), violate both the Arizona and United States Constitutions by violating victims' rights and conflicting with the VBR; violating Mr. DeMocker's Sixth Amendment and due process rights; and violating the free speech guarantees of the First Amendment and Article II, Section 6 of the Arizona Constitution. This Court should strike these provisions as unconstitutional.

For these reasons, Mr. DeMocker requests that this Court declare Sections 4431 and 4433(b)-(e) and Arizona Rule of Criminal Procedure 39(b)(11) unconstitutional.

DATED this ____ day of November, 2009.

By: _____
John M. Sears
P.O. Box 4080
Prescott, Arizona  86302

OSBORN MALEDON, P.A.
Larry A. Hammond
Anne M. Chapman
2929 N. Central Avenue, Suite 2100
Phoenix, Arizona  85012-2793

Attorneys for Defendant

ORIGINAL of the foregoing filed

8

P-000477

this ___th day of November, 2009, with:

Jeanne Hicks,
Clerk of the Court
Yavapai County Superior Court
120 S. Cortez
Prescott, AZ 86303

COPIES of the foregoing hand delivered
this ___th day of November, 2009 to:

The Hon. Thomas B. Lindberg
Judge of the Superior Court
Division Six
120 S. Cortez
Prescott, AZ 86303

Joseph Butner, Esq.
Office of the Yavapai County Attorney
3505 W. Highway 260
Camp Verde, AZ 86322

_____

COPY of the foregoing has been sent
by U.S. Mail this ___th day of November,
2009 to:

Terry Goddard, Arizona Attorney General
Mary O'Grady, Arizona Solicitor General
1275 W. Washington
Phoenix, AZ 85007

Hon. Jim Weiers, Speaker
 of the Arizona House of Representatives
1700 W. Washington, Room 221
Phoenix, AZ 85007

Hon. Timothy S. Bee
President of the Arizona Senate
1700 W. Washington, Room 204
Phoenix, AZ 85007

2510447v1

9

Magistrate Markham: And if we could see the last gentleman by himself, please.

Court Clerk: Yes, sir.

Markham: Do we have a closed door up there?

Court Clerk: Yes, sir.

Markham: Alright. Sir, your name is Steven Carroll DeMocker, sir? Is that right?

Steven DeMocker: Yes, Your Honor.

Markham: Mr. DeMocker, your mailing address, where would that be, sir?

DeMocker: 1716 Alpine Meadows Lane, number 1405.

Markham: Number 1405. Thank you, sir. That's in Prescott?

DeMocker: Correct.

Markham: That part of town, the zip code is--

DeMocker: 86303.

Markham: 86303. Thank you, sir. Now, Mr. DeMocker, were you listening as I told the first gentleman his rights in regards to a criminal case?

DeMocker: Yes, Your Honor.

Markham: Mr. DeMocker, let me know that--let me let you know that your attorney, John Sears, is down here. You can't see him because of where the camera is, but I'll just assure you that Mr. Sears is right next to me here down at the courtroom. Now, Mr. DeMocker, strong suggestion, remember your right to remain silent as I tell you, sir, you've been accused of first degree murder, as well as first degree burglary, armed burglary. Listen for any comments by victim, witness and/or the county attorney's office in this case.

Male: Your Honor, good morning. I spoke with Ruth Kennedy, one of the victims in this matter, this morning early in Nashville, Tennessee. She understands what is going on in this case and she did request that the defendant be held non-bondable. Thank you, Your Honor.

Markham: Yes.

Bill Hughes:   Good morning, Your Honor.  Bill Hughes for the County Attorney's Office.  Your Honor, the state is requesting that, pursuant to Article 2 Section 22, no bond be set in this matter.  It's the state's intention to seek the death penalty in this matter.  I've provided Mr. Sears with a copy of the notice of intent to seek the death penalty.  We have it prepared and ready to file once a cause number is assigned in this matter, and so for those reasons, Your Honor, the state would request that no bond be set in this matter.  Thank you.

Markham:   Thank you.  Mr. Sears, please.

John Sears:   Your Honor, I have not received any discovery or information, even what the court has regarding the states' evidence in this case.  I have represented Mr. DeMocker since the date of these events.  At this point, I want to preserve my right to a *Simpson* hearing in this case.  I ask that the court set one in its earliest opportunity.  I think Mr. Hughes and I can address the time and the scheduling of such a hearing.  Nonetheless, for purposes of today's hearing, the state has the responsibility and the burden of showing to this court that either the proof of guilt of my client as to the capital offense is evident or the presumption of his guilt is great.  If the court has information available to it, I would ask for an opportunity to review that before I specifically address what the state's case is.  My understanding generally is that this is a circumstantial case with no witnesses, no confessions.  I do not know whether the state is claiming to have any physical evidence that would tie my client to these events.  And for that reason, I'd ask just a moment to review what the court has, or if the state has a copy for me before I speak further.

Markham:   Do you have a copy of the probable cause statement?

Sears:   I do, Your Honor.

Markham:   Okay.  So maybe Mr.--

Sears:   If I could step back and just have a moment to do that.

Markham:   Sure.  Let's both read this probable cause statement.  And so we're on hold here, Mr. DeMocker, don't say a word.  And, Mr. Sears, how long has it been slowing down the ____ read this carefully?  Alright, Mr. Sears.

Sears:   Your Honor, having just received this information, I am not in a position, of course, to respond today in any meaningful way, and I would just suggest that the court can see even from this probable cause statement that apparently the police do not have what they believe actually is a murder weapon.  The physical evidence that is referenced has to do with footprints and bike tire tread patterns,

2812660

P-000480

and, beyond that, I don't see anything in my first read through this probable cause statement in case that the state has other physical evidence, this is a circumstantial case. Given the gravity of the offense, I would ask the court to find Mr. DeMocker, for purposes of today's hearing, bondable and set an appropriate bond. If the court's inclined to do that, I'd ask to be allowed to speak directly to bond. But I think, at this point, pending the *Simpson* hearing in this case, that's all I can say. I don't have adequate notice or an opportunity to defend at this point under the case law.

Markham: Okay. Any misuse of the standard proof for a non-bondable request is proof evidence that a person has committed one of the listed offenses, which certainly first degree murder is. Your comments as whether proof of evidence standard has been met or not, so.

Hughes: Your Honor, it's the state's opinion that that proof has been met and is set forth in the probable cause statement. In addition, I believe this court has reviewed a number of the search warrant affidavits that have been filed in this case. Those affidavits flesh out in much greater detail the information that was summarized in the probable cause statement.

Markham: You know, I prefer, _____, that, yes, I've seen affidavits for search warrants, but I prefer that anything that be used at this hearing be, quote, on the record. And so if you want to disclose affidavits for search warrants and have that be part of the record for this decision, I'd let Mr. Sears to have a chance to see that and respond to that that is appropriate, or otherwise I'm kind of--I think I'm going to limit my information for my decision-making purposes to what I'm presented here today.

Hughes: I understand, Your Honor. Your Honor, I believe the purpose of the *Simpson* hearing is to have a complete hearing into the determination of whether proof is _____ or the presumption is great. For purposes of today's hearing, I would ask that the court rely on the probable cause statement that's been provided to it. I believe that that, although, as Mr. Sears says it's a circumstantial case, that the court is aware and Mr. Sears is aware that from a legal standpoint the law makes no distinction between circumstantial and direct evidence and—and, in fact, that's a standard jury instruction in every criminal case. Your Honor, the probable cause statement is clear in the presumption is great and proof is evident. And I would ask that the court set a *Simpson* hearing within a reasonable time as the law requires but that the court hold the defendant without bond until such hearing.

Markham: Okay. And question, *Simpson* hearings would apply only if I find without bond or –and another question, if I do hold him without bond and set a *Simpson* hearing, it

3

P-000481

was my understanding, at least as far as the cases involving somebody allegedly in this country illegally, that the *Simpson* hearing is held at the Superior Court before a court of--on the record, shall we--a court of record, shall we say, and so it would be at least, in that type of case, a Superior Court judge who would be make--having a hearing--

Sears: I would agree with that, Your Honor.

Markham: And so really it would seem to me that, Mr. Sears, that that point about whether it be this court or a court of record, so to speak, to hold a *Simpson* hearing.

Sears: I think *Simpson* hearings can be conducted in this court. If you read *Simpson* and you read a later case, *Sagura versus Kunan*, 530 Ariz. Adv. Rptr. 30, which is an April 24, 2008 court of appeals decision, they talk about applying the time when the Rule 7.4(b) of seven days from the date of the motion, I think we could treat the state's request in open court today as the motion under 13-3961(a) to hold the defendant non bondable, and I think that the--whether the case is in the superior court within seven days or not depends--this is --depends largely on the timing of dates that this court is about to set here today. But I think--I just want to make it clear that I am not conceding that today's hearing is my *Simpson* hearing. The case law is clear that this is not my--

Markham: I think that's--

Hughes: I would agree with that—

Sears: --Simpson hearing. I'm entitled to a--

Markham: I think--

Sears: --hearing where the state has the burden, and I've given more discovery, and we can confront and cross-examine witnesses. So I think, to answer your direct question, I think this court has the ability to say whether it makes sense to do that given what I understand the state's intention is with regard to a probable cause determination is another thing, and I would defer to Mr. Hughes on the timing of that.

Hughes: Your Honor, I would--and Mr. Sears is certainly correct that there is some case law authority for a *Simpson* hearing within seven days. I think he would also agree with me that cases have found that a reasonable time can be as great as 60 or more days. What I would suggest is that this court set a hearing in the early disposition court as it normally does, the early disposition court judge, which would be a superior court judge, could then set the *Simpson* hearing at that judge's

2812660

P-000482

|  |  |
|---|---|
|  | discretion within the deadline that the case law and the rules allow and I--would be my suggestion, Your Honor. |
| Markham: | Okay. Alright. |
| Sears: | May I be _____? |
| Markham: | Yes. Please, Mr. Sears, you can finish saying whatever you want to say. |
| Sears: | Thank you. I've talked informally with Mr. Hughes about this fact. The court has been setting the EDC dates for next Thursday in the Verde. The court noticed that Judge Ainley presides over the disposition court. I'm advised that Mark Ainley has been assigned to this case and I've already met briefly with him here. I think, given the serious nature of these charges, if there were a way to schedule this case on the Tuesday, October 28 EDC calendar, Judge Geiger would take the case there at the state, is ready to go to EDC that day, then I would prefer doing that rather than trying to get another judge to come in next Thursday in Camp Verde just for purposes of conducting what I think is going to be a *pro forma* early disposition court hearing at that time. That's my suggestion. |
| Hughes: | Your Honor, the state would ask that this be set in the normal course. It's not an unusual occurrence for Judge Ainley to have conflicts and, as of this date, it's my experience that she has never had a difficulty finding another superior court judge in the Verde Valley to step in and hear a case on a Thursday EDC setting if she has a conflict. She's done it many times before and I suspect will continue to do that in the future. As far as taking this case to EDC on Tuesday, I don't believe the state will be ready to have the case ready to go EDC in such a short period of time, particularly since today is a Friday and the defendant was just arrested late yesterday afternoon. So I would ask the court to set this in the normal course as it normally would for the Thursday. My office will certainly inform Judge Ainley's judicial assistant of the conflict so she'll be appraised ahead of time, which actually is a luxury that quite often she doesn't have for EDC conflict cases, so there will be an opportunity for her to have another superior court judge available for the Thursday EDC. |
| Markham: | You--I'm going to say that -- you know, let me make a finding and then we'll get back and--I'm going to, for today--for the purpose of today's case, find that there is evident proof of the commission of the offense in what I see. So, yes, at least until further hearing or further motions of it, Mr. DeMocker is going to be held without bond until further notice. Mr. DeMocker, meaning you're just in custody, obviously. Just listen to your attorney's going to talk to you privately, Mr. DeMocker. I will be telling you to obey the laws, not to possess or drink any alcohol. Do not leave the state of Arizona without prior permission of the court. |

P-000483

|          | And no contact with Ms. Kennedy's sister or, you know, what is it you're asking to do about victim's families? |
|----------|---|
| Hughes:  | Your Honor, we'd ask that, at this point, the defendant have no contact with either the victim's mother, who is Ruth Simpson [sic], and the victim's children, who are – and I'm not sure if I have that information in front of me. I believe one of the girls is named Katie, and the other girl is named Charlotte. |
| Sears:   | If I could be heard on that party _____? |
| Markham: | Yes, please. |
| Sears:   | Katherine and Charlotte are my client's children. Katherine's over the age of 18, but Katie was, until yesterday and is today, under the care and custody of my client. I have been involved with this case since the day after this happened. I am very well familiar with the girls, and my strong belief is that they will not want a no-contact order with their father, notwithstanding what the state has alleged here to the contrary. I think they are very much in support of their father, love their father, and want to participate in this case, so I don't think it's appropriate at this time, absent something further from victim witness that affirmatively says that they have invoked their victim's rights and wish no contact, that the court is simply ordering no contact. It may be a moot question for a short period of time while Mr. DeMocker remains in custody. But I just want to make the record clear that, with respect to Katie and Charlotte, they by no means consider themselves victims. |
| Hughes:  | And, Your Honor, I believe that the victim's rights law is such that the victims are going to have to opt out of--in other words, the victims are going to have to affirmatively ask to have contact. They have not done that. We certainly will be having contact with the adult daughter and certainly whoever is going to act as the guardian for the minor daughter and find out what their positions are, and we will keep the court appraised of what we find out. |
| Markham: | Okay. I think –I think that that's kind of my understanding, too, Mr. Hughes. The girls might opt out and do want contact with their father, but I will say, Mr. DeMocker, until further notice, no contacting Ruth Simpson, or the mother of the victim, and no contacting either Charlotte or Katie until further notice by your daughters. If they opt out of the victim's rights provisions and want contact, they will certainly have the opportunity to let everybody know that, and if they say that, certainly I would unring that particular bell without contacting Charlotte and Katie if that was their wish. I'm going to tentatively set a--so it's--I'm held--holding him without bond until further hearing. But, Mr. Hughes, Mr. Sears' comment that a early disposition court really is a *pro forma* thing in this case, |

6                                                    2812660

P-000484

there obviously is not going to be any disposition ultimately at a early disposition court, and so really it's just a matter of seeing a superior court judge and waiting to see what happens as far as either preliminary hearings or grand jury indictments. And so it would seem to me that Mr. Sears' comment makes a certain amount of sense. I was to set something within seven days in case it happens to be my court that we'll be doing this. I happen to know I have no jury trial going next Thursday to set a *Simpson* hearing next Thursday, say starting at 10 o'clock in the morning, and what with the conflict of EDC time down in the Verde on Thursday, and might look at my calendar to say if I'm going to be doing it, Thursday is probably the day that I want to do it within seven days, and so, Mr. Hughes, I guess my inclination—I'll let you respond to it--is to do a special exception set in early disposition court for next Tuesday, October the 28th, at Division 5 of the Superior Court at 8 o'clock in the morning. Obviously, since Mr. DeMocker's in custody, we could hand walk through the paperwork, kind of a, you know, faster than normal fast, as far as getting the paperwork to the Superior Court, at least from our end of things. You know, yes, you'll be having to give disclosure to Mr. Sears, but I guess it's kind of understood that full disclosure's going to be difficult either Tuesday or Thursday in the nature of this type of case, particularly since you've indicated you're going to be filing that special notice. And so, you know--

Hughes: Your Honor, if I could be heard on one scheduling issue, and that would be if Your Honor would consider setting the *Simpson* hearing for a Friday afternoon at some time after noon. And my reason for that request is, if this case were to go to a grand jury proceeding, that grand jury proceeding would likely be on a Friday morning, and I think what would--it would streamline the process quite a bit if it went to that grand jury proceeding. At that point, the Superior Court would have its jurisdiction and would be able to conduct the *Simpson* hearing. So that would be my request. If it doesn't go to grand jury or for some reason there's was a no true show bill at the grand jury--

Sears: Can we put October 31st, please?

Markham: I'm just Mr. Sears--the comment about Friday, I guess, you know, that would actually be the eighth day, I guess, if I count tomorrow as the first day Friday. And so, two weeks, two Fridays from the eighth day. Mr. Sears?

