**ACLU Foundation of Arizona**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85014
Telephone: 602-650-1854

**Kathleen E. Brody** (State Bar No. 026331)
Email: kbrody@acluaz.org

**Brenda Muñoz Furnish** (State Bar No. 027280)
Email: bmfurnish@acluaz.org

**Killmer, Lane & Newman, LLP**
1543 Champa Street
Denver, Colorado 80202
Telephone: 303-571-1000

**David A. Lane** (pro hac vice)
Email: dlane@kln-law.com

**Andrew McNulty** (pro hac vice)
Email: amcnulty@kln-law.com

**Lewis Roca Rothgerber Christie LLP**
201 East Washington Street, Suite 1200
Phoenix, Arizona 85004-2595

**Dan W. Goldfine** (State Bar No. 018788)
Direct Dial: 602.262.5392
Direct Fax: 602.262.5747
E-mail: DGoldfine@lrrc.com

**Ian M. Fischer** (State Bar No. 026239)
Direct Dial: 602.262.5724
Direct Fax: 602.262.5747
E-mail: IFischer@lrrc.com

**Roy Herrera** (State Bar No. 032901)
Direct Dial: 602.262.5742
Direct Fax: 602.262.5747
E-mail: RHerrera@lrrc.com

**Daniel A. Arellano** (State Bar No. 032304)
Direct Dial: 602.262.0860
Email: darellano@lrrc.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona Attorneys for Criminal Justice; Christopher Dupont; Rich Robertson; Richard L. Lougee; Richard D. Randall; Jeffrey A. Kirchler; John Canby,<br><br>                                Plaintiffs,<br><br>          vs.<br><br>Mark Brnovich, in his official capacity as Attorney General of the State of Arizona,<br><br>                                Defendant. | No.  2:17-cv-01422-SPL<br><br>**FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>(Assigned to the Honorable Steven P. Logan) |

## **INTRODUCTION**

1.      This action challenges the constitutionality of Arizona Revised Statutes ("A.R.S.") § 13-4433(B), which prohibits a criminal defendant's attorney and others working on a criminal defendant's defense team from initiating contact with the victim of the crime, including second-degree relatives of a crime victim who is killed or incapacitated, except through the office of the prosecutor who is prosecuting the defendant.

2.      Because A.R.S. § 13-4433(B) prohibits and restricts speech by criminal-defense lawyers, defense investigators, and others working on the defense team by limiting to whom they may speak, with whom they may communicate, and how, the statute implicates the free-speech rights protected by the First Amendment to the United States Constitution.

3.      In particular, A.R.S. § 13-4433(B) is an unlawful content-based and overbroad prior restraint on the speech of criminal-defense lawyers and others on the defense team that inhibits and outlaws speech fully protected by the First Amendment. Plaintiffs bring this action to have A.R.S. § 13-4433(B) declared unconstitutional, and its enforcement enjoined.

4.      A.R.S. § 13-4433(B) is part of the statutory scheme that the Arizona legislature enacted to protect the rights of crime victims as part of legislative efforts to implement the Arizona Constitution's Victims' Bill of Rights, Ariz. Const. art. 2, § 2.1.

5.      However, A.R.S. § 13-4433(B) goes beyond the protections afforded to crime victims in the Victims' Bill of Rights and is not appropriately tailored to the state's legitimate purpose of protecting a victim's right to "be treated with fairness, respect, and dignity, and to be free from intimidation, harassment, or abuse, throughout the criminal justice process." Ariz. Const. art. 2, § 2.1(A)(1).

6.      For criminal-defense lawyers and others working on the defense team, attempting to contact victims and their family members is a crucial part of the effective representation of the defendant. It is an essential part of pre-trial investigation

regarding culpability, other possible perpetrators, and potential mitigation evidence for sentencing purposes. Likewise, contact with victims and their family members can be crucial for post-conviction work on behalf of a defendant, including when investigating claims of actual innocence. All criminal-defense attorneys, but particularly capital-defense teams, have constitutional obligations to their clients to fully investigate possible defenses to culpability and to seek out information that could mitigate a sentence, including sparing the defendant from the death penalty.

7.      Speech directed at crime victims is not only important for its implications for attorneys representing the criminally accused and their ethical and constitutional duties, it is also of grave public importance because of the crime victim's role in the political campaign to abolish the death penalty, whether through active or passive means. Victims are often the most important advocates for a sentence less than death, which is a topic with significant political importance in modern America.