Sears: Your Honor, here's my overarching concern. It has to do with the way in getting in front of a Superior Court judge to have that division, who is ultimately assigned responsibility for this case in the Superior Court, set what I think will be the actual *Simpson* hearing. And so if we went out, even if we went to EDC on Thursday and the State had not taken the case to grand jury at that point, then my limited experience in cases where there's no prior probable cause for termination

7

2812660

and defendant doesn't waive his, that it could add extra delay before we actually wind up in front of a Superior Court judge for an arraignment, which we do the first time when we could get that date scheduled. What I'm looking for is a procedure that would streamline that process where, with counsel participating in some sort of cooperative fashion, we could sooner than that start to pick dates out and perhaps even know where the case is going to be assigned by next Tuesday so that we could work that division to set a *Simpson* date that gives the state time to attempt to present this case to a grand jury. That's my thought. And so a—you know, the Tuesday idea makes sense. That being the case, if I can have that accommodation from the court, and the state knows that that's what I'm going to try to do next Tuesday, then I don't object to setting the *Simpson* hearing in your court on the eighth day, Rule 7.4 notwithstanding, because my expectation is that we're not actually going to conduct it in your court.

Hughes:     And, Your Honor, I think that's reasonable. Mr. Sears has already been in brief contact with Mr. Ainley. And Mr. Ainley will definitely be at that early disposition court hearing. We'll be able to meet with Mr. Sears and have some input at that point as to which division the case gets assigned to in the Superior Court. So I–

Markham:    Okay.

Hughes:     --I would recommend that course of action, also.

Markham:    Okay. Just looking at my calendar on October 31st, Tuesday afternoon, I already have some things set so I'm going to set it for a tentative *Simpson* hearing, should I be the one to do it, for Friday October 31st at 9 o'clock in the morning. So a *Simpson* hearing set for Prescott Justice Court, unless otherwise set in the Superior Court –somebody put in a minute entry--October 31st at 9 o'clock in the morning. I will set an early disposition court procedure in this case for Division 5 on Tuesday, October the 28th, at 8 o'clock in the morning at the Division 5 of the Superior Court. I've already talked about the conditions of release being held without bond and the other no-contact orders. Obviously, if, on Tuesday counsel hear that the *Simpson* hearing is going to be set some place other than the Prescott Justice Court, and we'd appreciate a heads-up so we know whether we're going for real or not. If we do know that there is going to be a *Simpson* for real, I assume that somebody would want a court reporter and so, again, gives a heads-up one way or the other whether that's going to go or not go so we know what to start to plan for. Mr. Hughes, anything further we can do here today's date, though?

Hughes:     No, Your Honor, that would be –

P-000486

Markham:     Mr. Sears?

Sears:       Actually, Your Honor, I think the name of the victim's mother is Ruth Kennedy, not Ruth Simpson. I think we misspoke there.

Hughes:      I would agree. I think it is Ruth Kennedy_____.

Markham:     Okay, so Ruth Kennedy will be the mother of the victim he is to have no contact with, as well as Charlotte and Katie DeMocker, yes.

Sears:       Steve, I'll come up and see you.

Markham:     You hear that? Your attorney's going to come up and see you, Mr. DeMocker.

DeMocker:    Thank you.

Markham:     Alright. Alright. So I guess that will be it then for the day.

2812660

P-000487

# EXHIBIT D

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

|  |  |  |
|---|---|---|
| ARIZONA ATTORNEYS FOR CRIMINAL JUSTICE; et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 2:17-cv-01422-SPL |
| MARK BRNOVICH, in his official capacity as Attorney General of the State of Arizona, | ) ) ) ) | |
| Defendant. | ) ) ) | |

DEPOSITION OF PAUL WILLIAM AHLER, ESQ.

Phoenix, Arizona

January 29, 2018

Prepared by:

Meri Coash, RMR, CRR
Certified Reporter
Certification No. 50327

1                         I N D E X

2   WITNESS                                           PAGE

3     PAUL WILLIAM AHLER, ESQ.

4         Examination by Mr. Fischer                   4

5         Examination by Mr. Roysden                 108

6

7

8

                         EXHIBITS MARKED
9
    EXHIBITS              DESCRIPTION                PAGE
10
    Exhibit 1    13-4401 - Definitions                14
11
    Exhibit 2    Biographical statement and resume    15
12               AZAG005408 - 5411

13  Exhibit 3    13-2921 - Harassment; classification; 57
                 definition
14
    Exhibit 4    Rules of Professional Conduct ER 4.4  60
15
    Exhibit 5    Rules of Professional Conduct ER 8.3  61
16
    Exhibit 6    32-2457 - Grounds for disciplinary    65
17               action; emergency summary suspension;
                 judicial review
18
    Exhibit 7    Defendant's Seventh Supplemental      73
19               Discovery Responses

20  Exhibit 8    13-4433 - Victim's right to refuse an 83
                 interview; applicability
21

22

23

24

25

1              DEPOSITION OF PAUL WILLIAM AHLER, ESQ.,

2     was taken on January 29, 2018, commencing at 9:05 a.m., at

3     the Office of the Attorney General, 2005 North Central

4     Avenue, Phoenix, Arizona, before Meri Coash, a Certified

5     Reporter in the State of Arizona.

6

7                         *    *    *

8     APPEARANCES:

9          For the Plaintiffs:
               LEWIS ROCA ROTHGERBER CHRISTIE, LLP
10             By:  Ian M. Fischer, Esq.
                    201 East Washington Street
11                  Suite 1200
                    Phoenix, Arizona  85004
12                  602-262-5311
                    IFischer@lrrc.com
13

14         For the Defendant:
               OFFICE OF THE ARIZONA ATTORNEY GENERAL
15             By:  Brunn W. Roysden, III, Esq.
                    Oramel H. Skinner, Esq.
16                  Richard L. Baek, Esq.
                    2005 North Central Avenue
17                  Phoenix, Arizona  85007
                    602-542-8327
18                  Beau.Roysden@azag.gov
                    O.H.Skinner@azag.gov
19                  Richard.Baek@azag.gov

20         Also present:  Ms. Jordan Jackson

21

22

23

24

25

1              PAUL WILLIAM AHLER, ESQ.,

2   the witness herein, having been first duly sworn by the

3   Certified Reporter, was examined and testified as follows:

4

5                    EXAMINATION

6   BY MR. FISCHER:

7       Q.   Mr. Ahler, hi.

8       A.   Good morning.

9       Q.   I'm Ian Fischer.  Thank you for your time today.

09:05:20 10          Are you offering testimony in this case as

11  an expert?

12              MR. ROYSDEN:  Objection.  Foundation.

13              MR. FISCHER:  What's the foundation

14  objection?  He --

09:05:30 15              MR. ROYSDEN:  I think that's a lawyer

16  question.

17              MR. FISCHER:  He doesn't know what an expert

18  is or he doesn't know if he's being offered as an expert?

19              MR. ROYSDEN:  Yes, that's our call as

09:05:38 20  counsel.  He's not trial counsel in this case.

21              MR. FISCHER:  So you're saying he doesn't

22  know if he's an expert or not?

23              MR. ROYSDEN:  I'm saying that he can answer

24  the question, but I'm lodging a foundation objection.

09:05:47 25              MR. FISCHER:  But I just want to understand

1  case is the prosecutor's decision.  I mean, you have to

2  take into account their views.  They have a right to

3  confer with you, but they do not have a right to dictate

4  the prosecution or how the case is ultimately handled.

10:09:08  5      Q.    And that's the same if the victim doesn't want to

6  prosecute and you think that a crime has occurred that

7  should be prosecuted, correct?

8      A.    Correct.

9             MR. SKINNER:  We should probably take a

10:09:21  10  break.  I'm noticing also your phone was going.

11             (A recess ensued.)

12  BY MR. FISCHER:

13      Q.    Are there consequences if a defense attorney

14  violates A.R.S. Section 13-4433(B)?

10:27:04  15             MR. SKINNER:  Objection.  Form.

16             THE WITNESS:  Yes.

17  BY MR. FISCHER:

18      Q.    What are they?

19      A.    From my experience, the -- it's usually been

10:27:15  20  handled either informally between the prosecutor and the

21  defense attorney or going to court and advising the court

22  that the attorney has violated that section and have the

23  court direct them not to do that.

24      Q.    When you say "informally," what do you mean?

10:27:44  25      A.    Call them on the phone, say "Look, you know, your

1  investigator or someone contacted the victim in this case.

2  That's not allowed under the statute."

3      Q.   So you're talking about a verbal reprimand for

4  the prosecutor?

10:28:02 5      A.   Well, no, I mean, just --  I wouldn't call it a

6  verbal reprimand.  I think it's just communication.  You

7  know, in other circumstances, you could, you know, put it

8  in a motion and file it with the court.

9      Q.   And what do you think the court could do?

10:28:18 10      A.   Well, it's been my experience the court normally

11  will just advise the attorney of the statute and that's

12  not permitted under the law and not to do it anymore.

13      Q.   So the statute's purely advisory?

14      A.   I'm not sure what you mean.

10:28:38 15      Q.   I mean so the consequences you just described are

16  both the prosecutor advising -- or, the court advising.

17  So is the statute itself just -- is it purely advisory or

18  are any other consequences?

19      A.   I could envision in a more serious scenario where

10:28:55 20  you could ask for sanctions.  I don't recall that ever

21  happening, though, in my practice.

22      Q.   Okay.  So are there any other sanctions that --

23  or, consequences that a defense attorney could take --

24  could face?

10:29:23 25      A.   Possibly a bar complaint.

1  in this case, you would be able to recognize it as a

2  report from Legal Files if it were put in front of you,

3  correct?

4      A.   Yes.

12:02:05  5                MR. ROYSDEN:  Nothing further.

6                MR. FISCHER:  I have no follow-up.

7                MR. ROYSDEN:  We'll read and sign.

8                (The deposition was concluded at 12:02 p.m.)

9

10                        _____

11                             PAUL WILLIAM AHLER, ESQ.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1  STATE OF ARIZONA      )

2  COUNTY OF MARICOPA    )

3          BE IT KNOWN the foregoing deposition was

4  taken by me pursuant to stipulation of counsel; that I was

5  then and there a Certified Reporter of the State of

6  Arizona, and by virtue thereof authorized to administer an

7  oath; that the witness before testifying was duly sworn by

8  me to testify to the whole truth; notice was provided that

9  the transcript was available for signature by the

10  deponent; that the questions propounded by counsel and the

11  answers of the witness thereto were taken down by me in

12  shorthand and thereafter transcribed into typewriting

13  under my direction; that the foregoing pages are a full,

14  true, and accurate transcript of all proceedings and

15  testimony had and adduced upon the taking of said

16  deposition, all to the best of my skill and ability.

17          I FURTHER CERTIFY that I am in no way related to

18  nor employed by any parties hereto nor am I in any way

19  interested in the outcome hereof.

20          DATED at Phoenix, Arizona, this 6th day of

21  February, 2018.

22

23  _____
    Meri Coash, RMR, CRR
24  Certified Reporter #50327

25

# EXHIBIT E

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

ARIZONA ATTORNEYS FOR CRIMINAL      )
JUSTICE, et al.,                    )
                                    )
               Plaintiffs,          )
                                    )  Case No.
       - vs -                       )  2:17-cv-01422-SPL
                                    )
MARK BRNOVICH, in his official      )
capacity as Attorney General of     )
the State of Arizona,               )
                                    )
               Defendant.           )
_____)

DEPOSITION OF JOHN ADAMS CANBY

Phoenix, Arizona
December 5, 2017
1:34 p.m.

Reported by:
Deborah Cleary, RPR/CR
Certified Reporter
Certification No. 50663

1                         I N D E X

2    WITNESS                                          PAGE

3    JOHN ADAMS CANBY

4    Examination by Mr. Skinner                         4

5

6                       ** ** **

7                  EXHIBITS MARKED

8    EXHIBIT              DESCRIPTION              PAGE

9    Exhibit 9        Deposition Notice              7

10

11              PREVIOUSLY MARKED EXHIBITS

12   Exhibit 2        Complaint                      20

13   Exhibit 3        Victims' Bill of Rights        22

14   Exhibit 4.1      Crime Victim Definitions       28

15   Exhibit 5.1      Victims' Right to Refuse Interview   29

16   Exhibit 6        Victims' Rights, Rule 39       33

17

18

19

20

21

22

23

24

25

1       THE DEPOSITION OF JOHN ADAMS CANBY was taken on

2  December 5, 2017, commencing at 1:34 p.m. at the law

3  offices of Lewis Roca Rothgerber Christie, LLP, Collier

4  Center, 201 E. Washington Street, Suite 1200, Phoenix,

5  Arizona, before Deborah Cleary, RPR, CR, a Certified

6  Reporter in the State of Arizona.

7

8                        *     *     *

9

10                  A P P E A R A N C E S

11  Representing the Plaintiffs:

12       LEWIS ROCA ROTHGERBER CHRISTIE, LLP
         By:  Daniel A. Arellano, Esq.
13       By:  Ian M. Fischer, Esq.
         201 E. Washington Street
14       Suite 1200
         Phoenix, Arizona 85004
15       (602) 262-5311
         darellano@lrrc.com
16       ifischer@lrrc.com

17

18  Representing the Defendant:

19       STATE OF ARIZONA
         Office OF THE ARIZONA ATTORNEY GENERAL
20       By:  Oramel H. Skinner, Esq.
         By:  Brunn W. Roysden III, Esq.
21       By:  Richard L. Baek, Esq.
         2005 North Central Avenue
22       Phoenix, Arizona 85007-2926
         (602)542-8327
23       O.H.Skinner@azag.gov
         Beau.Roysden@azag.gov
24       Richard.Baek@azag.gov

25                        *******

                        JOHN ADAMS CANBY,

a witness herein, having been first duly sworn by the

Certified Reporter to speak the truth and nothing but the

truth, was examined and testified as follows:


                        EXAMINATION

BY MR. SKINNER:

01:34:41  Q.   Mr. Canby, hello.  My name's O.H. Skinner.  I'm

01:34:43 from the Arizona Attorney General's office.  And with me

01:34:45 here is Beau Roysden and Richard Baek.

01:34:49      Just to make it easier for everybody, can you

01:34:53 please state and spell your full name so that it's on the

01:34:55 record of the deposition.

01:34:56  A.   Okay.  It's John, J-o-h-n, Adams, A-d-a-m-s,

01:35:03 Canby, C-a-n-b-y.

01:35:03  Q.   And you're a member of the State Bar of Arizona;

01:35:06 correct?

01:35:06  A.   Yes, I am.

01:35:07  Q.   You're a practicing attorney; correct?

01:35:09  A.   Yes.

01:35:09  Q.   Have you ever been deposed in a civil or criminal

01:35:13 case?

01:35:13  A.   No.

01:35:14  Q.   Are you familiar generally with the standard

01:35:17 ground rules for a deposition?

01:51:42 1    Q.   Do you recognize this document?

01:51:43 2    A.   I do.

01:51:44 3    Q.   Can you tell me what it is.

01:51:46 4    A.   My understanding is it's the -- it's a request

01:51:52 5 for an injunction to enjoin the State from enforcing the

01:51:57 6 prohibition against victim contact.

01:51:58 7    Q.   And this is a complaint for declaratory

01:52:02 8 injunctive relief; correct?

01:52:04 9    A.   Correct.

01:52:04 10   Q.   Did you review this complaint before it was filed

01:52:06 11 in court in this action?

01:52:07 12   A.   I believe I did.

01:52:08 13   Q.   Does your participation in this case relate in

01:52:13 14 any way to advancing the rights or interests of criminal

01:52:15 15 defendants that you represent in Arizona state court?

01:52:18 16        MR. ARELLANO:  Objection to foundation.  And

01:52:19 17 also objection on the basis of privilege and attorney work

01:52:22 18 product.

01:52:23 19        Again, you're free to answer to the extent it

01:52:25 20 does not violate your duties under 1.6.

01:52:28 21   A.   Can you ask the question again?

01:52:31 22 BY MR. SKINNER:

01:52:31 23   Q.   Of course.  Does your participation in this case

01:52:33 24 relate in any way to advancing the rights or interests of

01:52:34 25 criminal defendants that you represent in Arizona state

01:52:37 1    court?

01:52:38 2        A.   Yes, it relates to it.  Yes.

01:52:40 3        Q.   How does it relate to it?