8.      Moreover, past experiences in Arizona, and current practice in other states, show that crime victims and their family members do not always wish to shut off contact from the defense team; in fact, sometimes they welcome such contact. Rather than allowing these potentially helpful and desirable discussions between the victim, the victim's family, and the defense team, A.R.S. § 13-4433(B) places the defendant's litigation adversary – the prosecutor – in the middle and shuts them down before they can happen.

9.      Criminal-defense lawyers and investigators have been subjected to, and face the risk of, professional discipline, court sanctions, and criminal charges for alleged violations of A.R.S. § 13-4433(B), and these adverse actions against members of the criminal-defense community have chilled constitutionally protected speech and hindered the ability of criminal-defense teams to effectively represent criminal defendants and vindicate the rights afforded them in the criminal-justice process.

10.     Plaintiffs include an association of criminal-defense professionals, criminal-defense lawyers, and investigators. Plaintiffs (including members of the

organizational Plaintiff Arizona Attorneys for Criminal Justice) work on behalf of criminal defendants in trial and post-conviction cases, in all types of criminal matters, including capital and non-capital murder cases, sex cases, and cases with claims of innocence. A.R.S. § 13-4433(B) directly infringes the free-speech rights of Plaintiffs because Plaintiffs are chilled from attempting to speak to victims and, if they do undertake the risk of attempting to contact a crime victim, such speech may subject them to professional discipline, court sanctions, or criminal prosecution for violating the law.

11. Defendant is the chief legal officer of the state of Arizona. His office prosecutes criminal offenses, and he has general supervisory authority over all county and local prosecutors in Arizona. Defendant, either directly or through his supervisory authority, is the litigation adversary that A.R.S. § 13-4433(B) places between Plaintiffs and the targets of their speech, shutting Plaintiffs down before they may engage in protected speech activity. Defendant stands between victims and criminal-defense lawyers' and investigators' speech. Defendant also has the authority to bring criminal charges, make complaints for professional discipline, and seek court sanctions against criminal-defense professionals for alleged violations of A.R.S. § 13-4433(B).

12. Defendant is also responsible for the administration of the victims' rights program established by A.R.S. § 41-191.06, which administers training on compliance with A.R.S. § 13-4433(B) and monitors and ensures Arizona's state and local criminal-justice agencies' implementation and compliance with victims' rights laws, including A.R.S. §13-4433(B). Defendant also publishes brochures and other publications encouraging compliance with victims' rights laws, including A.R.S. § 13-4433(B). By doing so Defendant directly and indirectly suppresses Plaintiffs' speech and creates a climate that chills Plaintiffs' speech.

13. Plaintiffs seek declaratory and injunctive relief against enforcement of A.R.S. § 13-4433(B) on the grounds that: (1) the law is a content-based restriction on constitutionally protected speech not narrowly tailored to a compelling government

interest, and (2) the law is overbroad, in violation of the First Amendment to the United States Constitution.

## JURISDICTION AND VENUE

14. This case arises under the United States Constitution and presents a federal question within this Court's jurisdiction under Article III of the Constitution and 28 U.S.C. § 1331 and 28 U.S.C. § 1343(3). This action is brought pursuant to 42 U.S.C. § 1983.

15. The Court has the authority to grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

16. The Court has the authority to award costs and attorneys' fees under 42 U.S.C. § 1988.

17. Venue is proper in this District under 28 U.S.C. § 1391(b). Defendant is sued in his official capacity, and his official place of business is located within this District. The events giving rise to this complaint are the enactment, within this District, of an unconstitutional statute of the state of Arizona, and its implementation and enforcement by Defendant.

## PARTIES

### *Arizona Attorneys for Criminal Justice*

18. Plaintiff Arizona Attorneys for Criminal Justice is a statewide not-for-profit membership organization of criminal-defense lawyers, law students, and associated professionals dedicated to protecting the rights of the accused in the courts and in the legislature; promoting excellence in the practice of criminal law through education, training, and mutual assistance; and fostering public awareness of citizens' rights, the criminal-justice system, and the role of the defense lawyer.

19. Arizona Attorneys for Criminal Justice counts among its membership more than 500 lawyers and allied professionals who work in private law practice, in public practice in the state's indigent-defense agencies, and as private investigators retained to assist criminal-defense teams. Members of Arizona Attorneys for Criminal

Justice work on behalf of clients in all types of cases, including capital and non-capital murders, sex crimes, other serious felonies, and misdemeanors, in all courts in the state of Arizona.