01:52:51 4             MR. ARELLANO:  Objection to form.

01:52:52 5        A.   Well, I think if I could exercise my First

01:52:57 6    Amendment right to talk to victims that one of the results

01:53:00 7    might be a benefit to my client.  It might also be a

01:53:02 8    benefit the victim.

        9             THE COURT REPORTER:  A benefit to?

        10             THE WITNESS:  The victim.

01:53:10 11        A.   It might be a benefit to me, too.

01:53:12 12    BY MR. SKINNER:

01:53:12 13        Q.   You are not seeking monetary damages in this

01:53:17 14    case; correct?

01:53:18 15        A.   Correct.

01:53:18 16        Q.   Are you familiar with the Victims' Bill of Rights

01:53:25 17    in the Arizona Constitution?

01:53:26 18        A.   Yes.

01:53:27 19        Q.   It's contained at Arizona Constitution, Article

01:53:30 20    2, Section 2.1; correct?

01:53:32 21        A.   I believe --

01:53:32 22             MR. ARELLANO:  Objection.

        23        A.   -- that's correct.

01:53:33 24             MR. ARELLANO:  Foundation.

        25             (Deposition Exhibit 3 was previously

01:57:06  1    Q.    In what court were those cases pending?

01:57:11  2    A.    The Maricopa County Superior Court.

01:57:13  3    Q.    And "we" being you and your employer?

01:57:16  4    A.    Yes.  I've worked for the Maricopa County Public

01:57:21  5  Defender's office for the past two years.  And prior to

01:57:23  6  that, I worked with Maricopa County Legal Defender's

01:57:26  7  office.

01:57:26  8    Q.    And just to be clear, you believe that in

01:57:29  9  connection with both of those roles and jobs, you and/or

01:57:34 10  your employer was involved in challenges to the Victims'

01:57:39 11  Bill of Rights in Maricopa Superior Court?

01:57:41 12              MR. ARELLANO:  Objection to form and

01:57:41 13  foundation.

01:57:42 14    A.    Yes.

01:57:42 15  BY MR. SKINNER:

01:57:42 16    Q.    Do you have any current plans to challenge any

01:57:56 17  provisions of the Victims' Bill of Rights in a future

01:58:00 18  case?

01:58:00 19              MR. ARELLANO:  Objection to form and

01:58:01 20  foundation.

01:58:01 21    A.    No current plans.

01:58:03 22  BY MR. SKINNER:

01:58:03 23    Q.    Are you familiar with the Victims' Rights

01:58:09 24  Implementation Act which is codified as amended at ARS

01:58:14 25  13-4401 to 13-4442?

02:00:37  1   5.1.

02:00:37  2        A.   It looks like a copy of 13-4433.

02:00:44  3        Q.   Which sections in particular of 13-4433 are you

02:00:48  4   challenging in connection with this case?

02:00:50  5             MR. ARELLANO:   Objection.  Foundation.

02:00:51  6        A.   B.  B.

02:00:59  7   BY MR. SKINNER:

02:00:59  8        Q.   Any other sections?

02:01:01  9             MR. ARELLANO:   Objection.  Foundation.  Form.

02:01:03 10        A.   I don't believe so.

02:01:03 11   BY MR. SKINNER:

02:01:03 12        Q.   Are there any other provisions in the Victims'

02:01:14 13   Rights Implementation Act that you contend are

02:01:16 14   unconstitutional?

02:01:17 15             MR. ARELLANO:   Objection.  Foundation.

02:01:18 16        A.   No.

02:01:19 17   BY MR. SKINNER:

02:01:19 18        Q.   Have you ever been involved in any challenge to

02:01:22 19   any provisions of the Victims' Rights Implementation Act

02:01:25 20   in any of your litigation in Arizona court, state --

02:01:29 21             MR. ARELLANO:   Objection to form.

         22   BY MR. SKINNER:

02:01:30 23        Q.   -- or federal?  I'm sorry.

02:01:30 24        A.   Yes.

02:01:30 25        Q.   Can you identify those cases?

02:01:34  1      A.   We have a case --

02:01:37  2           MR. ARELLANO:  Object.  Objection on the

02:01:37  3  basis of privilege and attorney work product.

02:01:40  4           And I'll note the same instruction that you

02:01:42  5  can answer to the extent --

02:01:43  6      A.   Yeah.

          7           MR. ARELLANO:  -- consistent with 1.6.

02:01:43  8      A.   I do.  I may not be able to go into total detail,

02:01:46  9  but we are in a case pending in Maricopa County Attorney's

02:01:49 10  office -- I mean, Public Defender's office right now, we

02:01:52 11  are seeking permission to contact a victim.

02:01:58 12  BY MR. SKINNER:

02:01:58 13      Q.   You're seeking permission.  Is that through court

02:02:00 14  filings?

02:02:01 15      A.   From the Court, yes.

02:02:02 16      Q.   In what court?

02:02:03 17      A.   Maricopa County Superior Court.

02:02:05 18      Q.   Is that the first such time you have filed papers

02:02:14 19  requesting --

02:02:15 20      A.   I don't think so.  I think I've probably made a

02:02:17 21  similar request in the past, but I can't remember

02:02:20 22  specifically.

02:02:20 23      Q.   In that -- in that earlier request, would that

02:02:28 24  have also been in Maricopa Superior Court if it had

02:02:30 25  occurred?

02:05:02  1  Procedure 39(b)11 in cases where you represent a criminal

02:05:07  2  defendant in Arizona state court?

02:05:10  3                 MR. ARELLANO:   Objection.   Foundation.

02:05:10  4      A.   I do.

02:05:11  5  BY MR. SKINNER:

       6      Q.   Are you challenging the constitutionality of

02:05:12  7  Arizona Rule of Criminal Procedure 39(b)11 in this case?

02:05:15  8                 MR. ARELLANO:   Objection to foundation.

02:05:17  9      A.   Yes.

02:05:17  10  BY MR. SKINNER:

02:05:17  11     Q.   In what way?

02:05:20  12                MR. ARELLANO:   Objection.   Foundation and

02:05:22  13  form.

02:05:23  14     A.   By filing a lawsuit.

02:05:26  15  BY MR. SKINNER:

02:05:26  16     Q.   Have you requested that the judge enjoin Rule

02:05:29  17  39(b)11?

02:05:30  18                MR. ARELLANO:   Objection.   Foundation.

02:05:31  19     A.   The judge?

02:05:34  20  BY MR. SKINNER:

02:05:34  21     Q.   In this case.

02:05:36  22     A.   Oh, this case?

02:05:37  23     Q.   In the case that we are taking the deposition --

02:05:39  24     A.   I --

       25     Q.   -- in.

02:05:39  1      A.    -- believe so, yes.

02:05:40  2      Q.    Do you plan to continue complying with Rule

02:06:02  3  39(b)11 in your criminal cases in which you represent a

02:06:06  4  criminal defendant unless and until the Arizona Supreme

02:06:09  5  Court amends the rule or a court enjoins the rule?

02:06:12  6            MR. ARELLANO:  Objection to form and

02:06:13  7  foundation.

02:06:13  8      A.    Yes.

02:06:13  9  BY MR. SKINNER:

02:06:13 10      Q.    Have you ever been involved in any challenge to

02:06:18 11  Rule 39(b)11 in any other litigation?

02:06:20 12            MR. ARELLANO:  Objection to form.

02:06:22 13      A.    I think I may have in the course of defending a

02:06:26 14  criminal case.

02:06:26 15  BY MR. SKINNER:

02:06:26 16      Q.    In what court would that challenge have been

02:06:29 17  lodged?

02:06:29 18      A.    Maricopa County Superior Court.

02:06:31 19      Q.    Other than through motions, have you ever sought

02:06:36 20  judicial relief in the course of a proceeding or in a

02:06:39 21  hearing from the requirements of Rule 39(b)11?

02:06:43 22            MR. ARELLANO:  Objection to form.

02:06:44 23      A.    No.

02:06:45 24  BY MR. SKINNER:

02:06:45 25      Q.    Do you have any current plans to challenge Rule

02:12:49  1    started talking to me.

02:12:52  2        Q.    After the proceedings had concluded?

02:12:55  3               MR. ARELLANO:  Objection to form.

02:12:57  4        A.    Yes.  Yes, that has occurred.

02:12:59  5    BY MR. SKINNER:

02:12:59  6        Q.    After -- have you ever knowingly initiated

02:13:30  7    contact with a crime victim in a case in which you were

02:13:33  8    not representing the defendant in that case?

02:13:36  9               MR. ARELLANO:  Objection to form and

02:13:36  10   foundation.

02:13:37  11       A.    It depends on what you mean by that.  I'm

02:13:42  12   certainly -- I'm sure I've talked to people who have been

02:13:46  13   victims of crimes just in the course of talking to friends

02:13:47  14   and neighbors and things like that, but it wouldn't have

02:13:50  15   been in the context of my being involved in the case.

02:13:52  16   BY MR. SKINNER:

02:13:52  17       Q.    I'll -- I'll rephrase.  Have you ever initiated

02:13:59  18   contact with a person that you knew to be a crime victim

02:14:04  19   during a case in which -- related to their victim status?

02:14:09  20               MR. ARELLANO:  Objection to form.

02:14:10  21   BY MR. SKINNER:

02:14:10  22       Q.    In which you were not representing the defendant?

02:14:14  23       A.    No, I don't think so.

02:14:15  24       Q.    Are you currently involved in or do you have a

02:14:20  25   concrete plan to be involved in any other representations

02:18:34 1   precluding it in our case under these circumstances would

02:18:38 2   violate our client's constitutional rights.

02:18:40 3   BY MR. SKINNER:

02:18:40 4       Q.   So you have filed papers in Maricopa Superior

02:18:45 5   Court alleging that 13-4433(B) is unconstitutional as

02:18:50 6   applied to a client of yours; correct?

02:18:52 7       A.   Correct.  That -- that if we were not allowed to

02:18:56 8   contact the victim, that would violate the defendant's

02:18:59 9   rights to a fair trial and a full defense.

02:19:01 10      Q.   In those papers, have you identified 13-4433(B)

02:19:14 11  and the failure of the court to allow you to contact a

02:19:17 12  victim directly?

02:19:19 13      A.   I'm not sure that we did.

02:19:21 14      Q.   Have you asserted that preventing you from

02:19:25 15  contacting a victim directly pursuant to 13-4433(B) would

02:19:30 16  violate your client's First Amendment rights when you

02:19:33 17  filed those papers?

02:19:34 18      A.   Probably in addition to Sixth Amendment, Eighth

02:19:39 19  Amendment, 14th Amendment rights.

02:19:42 20      Q.   And those papers are filed in Maricopa Superior

02:19:45 21  Court; correct?

02:19:46 22      A.   Yes.

02:19:46 23      Q.   In presenting those arguments in Maricopa

02:19:56 24  Superior Court, have you alleged that failure to allow you

02:19:59 25  to contact the victim directly would infringe your First

02:20:06  1  Amendment rights?

02:20:06  2          MR. ARELLANO:  Objection to foundation and

02:20:08  3  form.

02:20:08  4      A.   I'm not sure that we've made that argument.  And

02:20:10  5  I do want to go back a question.

02:20:12  6          When you asked about the defendant's First

02:20:14  7  Amendment rights, I don't believe we've actually argued it

02:20:16  8  under the defendant's First Amendment rights.  We argued

02:20:18  9  under the Sixth Amendment, Eighth Amendment, and the 14th

02:20:22 10  Amendment.

02:20:22 11  BY MR. SKINNER:

02:20:22 12      Q.   Okay.  So you have not alleged a First Amendment

02:20:24 13  violation in those Maricopa Superior Court filings?

02:20:27 14          MR. ARELLANO:  Objection to form.

02:20:28 15      A.   I'm not sure that we did.  It's possible we did.

02:20:38 16  BY MR. SKINNER:

02:20:38 17      Q.   Is there anything preventing you from alleging in

02:20:45 18  those papers that we've just been discussing --

         19      A.   Uh-huh.

02:20:48 20      Q.   -- that a failure to allow you to directly

02:20:52 21  contact the victim in that case would violate your First

02:20:56 22  Amendment rights?

02:20:56 23          MR. ARELLANO:  Objection.  Foundation.

02:20:57 24      A.   I don't believe -- just the relevance.  In other

02:21:05 25  words, I can file anything I want, but it would -- it

02:21:08  1   might be quickly dismissed as irrelevant since I'm not the

02:21:12  2   defendant.

02:21:13  3   BY MR. SKINNER:

02:21:13  4       Q.   Is there anything preventing you from alleging

02:21:16  5   that the same restriction violates your client criminal

02:21:21  6   defendant's First Amendment rights in addition to the

02:21:24  7   other constitutional claims that you've advanced?

02:21:27  8       A.   Nothing --

02:21:27  9            MR. ARELLANO:   Objection to foundation and

02:21:28 10   form.

02:21:28 11       A.   Nothing that I'm aware of would prevent alleging

         12   it.

02:21:31 13   BY MR. SKINNER:

02:21:31 14       Q.   If you obtain the relief that you're seeking in

02:21:47 15   this present pending action --

         16       A.   Uh-huh.

02:21:50 17       Q.   -- would that effectively allow you to directly

02:21:53 18   contact a crime victim in the case in which you currently

02:21:56 19   have a request pending in Maricopa Superior Court?

02:21:59 20            MR. ARELLANO:   Objection.   Foundation.

02:22:00 21       A.   I believe it effectively would, yes.

02:22:02 22   BY MR. SKINNER:

02:22:02 23       Q.   In your current pending Maricopa Superior Court

02:22:10 24   case in which we are discussing the request to initiate

02:22:13 25   direct contact notwithstanding the provisions of

02:27:48  1    mean, like told to be quiet and sit down.

02:27:50  2    BY MR. SKINNER:

02:27:50  3        Q.    Anything more formal than --

         4        A.    No.

02:27:53  5        Q.    -- saying --

02:27:53  6        A.    No, I don't believe so.

02:27:54  7        Q.    Have you ever had a prosecutor threaten you with

02:28:00  8    prosecution in any way related to ARS 13-4433(B)?

02:28:06  9              MR. ARELLANO:  Objection to form.

02:28:07 10        A.    Not an individual prosecutor, no.

02:28:10 11    BY MR. SKINNER:

02:28:10 12        Q.    Has a prosecutor's office or -- when you say no,

02:28:16 13    you mean no individual prosecutor has --

02:28:17 14        A.    I believe that the aggressiveness with which that

02:28:19 15    office has pursued the issue puts us all on notice that

02:28:24 16    we'd better be careful in that area.  And so in that

02:28:28 17    terms, it feels like a threat, yes.

02:28:29 18        Q.    But you've never received a personal threat from

02:28:32 19    a prosecutor relating to prosecution in connection with

02:28:38 20    ARS 13-4433(B); correct?

02:28:40 21              MR. ARELLANO:  Objection to form.

02:28:42 22        A.    No.

02:28:42 23    BY MR. SKINNER:

02:28:42 24        Q.    Are you aware of a prosecutor directly

02:28:45 25    threatening anyone with prosecution in any way related to

02:28:48  1  | ARS 13-4433(B)?

02:28:51  2  |         MR. ARELLANO:  Objection to form and

02:28:52  3  | foundation.

02:28:53  4  |     A.    Not personally aware of them threatening criminal

02:28:58  5  | prosecution, no.

02:28:59  6  | BY MR. SKINNER:

02:28:59  7  |     Q.    Has an attorney on a case team with you or in

02:29:05  8  | which you were working on behalf of a criminal defendant

02:29:08  9  | ever been sanctioned by a court or a judge?

02:29:10 10  |         MR. ARELLANO:  Objection to form.

02:29:11 11  |     A.    I'm sure they have.

02:29:13 12  | BY MR. SKINNER:

02:29:13 13  |     Q.    Has an attorney on a case team with you or in

02:29:20 14  | connection with -- on the same defense team for any of the

02:29:23 15  | cases in which you represent a criminal defendant ever

02:29:25 16  | been sanctioned by a court or judge in connection with ARS

02:29:30 17  | 13-4433(B)?

02:29:30 18  |         MR. ARELLANO:  Objection to form and

02:29:31 19  | foundation.

02:29:32 20  |     A.    I don't believe so.