*Individual Plaintiffs*

20.     Plaintiff Christopher R. Dupont is a lawyer who has been licensed to practice law in Arizona since 1992. He is a criminal-defense attorney who defends clients accused of both capital and non-capital crimes. As part of his practice, Mr. Dupont also represents crime victims.

21.     Plaintiff Rich Robertson is a private investigator who works with criminal-defense lawyers on cases throughout Arizona, including capital and non-capital cases. He is licensed as a private investigator by the Arizona Department of Public Safety and owns R3 Investigations. Mr. Robertson is a member of Plaintiff Arizona Attorneys for Criminal Justice.

22.     Plaintiff Richard L. Lougee, Jr., is a lawyer who has been licensed to practice law in Arizona since 1989. He was first admitted to the practice of law in Connecticut in 1977, and was also licensed to practice law in New Mexico, but is currently on inactive status in those states. Mr. Lougee practices in the area of criminal defense, including handling sex crimes and capital defense.  Mr. Lougee is a member of Plaintiff Arizona Attorneys for Criminal Justice.

23.     Plaintiff Richard Randall is a lawyer who has been licensed to practice law in Arizona since 1991. He practices in the area of capital defense and is trial counsel for capital cases in Maricopa County.

24.      Plaintiff Jeffrey Kirchler is a lawyer who has been licensed to practice law in Arizona since 2002. He practices in the area of capital defense and is trial counsel for capital cases in Maricopa County.

25.     Plaintiff John A. Canby is a lawyer who has been licensed to practice law in Arizona since 1986. He practices in the area of capital defense and is resource counsel for capital cases in Maricopa County.  Mr. Canby is a member of Plaintiff

Arizona Attorneys for Criminal Justice.

*Defendant*

26.     Defendant Mark Brnovich is the Attorney General of Arizona, is the chief legal officer of the state, and has general supervisory authority over county and local prosecutors. Attorney General Brnovich has the authority to prosecute all criminal offenses in the name of the state of Arizona. A.R.S. § 41-193(A)(1). Attorney General Brnovich is also responsible for the administration, including funding and compliance audits, of the victims' rights program, which administers a plan for assisting, training, and monitoring state and local entities that are required to implement and comply with victims' rights laws, including A.R.S. § 13-4433(B). *See* A.R.S. § 41-191.06. Attorney General Brnovich is sued in his official capacity.

## FACTUAL BACKGROUND

*The Statute*

27.     In 1990, Arizona voters approved Proposition 104, the Victims' Bill of Rights, as an amendment to the state Constitution. The Victims' Bill of Rights is codified at Arizona Constitution, Article 2, § 2.1.

28.     Among the provisions of the Victims' Bill of Rights is the right of a crime victim "[t]o be treated with fairness, respect, and dignity, and to be free from intimidation, harassment, or abuse, throughout the criminal justice process." Ariz. Const. art. 2, § 2.1(A)(1).

29.     Under the Victims' Bill of Rights, a crime victim also has the right "[t]o refuse an interview, deposition, or other discovery request by the defendant, the defendant's attorney, or other person acting on behalf of the defendant." Ariz. Const. art. 2, § 2.1(A)(5).

30.     The Victims' Bill of Rights also provides that the legislature has "the authority to enact substantive and procedural laws to define, implement, preserve and protect the rights guaranteed to victims" by the constitutional amendment. Ariz. Const. art. 2, § 2.1(D).

31.     In 1991, the Arizona legislature passed, and the governor signed into law, House Bill 2412, the Crime-Victims' Rights Implementation Act, which included in its provisions legislation intended to implement the Victims' Bill of Rights, including an earlier, but substantially similar version of A.R.S. § 13-4433(B).