02:29:33 21  | BY MR. SKINNER:

02:29:33 22  |     Q.    You have never knowingly provided ineffective

02:29:40 23  | assistance of counsel to a client; correct?

02:29:43 24  |         MR. ARELLANO:  Objection to form and

02:29:44 25  | foundation.

02:38:47 1    Amendment rights of your client?

02:38:49 2        A.    No.   Actually, I don't think that claim's in

02:38:51 3    there.   I think that that is true, but I don't think we've

02:38:55 4    claimed that in this --

02:38:55 5        Q.    Okay.   So you believe that ARS 13-4433(B)

02:39:02 6    infringes the Sixth Amendment confrontation rights of

02:39:02 7    criminal defendants, including criminal defendants for

02:39:03 8    whom you're currently representing?

02:39:04 9                MR. ARELLANO:   Objection.   Foundation.

02:39:05 10       A.    Not confrontation rights, but rights to prepare

02:39:08 11   for trial to adequately defend against charges.

         12                THE COURT REPORTER:   And that includes?

02:39:16 13       A.    Rights to adequately defend against the charges.

02:39:16 14               MR. ARELLANO:   Counsel, whenever you're at a

         15   good stopping point, we're probably due for a break at

02:39:21 16   some point soon.

02:39:21 17               MR. SKINNER:   Okay.   Maybe one or two more --

02:39:22 18               MR. ARELLANO:   Okay.

         19               MR. SKINNER:   -- questions.

02:39:23 20               MR. ARELLANO:   It's up to you.

02:39:25 21   BY MR. SKINNER:

02:39:27 22       Q.    In the current cases in which you represent a

02:39:30 23   criminal defendant, have you filed any papers?   Other than

02:39:34 24   the one that we've already discussed, have you filed any

02:39:36 25   papers alleging that 13-4433(B) infringes the Sixth

02:54:18  1      Q.   Would your client's Sixth Amendment rights be
02:54:24  2  implicated at all?
02:54:24  3                 MR. ARELLANO:  Objection.  Foundation.
02:54:26  4      A.   Possibly.
02:54:27  5  BY MR. SKINNER:
02:54:34  6      Q.   In a case where a victim is represented by a
02:54:36  7  private attorney, you're not allowed without violating the
02:54:39  8  ethical rules to contact the victim directly but rather
02:54:44  9  must go through the victim's attorney; correct?
02:54:46 10                 MR. ARELLANO:  Objection to form and
02:54:47 11  foundation.
02:54:47 12      A.   So the victim has retained an attorney?  Not the
02:54:50 13  prosecutor we're talking about here?
         14  BY MR. SKINNER:
02:54:52 15      Q.   Correct.
02:54:52 16      A.   Yeah, I mean, that's correct, yes.
02:54:54 17      Q.   Is that a violation of your First Amendment
02:54:56 18  rights?
02:54:57 19                 MR. ARELLANO:  Objection.  Foundation.
02:54:58 20      A.   It could be.
         21  BY MR. SKINNER:
02:55:00 22      Q.   Have you ever been part of an action challenging
02:55:02 23  the ethical rules as being violative of your First
02:55:07 24  Amendment rights?
02:55:07 25      A.   No.

1  BY MR. SKINNER:

02:56:16  2      Q.   You earlier said that you do not supervise any

02:56:21  3  attorneys or investigators in your current role; correct?

02:56:24  4      A.   Correct.

02:56:25  5      Q.   If you were to supervise an investigator on a

02:56:28  6  defense team in which you were an attorney, you would have

02:56:32  7  a duty to supervise that investigator; correct?

02:56:35  8           MR. ARELLANO:  Objection.  Foundation.

02:56:36  9      A.   Correct.  But lawyers on a capital team -- and

02:56:40 10  that's the context I've been working on for years -- have

02:56:44 11  a duty to direct the activities of their investigator,

02:56:47 12  yes.

02:56:47 13  BY MR. SKINNER:

02:56:49 14      Q.   As an attorney, you are subject to professional

02:56:52 15  discipline if an investigator or anyone else on the

02:56:54 16  defense team engages in actions that violate the rules of

02:56:58 17  professional conduct?

02:56:59 18           MR. ARELLANO:  Objection.  Foundation.

02:57:00 19      A.   Yes, under some circumstances.

20  BY MR. SKINNER:

02:57:09 21      Q.   As an attorney, are you subject to court sanction

02:57:12 22  if an investigator or anyone else on the defense team

02:57:14 23  engages in actions that violate the Court's rules and

02:57:17 24  orders in a particular case?

02:57:19 25           MR. ARELLANO:  Objection to form and

02:57:20  1    foundation.

02:57:20  2        A.    It could be depending on the circumstances.

        3    BY MR. SKINNER:

02:57:28  4        Q.    You cannot insulate yourself from discipline,

02:57:32  5    sanction or -- discipline or sanction by having a defense

02:57:39  6    investigator do something that you as a lawyer are not

02:57:43  7    permitted to do; correct?

02:57:44  8                MR. ARELLANO:    Objection.

        9        A.    Correct.

02:57:47 10                MR. ARELLANO:    Form and foundation.

02:57:48 11        A.    Correct.

       12    BY MR. SKINNER:

02:57:53 13        Q.    Under Arizona law, crime victims as defined in

02:57:57 14    the statute have a right to refuse any interview or

02:58:00 15    discovery request with a member of the defense team;

02:58:03 16    correct?

02:58:04 17                MR. ARELLANO:    Objection.    Foundation.

02:58:05 18        A.    Correct, although I do believe there's a

02:58:07 19    limitation when it involves a discovery request.

       20    BY MR. SKINNER:

02:58:15 21        Q.    This action does not challenge the crime victim's

02:58:18 22    right to refuse a defense interview; correct?

02:58:23 23                MR. ARELLANO:    Objection.    Foundation.

02:58:24 24        A.    I don't believe so.

02:58:24 25    BY MR. SKINNER:

03:07:35  1        A.    Not if I had --

03:07:35  2                MR. ARELLANO:  Objection.  Form and

03:07:36  3    foundation.

03:07:36  4        A.    I don't believe so, not if I had the court order

03:07:39  5    saying that I'd asked permission and been granted it by

03:07:42  6    the judge.

          7    BY MR. SKINNER:

03:07:43  8        Q.    If you are successful in this case --

03:07:45  9        A.    Uh-huh.

03:07:46 10        Q.    -- would you be subject to prosecution --

03:07:48 11                MR. ARELLANO:  Objection.  Foundation.

         12    BY MR. SKINNER:

03:07:50 13        Q.    -- for doing that?

03:07:51 14        A.    As a practical matter, I don't think I would.

03:07:57 15        Q.    Are you aware of any attorney who's been charged,

03:07:59 16    indicted, had an information filed, or has been prosecuted

03:08:04 17    simply based on directly initiating contact with a crime

03:08:08 18    victim, identifying themselves, identifying their

03:08:12 19    employer, and asking whether the victim will submit to an

03:08:15 20    interview?

03:08:15 21                MR. ARELLANO:  Objection.  Form.

03:08:17 22        A.    I don't think anybody's doing that.

         23    BY MR. SKINNER:

03:08:22 24        Q.    We may have covered this earlier, but you're not

03:08:25 25    suing the State Bar of Arizona in this case; correct?

03:13:01  1    cases where the victim is a witness is to assess the

03:13:05  2    victim's credibility and strength as a witness to aid your

03:13:09  3    representation of your client; correct?

03:13:12  4                    MR. ARELLANO:  Objection to form.

03:13:13  5        A.    That's not the purpose.  That is a purpose.

          6    BY MR. SKINNER:

03:13:16  7        Q.    What is -- what is -- what is the purpose?

03:13:18  8        A.    Typically in a capital case, it can be often the

03:13:24  9    victim, the statutory victim, in other words, the victim

03:13:27 10    who meets this definition is not somebody who actually

         11    witnessed the crime or anything like that.  It's somebody

03:13:29 12    related.  In that context, they often have mitigation

03:13:35 13    evidence that might lessen the penalty for our client.

03:13:37 14    That's often one of the goals.

03:13:39 15                    But another goal is to offer to provide

03:13:41 16    information to people who are embarking on a long journey

03:13:47 17    and what that means for them and what they can expect,

03:13:52 18    what -- oftentimes what information about the crime they

03:13:57 19    may want to know I can offer to answer some of their

03:14:00 20    questions.

03:14:04 21        Q.    So in contacting -- in contacting a victim, is it

03:14:12 22    correct from what you've just said in saying that you're

03:14:16 23    advancing the representation of your client and also

03:14:20 24    aiding the victim?

03:14:21 25        A.    I believe so.

03:15:22  1              MR. ARELLANO:  Objection.  Form.

2       A.   -- not.  Sorry.

03:15:23  3              MR. ARELLANO:  Foundation.

03:15:23  4       A.   Probably not.

5  BY MR. SKINNER:

03:15:28  6       Q.   In the same circumstance where 13-4433(B) was

03:15:32  7  fully enjoined and you directly initiated contact with a

03:15:35  8  crime victim where you represented a criminal defendant,

03:15:39  9  would you plan on clearly identifying yourself as a

03:15:42 10  defense attorney from the Maricopa County public

03:15:45 11  defender's office --

12              MR. ARELLANO:  Objection to form.

13  BY MR. SKINNER:

03:15:46 14       Q.   -- representing a criminal defendant in that

03:15:48 15  case?

03:15:48 16              MR. ARELLANO:  Objection to form and

03:15:49 17  foundation.

03:15:50 18       A.   Yes, I believe I would.

03:15:51 19  BY MR. SKINNER:

03:15:51 20       Q.   Would you do so at the outset of your

03:15:54 21  interaction?

03:15:55 22       A.   Yes, I believe so.

03:15:57 23       Q.   In the same circumstance where enforcement of ARS

03:16:01 24  13-4433(B) was fully enjoined and you followed your plan

03:16:05 25  to initially -- to directly initiate contact with a crime

03:16:08  1    victim in a case where you represented a criminal

03:16:11  2    defendant, would you immediately cease contact if the

03:16:13  3    victim informed you that they did not want to talk to you?

03:16:16  4             MR. ARELLANO:  Objection to form and

03:16:17  5    foundation.

03:16:18  6         A.   Yes.

        7    BY MR. SKINNER:

03:16:22  8         Q.   Would you make an effort in that circumstance to

03:16:25  9    contact the victim again in the future?

03:16:27 10             MR. ARELLANO:  Objection.  Foundation.

03:16:29 11         A.   Only if I had some reason to believe the result

03:16:33 12    would be different.

       13    BY MR. SKINNER:

03:16:40 14         Q.   In that same circumstance where 13-4433(B) was

03:16:44 15    fully enjoined, would you directly initiate contact with

03:16:47 16    any victim with the intent to influence the testimony of

03:16:50 17    that victim?

03:16:51 18             MR. ARELLANO:  Objection to form and

03:16:52 19    foundation.

03:16:53 20         A.   Well, on the capital case, the testimony, there's

03:16:56 21    more than just -- there's witness testimony.  There's also

03:16:59 22    victim impact statements, things like that.  I mean, if as

03:17:05 23    a result of my talking to the client they no longer wished

03:17:08 24    to pursue the death penalty, that would be a benefit, I

03:17:12 25    believe, for both the victim and my client.

03:48:13  1      Q.   So you've paid no monies to date to any of your

03:48:16  2   attorneys related to this matter; correct?

03:48:17  3      A.   No.

03:48:31  4              MR. SKINNER:  With that, I think we can

03:48:34  5   adjourn the deposition.

03:48:34  6              MR. ROYSDEN:  Just for the record, we adjourn

03:48:34  7   subject to the privilege, you know, the right to challenge

03:48:37  8   the privilege that's been asserted.

03:48:38  9              MR. SKINNER:  Same grounds we asserted

03:48:39 10   earlier, the privilege issues that we've been teed up in

03:48:41 11   here.

03:48:41 12              MR. ARELLANO:  You're referring specifically

03:48:42 13   to ER 1.6?

03:48:44 14              MR. SKINNER:  Yes.

03:48:44 15              MR. ROYSDEN:  And attorney client and work

03:48:46 16   product any time that the witness declined to answer on

03:48:48 17   those bases.

03:48:50 18              MR. ARELLANO:  Okay.

03:48:52 19              MR. FISCHER:  He'll read and sign.

03:49:16 20

         21              (Deposition concluded at 3:49 p.m.)

         22

         23

         24        _____
                        JOHN ADAMS CANBY
         25

1 | STATE OF ARIZONA          )
   |                          ) ss.
2 | COUNTY OF MARICOPA        )

3 |         BE IT KNOWN that the foregoing deposition was

4 | taken by me, Deborah Cleary, RPR, a Certified Reporter,

5 | Certificate #50663, for the State of Arizona, and by

6 | virtue thereof authorized to administer an oath; that the

7 | witness before testifying was duly sworn by me to testify

8 | to the whole truth; that the questions propounded by

9 | counsel and the answers of the witness thereto were taken

10 | down by me in shorthand and thereafter reduced to print by

11 | computer-aided transcription under my direction; that

12 | pursuant to request, notification was provided that the

13 | deposition is available for review and signature; that the

14 | foregoing pages are a full, true and accurate transcript

15 | of all proceedings and testimony had and adduced upon the

16 | taking of said deposition, all to the best of my skill and

17 | ability.

18 |         I FURTHER CERTIFY that I am in no way related to

19 | nor employed by any of the parties hereto, nor am I in any

20 | way interested in the outcome hereof,

21 |         DATED at Phoenix, Arizona, this 15th day of

22 | December, 2017.

23 |

24 |                    _____
   |                    Deborah Cleary, RPR/CR
   |                    Certified Reporter
25 |                    Certificate No. 50663

# EXHIBIT F

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

ARIZONA ATTORNEYS FOR CRIMINAL )
JUSTICE, et al., )
)
Plaintiffs, )
) Case No.
- vs - ) 2:17-cv-01422-SPL
)
MARK BRNOVICH, in his official )
capacity as Attorney General of )
the State of Arizona, )
)
Defendant. )
_____)

DEPOSITION OF RICHARD DAVID RANDALL

Phoenix, Arizona
December 5, 2017
9:04 a.m.

Reported by:
Deborah Cleary, RPR/CR
Certified Reporter
Certification No. 50663

```
 1                    I N D E X
 2   WITNESS                                      PAGE
 3   RICHARD DAVID RANDALL
 4   Examination by Mr. Roysden                      4
 5
 6                    ** ** **
 7
 8                 EXHIBITS MARKED
 9   EXHIBIT            DESCRIPTION              PAGE
10   Exhibit 1      Deposition Notice              8
11   Exhibit 2      Complaint                     82
12   Exhibit 3      Victims' Bill of Rights       23
13   Exhibit 4      13-4401, Crime Victims' Rights  49
14   Exhibit 5      Victims' Right to Refuse Interview  24
15   Exhibit 6      Rule 39 Victims' Rights       26
16   Exhibit 7      ER 4.2, Communications        39
17   Exhibit 8      Disposition Summary           79
18
19
20
21
22
23
24
25
```

1          THE DEPOSITION OF RICHARD DAVID RANDALL was taken

2    on December 5, 2017, commencing at 9:04 a.m. at the law

3    offices of Lewis Roca Rothgerber Christie, LLP, Collier

4    Center, 201 E. Washington Street, Suite 1200, Phoenix,

5    Arizona, before Deborah Cleary, RPR, CR, a Certified

6    Reporter in the State of Arizona.

7

8                         *     *     *

9

10                    A P P E A R A N C E S

11   Representing the Plaintiffs:

12        LEWIS ROCA ROTHGERBER CHRISTIE, LLP
          By:  Daniel A. Arellano, Esq.
13        By:  Ian M. Fischer, Esq.
          201 E. Washington Street
14        Suite 1200
          Phoenix, Arizona 85004
15        (602) 262-5311
          darellano@lrrc.com
16        ifischer@lrrc.com

17

18   Representing the Defendant:

19        STATE OF ARIZONA
          Office OF THE ARIZONA ATTORNEY GENERAL
20        By:  Brunn W. Roysden III, Esq.
          By:  Oramel H. Skinner, Esq.
21        By:  Richard L. Baek, Esq.
          2005 North Central Avenue
22        Phoenix, Arizona 85007-2926
          (602)542-8327
23        Beau.Roysden@azag.Gov
          O.H.Skinner@azag.gov
24        Richard.Baek@azag.gov

25                         *******

|   |   |
|---|---|
| 1 | RICHARD DAVID RANDALL, |
| 2 | a witness herein, having been first duly sworn by the |
| 3 | Certified Reporter to speak the truth and nothing but the |
| 4 | truth, was examined and testified as follows: |
| 5 | |
| 6 | EXAMINATION |
| 7 | BY MR. ROYSDEN: |
| 09:04:12 8 | Q.   Could you please state your full name for the |
| 09:04:14 9 | record. |
| 09:04:15 10 | A.   Do you want my middle name, too? |
| 09:04:16 11 | Q.   Yes, please. |
| 09:04:16 12 | A.   Okay.   Richard David Randall. |
| 09:04:18 13 | Q.   Have you ever appeared before as a witness in any |
| 09:04:21 14 | court proceeding? |
| 09:04:25 15 | MR. ARELLANO:  Objection.  Form. |
| 09:04:26 16 | A.   I'm trying to think.  In my sister's child |
| 09:04:30 17 | custody case in like around '81 or 2, I appeared -- I |
| 09:04:38 18 | don't know if I was ever called.  I mean, we talked to the |
| 09:04:41 19 | Court, but I think it was informally.  That's the only |
| 09:04:44 20 | thing I can think of -- and a speeding ticket where I |
| 09:04:47 21 | represented myself. |
| 09:04:47 22 | BY MR. ROYSDEN: |
| 09:04:47 23 | Q.   Have you ever been deposed or interviewed as a |
| 09:04:51 24 | witness before in a civil case? |
| 09:04:52 25 | A.   I've been deposed in a car accident case.  Never |

09:15:28  1          But my primary emphasis is working in our capital

09:15:33  2   division where I'm representing clients that are facing

09:15:37  3   the death penalty.