32.     The legislative intent for the Crime-Victims' Rights Implementation Act, as expressed in House Bill 2412, was as follows:

> The legislature recognizes that many innocent persons suffer economic loss and personal injury or death as a result of criminal acts. It is the intent of the legislature of this state to:
>
> 1. Enact laws that define, implement, preserve and protect the rights guaranteed to crime victims by article II, section 2.1, Constitution of Arizona.
>
> 2. Ensure that article II, section 2.1, Constitution of Arizona, is fully and fairly implemented and that all crime victims are provided with basic rights of respect, protection, participation and healing of their ordeals.
>
> 3. Ensure at all stages of the criminal justice process that the duties established by article II, section 2.1, Constitution of Arizona, are fairly apportioned among all law enforcement agencies, prosecution agencies, courts and corrections agencies in this state.
>
> 4. Ensure that employees of this state and its political subdivisions who engage in the detention, investigation, prosecution and adjudication of crime use reasonable efforts to see that crime victims are accorded the rights established by article II, section 2.1, Constitution of Arizona.

33.     A.R.S. § 13-4433(B) currently reads:

> The defendant, the defendant's attorney or an agent of the defendant shall only initiate contact with the victim through the prosecutor's office. The prosecutor's office shall promptly inform the victim of the defendant's request for an interview and shall advise the victim of the victim's right to refuse the interview.

34.     A.R.S. § 13-4401(19) defines "victim":

> "Victim" means a person against whom the criminal offense has been committed, including a minor, or if the person is killed or incapacitated, the person's spouse, parent, child, grandparent or sibling, any other person related to the person by consanguinity or affinity to the second degree or any other lawful representative of the person, except if the person or the person's spouse, parent, child, grandparent, sibling, other person related to the person by consanguinity or affinity to the second degree or other lawful representative is in custody for an offense or is the accused.

8

35. Thus, A.R.S. § 13-4433(B) prohibits criminal defense lawyers and others working on the defense team from speaking to the victim of a crime without using the prosecutor's office as a conduit for the communication. When a victim is killed or incapacitated, the defense team may not speak to anyone within two degrees of consanguinity or affinity to the victim without using the prosecutor's office as a conduit. And when a victim is a minor child, the defense team may not speak with the child victim or the child's parents or guardians.

36. In addition, A.R.S. § 13-4433 was amended in 1997 to add a provision that allows a prosecutor to refuse to forward correspondence from the defense team to victims and their families, further limiting the speech of defense lawyers and the defense team. That provision, codified at A.R.S. § 13-4433(C), currently reads:

> The prosecutor shall not be required to forward any correspondence from the defendant, the defendant's attorney or an agent of the defendant to the victim or the victim's representative.

37. Thus, A.R.S. § 13-4433(B) operates to prohibit defense lawyers and defense teams from contacting crime victims or their family members without the consent of the prosecutor, the defense team's litigation adversary.

### The Attorney General's Authority to Enforce A.R.S. § 13-4433(B)

38. As the chief legal officer of the state, the Attorney General has the authority to initiate and handle any criminal prosecution in Arizona.

39. The Attorney General, or his designee, is required by state statute to prosecute all indictments returned by a state grand jury, and the Attorney General has the discretion to initiate a prosecution even when there is no state grand jury indictment for any crime that is within the jurisdiction of the state grand jury. A.R.S. § 21-427.

40. The Attorney General's office serves as the prosecutor for many criminal cases at the trial level, almost all felony direct appeals filed in criminal cases in Arizona, and all capital habeas corpus litigation in federal court.

41. The Attorney General's office takes steps to enforce A.R.S. § 13-4433(B) in the cases handled by that office, including, for instance, standing in the middle of

9

communications between the defense team and victims in trial-level matters and filing motions in capital habeas corpus proceedings asking the federal courts to preclude the defense team from directly contacting crime victims consistent with A.R.S. § 13-4433(B).

42. The Attorney General supervises and may assist all county attorneys in the state and has the authority to influence all criminal prosecutions in the state. *See* A.R.S. § 41-193(A)(4) (stating that the Attorney General shall "[e]xercise supervisory powers over county attorneys of the several counties in matters pertaining to that office and require reports relating to the public business thereof"); *id.* § 41-193(A)(5) (stating that the Attorney General shall "[a]t the direction of the governor, or when deemed necessary, assist the county attorney of any county in the discharge of the county attorney's duties").

43. As the chief prosecutor in Arizona, the Attorney General literally stands between Plaintiffs and the targets of their intended speech, crime victims. If Plaintiffs want to speak to or otherwise communicate with a statutory victim where they represent the defendant in a pending criminal matter, Plaintiffs cannot do so directly, but rather must initiate contact with the prosecutor, who could be the Attorney General or another prosecutor that the Attorney General supervises.