09:15:38  4          Q.   If you had to estimate, about how many vehicular

09:15:43  5   cases do you still have on your caseload?

09:15:46  6          A.   At the present time, I only have one active

09:15:48  7   vehicular case.  They come up from time to time

09:15:52  8   unexpectedly because of lawsuits that arose out of the

09:15:56  9   accidents that created the crime.

09:15:59 10          Q.   Does that case have one or more victims within

09:16:02 11   the meaning of ARS 13-4401?

09:16:03 12          A.   Yes, it has a victim.

09:16:05 13          Q.   What is the current procedural status of that

09:16:08 14   case?  Is it pending in Superior Court?

09:16:11 15          A.   The case is pending in Superior Court before two

09:16:22 16   judges.  The restitution part of it, we're waiting for an

09:16:26 17   order from Judge Padilla.

09:16:31 18          And the -- my client is on probation and has been

09:16:36 19   having probation hearings for probation violations.  And

09:16:39 20   that's in front of one of the attorneys in the -- one of

09:16:42 21   the judges in the PVNO.

09:16:44 22          Q.   Do you know the name of that --

09:16:45 23          A.   Probation violation unit.

09:16:46 24          Q.   Do you know the name of that case by any chance?

09:16:49 25          MR. ARELLANO:  Objection on the basis of

09:16:50  1   privilege and attorney work product.

09:16:53  2              You can answer to the extent it doesn't

09:16:54  3   violate your duties under ER 1.6.

09:16:58  4       A.   I'm uncomfortable giving you that information.

09:17:01  5   BY MR. ROYSDEN:

09:17:02  6       Q.   Okay.  In terms of your capital caseload, how

09:17:05  7   many current cases are you working on in the capital?

09:17:06  8       A.   One.

09:17:07  9       Q.   One case.  And what is the procedural posture of

09:17:10 10   that case?

09:17:11 11       A.   Going to trial in January.

09:17:12 12       Q.   Does that case have one or more victims within

09:17:14 13   the meaning of ARS 13 --

09:17:16 14       A.   Yes.

09:17:17 15       Q.   -- 4401?  In your vehicular case, did you make a

09:17:21 16   request to the prosecutor to initiate contact with one or

09:17:25 17   more victims pursuant to ARS 13-4433(B)?

09:17:30 18       A.   That case, man, I'm uncomfortable giving you

09:17:35 19   specifics because that information arose in my

09:17:38 20   representation of my client.

09:17:40 21       Q.   So for purposes of today's deposition, you

09:17:42 22   decline to answer that question?

09:17:43 23       A.   Right.

09:17:44 24       Q.   In your capital case, have you made a request to

09:17:48 25   interview -- strike that.

09:17:50  1          In your capital case, have you made a request to
09:17:52  2     initiate contact with one or more victims pursuant to ARS
          3     13-4433(B)?
09:17:59  4          A.   Yes.  And I would like to clarify that if I can.
          5     Would this --
          6          Q.   Please.
09:18:01  7          A.   -- be a good time?
09:18:03  8          In our interrogatories, that is -- that is an
09:18:05  9     active case.  In our interrogatories, I had given that
09:18:10 10     information to my attorneys that in one of the questions
09:18:15 11     you guys had was whether or not we had asked to interview
09:18:19 12     a victim and been told no and didn't get a response from
09:18:25 13     the State.
09:18:25 14          I listed the Gonzalez Dominguez case and said
09:18:29 15     that we had contacted the prosecutor and had not received
09:18:32 16     an answer back from him.  So I would like to clarify that
09:18:37 17     because --
09:18:37 18          Q.   Please do.
09:18:38 19          A.   -- things have happened since that time.
09:18:41 20          So we did finally get an answer.  We thought we
09:18:45 21     had an answer from the prosecutor's office that -- that
09:18:48 22     they had reached out to the victim, this victim, who was a
09:18:52 23     secondary victim.  And the understanding was that they
09:18:59 24     would arrange for us to communicate with the victim and
09:19:01 25     the victim wanted to talk to us.

09:36:31  1                    MR. ARELLANO:  Objection.  Foundation.

09:36:32  2        A.   I don't believe so.

09:36:34  3   BY MR. ROYSDEN:

09:36:34  4        Q.   If ARS 13-4433(B) were declared unconstitutional

09:36:44  5   by this court but Arizona Rule of Criminal Procedure

09:36:48  6   39(b)11 was not declared unconstitutional by this court,

09:36:53  7   would you directly initiate contact with victims in

09:36:58  8   criminal cases?

09:36:59  9                    MR. ARELLANO:  Objection.  Foundation.

09:37:06 10        A.   I would move cautiously, but I would probably

09:37:10 11   initiate some kind of pleadings that the difference is

09:37:17 12   unconstitutional in and of itself and try to do that

09:37:21 13   without directly -- you know, with some kind of court

09:37:24 14   order or some kind of court permission.

09:37:26 15   BY MR. ROYSDEN:

09:37:26 16        Q.   And you would file those pleadings in the trial

09:37:29 17   court where your criminal cases are pending; correct?

09:37:32 18                    MR. ARELLANO:  Objection.  Foundation.

09:37:33 19        A.   On a case-by-case basis, you know, where I'm

09:37:43 20   representing the client and someone else is representing

09:37:46 21   me, yes, I would.

09:37:48 22   BY MR. ROYSDEN:

09:37:48 23        Q.   Let me rephrase because I don't think I follow

09:37:54 24   you.

09:37:54 25        A.   Okay.

09:37:55  1      Q.   In a case where you are representing a defendant

        2  --

        3      A.   Right.

09:37:58  4      Q.   -- in a criminal proceeding --

09:38:00  5      A.   Right.

09:38:01  6      Q.   -- you mentioned that you would file pleadings

09:38:03  7  with the court.  And just to clarify, was the court you

09:38:05  8  were talking about the criminal trial court where the case

09:38:09  9  was pending?

09:38:09 10           MR. ARELLANO:  Objection.  Foundation.

09:38:10 11      A.   Yes, right.  I just want to clarify that I'm not

09:38:14 12  -- I'm not a plaintiff in those cases.  I'm representing

09:38:15 13  another person.

09:38:17 14  BY MR. ROYSDEN:

09:38:17 15      Q.   But with that clarification, the answer is yes,

09:38:20 16  you would file the pleading in the trial court where the

09:38:23 17  criminal case is pending?

09:38:24 18      A.   Yes.

09:38:25 19      Q.   I'd like to just go back.  The case we've been

09:38:32 20  talking about primarily is State v Gonzalez Dominguez; is

09:38:36 21  that correct?

09:38:36 22      A.   That's the case that we gave you in the

09:38:39 23  interrogatories.

09:38:39 24      Q.   And that's the case where you represent a capital

09:38:43 25  defendant?

10:05:52  1    also on the basis of privilege and work product to the

2    extent it would require you to identify particular matters

10:05:57  3    and clients.

10:05:57  4         A.   Could you state the question again?

10:05:58  5    BY MR. ROYSDEN:

10:05:58  6         Q.   Sure.  Does your participation as a plaintiff in

10:06:00  7    this case relate in any way to advancing the rights and

10:06:05  8    interests of the criminal defendants that you represent in

10:06:08  9    your professional capacity?

10:06:10 10         A.   Yes.

10:06:10 11         Q.   Did you review plaintiff's opposition to

10:06:15 12    defendant's motion to dismiss in this case?

10:06:17 13         A.   I don't remember if I did.

10:06:25 14         Q.   That's fair.  Did you review plaintiff's motion

10:06:29 15    for preliminary injunction in this case?

10:06:30 16         A.   I believe I reviewed that.

10:06:35 17         Q.   Did you review the reply and support of the

10:06:40 18    motion for preliminary injunction in this case?

10:06:43 19         A.   I don't remember.

10:06:44 20         Q.   You're not seeking any monetary damages against

10:06:51 21    the State or any state officer in this case, are you?

10:06:55 22         A.   Correct.

10:06:55 23         Q.   Have you ever been involved in any challenge to

10:07:01 24    any provisions of the Victims' Bill of Rights in any other

10:07:06 25    litigation?

10:07:07   1              MR. ARELLANO:  Objection.  Form.

10:07:08   2      A.    From the standpoint that my clients' interests

10:07:16   3   were furthered in several cases, yes, I have been.

10:07:20   4   BY MR. ROYSDEN:

10:07:20   5      Q.    Have you filed motions in court in particular

10:07:24   6   criminal cases challenging the constitutionality or the

10:07:28   7   application of the Victims' Bill of Rights?

10:07:30   8      A.    This is a little difficult answering because of

           9   1.6.

          10      Q.    Okay.

10:07:34  11      A.    But I can direct you to the public record where

10:07:37  12   I've been counsel.

10:07:38  13      Q.    But you can't give me anymore specifics because

10:07:41  14   of ethical rule 1.6 as you sit here today?

10:07:44  15      A.    I'm -- I'm concerned about those parameters.  And

10:07:48  16   without that clarification, I'm not comfortable giving you

10:07:52  17   that information.

10:07:53  18      Q.    Okay.  Do you have any current plans to challenge

10:08:00  19   any provisions of the Victims' Bill of Rights in the near

10:08:05  20   future?

10:08:05  21              MR. ARELLANO:  Objection.  Foundation.

10:08:06  22      A.    I'm limited in answering that because I have an

10:08:12  23   active case, but I will tell -- I will tell you that given

10:08:17  24   cases where that issue has been raised in the past and the

10:08:21  25   importance of it, I'm going to litigate that in every

10:43:11  1    would this case be of help to you in assisting your

10:43:16  2    clients as a criminal defense attorney?

10:43:18  3                    MR. ARELLANO:  Objection.  Form and

10:43:19  4    foundation.

10:43:20  5         A.   Yes.

10:43:20  6    BY MR. ROYSDEN:

10:43:20  7         Q.   How so?

10:43:21  8         A.   I would need to clarify what I believe, how I

10:43:31  9    believe the law would treat that --

10:43:33  10        Q.   Okay.

10:43:33  11        A.   -- difference --

          12        Q.   Okay.

10:43:34  13        A.   -- between a procedural rule and the statute.

          14        Q.   Okay.

10:43:38  15        A.   And would one have more weight than the other.

          16        Q.   Okay.

10:43:41  17        A.   And the court involved, whether or not which way

10:43:49  18   they might lean.  Without getting that information, I

10:43:53  19   really can't answer that question.

10:43:54  20        Q.   So you're saying to answer the question, you

10:43:56  21   would need to know how a specific judge would lean in

10:43:59  22   terms of the relationship between a statute that has been

10:44:03  23   declared unconstitutional by a federal judge and a

10:44:06  24   procedural rule that still on its face applies in a

10:44:11  25   particular proceeding?

10:44:11  1      A.    No.   I mean, how a judge would rule.   Is the

10:44:13  2  judge going to look at every opportunity to uphold the

10:44:20  3  victim's rights that he feels the victim should have and

10:44:24  4  ignore everything but, you know, every I being dotted or

        5  is he -- does he have a bent that, you know, if he gets a

10:44:37  6  reasoned argument that he's willing to follow the district

10:44:42  7  court.   That may sound circular to you, but --

10:44:45  8      Q.    No, that makes sense.

10:44:47  9      A.    -- that's the information I would need.

10:44:48 10      Q.    And that's going to depend on the particular

10:44:52 11  judge; correct?

10:44:52 12      A.    That element of, you know, how I'm thinking and

10:44:54 13  go through the process would depend on that judge.   The

        14  other --

        15      Q.    It's possible --

10:44:57 16      A.    -- elements wouldn't.

10:44:57 17      Q.    Sorry.   Finish your answer.

10:44:59 18          So it's possible that some Superior Court judges

10:45:01 19  could give a lot of weight to the district court opinion

10:45:04 20  and expand it to also cover Arizona Rule of Criminal

10:45:08 21  Procedure 39(b)11 while others may construe the district

10:45:13 22  court opinion narrowly and conclude that the Rule 39(b)11

10:45:17 23  is still on the books and in effect; correct?

10:45:19 24          MR. ARELLANO:   Objection.   Foundation.

10:45:22 25      A.    That -- that isn't the final determination

10:45:25  1  because if that were the case, we would still take it to

10:45:29  2  the next level.  But that would sure come into my thinking

10:45:33  3  of when I'm thinking about what's in the best interests of

10:45:36  4  a client.

10:45:37  5  BY MR. ROYSDEN:

10:45:37  6      Q.   And when you say take it to next level, are you

10:45:41  7  saying appeal it to the Court of Appeals?

10:45:44  8      A.   Right, special action probably or an appeal.

10:45:46  9      Q.   And you agree as an attorney that a state court

10:45:49 10  judge is not bound by a district court ruling on a

10:45:55 11  question of law the same way that the state court judge is

10:45:57 12  bound by a state appellate judge or the U.S. Supreme

10:46:02 13  Court's ruling on a question of law; correct?

10:46:03 14             MR. ARELLANO:   Objection.   Form and

10:46:04 15  foundation.

10:46:04 16      A.   I can't answer that.

         17  BY MR. ROYSDEN:

         18      Q.   Okay.

10:46:05 19      A.   I'm not educated enough to answer that.

10:46:07 20      Q.   When you file motion in your criminal cases, do

10:46:10 21  you sometimes cite district court cases interpreting the

10:46:14 22  Fourth Amendment as persuasive authority?

10:46:16 23             MR. ARELLANO:   Objection.   Form.

10:46:16 24      A.   When I do my -- when I argue in capital cases, I

10:46:23 25  cite U.S. Supreme Court law that isn't based on federal

10:59:09  1        A.    Okay.  As far as a bar complaint or a criminal
10:59:13  2  prosecution?
10:59:13  3        Q.    Criminal prosecution.
10:59:16  4        A.    That's what I'm thinking.
          5        Q.    Sorry.
10:59:18  6        A.    I'm just -- I believe the answer is no, but I'm
10:59:21  7  just trying to think through some pretty, you know,
10:59:28  8  intensive disagreements in court.  I don't think so, but
10:59:36  9  it's possible.  But I don't think so.
10:59:41 10        Q.    Are there any documents or things that you would
10:59:45 11  review to refresh your recollection about whether you've
10:59:48 12  ever been threatened with criminal prosecution by a
10:59:54 13  prosecutor with respect to any case where you were serving
10:59:57 14  as a criminal defense attorney?
10:59:57 15               MR. ARELLANO:  Objection.  Form.
10:59:58 16        A.    That would help me answer that?
10:59:59 17  BY MR. ROYSDEN:
11:00:00 18        Q.    Help refresh your recollection.
11:00:03 19        A.    Right.  As we're sitting here, no.
11:00:06 20        Q.    Are you aware of a prosecutor threatening anyone
11:00:09 21  else, any other -- strike that.
11:00:10 22               Are you aware of a prosecutor threatening any
11:00:12 23  other defense attorney or defense investigator with
11:00:16 24  criminal prosecution related to a violation of ARS
11:00:23 25  13-4433(B)?