44. If a Plaintiff attempts to initiate contact with a victim through the Attorney General, the Attorney General's office sends a standard form letter to the victim, the content of which remains the same no matter what message the Plaintiff wants to convey to the victim. This means that no matter what reason the Plaintiff has to speak to a victim, or what the Plaintiff wants to say, that reason for the message and the content of the message will not be communicated to the victim.

45. As the administrator of the victims' rights program under A.R.S.§ 41-191.06, the Attorney General monitors and assists state and local criminal justice agencies to implement and comply with victims' rights laws. The Attorney General conducts training and provides technical assistance for criminal justice agencies and

their employees on victims' rights laws, and publishes brochures and pamphlets about victims' rights laws, including A.R.S. § 13-4433(B), for distribution to victims, criminal justice agencies and the public at large.

46. In literature published by his office, the Attorney General has stated that he will take every action necessary to "help ensure justice is served through upholding victims' rights."

47. As the administrator of the victims' rights program, the Attorney General disburses monies from the victims' rights fund (established under A.R.S. § 41-191.08) and audits state and local entities that receive state resources for victims' rights so as to enforce "uniformity, efficiency and compliance by state and local entities that are responsible for ensuring crime victims' access to justice." *Id.* § 41-191.06(A).

48. The Attorney General may require corrective action or withholding monies from the victims' rights fund if a criminal justice agency does not comply with victims' rights laws, including A.R.S. § 13-4433(B). This means that if a prosecuting agency in Arizona permitted Plaintiffs to contact victims directly, without initiating that contact through the prosecutor, the Attorney General could withhold victims' rights funds from that agency.

49. The Attorney General's Office of Victims Services has a compliance administrator that investigates allegations of victims' rights violations and works with victims who believe their rights have been violated.

50. At the request of a victim, the Attorney General "may assert any right to which the victim is entitled." A.R.S. § 13-4437. The Attorney General, thus, has authority to enforce the prohibition on contact between the defense team and victims (and victims' families) as outlined in A.R.S. § 13-4433(B).

51. The Attorney General's office will seek sanctions from the court or file a complaint with the state bar or other licensing agency against a Plaintiff, or member of the Plaintiff organization, if he or she violates A.R.S. § 13-4433(B). The Attorney General's Office would also instruct the Plaintiff, or member of the Plaintiff

organization, not to violate A.R.S. § 13-4433(B) again and ask the court to advise the same.

52. The mere threat that the Attorney General or another prosecutor under the Attorney General's supervision will initiate disciplinary proceedings, seek court sanctions, or pursue potential criminal prosecution has a chilling effect on the willingness of Plaintiffs, and members of the Plaintiff organization, to engage in speech with statutory crime victims and others, even when such speech might not be prohibited by A.R.S. § 13-4433(B). As such, Plaintiffs, and members of their defense teams, have not directly contacted crime victims or their families since the implementation of A.R.S. § 13-4433(B) because the Attorney General's enforcement of A.R.S. § 13-4433(B) makes the risk of such proceedings or sanctions much more likely.

53. If the Attorney General files a complaint with the disciplinary authority about an attorney failing to comply with A.R.S. § 13-4433(B), the disciplinary authority is required under Arizona law to investigate such a complaint and will open an investigation to determine whether a full investigation is warranted. If not warranted, the disciplinary authority takes no further action. If a full investigation is warranted, the matter is referred to bar counsel for further investigation.

54. Whether the complaint is terminated after the initial investigation or after a full investigation, the fact that there was an investigation is subject to public records disclosure under Arizona law and available for any person or potential client to review. Thus, regardless of what action the disciplinary authority takes, the Attorney General's filing of a complaint with a disciplinary authority is sufficient to create a public record of a purported violation of law based solely on the unconstitutional infringement of Plaintiffs' First Amendment rights.

55. The attorney against whom the Attorney General files such a complaint may also have to respond to the complaint, including potentially retaining counsel and notifying her or his malpractice insurer. That attorney may also have to report the

12

complaint to future employers.

56. Likewise, if the Attorney General seeks sanctions in court against a Plaintiff or member of the Plaintiff organization for failing to comply with A.R.S. § 13-4433(B), a public record of that motion and claim of contempt is made, permanently besmirching that attorney's record, regardless of whether a court takes any further action.

57. The Attorney General, as chief legal officer of the state and administrator of the victims' rights program, has created an atmosphere of fear and enforcement that chills Plaintiffs' speech and the speech of members of the Plaintiff organization.