11:00:23  1            MR. ARELLANO:  Objection.  Form and

11:00:24  2   foundation.

11:00:25  3       A.   You mean as far as my personal knowledge?

11:00:28  4   BY MR. ROYSDEN:

11:00:28  5       Q.   Yes.

11:00:29  6       A.   That I -- I don't have personal knowledge of

11:00:32  7   that, no.

11:00:32  8       Q.   Okay.  Do you have secondhand or thirdhand

11:00:36  9   knowledge of that?

11:00:36 10            MR. ARELLANO:  Objection.  Foundation.

11:00:38 11       A.   Well, looking at the interrogatories that were

11:00:41 12   provided and were really a grouping that weren't

11:00:45 13   associated with me, I'm aware of what's in our

11:00:48 14   interrogatories.

11:00:48 15   BY MR. ROYSDEN:

11:00:48 16       Q.   Are you aware of anything beyond what's stated in

11:00:51 17   your interrogatories?

11:00:52 18       A.   No.

11:00:52 19            MR. ARELLANO:  Objection.  Form.

         20            (Deposition Exhibit 2 was marked

11:00:53 21             for identification.)

11:00:53 22   BY MR. ROYSDEN:

11:01:00 23       Q.   If you could take a look at Exhibit 2, which is

11:01:08 24   the Complaint, and if you could turn to paragraph 53 and

11:01:25 25   if you could just read that paragraph to yourself and let

11:35:40  1  objections and ER 1.6 objections where the witness has

11:35:43  2  declined to answer questions today, which we reserve the

11:35:46  3  right to take up with the Court, we adjourn the

11:35:49  4  deposition.

11:35:50  5                    THE WITNESS:  Okay.

11:35:51  6                    MR. ARELLANO:  Thank you.

        7                    MR. ROYSDEN:  Is there anything you'd like to

11:35:59  8  put on the record?

11:35:59  9                    MR. FISCHER:  Yeah.  Mr. Randall would like

11:36:01 10  to read and sign.

11:36:06 11                    MR. ROYSDEN:  Let's go off the record.

       12                    (A discussion was held off the record.)

       13                    THE COURT REPORTER:  Mr. Fischer, what is

       14  your transcript order today?

       15                    MR. FISCHER:  E-tran.

       16

       17                    (Deposition concluded at 11:36 a.m.)

       18

       19

       20

       21

       22          _____

       23                    RICHARD DAVID RANDALL

       24

       25

```
 1   STATE OF ARIZONA          )
                               ) ss.
 2   COUNTY OF MARICOPA        )
```

 3          BE IT KNOWN that the foregoing deposition was

 4   taken by me, Deborah Cleary, RPR, a Certified Reporter,

 5   Certificate #50663, for the State of Arizona, and by

 6   virtue thereof authorized to administer an oath; that the

 7   witness before testifying was duly sworn by me to testify

 8   to the whole truth; that the questions propounded by

 9   counsel and the answers of the witness thereto were taken

10   down by me in shorthand and thereafter reduced to print by

11   computer-aided transcription under my direction; that

12   pursuant to request, notification was provided that the

13   deposition is available for review and signature; that the

14   foregoing pages are a full, true and accurate transcript

15   of all proceedings and testimony had and adduced upon the

16   taking of said deposition, all to the best of my skill and

17   ability.

18          I FURTHER CERTIFY that I am in no way related to

19   nor employed by any of the parties hereto, nor am I in any

20   way interested in the outcome hereof,

21          DATED at Phoenix, Arizona, this 9th day of

22   December, 2017.

23   _____

24                       Deborah Cleary, RPR/CR
                         Certified Reporter
25                       Certificate No. 50663

**EXHIBIT G**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

```
                                )
ARIZONA ATTORNEYS FOR CRIMINAL  )
JUSTICE; et al.,                )
                                )
     Plaintiffs,                )
                                )
v.                              )   Case No.
                                )   2:17-cv-01422-SPL
MARK BRNOVICH, in his official  )
capacity as Attorney General of )
the State of Arizona,           )
                                )
     Defendant.                 )
_____)
```

DEPOSITION OF JEFFREY KIRCHLER, ESQ.

Phoenix, Arizona

December 11, 2017

Prepared by:

Meri Coash, RMR, CRR
Certified Reporter
Certification No. 50327

```
 1                        I N D E X

 2    WITNESS                                          PAGE

 3     JEFFREY KIRCHLER, ESQ.

 4         Examination By Mr. Roysden                    4

 5

 6

 7
                       EXHIBITS MARKED
 8
       EXHIBITS              DESCRIPTION              PAGE
 9
       Exhibit 12     Defendant's Amended Notice of     6
10                    Deposition

11

12

13                PREVIOUSLY MARKED EXHIBITS

14                Exhibit  2     Page 14
                  Exhibit  3     Page 16
15                Exhibit 4.2    Page 18
                  Exhibit 5.2    Page 19
16                Exhibit  6     Page 21

17

18

19                INSTRUCTIONS NOT TO ANSWER

20                    Page  9    Line 18
                      Page 25    Line 24
21                    Page 26    Line  9
                      Page 29    Line 15
22                    Page 47    Line  4

23

24

25
```

1          DEPOSITION OF JEFFREY KIRCHLER, ESQ.,

2    was taken on December 11, 2017, commencing at 1:33 p.m.,

3    at the law offices of Lewis Roca Rothgerber Christie, LLP,

4    201 East Washington Street, Suite 1200, Phoenix, Arizona,

5    before Meri Coash, a Certified Reporter in the State of

6    Arizona.

7

8

9                    *   *   *

10   APPEARANCES:

11        For the Plaintiffs:
              LEWIS ROCA ROTHGERBER CHRISTIE, LLP
12            By:  Daniel A. Arellano, Esq.
                   201 East Washington Street
13                 Suite 1200
                   Phoenix, Arizona  85004
14                 602-262-5311
                   darellano@lrrc.com
15

          For the Defendant:
16            OFFICE OF THE ARIZONA ATTORNEY GENERAL
              By:  Brunn W. Roysden, III, Esq.
17                 Richard L. Baek, Esq.
                   2005 North Central Avenue
18                 Phoenix, Arizona  85007
                   602-542-8327
19                 beau.roysden@azag.gov
                   richard.baek@azag.gov
20

          Also present:  Jacob Richards
21

22

23

24

25

1                    JEFFREY KIRCHLER, ESQ.,

2      the witness herein, having been first duly sworn by the

3      Certified Reporter, was examined and testified as follows:

4

5                          EXAMINATION

6      BY MR. ROYSDEN:

7          Q.    Could you please state your name for the record.

8          A.    My first name is Jeff, but my legal name is

9      Jeffrey.  My last name is Kirchler, K-i-r-c-h-l-e-r.

13:33:14  10          Q.    Are you a member of the State Bar of Arizona?

11          A.    I am.

12          Q.    Are you a practicing attorney?

13          A.    Yes, I am.

14          Q.    Have you ever appeared before -- as a witness in

13:33:23  15      any court proceedings?

16          A.    Never.

17          Q.    Have you ever been deposed in any case before?

18          A.    Never.

19          Q.    Are you familiar with the standard ground rules

13:33:30  20      for a deposition?

21          A.    No.

22          Q.    One thing I would emphasize is that if you don't

23      understand a question, please let me know, and I will work

24      to rephrase it.  If you do answer a question, I will

13:33:43  25      assume that you understood my question.  Is that fair?

1   the trial group generally?

2        A.   In the office that I -- has it so that there's a

3   group of lawyers that are general felony cases.  That's

4   the trial group, and they try those cases.  We also have

13:44:09 5   an early resolution unit -- I think that's what's

6   called -- the ERU.  We also have the probation violation

7   unit.  We also have a misdemeanor group, criminal mental

8   health, sex crimes, and capital units.  And I was in the

9   trial group from 2002 to 2011, and then I specialized in

13:44:32 10  capital from 2011 until present.

11       Q.   Is the capital unit underneath the trial group,

12  or is it separate from the trial group?

13       A.   It's part of the trial group, but it's capital

14  cases.

13:44:46 15       Q.   Do you currently represent any crime victims in

16  any criminal matters?

17       A.   No.

18       Q.   Have you ever represented any crime victims in

19  any criminal matters?

13:44:57 20       A.   No.

21       Q.   Have you ever been a prosecutor?

22       A.   No.

23       Q.   Have you ever worked in any prosecutor's office?

24       A.   No.

13:45:08 25       Q.   Another plaintiff in this action is the Arizona

1    back.  I won't have to remember it.

2                (The record was read by the court reporter

3             as follows:

4             QUESTION:  Do you plan to continue complying

5             with Rule 39(b)(11) of the Rules of Criminal

6             Procedure unless and until the Arizona Supreme

7             Court amends the rule or a court rules that

8             compliance is no longer required?)

9                MR. ARELLANO:  Objection to form as well.

13:55:56 10             THE WITNESS:  My answer to that is I will

11   comply with Rule 39 as long as it's on the books.

12   BY MR. ROYSDEN:

13      Q.   Have you ever sought judicial relief from the

14   requirements of Rule 39 in any other litigation?

13:56:14 15             MR. ARELLANO:  Objection.  Foundation.

16             THE WITNESS:  No.

17   BY MR. ROYSDEN:

18      Q.   Have you made any public speeches, statements, or

19   writings about Rule 39 of the Rules of Criminal Procedure?

13:56:29 20      A.   No.

21      Q.   Are you currently representing defendants in

22   Arizona state court in cases with one or more victims?

23      A.   Yes.

24      Q.   Okay.  In which courts do you currently have such

13:56:44 25   cases?

     1       A.    The Superior Court of Maricopa County.

     2       Q.    Okay.  In about how many such cases are you

     3  involved?

     4       A.    I have two cases.

13:56:52 5       Q.    For the first case, how many years has that case

     6  been active?  And by "active," I mean since charges were

     7  first filed.

     8       A.    One of them was --  Well, they're both 2011.

     9       Q.    In 2011 since the charges were filed or since you

13:57:21 10  began working on the case?

     11       A.    Both.

     12       Q.    Okay.  In either of those cases, have you ever

     13  made a request to initiate contact with a victim pursuant

     14  to A.R.S. 13-4433(B)?

13:57:40 15       A.    I have.

     16       Q.    In either of those cases, did the victim --

     17  Strike that.

     18             For any such request in those two cases, did

     19  any victims agree to contact with the defense?

13:58:04 20       A.    In neither case.  Let me finish.  In neither case

     21  have we interviewed the victims.

     22       Q.    For all requests that you made, have you gotten a

     23  yes-or-no answer back from the prosecutor's office as to

     24  whether the victim will consent to contact?

13:58:24 25             MR. ARELLANO:  Object to the form.

1          THE WITNESS:  In one of the cases, the
2  prosecutor said the victim does not wish to be
3  interviewed.  In the other case, I cannot tell you what
4  the prosecutor said.
13:58:37  5  BY MR. ROYSDEN:
6      Q.  Is that because you don't recall or because
7  you're claiming some sort of privilege over that?
8      A.  I don't recall.  We have not interviewed the
9  victim.
13:58:50  10      Q.  In either case, have you asked the Maricopa
11  County Superior Court judge presiding over the case to
12  allow the defense to directly initiate contact with the
13  victim?
14      A.  Yes.
13:59:04  15      Q.  And how have the judges ruled in the two cases?
16          MR. ARELLANO:  Objection to form.
17          THE WITNESS:  In my pleading, it's listed in
18  one of the cases that the judge denied our request to
19  order that the victim speak with us.  It did order the
13:59:28  20  prosecutor convey our request to the victim and give us a
21  response.
22  BY MR. ROYSDEN:
23      Q.  And what was the name of that case?
24          MR. ARELLANO:  I'm going to object on the
13:59:38  25  basis of attorney-client privilege and attorney work

1          THE WITNESS:  I do not.

2     BY MR. ROYSDEN:

3          Q.   Okay.  Do you believe that prosecutors' offices

4     regularly fail to pass on requests pursuant to 13-4433(B)?

14:07:18  5          MR. ARELLANO:  Objection to form.

6          THE WITNESS:  I don't know.

7     BY MR. ROYSDEN:

8          Q.   Are you involved in any cases currently -- so I'm

9     asking about your two capital cases -- where you would

14:07:38 10    like to initiate contact with a victim and your reason for

11    doing so is unrelated to advancing the interests of your

12    clients?

13          MR. ARELLANO:  Objection.  Foundation.

14          THE WITNESS:  I would like to contact the

14:07:51 15    victim in both of those cases and talk to that person.

16    There may be things that I may be able to provide that no

17    one else can provide.  Could it advance my client's case?

18    Sure.  But it also may advance their ability for closure,

19    their ability to know what the other side of the case is,

14:08:17 20    and give them a complete picture of the case, which I

21    think lends itself to justice for everyone.

22    BY MR. ROYSDEN:

23          Q.   And any such contact you would be bound by your

24    ethical duties of loyalty and confidentiality to your

14:08:33 25    criminal defendant client in any communications and

1    or as complete picture of the case as possible.

2    BY MR. ROYSDEN:

3        Q.   Okay.  And just so the record is clear, in any

4    interaction you have had with a victim in a case where you

14:10:31 5    represented a criminal defendant, you would not disclose

6    information that your client had not previously authorized

7    you to disclose.  Is that correct?

8        A.   That's correct.  And if they asked me a question

9    that I hadn't disclosed or talked to about with my client,

14:10:48 10    if they want an answer, for instance, "Why did you do

11    this?" or "What was going on?" I would probably go back to

12    my client and talk to that client over and then get their

13    permission and maybe have a second time.

14        Q.   In any interaction with a victim in a case where

14:11:07 15    you represented a criminal defendant, you would not

16    knowingly say things that were adverse to your client's

17    interests in toto.  And by that, I mean in a capital case,

18    something that might be adverse to the client for all

19    phases of the capital case, both guilt and penalty phase.

14:11:28 20    Correct?

21        A.   Not without my client's permission.  And I don't

22    know what that would be.

23        Q.   Have you ever initiated contact with a victim

24    directly in a criminal case where you did not represent

14:11:43 25    the defendant?

          1       A.   No.

          2       Q.   You are seeking injunctive relief in this case,

          3   correct?

          4              MR. ARELLANO:  Objection.  Foundation.

14:11:57  5              THE WITNESS:  We're asking that the statute

          6   be held unconstitutional as to Section B.

          7   BY MR. ROYSDEN:

          8       Q.   Are you seeking to enjoin victims from notifying

          9   a state court judge directly if the victim believes there

14:12:10 10   has been a violation of Subsection B of 13-4433?

         11              MR. ARELLANO:  Objection.  Foundation and

         12   form.

         13              THE WITNESS:  Are you asking me if I would

         14   ask to stop a victim?

14:12:18 15   BY MR. ROYSDEN:

         16       Q.   Through this lawsuit, correct.

         17       A.   I'm not asking that.

         18       Q.   Okay.  Are you asking through this lawsuit to

         19   stop a victim from notifying the Court if the victim

14:12:34 20   believes there has been a violation of Rule 39(b)(11) of

         21   the Rules of Criminal Procedure?

         22              MR. ARELLANO:  Objection.  Foundation and

         23   form.

         24              THE WITNESS:  I'm not asking that either.

         25

1  defense attorney where the judge issued an order that the

2  defense cease and desist from contacting anyone in the

3  case?

4          A.  No.

14:43:37 5          Q.  Have you ever had a prosecutor threaten you with

6  prosecution in any way related to Section 13-4433(B)?

7                   MR. ARELLANO:  Objection to form.

8                   THE WITNESS:  No.

9  BY MR. ROYSDEN:

14:43:53 10          Q.  Are you aware of a prosecutor threatening anyone

11  with prosecution in any way related to A.R.S.

12  Section 13-4433(B)?

13                   MR. ARELLANO:  Objection.  Foundation.

14                   THE WITNESS:  No.

14:44:04 15  BY MR. ROYSDEN:

16          Q.  If you could turn back to Exhibit 2, which is the

17  complaint in this matter.