58. As a high-ranking representative of the Attorney General's office stated under oath, "any attorney should feel somewhat afraid of violating the law"; "it's a no-brainer."

59. Unless he is enjoined, the Attorney General will continue to enforce A.R.S. § 13-4433(B) against Plaintiffs, members of the Plaintiff organization, and other individuals serving on criminal defense teams. .

60. If the Attorney General were enjoined from enforcing A.R.S. § 13-4433(B), neither his office nor any other county or local prosecutor who he supervises could stand between the speech of defense lawyers and investigators, including Plaintiffs and members of the Plaintiff organization.

61. An injunction against the Attorney General enforcing A.R.S. § 13-4433(B) would also remove the atmosphere of fear and enforcement that chills Plaintiffs and members of the Plaintiff organization from engaging in the constitutionally protected speech of directly contacting crime victims.

62. Plaintiffs also incorporate by this reference their Motion to Supplement the Record on Plaintiffs' Motion for Preliminary Injunction (Doc. 11) and Defendant's Motion to Dismiss (Doc. 31) and the exhibits attached thereto, Doc. 110, 110-1 as exhibits to this First Amended Complaint for Declaratory and Injunctive Relief.

### A.R.S. § 13-4433(B) Violates the First Amendment

63.     A.R.S. § 13-4433(B) is an unlawful restraint on defense attorneys, their investigators, and others working on behalf of a criminal defendant, precluding them from engaging in constitutionally protected speech. It acts as an unconstitutional licensing requirement and prior restraint on speech because defense lawyers and defense teams must initiate contact with crime victims through the defense's litigation adversary, the prosecutor, and must get permission from the government before engaging in the protected speech.

64.     The attorney members of Arizona Attorneys for Criminal Justice and the individual Plaintiffs are professionally obligated to render effective assistance of counsel to all of their criminally accused clients by the Sixth Amendment.

65.     In a capital case, the United States Supreme Court deems it imperative that the attorney representing the accused at the very least reach out and attempt to make contact with any and all witnesses in the case.[1]

66.     In a capital case, the defense team's duty to investigate often includes making overtures to the family of the deceased in an effort to understand whether they desire the death penalty for the perpetrator or would be satisfied with a lesser sentence, such as life imprisonment without parole. Victim impact testimony is often critical to the jury's determination of the appropriate sentence in a capital case and if defense counsel can persuade the victim's family not to desire the death penalty, it can literally save the life of a defendant. In addition, prosecutors will sometimes acquiesce to the wishes of the victim's family and drop their demand for death. A.R.S. § 13-4433(B) prevents the defense team from engaging in these efforts.

67.     In capital cases where a relative of the defendant is the victim, often the best source of evidence regarding mitigation critical to saving a defendant's life is found with the defendant's family, which is also the victim's family. A.R.S. § 13-4433(B) precludes the Plaintiffs from speaking to those crucial witnesses except by

---

[1] *See, e.g.*, *Wiggins v. Smith*, 539 U.S. 510 (2003).

using the prosecutor as an intermediary.

68.     In non-capital cases, interviewing victims whenever possible is deemed an essential duty of a conscientious criminal-defense attorney as part of efforts to ascertain the facts of the case. A.R.S. § 13-4433(B) prevents the defense team from conducting this type of thorough investigation.

69.     In engaging with the family of the victim in a capital case, it is incumbent upon defense counsel to discuss with any willing member of the victim's family why the death penalty is not the best option for the good of the surviving family members and why an option of life imprisonment may better achieve the ends they seek. This discussion frequently includes such wide ranging topics as closure, vengeance, rehabilitation, cost, deterrence, remorse, the impact on the victim's family, the impact of an execution on the defendant's family, as well as the politics and morality of the death penalty. There are innumerable other areas of discussion with victims' families relevant to the death penalty. It is the goal of defense counsel to attempt to change the hearts and minds of victims' families through a quiet, respectful discussion about the appropriate resolution of the case without the death penalty being sought.