18                   Do you have it in front of you?

19          A.  Yes.

14:44:19 20          Q.  If you could turn to paragraph 53.  I'm going to

21  read out loud part of that paragraph.  Quote, Because

22  other defense lawyers and members of defense teams have

23  been threatened with professional and criminal sanctions

24  based on violations of A.R.S. Section 13-4433(B), end

14:44:56 25  quote.

1  BY MR. ROYSDEN:

2     Q.   In some cases, you might not tell them at the

3  outset that they have a right to refuse to talk to you?

4              MR. ARELLANO:  Objection.  Foundation.

14:59:08  5          THE WITNESS:  I don't know.  I would have a

6  conversation with the person, just like I'm having with

7  you.

8  BY MR. ROYSDEN:

9     Q.   In such a situation where you were permitted to

14:59:19  10  directly initiate contact with a victim, would you

11  identify yourself as an attorney with the Maricopa County

12  public defender's office at the outset?

13              MR. ARELLANO:  Objection.  Foundation.

14              THE WITNESS:  I would identify myself as

14:59:33  15  Jeff Kirchler, and I would tell them that I'm an attorney

16  representing whomever I'm representing.

17  BY MR. ROYSDEN:

18     Q.   And if it appeared to you that they didn't

19  recognize that name, would you clarify that that person

14:59:46  20  was a criminal defendant in a case where they were the

21  victim?

22              MR. ARELLANO:  Objection.  Foundation.

23              THE WITNESS:  That would depend.  I don't

24  know.  Especially if ID was an issue, I don't know.

25

1     A.   I've never represented a business.  I've

2 represented people who run businesses.  And you're asking

3 about --

4     Q.   In those cases, did you have to litigate issues

15:08:36 5 that related to the First Amendment?

6     A.   I did not.

7     Q.   Have you seen any bills from any of your counsel

8 in this case to date?

9     A.   I have not received any bills.

15:08:48 10     Q.   Is it your understanding that you would have to

11 pay out of pocket if your side loses this case?

12     A.   I don't believe I have to pay out of pocket.

13          MR. ROYSDEN:   Let me confer with my

14 paralegal.

15:09:13 15          (An off-the-record discussion ensued.)

16          MR. ROYSDEN:  Subject to the privilege

17 instructions, we will adjourn the deposition.

18          MR. ARELLANO:  We would also like to read

19 and sign.

20          (The deposition was concluded at 3:09 p.m.)

21

22                    _____

23                         JEFFREY KIRCHLER, ESQ.

24

25

1  STATE OF ARIZONA     )

2  COUNTY OF MARICOPA   )

3          BE IT KNOWN the foregoing deposition was

4  taken by me pursuant to stipulation of counsel; that I was

5  then and there a Certified Reporter of the State of

6  Arizona, and by virtue thereof authorized to administer an

7  oath; that the witness before testifying was duly sworn by

8  me to testify to the whole truth; notice was provided that

9  the transcript was available for signature by the

10 deponent; that the questions propounded by counsel and the

11 answers of the witness thereto were taken down by me in

12 shorthand and thereafter transcribed into typewriting

13 under my direction; that the foregoing pages are a full,

14 true, and accurate transcript of all proceedings and

15 testimony had and adduced upon the taking of said

16 deposition, all to the best of my skill and ability.

17         I FURTHER CERTIFY that I am in no way related to

18 nor employed by any parties hereto nor am I in any way

19 interested in the outcome hereof.

20         DATED at Phoenix, Arizona, this 26th day of

21 December, 2017.

22

23 _____

24 Meri Coash, RMR, CRR
   Certified Reporter #50327

25

# EXHIBIT H

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

|  |  |
|---|---|
| ARIZONA ATTORNEYS FOR CRIMINAL JUSTICE; et al., )<br>)<br>) | |
| Plaintiffs, ) | |
| v. ) | Case No. |
| ) | 2:17-cv-01422-SPL |
| MARK BRNOVICH, in his official capacity as Attorney General of the State of Arizona, ) | |
| Defendant. ) | |

DEPOSITION OF RICHARD ROBERTSON

Phoenix, Arizona

December 11, 2017

Prepared by:

Meri Coash, RMR, CRR
Certified Reporter
Certification No. 50327

1                         I N D E X

2  WITNESS                                          PAGE

3   RICHARD ROBERTSON

4        Examination by Mr. Skinner                   4

5

6

7                     EXHIBITS MARKED

8  EXHIBITS              DESCRIPTION               PAGE

9   Exhibit 2.1   Complaint for Declaratory and      17
                  Injunctive Relief
10
    Exhibit 4.2   A.R.S. §13-4401,                   18
11                §13-4401.  Definitions

12  Exhibit 5.2   A.R.S. §13-4433,                   20
                  §13-4433.  Victim's right to refuse
13                an interview; applicability

14  Exhibit 10    Defendant's Amended Notice of       6
                  Deposition
15
    Exhibit 11    Arizona Department of Public Safety 55
16                Supplemental Report, DR Number
                  2012-003081
17                AZAG 005327 - 005328

18

19                PREVIOUSLY MARKED EXHIBITS

20
                    Exhibit 3      Page 35
21                  Exhibit 6      Page 39

22

23             INSTRUCTIONS NOT TO ANSWER

24                  Page 32      Line 2

25

1              DEPOSITION OF RICHARD ROBERTSON

2    was taken on December 11, 2017, commencing at 9:07 a.m. at

3    the law offices of Lewis Roca Rothgerber Christie, LLP,

4    201 East Washington Street, Suite 1200, Phoenix, Arizona,

5    before Meri Coash, a Certified Reporter in the State of

6    Arizona.

7

8

9                        *    *    *

10   APPEARANCES:

11        For the Plaintiffs:
              LEWIS ROCA ROTHGERBER CHRISTIE, LLP
12            By:  Daniel A. Arellano, Esq.
                   201 East Washington Street
13                 Suite 1200
                   Phoenix, Arizona  85004
14                 602-262-5311
                   darellano@lrrc.com
15
          For the Defendant:
16            OFFICE OF THE ARIZONA ATTORNEY GENERAL
              By:  Oramel H. Skinner, Esq.
17                 Brunn W. Roysden, III, Esq.
                   Richard L. Baek, Esq.
18                 2005 North Central Avenue
                   Phoenix, Arizona  85007
19                 602-542-8327
                   o.h.skinner@azag.gov
20                 beau.roysden@azag.gov
                   richard.baek@azag.gov
21

22

23

24

25

                            RICHARD ROBERTSON,

1

2    the witness herein, having been first duly sworn by the

3    Certified Reporter, was examined and testified as follows:

4

09:07:02  5                        EXAMINATION

6    BY MR. SKINNER:

7        Q.   Great.  Now that we're on the record, could you

8    please state and, out of an abundance of caution for the

9    court reporter here, spell your name, please.

09:07:20 10        A.   Name is Richard Robertson, R-i-c-h-a-r-d

11    R-o-b-e-r-t-s-o-n.

12        Q.   Have you ever been deposed in a civil or criminal

13    case before?

14        A.   I have.

09:07:32 15        Q.   What case?

16        A.   I couldn't even tell you.  There's been a number

17    over the years.

18        Q.   Several cases?

19        A.   Several cases, yes.

09:07:40 20        Q.   So you're familiar with the ground rules for a

21    deposition, correct?

22        A.   I am.

23        Q.   One ground rule I just want to emphasize -- it's

24    always good to emphasize is that if you don't understand a

09:07:49 25    question, please let me know, and we'll find a way to work

         1  requirements in 13-4433(B), in particular?

         2      A.   Well, I've been aware of the statute for -- since

         3  it was -- since it was part -- since it was up for

         4  election, so . . .

09:31:01 5      Q.   More than a year?

         6      A.   More than 20 years.

         7      Q.   More than 20 years?

         8      A.   Yes.

         9      Q.   How did you become aware of it?

09:31:07 10     A.   I was a reporter and covered -- covered the

        11  election campaign at the time, I believe.

        12     Q.   Does A.R.S. 13-4433(B) apply to you in connection

        13  with your -- apply to you at all?

        14              MR. ARELLANO:  Objection.  Foundation.

09:31:25 15             THE WITNESS:  It does.

        16  BY MR. SKINNER:

        17     Q.   When does it apply to you?

        18              MR. ARELLANO:  Objection.  Foundation.

        19              THE WITNESS:  It applies when I am an agent

09:31:33 20  of the defendant's attorney.

        21  BY MR. SKINNER:

        22     Q.   Only when you're the agent of the defendant's

        23  attorney?

        24              MR. ARELLANO:  Objection.  Form.

09:31:43 25             THE WITNESS:  Well -- or the defendant if I

1    were to be retained by the defendants directly.

2    BY MR. SKINNER:

3        Q.    Are there any other times that it would apply to

4    you?

09:31:55 5        A.    Well, I don't believe so.  I would get some legal

6    advice on that if I had a question about that.

7        Q.    And you said that you believe that 13-4433(A) is

8    being challenged in this action, correct?

9                    MR. ARELLANO:  Objection.  Form.

09:32:18 10                    THE WITNESS:  That's my understanding.

11    BY MR. SKINNER:

12        Q.    Does 13-4433(A) apply to you?

13                    MR. ARELLANO:  Objection.  Foundation.

14                    THE WITNESS:  I am an agent of the

09:32:46 15    defendant.  It refers to "agent of the defendant," so I

16    would say yes, it applies to me.

17    BY MR. SKINNER:

18        Q.    It applies to you as an agent of the defendant,

19    correct?

09:32:54 20        A.    Correct.  Or the defendant's attorney.

21        Q.    Other than as an agent of the defendant or as an

22    agent of the defendant's attorney, is there any other set

23    of circumstances in which 13-4433 would apply to you?

24                    MR. ARELLANO:  Objection.  Foundation.

09:33:07 25                    THE WITNESS:  Well, it would be a legal

1          MR. ARELLANO:  Objection.  Form and
2    foundation.
3          THE WITNESS:  I think indirectly we are.  I
4    am.
09:54:52 5  BY MR. SKINNER:
6      Q.   Are you challenging it directly?
7          MR. ARELLANO:  Objection.  Foundation.
8          THE WITNESS:  Whatever is in the complaint.
9    BY MR. SKINNER:
09:54:58 10     Q.   But you believe that Rule 39 --  You believe that
11   you are indirectly challenging Rule 39 in connection with
12   this case, correct?
13     A.   I believe --  My understanding, and I'm not a
14   lawyer, is that the Rules of Criminal Procedure are
09:55:11 15  written because they're to be consistent with state
16   statutes, and so if the state statute is -- changes, then
17   so would Rule 39.
18     Q.   Do you plan to continue complying with the
19   requirements of Rule 39(b)(11) in the criminal cases
09:55:49 20  unless and until the Arizona Supreme Court amends a rule
21   or a court presiding in a particular case rules that you
22   are not required to comply?
23          MR. ARELLANO:  Objection.  Form and
24   foundation.
09:55:58 25          THE WITNESS:  Yes.

BY MR. SKINNER:

    Q.   Have you ever made a request to initiate contact with a victim pursuant to A.R.S. 13-4433(B) in a case in which you were acting on behalf of a criminal defendant?

09:56:17    A.   Me personally?

    Q.   Yes, you personally.

    A.   No.  No.

    Q.   When 13-4433(B) applies to you and the criminal defendant has an attorney, does the attorney make the request --

          MR. ARELLANO:  Objection.  Foundation.

BY MR. SKINNER:

    Q.   -- to contact the victim?

    A.   Yes.  I mean, that's generally how I work, let the attorney handle those matters.

    Q.   Are there any cases in which you are representing -- or, working on behalf of a criminal defendant and you are not working on behalf of the criminal defense attorney?

09:56:51    A.   Repeat that.

    Q.   Are there any cases in which you are working on behalf of a criminal defendant in connection with Arizona state court criminal proceedings and you are not working on behalf of that criminal defendant's criminal defense attorney?

1      A.   No.  I -- No.  I do not.

2      Q.   So in all of the cases in which you were working

3 on behalf of a criminal defendant in connection with the

4 Arizona state court criminal proceedings, you were working

09:57:20 5 on behalf of the criminal defense attorney who represents

6 that criminal defendant?

7      A.   That's correct.

8      Q.   Has a victim ever affirmatively reached out to

9 contact you in connection with an Arizona state court

09:57:31 10 criminal case in a case on which you were acting on behalf

11 of a criminal defendant?

12      A.   Yes.

13      Q.   How many times has that happened?

14      A.   Oh, it's only a small handful.  Certainly less

09:57:45 15 than 10 times probably.

16      Q.   More than two times?

17      A.   Yes.  Likely.

18      Q.   More than five times?

19      A.   I don't know.

09:57:59 20      Q.   Have you ever been involved in a case where a

21 victim consented to contact with a representative of the

22 defense after being notified by the prosecutor's office

23 pursuant to Arizona 13-4433(B) of the defense request for

24 an interview?

09:58:16 25           MR. ARELLANO:  Objection.  Foundation.

1  would take whatever legal action was appropriate?

2       A.   I would -- it would be the defense attorney's

3  decision as to how to deal with that, yes.

4       Q.   Of course.

09:59:53  5       A.   My job is to bring the information to him.

6       Q.   To the criminal defense attorney for them to

7  weigh and take whatever action they believe is

8  appropriate, legal or otherwise?

9       A.   Correct.  Well, I would assume it would be legal.

10:00:10  10  Just an assumption.

11       Q.   Do you believe prosecutors' offices regularly

12  fail to pass on requests pursuant to A.R.S. 13-4433(B)?

13                 MR. ARELLANO:  Objection.  Foundation.

14                 THE WITNESS:  I have no knowledge of that.

10:00:26  15  BY MR. SKINNER:

16       Q.   Are you currently involved in any cases where

17  A.R.S. 13-4433(B) applies to you and you want to initiate

18  contact with a victim for reasons unrelated to advancing

19  the interests of your client?

10:00:42  20                 MR. ARELLANO:  Objection.  Foundation.

21                 THE WITNESS:  One more time.

22  BY MR. SKINNER:

23       Q.   Of course.

24                 Are you currently involved in any cases

10:00:52  25  where A.R.S. 13-4433(B) applies to you and you want to

1    initiate contact with a victim for reasons unrelated to

2    advancing the interests of your client?

3          A.    No.

4          Q.    Have you ever knowingly initiated contact with a

10:01:11 5    crime victim for a case in which you were not representing

6    the defendant?

7                    MR. ARELLANO:  Objection.  Foundation.

8                    THE WITNESS:  Sorry.  Go ahead and repeat it

9    one more time.

10:01:21 10   BY MR. SKINNER:

11         Q.    Of course.

12                   Have you ever knowingly initiated contact

13   with a crime victim for a case in which you were not

14   representing the criminal defendant in that case?

10:01:34 15        A.    Have I ever done that?  No.

16                   MR. ARELLANO:  And, Counsel, just for the

17   record, since we're kind of getting into the habit of

18   repeating questions, when I state the objection to the

19   first iteration -- the first statement of the question, I

10:01:47 20   think it's understood that when the witness asks to repeat

21   it, I'm not making the objection again so he can process

22   the question, but if the question is stated verbatim as it

23   was stated the first time I objected, the objection stands

24   to repetition of the question verbatim.

10:02:02 25                   MR. SKINNER:  To the extent the question is

1    stated verbatim, I'm fine with that.  To the extent the

2    question is not verbatim, please restate your objection.

3                    MR. ARELLANO:  Of course.  Of course.

4                    MR. SKINNER:  Off the record.

10:02:18  5              (A recess ensued.)

6    BY MR. SKINNER:

7       Q.   Now that we're back on the record, you're seeking

8    injunctive relief in this case, correct?

9                    MR. ARELLANO:  Objection.  Foundation.

10:22:19 10              THE WITNESS:  Yes.

11   BY MR. SKINNER:

12      Q.   Are you seeking to enjoin victims from notifying

13   Arizona state courts directly if they believe there is a

14   violation of 13-4433(B) in any case in which you're

10:22:30 15  working?