70.     Contacting victims and their family members is not only a crucial part of effectively representing a capital defendant, it is also critical to lobbying for the passive repeal of the death penalty. In a number of states, the unofficial repeal of the death penalty has been achieved by criminal-defense attorneys who convince family members of victims in capital crimes to speak out in opposition to the death penalty, thereby pressuring prosecutors and the public to abandon capital prosecution. Ultimately, this can lead to the official, legislative repeal of the death penalty.[2] Without

_____

[2] *See* Cornell Law School Death Penalty Worldwide International Human Rights Clinic, *Pathways to Abolition of the Death Penalty* (June 2016), https://www.deathpenaltyworldwide.org/pdf/Pathways%20to%20Abolition%20Death%20Penalty%20Worldwide%202016-07%20FINAL.pdf (detailing how the passive repeal of the death penalty in the state of Maryland, where no death sentences were imposed for almost a decade, led to the official, legislative abolition of the death penalty in 2013).

this important speech on a matter of grave public concern, the political campaign for the passive repeal of the death penalty can be significantly hampered.

71.     From a free-speech perspective, discussions between the defense team and the victim's family in a capital case are the highest form of protected speech as they clearly involve matters of grave public concern and may only be suppressed if the government can show a compelling reason for such suppression.

72.     In a more routine criminal case, defense lawyers and members of the defense team should be able to approach crime victims to at least attempt to discuss the facts and circumstances of the alleged crime. It is essential for a defense attorney to attempt to ascertain a clear picture of the facts of a case and to determine the credibility of a complaining witness, including whether the victim has accurately perceived the facts and circumstances of the event in question.

73.     A.R.S. § 13-4433(B) essentially makes it less likely, if not nearly impossible, that defense lawyers and others on defense teams, including Plaintiffs, will be able to speak with the individuals most necessary to interview in any criminal case. Experience has shown that Plaintiffs are most frequently thwarted in their attempts to speak with crime victims and their families when communications must be initiated through the prosecutor.

74.     In communicating the defense team's desire to speak with crime victims, the Attorney General sends a standard form letter that is not tailored in any way to the individual speech of the defense attorney or member of the defense team. Instead of communicating the message that the defense team wishes to convey to the crime victims or the crime victims' family, the Attorney General instead substitutes its own speech. Effectively, the defense team is not allowed to communicate its message and speech to crime victims and their families at all; the only speech or message communicated to crime victims and their families is the canned message of the Attorney General.

75.     Plaintiffs, and members of the Plaintiff organization, regularly represent

16

defendants accused of crimes involving victims, or participate in their defense teams. As part of their representation of defendants in criminal cases, Plaintiffs, and members of the Plaintiff organization, regularly wish to speak with victims of the alleged crime. Were it not for the restriction in A.R.S. § 13-4433(B), these individuals would contact victims directly, and not by initiating contact through the prosecutor.

76. Consistent with their professional and ethical obligations, Plaintiffs would be courteous, polite, and respectful in communications with victims.

77. Because of A.R.S. § 13-4433(B), Plaintiffs are forced to communicate victim interview requests through the prosecutor instead of to the victim directly.

78. Because of the atmosphere of fear and enforcement created by the Attorney General and A.R.S. § 13-4433(B), Plaintiffs do not contact statutory victims and others directly for fear that doing so would subject them to professional discipline, court sanctions, or criminal prosecution, even when such speech might not be prohibited by A.R.S. § 13-4433(B).

79. Because Plaintiffs have a First Amendment right to attempt to speak with any and all witnesses and other persons connected with a criminal case, including the persons precluded from direct contact by A.R.S. § 13-4433(B), and because Plaintiffs have a right to attempt these interviews unfettered by the compulsion to use a government go-between, A.R.S. § 13-4433(B) violates the First Amendment.

80. Moreover, A.R.S. § 13-4433(B) is overbroad because it stops not only speech that would be deemed criminal or unethical, such as harassing, abusive, or threatening speech, but also eliminates all speech of any kind, including that which is afforded the highest protections under the First Amendment.

## STATEMENT OF CLAIMS FOR RELIEF

### *Count I: First Amendment*

81. Plaintiffs repeat and re-allege the foregoing paragraphs.

82. The prohibition against Plaintiffs contacting victims or their families pursuant to A.R.S. § 13-4433(B) is an unlawful restraint on protected speech.