16                   MR. ARELLANO:  Objection.  Foundation.

17                   THE WITNESS:  No.

18   BY MR. SKINNER:

19      Q.   Are you seeking to enjoin victims from notifying

10:22:41 20  the Arizona state courts directly if they believe there's

21   a violation of Arizona rule of criminal procedure

22   39(b)(11) --

23                   MR. ARELLANO:  Objection.  Foundation.

24   BY MR. SKINNER:

10:22:49 25      Q.   -- in any case?

1      A.   Well, we talked about that earlier, but if the

2   statute goes, then the rule goes.  I'm not objecting to

3   the victims complaining to anybody about anything.

4      Q.   Prior to your work as a state licensed

10:23:24 5   investigator, you were a journalist, correct?

6      A.   Correct.

7      Q.   As a journalist, did you face limits on your

8   ability to speak or advocate on behalf of political or

9   policy positions?

10:23:35 10            MR. ARELLANO:  Objection.  Foundation.

11            THE WITNESS:  On behalf of political or

12   policy decisions?

13   BY MR. SKINNER:

14      Q.   Positions.

10:23:41 15      A.   As a journalist, I had -- for sake of objectivity

16   and stuff, I wasn't a commentator.  I mean, I wasn't

17   offering opinions about things, if that's what your

18   question is.

19      Q.   Are you familiar with the provisional board that

10:24:11 20   reviews the professional conduct of state licensed

21   investigators?

22      A.   Yes.

23      Q.   Have you ever served on that board?

24      A.   Yes.

10:24:17 25      Q.   When did you serve on the board?

          1        A.    I'm currently on the board.

          2        Q.    And for how long have you been on the board?

          3        A.    About a year and a half.

          4        Q.    Have you ever had disciplinary proceedings

10:24:38  5    instituted against you in front of that board?

          6        A.    No.

          7        Q.    Have you ever been sanctioned by a court or

          8    judge?

          9              MR. ARELLANO:  Objection to form.

10:24:47 10              THE WITNESS:  No.

         11    BY MR. SKINNER:

         12        Q.    Have you ever had a prosecutor threaten you with

         13    prosecution in any way related to your conduct under

         14    A.R.S. 13-4433(B)?

10:24:59 15              MR. ARELLANO:  Objection.  Foundation and

         16    form.

         17              THE WITNESS:  No.

         18    BY MR. SKINNER:

         19        Q.    Are you aware of a prosecutor threatening anyone

10:25:07 20    with prosecution in any way related to A.R.S. 13-4433(B)?

         21              MR. ARELLANO:  Objection.  Foundation.

         22              THE WITNESS:  To that statute, no.

         23    BY MR. SKINNER:

         24        Q.    Has an attorney on a case team with you ever been

10:25:22 25    sanctioned by a court or judge, to your knowledge, in

 1  connection with a case in which you were working on their

 2  behalf?

 3              MR. ARELLANO:  Objection.  Foundation and

 4  form.

10:25:30  5              THE WITNESS:  No.

 6  BY MR. SKINNER:

 7    Q.   Have you ever had a prosecutor threaten you with

 8  prosecution ever?

 9    A.   No.

10:25:50 10    Q.   When you were not working on behalf of a criminal

11  defendant or a criminal defendant's attorney in connection

12  with a particular proceeding in state court, you were free

13  to express your personal opinions and views as to the

14  merits of any case and the guilt or innocence of any

10:26:22 15  criminal defendant, correct?

16              MR. ARELLANO:  Objection.  Foundation.

17              THE WITNESS:  When I'm not working for --

18  BY MR. SKINNER:

19    Q.   Correct.

10:26:30 20    A.   That's correct.

21    Q.   When you are not working on behalf of a criminal

22  defendant or a criminal defendant -- defense attorney in

23  connection with a particular case, you are free to comment

24  on the sentence that you believe should be put forth in a

10:26:47 25  criminal case, correct?

1          MR. ARELLANO:  Objection.  Foundation.

2          THE WITNESS:  Correct.

3   BY MR. SKINNER:

4      Q.   In connection with a death penalty case in which

10:26:56 5   you are not working on behalf of the criminal defendant or

6   a criminal defendant's attorney, you were free to advocate

7   for or against the death penalty in that case, correct?

8      A.   That's correct.

9          MR. ARELLANO:  Objection.  Foundation.

10:27:07 10  BY MR. SKINNER:

11     Q.   When you were working on behalf of a criminal

12  defendant or a criminal defense attorney in connection

13  with an Arizona state court criminal proceeding, you are

14  not allowed to directly initiate contact with a

10:27:28 15  codefendant who is represented by separate counsel,

16  correct?

17          MR. ARELLANO:  Objection.  Form and

18  foundation.

19          THE WITNESS:  Correct.

10:27:34 20  BY MR. SKINNER:

21     Q.   Do you contend that this is a violation of your

22  First Amendment rights?

23          MR. ARELLANO:  Objection.  Foundation.

24          THE WITNESS:  In --  Fighting one battle at

10:27:44 25  a time.

BY MR. SKINNER:

Q.   Do you contend that the limitation on your
ability to directly contact a codefendant who is
represented by separate counsel is a violation of your
First Amendment rights?

MR. ARELLANO:  Objection.  Foundation.

THE WITNESS:  Sure.  Yes.

BY MR. SKINNER:

Q.   In a case where a victim is represented by a
private attorney, you are not allowed to contact the
victim directly but must, rather, go through the victim's
attorney when you are working on behalf of a criminal
defendant or criminal defense attorney, correct?

MR. ARELLANO:  Objection.  Foundation.

THE WITNESS:  Correct.

BY MR. SKINNER:

Q.   Is that limitation on your ability to contact a
represented victim in connection with a case where you
work on behalf of the criminal defendant or the criminal
defense attorney a violation of your First Amendment
right?

MR. ARELLANO:  Objection to foundation and
form.

THE WITNESS:  Yes.

         1  BY MR. SKINNER:

         2      Q.   Are you challenging that limitation in this

         3  lawsuit?

         4              MR. ARELLANO:  Objection.  Foundation.

10:28:39 5              THE WITNESS:  Not in this lawsuit.

         6  BY MR. SKINNER:

         7      Q.   Have you ever challenged that limitation in a

         8  lawsuit?

         9      A.   I have not.

10:28:46 10     Q.   What cases are you aware of involving

        11  professional discipline for a private investigator -- or,

        12  state licensed investigator for a violation of 13-4433(B)?

        13              MR. ARELLANO:  Objection.  Foundation.

        14              THE WITNESS:  Sorry.  Repeat the question.

10:29:09 15 BY MR. SKINNER:

        16     Q.   Of course.  I'll try to make it clearer.

        17              What cases are you aware of involving

        18  professional discipline for a state licensed investigator

        19  based on a violation of 13-4433(B)?

10:29:22 20             MR. ARELLANO:  Objection.  Foundation.

        21              THE WITNESS:  I'm not aware of any.

        22  BY MR. SKINNER:

        23     Q.   What cases are you aware of involving prosecution

        24  or the threat of prosecution against a state licensed

10:29:39 25 investigator for a violation of 13-4433(B)?

         1              MR. ARELLANO:  Objection.  Foundation.

         2              THE WITNESS:  None.

         3    BY MR. SKINNER:

         4       Q.   What cases are you aware of involving

10:29:48  5    professional discipline for an attorney based on a

         6    violation of 13-4433(B)?

         7              MR. ARELLANO:  Objection.  Foundation.

         8              THE WITNESS:  I am personally not aware.

         9    BY MR. SKINNER:

10:30:00 10       Q.   What cases are you aware of involving prosecution

        11    or threat of prosecution against an attorney for a

        12    violation of 13-4433(B)?

        13              MR. ARELLANO:  Objection.  Foundation and

        14    form.

10:30:11 15              THE WITNESS:  I'm not aware of any.

        16    BY MR. SKINNER:

        17       Q.   Are you familiar with the professional discipline

        18    case involving state licensed investigator Gregory

        19    Salazar?

10:30:48 20       A.   Yes.

        21       Q.   What do you know about that case?

        22       A.   I was retained by his attorney to assist on that

        23    case.

        24       Q.   Are you familiar with the end result of the

10:31:06 25    professional discipline investigation in that case?

         1        A.    No.

         2                  MR. SKINNER:   Can we go off the record for

         3     one second?

         4                  (An off-the-record discussion ensued.)

10:31:59  5                  (Deposition Exhibit 11 was marked for

         6           identification.)

         7     BY MR. SKINNER:

         8        Q.    Now that we're back on the record, I'm handing

         9     you what's just been marked as Exhibit 11.   At the top, it

10:32:53 10     says "Arizona Department of Public Safety Supplemental

        11     Report," correct?

        12        A.    Correct.

        13        Q.    Do you know what case this relates to?

        14        A.    This is the first time I've seen this document.

10:34:17 15              Okay.

        16        Q.    From your experience working on the board that

        17     handles professional discipline for state licensed

        18     investigators, are you familiar with what a supplemental

        19     report is, as is sitting in front of you?

10:34:31 20        A.    Well, the forms they use now have changed, but

        21     I'm familiar generally with what this document is.

        22        Q.    And what is the supplemental report?

        23        A.    It's a report that's a supplement to something

        24     else.

10:34:44 25        Q.    In connection with professional discipline of

1  state licensed investigators?

2       A.   Well, no.

3       Q.   At the top here, it says "DR Number," and then it

4  says next to that "2002-003081," correct?

10:35:05  5            MR. ARELLANO:  Objection to form.

6                 THE WITNESS:   It's DR Number 2- --

7  2012-003081.

8  BY MR. SKINNER:

9       Q.   And a little bit further down, it says "Agency or

10:35:17  10  Individual Involved," correct?

11       A.   Correct.

12       Q.   Could you read me what's stated there underneath

13  agencies or individual involved?

14       A.   Polaris Investigations, LLC.  License Number

10:35:28  15  1555056.  Gregory Brent Salazar, License Number 1555057.

16       Q.   If you turn to the second page, at the bottom of

17  the page, it says "Enforcement Action," correct?

18       A.   Correct.

19       Q.   What does it say underneath that?  Would you

10:35:46  20  please read it?

21       A.   "No enforcement action will be taken due to the

22  charges against Gregory Salazar have been dismissed" --

23  ungrammatically.  "A letter notifying that our

24  investigation has been closed was sent to Salazar."

10:36:00  25       Q.   Does that --  Based on your experience working on

1    the board, does that mean that the -- that no professional

2    discipline was taken against Gregory Brent Salazar in

3    connection with that case?

4                    MR. ARELLANO:  Objection.  Foundation.

10:36:19  5          THE WITNESS:  That's correct.

6    BY MR. SKINNER:

7        Q.    Are you familiar with the professional discipline

8    case involving state licensed investigator Roy Kenneth

9    Douros?

10:36:57 10                  MR. ARELLANO:  Objection.  Foundation.

11                   THE WITNESS:  I am not.

12   BY MR. SKINNER:

13       Q.    Do you have a plan in any of your current cases

14   in which you were working on behalf of the criminal

10:37:43 15   defense attorney or a criminal defendant in state court

16   criminal proceedings in Arizona to directly initiate

17   contact with a victim in the event enforcement of

18   A.R.S. 13-4433(B) is enjoined by this court?

19                   MR. ARELLANO:  Objection.  Foundation.

10:37:58 20                  THE WITNESS:  Do I currently have a plan?  I

21   haven't thought that far, so I guess the answer is no.

22   BY MR. SKINNER:

23       Q.    In the event enforcement of A.R.S. 13-4433(B) was

24   fully enjoined by this court, would you directly initiate

10:38:51 25   contact with a crime victim in a case where you were

1  working on behalf of a criminal defendant or a criminal

2  defense attorney by -- and in doing so threaten any

3  victim?

4                    MR. ARELLANO:  Objection.  Form and

10:39:06  5  foundation.

6                    THE WITNESS:  No.

7  BY MR. SKINNER:

8      Q.    In the event enforcement of A.R.S. 13-4433(B) was

9  fully enjoined by this court, would you directly initiate

10:39:17 10  contact with a crime victim in a case where you

11  represented or worked on behalf of a criminal defendant or

12  a criminal defense attorney by informing -- would you

13  begin that interaction by informing the victim that you --

14  that they have the right to refuse to talk to you?

10:39:33 15                    MR. ARELLANO:  Objection.  Foundation and

16  form.

17                    THE WITNESS:  Yes.

18  BY MR. SKINNER:

19      Q.    Would you do that at the outset of the

10:39:46 20  interaction?

21                    MR. ARELLANO:  Objection.  Form, foundation.

22                    THE WITNESS:  Yes.

23  BY MR. SKINNER:

24      Q.    In the event enforcement of A.R.S. 13-4433(B) was

10:39:55 25  fully enjoined by this court, would you begin -- would you

         1  directly initiate contact with a crime victim in a case

         2  where you represented a criminal defendant or worked on

         3  behalf of a criminal defense attorney and in doing so

         4  clearly identify yourself as an agent of the criminal

10:40:15 5  defendant or the criminal defense attorney?

         6              MR. ARELLANO:  Objection.  Foundation and

         7  form.

         8              THE WITNESS:  Yes.

         9  BY MR. SKINNER:

10:40:22 10     Q.   In the event of enforcement of A.R.S. 13-4433(B)

        11  was fully enjoined, would you directly initiate contact

        12  with a crime victim in connection with a case in which you

        13  were working on behalf of a criminal defendant or criminal

        14  defense attorney by using a ruse?

10:40:42 15             MR. ARELLANO:  Objection.  Foundation and

        16  form.

        17             THE WITNESS:  No.

        18  BY MR. SKINNER:

        19     Q.   In the event enforcement of A.R.S. 13-4433(B) was

10:40:56 20  fully enjoined by this court, and you initiated direct

        21  contact with a crime victim in connection with a case in

        22  which you were working on behalf of a criminal defendant

        23  or criminal defense attorney, would you immediately cease

        24  contact if the crime victim informed you that they did not

10:41:14 25  want to talk to you?

1   would -- the circumstances would just -- it would depend

2   on a variety of things.

3       Q.   In the course of initiating direct contact with a

4   minor victim, would you ever initiate that contact at a

10:45:25 5   school at which the minor victim was a student?

6              MR. ARELLANO:  Objection.  Foundation.

7              THE WITNESS:  Again, it depends.

8   BY MR. SKINNER:

9       Q.   In the course of initiating direct contact with a

10:45:35 10  minor victim at a school, would you ever persist in

11  initiating that contact on school grounds after being

12  asked by school administrators to leave the school

13  grounds?

14              MR. ARELLANO:  Objection.  Foundation.

10:45:46 15            THE WITNESS:  No.

16             MR. SKINNER:  Do you guys mind if we go off

17  the record and take one more break?  I think we might be

18  at the point where we could basically wrap this up, but I

19  want to be diligent before doing so.

10:46:28 20           MR. ARELLANO:  That's fine.  Sure.

21             (A recess ensued.)

22             MR. SKINNER:  Okay.  So now that we're back

23  on the record, we're happy to adjourn this deposition

24  subject to, as we have with the prior depositions, the

10:49:54 25  objections and our positions on the objections as to

1  privilege.

2                    MR. ARELLANO:  Okay.

3                    We would like to read and sign.

4                    (The deposition was concluded at 10:49 a.m.)

5

6                    _____

                                    RICHARD ROBERTSON
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1   STATE OF ARIZONA      )

2   COUNTY OF MARICOPA    )

3              BE IT KNOWN the foregoing deposition was

4   taken by me pursuant to stipulation of counsel; that I was

5   then and there a Certified Reporter of the State of

6   Arizona, and by virtue thereof authorized to administer an

7   oath; that the witness before testifying was duly sworn by

8   me to testify to the whole truth; notice was provided that

9   the transcript was available for signature by the

10  deponent; that the questions propounded by counsel and the

11  answers of the witness thereto were taken down by me in

12  shorthand and thereafter transcribed into typewriting

13  under my direction; that the foregoing pages are a full,

14  true, and accurate transcript of all proceedings and

15  testimony had and adduced upon the taking of said

16  deposition, all to the best of my skill and ability.

17        I FURTHER CERTIFY that I am in no way related to

18  nor employed by any parties hereto nor am I in any way

19  interested in the outcome hereof.

20        DATED at Phoenix, Arizona, this 26th day of

21  December, 2017.

22

23  _____

24  Meri Coash, RMR, CRR
    Certified Reporter #50327

25