17

83. The members of Arizona Attorneys for Criminal Justice and the individual Plaintiffs seek to engage in speech involving matters of great public concern that goes to the heart of the functioning of the criminal-justice system, such as:

- In capital murder cases, explaining to victims' families why the death penalty should not be imposed by discussing factors at issue in current public debate, including the possibility of mistaken identity, the public cost of imposing the death penalty, the lack of deterrence resulting from death sentences, the lack of finality for victims because the death penalty extends criminal proceedings by decades, the cruelty of the death penalty, and innumerable other reasons for the victims' families to oppose its imposition;

- In non-capital cases, the victim's observation of the facts of the alleged criminal incident, the victim's ability to have adequately observed the key circumstances of the incident, and the victim's credibility, all for various purposes related to conducting a thorough investigation, including to prevent and remedy wrongful convictions;

- Engaging in speech designed to ensure the proper functioning of the criminal-justice system in Arizona as a true and fair adversarial system so that convictions will be reliable and the innocent will not be convicted or will be exonerated.

84. Because other defense lawyers and members of defense teams have been threatened with professional, judicial, and criminal sanctions based on violations of A.R.S. § 13-4433(B), and because the Attorney General creates an atmosphere of fear of such threats through his enforcement of A.R.S. § 13-4433(B), including directly when his office is prosecuting a case and through supervision and compliance enforcement when another prosecuting agency is handling a case, it carries with it a chilling effect which precludes Plaintiffs and other persons of ordinary firmness from engaging in the First Amendment protected speech activity of contacting and

communicating with victims, their families, and others.

85. Because the functioning of the criminal-justice system is a matter of utmost public importance, the government must advance a compelling reason for the prohibition on protected speech.

86. A.R.S. § 13-4433(B) is a prior restraint that authorizes suppression of speech in advance of its expression by requiring defense lawyers and members of a defense team to initiate contact with a crime victim only through a prosecutor's office and allowing the prosecutor unfettered discretion to communicate whatever he or she wants to the crime victim at the same time he or she communicates to the victim the right to refuse an interview with the defense team. In cases prosecuted by the Attorney General, his office sends a standard form letter to a victim when the defense requests to speak to the victim, wholly preventing the speech of defense lawyers and investigators, including Plaintiffs and Plaintiff organization's members.

87. A.R.S. § 13-4433(B) is not a permissible prior restraint because it regulates speech based on the viewpoint of the speaker and based on the content of the speech, it is not narrowly tailored to the government's interest in protecting victims against harassment (or any other important, significant, or compelling government interest), and does not leave open ample channels for communication between the defense team and crime victims.

### Count II: Overbreadth

88. Plaintiffs repeat and re-allege the foregoing paragraphs.

89. A.R.S. § 13-4433(B) is overbroad and thus unconstitutional because it prohibits any and all speech by defense lawyers and defense teams aimed at crime victims and their families, not just speech that would be unlawful, harassing, threatening, or obscene.

90. A.R.S. § 13-4433(B) is not narrowly tailored to achieve the government interest in protecting crime victims and their families against intimidation, harassment, or abuse, or to achieve any other legitimate government interest.

19

91.     The state could put in place a more narrowly tailored rule that would address the government interest in protecting crime victims and their families against intimidation, harassment, or abuse, without restricting the speech of Plaintiffs and other criminal-defense lawyers and defense teams.

92.     A.R.S. § 13-4433(B) also fails to leave open ample alternatives for Plaintiffs' expression.

93.     A.R.S. § 13-4433(B) prevents a substantial amount of protected speech from occurring due to its overbreadth and chills people of ordinary firmness, including Plaintiffs, from engaging in protected speech.

## CONCLUSION

**WHEREFORE**, Plaintiffs respectfully request that the Court:

A.      Declare that A.R.S. § 13-4433(B) violates the First Amendment of the United States Constitution;

B.      Preliminarily and permanently enjoin Defendant, his officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with him from enforcing A.R.S. § 13-4433(B);

C.      Award Plaintiffs reasonable costs and attorneys' fees pursuant to 42 U.S.C. § 1988; and

D.      Grant Plaintiffs such other and further relief as the Court deems just and proper.

RESPECTFULLY submitted this 4th day of May, 2018.

ACLU FOUNDATION OF ARIZONA
    Kathleen E. Brody
    Brenda Muñoz Furnish

KILLMER, LANE & NEWMAN, LLP
    David A. Lane
    Andrew McNulty

LEWIS ROCA ROTHGERBER CHRISTIE LLP

By: /s/ Ian M. Fischer_____
    Dan W. Goldfine
    Ian M. Fischer
    Roy Herrera
    Daniel A. Arellano

Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on May 4, 2018, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all parties.

*/s/ Joye Allen*
Employee of Lewis Roca Rothgerber Christie LLP