**ACLU Foundation of Arizona**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85014
Telephone: 602-650-1854

Martin Lieberman (State Bar No. 007442)
Email: mlieberman@acluaz.org

**Mitchell | Stein | Carey | Chapman**
One Renaissance Square
2 North Central Avenue, Suite 1450
Phoenix, AZ 85004
Telephone: 602-358-0290

Kathleen E. Brody (State Bar No. 026331)
Email: kathy@mscclaw.com

**Killmer, Lane & Newman, LLP**
1543 Champa Street
Denver, Colorado 80202
Telephone: 303-571-1000

**David A. Lane** (pro hac vice)
Email: dlane@kln-law.com

**Andrew McNulty** (pro hac vice)
Email: amcnulty@kln-law.com

**Lewis Roca Rothgerber Christie LLP**
201 East Washington Street, Suite 1200
Phoenix, Arizona 85004-2595

**Dan W. Goldfine** (State Bar No. 018788)
Direct Dial: 602.262.5392
Direct Fax: 602.262.5747
E-mail:  DGoldfine@lrrc.com

**Ian M. Fischer** (State Bar No. 026239)
Direct Dial: 602.262.5724
Direct Fax: 602.262.5747
E-mail:  IFischer@lrrc.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona Attorneys for Criminal Justice; et al., <br><br> Plaintiffs, <br><br> vs. <br><br> Mark Brnovich, in his official capacity as Attorney General of the State of Arizona; et al., <br><br> Defendants. | No. 2:17-cv-01422-SPL <br><br> **RESPONSE TO DEFENDANTS BRNOVICH AND MILSTEAD'S MOTION TO DISMISS SECOND AMENDED COMPLAINT** <br><br> (Assigned to the Hon. Steven P. Logan) |

108720843.1

Plaintiffs, criminal-defense lawyers and investigators,[1] wish to speak directly with statutory crime victims in their cases, but A.R.S. § 13-4433(B) (the "Victim-Contact Prohibition") forbids them from doing so unless they first get permission from the prosecutor, their litigation adversary. If Plaintiffs attempt to contact victims directly, they are subject to investigation and discipline by either the Arizona State Bar ("State Bar"), who is sued here through Chief Bar Counsel Vessella, or the Department of Public Safety ("DPS"), who is sued here through Director Milstead.[2]

Following this Court's order, Plaintiffs Second Amended Complaint ("SAC") seeks relief against "defendant[s] who ha[ve] the power to prosecute or discipline violations of" the Victim-Contact Prohibition, Doc. 147 at 7,[3] as the State Bar and DPS do. Vessella and Milstead are proper defendants and Plaintiffs have standing to sue them.

This Court has already held that Plaintiffs have standing to proceed against the State Bar and DPS.[4] The Court held that: (1) Plaintiffs are injured by the Victim-Contact Prohibition, Doc. 119 at 5 ("The Court finds that Plaintiffs have sufficiently alleged an injury-in-fact for Article III standing."); (2) Plaintiffs' injuries are traceable to the State Bar and implicitly to DPS for investigators, entities with authority to "prosecute, sanction, or otherwise carry out the vital steps in the disciplinary process" relating to the Victim-Contact Prohibition, *id.* at 7 ("The source of Plaintiffs' complained injury – restraint of protected speech – is the threat of professional discipline for violating Ariz. Rev. Stat. § 13-4433(B)"); and (3) declaratory and injunctive relief against the State Bar

---

[1] Arizona Attorneys for Criminal Justice ("AACJ") is a membership organization of criminal-defense lawyers and allied professionals, including investigators, who work on behalf of defendants in all types of criminal cases. *See* Doc. 46 at 16-17 (describing AACJ and its standing).

[2] Defendants Vessella, and Milstead are sued in their official capacities and are referred to throughout by the agency they represent. "[A] judgment against a public servant 'in his official capacity' imposes liability on the entity he represents." *Brandon v. Holt*, 469 U.S. 464, 471 (1985); *see also Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

[3] All page citations for court documents are to the PACER-generated page numbers at the top of documents.

[4] As outlined in the SAC, Plaintiffs continue to name Attorney General Brnovich at his insistence.

1

108720843.1

and DPS, the entities with "direct involvement in or coercive effect over the prosecution of disciplinary violations for violations of" the Victim-Contact Prohibition, would redress Plaintiffs' injuries, *id.* at 9; *see also* Doc. 147 ("[T]he Court does not conclude that Plaintiffs would be unable to make a sufficient showing of Article III standing to seek redress against an appropriate defendant. An injunction against a defendant who has the power to prosecute or discipline violations of § 13-4433(B) would redress at least some of the Plaintiffs' alleged injuries[.]").

Defendants falsely claim that their standing arguments are new, but they are actually recycled from the Attorney General's earlier motions to dismiss[5] and should fail for the same reasons. The injuries caused by the State Bar and DPS are redressable by this Court and no other parties are necessary to afford Plaintiffs adequate relief.

The Court should also reject the application of *Younger* abstention. Abstention "is the exception, not the rule." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 359 (1989) ("*NOPSI*") (citation omitted). "[O]nly exceptional circumstances justify a federal court's refusal to decide a case in deference to the States." *Id.* at 368. Abstention under *Younger* is appropriate only when the relief sought in federal court would have the practical effect of enjoining ongoing state proceedings. *Gilbertson v. Albright*, 381 F.3d 965, 977-78 (9th Cir. 2004) (en banc). Here, Plaintiffs seek an order preventing their state licensing entities from investigating and disciplining them, which in no way affects any ongoing state criminal proceeding.

Plaintiffs unquestionably have First Amendment rights that are being violated, to this day, by the Victim-Contact Prohibition. Lawyers "do not lose their constitutional rights at the courthouse door." *Levine v. U.S. Dist. Court for C.D Cal.*, 764 F.2d 590, 595 (9th Cir. 1985). The Supreme Court's most recent jurisprudence on the speech of professionals highlights that the Victim-Contact Prohibition is not a narrowly tailored

---

[5] *Compare* Docs. 31, 111, 126, *with* Doc. 164 (raising the same arguments, but now calling the jurisdictional challenge a factual attack, even though the Attorney General relied on Plaintiffs' testimony previously as well).

2

108720843.1

restriction of Plaintiffs' First Amendment-protected speech. *See Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361 (2018) ("*NIFLA*").

Plaintiffs deserve their day in court, and to have the Victim-Contact Prohibition's constitutionality decided by this Court. Plaintiffs have followed this Court's instructions by suing Defendants Milstead and Vessella. The Attorney General and DPS's motion to dismiss should be rejected in its entirety.[6]

## I. AN ORDER AGAINST DPS AND THE STATE BAR WILL REDRESS PLAINTIFFS' INJURIES.

Despite their attempts to recharacterize their motion as a "factual" attack on Plaintiffs' standing, Defendants' argument is merely a dressed-up version of an old argument the Court has already considered and rejected twice. When it considered the first motion to dismiss in this case, the Court had before it the evidence Defendants now point to in support of their position.[7] Even with that evidence before it, however, the Court concluded: "An injunction against a defendant who has the power to prosecute or discipline violations of § 13-4433(B) **would redress at least some of Plaintiffs' alleged injuries** . . . ." Doc. 119 at 10 (emphasis added); *see also* Doc. 147 at 7-8 (reaching same conclusion). The Court should reach the same conclusion again, not just because it has done so twice already, but also because Defendants are wrong that Plaintiffs must challenge Arizona Rule of Criminal Procedure 39(b)(12)(A) and join state judges.

### A. The Court Has Twice Rejected Defendants' Redressability Arguments.

The Attorney General first raised these same redressability arguments in his first motion to dismiss. Doc. 31 at 9-10 (failure to challenge the rule and to join the State Bar and state judges). The Attorney General supplemented the briefing on that motion with portions of Plaintiffs' deposition transcripts in support of his redressability arguments. Docs. 111, 113. Defendants may have included more lengthy quotations in their present

---

[6] Plaintiffs reserve their right to appeal this Court's decision that Plaintiffs' injury is not traceable to the Attorney General, for the reasons set forth in Docs. 46 and 136.

[7] Defendants added a few quotes, but for exactly the same propositions.

3

108720843.1

motion (at 6-8) and added a handful of pages to their previous submission (Doc. 163), but the Attorney General made the **exact same argument**, with references to Plaintiffs' depositions, as Defendants make now. *See* Doc. 111 at 7 ("Discovery has only confirmed that dismissal is required on this basis.") (citing Plaintiffs' depositions); *id.* ("Plaintiffs' own admissions have confirmed this state of affairs."); *id.* at 8 ("Plaintiffs' admissions in their depositions have only confirmed this."). The Court rejected this argument then and should reject it now, for the third time.

### B.    Plaintiffs Do Not Need To Challenge Rule 39(B)(12)(A).

In the three times Defendants have argued Plaintiffs' injuries are not redressable because Plaintiffs have not challenged Rule 39(b)(12)(A), Defendants have cited only a single case they claim supports their argument: *Nuclear Info. & Res. Serv. v. Nuclear Regulatory Comm'n*, 457 F.3d 941, 955 (9th Cir. 2006) ("*NIRS*"). Doc. 31 at 9; Doc. 52 at 7; Doc. 126 at 8; Doc. 140 at 7; Doc. 164 at 5-6. *NIRS* is inapposite.

*NIRS* involved a claim to vindicate a procedural right related to a federal agency's rulemaking, that is, the plaintiffs wanted the agency to go back to redo the rulemaking process. *NIRS*, 457 F.3d at 943. The Ninth Circuit found the plaintiffs lacked standing because they had not satisfied the injury prong of the standing analysis, which the court said was "dispositive of this appeal," not on redressability grounds. *Id.* at 951, 953. The plaintiffs failed to show a "concrete interest" that was "threatened by *the challenged regulation*." *Id.* (emphasis in original). Unlike *NIRS*, as this Court has already held, Plaintiffs here unquestionably are suffering injury because of the Victim-Contact Prohibition. Doc. 119 at 5. The Ninth Circuit went on to discuss redressability, but it did not hold that plaintiffs must challenge all substantively identical provisions to have standing. Instead, *NIRS* simply held that even if the challenged regulations were invalidated on procedural grounds because the agency did not follow the proper rulemaking process, a separate agency's regulations over the same subject would remain unchallenged and applicable. *Id.* at 955. Here, if Plaintiffs prevail, the State Bar and DPS would be enjoined from enforcing the requirement that defense teams initiate contact

4

with a victim through the prosecutor's office, and the statute requiring this would be declared unconstitutional, protecting Plaintiffs' licenses. Rule 39(b)(12)(A) would not permit Defendants to act in violation of the Constitution, or revive the constitutionality of the Victim-Contact Prohibition.

### C.   Plaintiffs Do Not Need To Join State Judges.

Plaintiffs are also not required to join state judges to obtain relief in this case. Defendants have not cited a single case to support their theory that Plaintiffs must seek relief that would address every source of chill on their speech. And the Supreme Court has repeatedly held otherwise. *E.g.*, *Massachusetts v. EPA*, 549 U.S. 497, 526 (2007) (redressability satisfied when risk of harm "would be reduced to some extent if [plaintiffs] received the relief they seek"); *Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982) (plaintiff "need not show that a favorable decision will relieve his *every* injury") (emphasis in original); *Univ. of Cal. Regents v. Bakke*, 438 U.S. 265, 280-81, n.14 (1978) (opinion of Powell, J.); *Connecticut v. Am. Elec. Power Co. Inc.*, 582 F.3d 309, 348 (2d Cir. 2009), *aff'd on standing, rev'd on other grounds*, 564 U.S. 410 (2011) ("[T]hat courts could provide some measure of relief would suffice to show redressability, and the proposed remedy need not address or prevent all harm from a variety of other sources."); *Consumer Data Indus. Ass'n v. King*, 678 F.3d 898, 905 (10th Cir. 2012) ("several decades of Supreme Court precedent" establish that "redressability is satisfied when a favorable decision relieves *an* injury, not every injury") (emphasis in original).

In *WildEarth Guardians v. U.S. Dep't of Agric.*, the plaintiff sought to enjoin the federal government from killing predatory animals in Nevada. 795 F.3d 1148, 1157 (9th Cir. 2015). The government argued the injury was not redressable because, if the federal government was enjoined, "Nevada would pick up where the federal government left off." *Id.* In rejecting that argument, the court held that "the mere existence of multiple causes of an injury does not defeat redressability . . . . So long as a defendant is at least partially causing the alleged injury, a plaintiff may sue that defendant, even if the defendant is just one of multiple causes of the plaintiff's injury." *Id.* That is what is

5

108720843.1

happening here: the current Defendants are at least partially causing Plaintiffs' injury and, as this Court has already held, are the only source of the threat to Plaintiffs' professional licenses. Doc. 119 at 7.

Federal Rule of Civil Procedure 19 also does not require joinder of state judges. Defendants cite nothing in support of their Rule 19 argument, but simply rehash the redressability argument this Court has already rejected and should reject again. Defendants cannot seek joinder under Rule 19 when "the only asserted prejudice is to the interests of plaintiff." *McCann v. Ruiz*, 788 F. Supp. 109, 122 (D.P.R. 1992). In *McCann*, as here, "defendants [were] in the unusual position of advocating the joinder of parties based on the interest of the *plaintiff . . .* in obtaining a remedy," and the plaintiff objected "on the ground that the parties named in the motion are not necessary to the presentation of his case." *Id.* at 121-22 (emphasis in original). Because the plaintiff was "wholly unconcerned by the situation," joinder was not necessary or justified. *Id.* at 122.

### D. <u>The Relief Sought In The SAC Would Redress Plaintiffs' Injuries.</u>

This Court's previous holdings remain correct. A favorable decision here would relieve Plaintiffs of the concern that their licenses to practice law or to be private investigators in Arizona could be revoked, suspended, or otherwise threatened if they exercise their First Amendment rights. *Consumer Data*, 678 F.3d at 903 ("[E]ven if [Plaintiffs] would not be out of the woods, a favorable decision would relieve their problem to some extent, which is all the law requires.").

## II. *YOUNGER* ABSTENTION IS NOT APPROPRIATE HERE.

Plaintiffs sued the State Bar's Chief Bar Counsel and the DPS Director to stop them from threatening Plaintiffs' professional licenses if Plaintiffs violate the Victim-Contact Prohibition. That has nothing to do with any pending state court action, and does not interfere with any state court case. The Court should reject Defendants' invocation of *Younger* because none of the four *Younger* abstention requirements are met here. *See NOPSI*, 491 U.S. at 368 ("[O]nly exceptional circumstances justify a federal court's refusal to decide a case in deference to the States.").

6

108720843.1

### A.    Defendants Have Not Demonstrated Any *Younger* Abstention Requirement Is Met Here.

"[O]nly exceptional circumstances justify a federal court's refusal to decide a case in deference to the States." *NOPSI*, 491 U.S. at 368. *Younger* abstention is appropriate **only** when **all** four requirements are met: "(1) a state-initiated proceeding is ongoing; (2) the proceeding implicates important state interests; (3) the federal plaintiff is not barred from litigating federal constitutional issues in the state proceeding; and (4) the federal court action would enjoin the proceeding or have the practical effect of doing so, i.e., would interfere with the state proceeding in a way that *Younger* disapproves." *San Jose Silicon Valley Chamber of Commerce Political Action Comm. v. City of San Jose*, 546 F.3d 1087, 1092 (9th Cir. 2008) (citations omitted). No requirements are met here.[8]

#### i.    No State Court Proceeding Is "Ongoing."

A state court proceeding is "ongoing" for purposes of *Younger* abstention when it is "**against the federal plaintiffs**." *Hicks v. Miranda*, 422 U.S. 332, 349 (1975) (emphasis added). Plaintiffs here simply have no criminal, or other, proceedings **against them**. Plaintiffs may be defending others in criminal proceedings, but since Plaintiffs are not parties in those proceedings, no state court proceedings have "begun against [Plaintiffs]." *Id.*; *see Steffel v. Thompson*, 415 U.S. 452, 462 (1974) ("[R]efusal on the part of the federal courts to intervene when no state proceeding is pending may place the hapless plaintiff between the Scylla of intentionally flouting state law and the Charybdis of forgoing what he believes to be constitutionally protected activity . . . ."); *Ripplinger v. Collins*, 868 F.2d 1043, 1049 n.5) (9th Cir. 1989) ("Ordinarily, the state defendant's inability to bring a federal action because of a pending state prosecution does not affect other potential federal plaintiffs who are not themselves the subject of pending prosecutions."); *Family Div. Trial Lawyers of Super. Ct.-D.C., Inc. v. Moultrie*, 725 F.2d 695, 702 (D.C. Cir. 1984) ("There is good reason why the *Younger* abstention policy is

---

[8] In addition to the arguments below, Plaintiffs incorporate by this reference Doc. 36 at 3-8, in which they argued in additional detail against the application of *Younger* abstention in response to the Attorney General's first motion to dismiss.

best suited to cases where federal plaintiffs are trying to attack state enforcement procedures which have been **directly applied to them**.") (emphasis added).

Rather, the matter chilling Plaintiffs' speech is the possibility that their state licensing entities will investigate and prosecute them if they violate the statute. Plaintiffs are concerned about preventing potential disciplinary proceedings against themselves by the State Bar or DPS based on an unconstitutional statute. No such proceedings are currently pending, thus, there are no state proceedings in which this Court's order could interfere. If the requested federal relief "'could not prejudice the conduct' of the state proceeding," *Younger* abstention is not appropriate. *Sable Commc'ns of California Inc. v. Pac. Tel. & Tel. Co.*, 890 F.2d 184, 190 (9th Cir. 1989) (quoting *Gerstein v. Pugh*, 420 U.S. 103, 108 n.9 (1975)); *see also Gilbertson v. Albright*, 381 F.3d 965, 977-78 (9th Cir. 2004) (en banc) ("*Younger* abstention involves only such interference as . . . that which would have the same practical effect on the state proceeding as a formal injunction."). There is no state proceeding here that could be prejudiced.

> ii.    <u>This Proceeding Implicates No Important State Interests.</u>

Because the relief Plaintiffs seek implicates no pending state proceedings, it affects no important state interest, or at least none that Defendants have identified given their consistent, but unillustrated, reliance on the refrain that an order from the Court would interfere with the state's "interest in administering [its] criminal justice system[] free from federal interference." Doc. 164 at 11 (citation omitted). Granting Plaintiffs the relief they seek would not stop Arizona from prosecuting any accused criminal, nor would it in any way effect any pending prosecution. The Court's order would affect no decisions at all that a state judge might have to make in the context of a criminal case; it would merely prohibit state licensing agencies from sanctioning Plaintiffs if Plaintiffs violate an unconstitutional statute.

> iii.   <u>Plaintiffs Cannot Litigate Their First Amendment Rights In Any Ongoing Proceeding.</u>

Plaintiffs ask the Court to prohibit their licensing agencies from disciplining them

8

if they violate the Victim-Contact Prohibition. These licensing agencies are not parties to any case in which Plaintiffs are even remotely involved, except this one. Plaintiffs have no means to litigate their claims in any pending state proceeding. Clearly, Plaintiffs could not ask a state judge presiding over an ongoing criminal case to enjoin the State Bar and DPS from investigating and prosecuting them for violations of the Victim-Contact Prohibition.[9]

Even if Plaintiffs could assert their rights in a state court action where they represent criminal defendants, they would have no ability to vindicate their rights on appeal. *See Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018) (*Younger* abstention not appropriate when "full vindication of the right necessarily requires intervention before trial") (quoting *Mannes v. Gillespie*, 967 F.2d 1310, 1312 (9th Cir. 1992)). If the state court denied a Plaintiff's challenge because the Plaintiff is not a proper party, or for any other reason, and the criminal defendant client was acquitted, no appeal could be had, and the self-censorship based on a threat to the Plaintiff's license would remain unchallenged. Even, if the criminal defendant was convicted, the Plaintiff would have to convince his client to appeal that conviction so the Plaintiff could vindicate his rights. Even if the client agreed to appeal, that appeal would be of the client's conviction, not the violation of the Plaintiff's First Amendment rights. And the state court's denial of the Plaintiff's challenge would only be reversed if the state court ruling contributed to the verdict or if the denial was structural – again, as to the criminal defendant, not the Plaintiff. *See State v. Valverde*, 208 P.3d 233, 236 (Ariz. 2009) (discussing the standard of review). *Younger* abstention here would entirely deny Plaintiffs the right to have their own First Amendment claims fully and finally adjudicated.

---

[9] Defendants cite two cases (at 12) that address defenses in criminal cases based on the First Amendment vagueness and overbreadth doctrines, suggesting these cases support their argument that Plaintiffs' rights may be vindicated in state criminal cases. Under those doctrines, a criminal defendant challenging a criminal statute on First Amendment grounds may point to potential violations of others' rights if the charging statute would encompass speech that is clearly protected, in addition to unprotected speech, even if the defendant's speech may be regulated without violating the Constitution. There is no parallel to those cases in this case.

9

*iv.* *This Case Would Not Enjoin Any State Proceeding.*

Defendants point to no way in which a ruling from this Court would have the effect of enjoining any ongoing state criminal proceeding, other than generalized "interference." *Dubinka v. Judges of Super. Ct. of Cal. for Cty. of Los Angeles*, cited by Defendants, involved a state criminal defendant who filed a federal claim seeking "federal intervention, in advance of a state criminal trial, **to resolve isolated and individualized trial issues**." 23 F.3d 218, 223 (9th Cir. 1994). Plaintiffs here are not asking this Court "to intervene piecemeal to try collateral issues" in state criminal cases where their clients are defendants. *Id.* (citations omitted). Plaintiffs want a ruling to enjoin – generally – their state licensing entities from investigating and prosecuting them for violating the Victim-Contact Prohibition.

Just because the challenged statute and Plaintiffs' claims may be incidentally related to potential or actual state criminal proceedings does not mean *Younger* abstention is warranted. *See, e.g.*, *Gerstein v. Pugh*, 420 U.S. 103, 108 n.9 (1975) (*Younger* abstention does not apply where plaintiffs were post-arrest detainees seeking prompt probable cause determinations and the injunction was "not directed at the state proceedings as such, but only at the legality of pretrial detention without a judicial hearing"); *Arevalo v. Hennessy*, 882 F.3d 763, 766 (9th Cir. 2018) ("*Younger* abstention is not appropriate in this case [involving claim of excessive bail] because th[ose] issues . . . are distinct from the underlying criminal prosecution and would not interfere with it. Regardless of how the bail issue is resolved, the prosecution will move forward unimpeded."); *see also Kaplan v. Hess*, 694 F.2d 847, 851 (D.C. Cir. 1982) (*Younger* abstention not appropriate when "no proceedings were pending in the local courts at the time appellants brought suit . . . . When appellants filed suit, . . . they faced an ongoing threat of prosecution" for refusing to stand when judges entered and exited a courtroom).

Perhaps this Court's abstention would be appropriate if there were ongoing discipline proceedings against Plaintiffs before their licensing agencies. *See Middlesex*

108720843.1

*County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 437 (1982). But there are no such proceedings. Abstention is not warranted.[10]

### III.   THE VICTIM-CONTACT PROHIBITION VIOLATES PLAINTIFFS' FREE-SPEECH RIGHTS.

The Supreme Court's latest pronouncement on the First Amendment and professional speech affirmed that content-based regulations are subject to strict scrutiny, even when the regulations target the speech of professionals, like lawyers. *NIFLA*, 138 S. Ct. at 2374 (discussing, *inter alia*, *NAACP v. Button*, 371 U.S. 415 (1963), and *In re Primus*, 436 U.S. 412 (1978)). Regulations on the speech of professionals is subject to lesser scrutiny only in two contexts: (1) for "some laws that require professionals to disclose factual, noncontroversial information in their 'commercial speech,'" and (2) for regulations of "professional conduct, even though that conduct incidentally involves speech." *Id.* at 2372 (citations omitted).[11] Defendants have never addressed the effect of *NIFLA* on their argument that Plaintiffs have not stated a claim. *See* Doc. 164 at 14; Doc. 140 at 10. After *NIFLA*, it is clear strict scrutiny applies to the Victim-Contact Prohibition. Defendants have not and cannot satisfy strict scrutiny to save the statute, and certainly not on a motion to dismiss.

### A.   The Victim-Contact Prohibition Is A Content- And Viewpoint-Based Restriction On Plaintiffs' Speech.

Following *NIFLA*, Defendants' argument that Plaintiffs do not have free-speech rights in the context governed by the Victim-Contact Prohibition borders on frivolous. The Prohibition, on its face, "regulates speech as speech." *Id.* at 2374. It prohibits Plaintiffs' from "initiat[ing] contact" with statutory crime victims, except through the

---

[10] Plaintiffs are not arguing that there is any distinction between lawyers and investigators for purposes of *Younger* abstention. *See* Doc. 164 at 13 (Defendants suggesting and opposing this argument). Neither can vindicate their First Amendment rights in the context of state criminal proceedings against their clients.

[11] Defendants have argued the Victim-Contact Prohibition fits the second category, but never the first.

11

108720843.1

prosecutors' office. To contact is to speak – in-person, on the phone, or in writing.[12] Thus, contrary to Defendants' arguments, the Victim-Contact Prohibition is not a regulation of conduct that only incidentally affects speech.[13] "Saying that restrictions on writing and speaking are merely incidental to speech is like saying that limitations on walking and running are merely incidental to ambulation." *Wollschlaeger v. Governor of Florida*, 848 F.3d 1293, 1308 (11th Cir. 2017) (citation omitted).[14]

The Victim-Contact Prohibition is a viewpoint-based law. "A regulation engages in viewpoint discrimination when it regulates speech based on the specific motivating ideology or perspective of the speaker." *B & L Productions, Inc. v. 22nd Dist. Agric. Ass'n*, No. 3:19-CV-134-CAB-NLS, 2019 WL 2602546, at *10 (S.D. Cal. June 25, 2019) (quoting *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 899 (9th Cir. 2018)); *see Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2230 (2015) ("[S]peech restrictions based on the identity of the speaker are all too often simply a means to control content," so "laws favoring some speakers over others demand strict scrutiny when the legislature's speaker preference reflects a content preference.") (citations omitted); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 970 (9th Cir. 2009) ("[V]iewpoint discrimination occurs when the government prohibits speech by particular speakers, thereby suppressing a particular view about a subject." (internal quotation marks omitted)). "When the government targets not subject matter, but particular views taken by speakers on a subject, the violation of the First Amendment is all the more blatant." *Rosenberger*

---

[12] Contact means "to communicate with," Dictionary.com, last visited July 13, 2019; *accord* Miriam-Webster.com, last visited July 13, 2019 ("to get in communication with").

[13] The Victim-Contact Prohibition also addresses "interviews," and the related provision in A.R.S. § 13-4433(C) addresses "correspondence," both of which clearly refer to communications.

[14] Even if the Prohibition regulated conduct and incidentally affected speech, Plaintiffs still have First Amendment rights in that affected speech. The regulation would simply be subject to lesser scrutiny, likely intermediate scrutiny. *See NIFLA*, 138 S. Ct. at 2373; *Capital Associated Indus., Inc. v. Stein*, 922 F.3d 198, 209 (4th Cir. 2019) (holding that "intermediate scrutiny is the appropriate standard for reviewing conduct regulations that incidentally impact speech").

108720843.1

*v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 829 (1995).

The Victim-Contact Prohibition explicitly and unconstitutionally restricts expressive conduct based on the identity of the speaker—it targets defense attorneys and others on the defense team. *Cf. State v. Lee*, 245 P.3d 919, 923 (Ariz. Ct. App. 2011) (the "plain language" of provision granting victims the right to refuse interviews with and discovery by the defense team "limits the scope of a victim's right only by the identity of the person requesting the interview—the defendant or the defendant's representative—and the identity of the person to whom the request is directed—a crime victim"). Clearly, the Victim-Contact Prohibition is designed to place a government-favored speaker, the prosecutor who is litigating a criminal case on behalf of the state, in a better position than the defense team, the prosecutor's litigation adversary, and to make that prosecutor the filter of the defense team's speech. Indeed, the statute not only favors prosecutors over defense teams by allowing prosecutors to speak when defense lawyers may not; it also makes prosecutors the arbiters of whether the defense team's message will be conveyed accurately, or at all, to the intended recipients, the victims. Such viewpoint discrimination aimed at suppressing speech that the government would rather not happen is not permitted by the First Amendment. *Cf. McCullen v. Coakley*, 134 S. Ct. 2518, 2544 (2014) (Scalia, J., concurring) (reasoning that facially content-neutral abortion clinic buffer zone provision was content based because "[e]very objective indication show[ed] that the provision's primary purpose [wa]s to restrict speech that opposes abortion").

The Victim-Contact Prohibition is also content based because it cannot be "justified without reference to the content of the regulated speech," and it was "adopted by the government because of disagreement with the message [the speech] conveys." *Reed*, 135 S. Ct. at 2227 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)) (internal quotation marks omitted). Plaintiffs seek to initiate communications with crime victims as part of their efforts to vindicate the constitutional rights of the criminal defendants they represent. Such speech could include discussing the facts of the

13

108720843.1

alleged crime, investigating possible defenses, determining whether the government conducted a fair and adequate investigation into the alleged crime, discussing the background and characteristics of the defendant, and, in capital cases, discussing the moral and legal implications of a death sentence. Of course, all this speech—generally concerning the crime and the defendant—is aimed at ensuring that the criminal defendant is treated fairly by the criminal-justice system, including receiving a fair trial and receiving a fair and appropriate sentence, and sometimes securing dismissal of charges or acquittal after trial.

These defense team aims often are at odds with the prosecutor's objectives, who represents the state and may have the goals of securing a conviction and imposing a harsh sentence on the defendant. The Victim-Contact Prohibition impermissibly regulates speech based on "disagreement with the message [the speech] conveys," that is, a message that undermines the state's goals in convicting and sentencing the defendant. *Reed*, 135 S. Ct. at 2227. The statute is a content-based regulation on expression that is "presumptively invalid," *R.A.V. v. St. Paul*, 505 U.S. 377, 382 (1992), and must elicit "the most exacting scrutiny." *Johnson*, 491 U.S. at 412; *Reed*, 135 S. Ct. at 2227.

**B.** **The Victim-Contact Prohibition Is Not Narrowly Tailored To A Compelling Government Interest.**

The Victim-Contact Prohibition is presumptively unconstitutional unless Defendants "prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Reed*, 135 S. Ct. at 2231; *accord NIFLA*, 138 S. Ct. at 2371. Under this analysis the law fails because it is not narrowly tailored to Arizona's stated interest in ensuring that crime victims are "treated with fairness, respect, and dignity" and that they are spared from "intimidation, harassment, or abuse, throughout the criminal justice process," Ariz. Const. art. 2, § 2.1(A)(1), for at least five reasons.

**First**, the statute does not spare victims from all communications about the crime. Prosecutors, the media and any member of the public who is not defending the accused,

14

may still communicate with victims without limitation. That the Prohibition is so underinclusive both demonstrates it is not narrowly tailored to the government's interest, and also "'raises serious doubts about whether the government is in fact pursuing the interest it invokes, rather than disfavoring a particular speaker or viewpoint.'" *NIFLA*, 138 S. Ct. at 2376 (quoting *Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786, 802 (2011)). Also, for those victims who are not entirely aligned with the prosecution, the Prohibition does not shield them from "intimidation, harassment or abuse" by law enforcement or the prosecution. *See State v. Murtagh*, 169 P.3d 602, 615 (Alaska 2007) ("[I]t is also true that some victims . . . feel harassed by the demands made on them by law enforcement personnel.").

**Second,** the statute is not targeted at limiting speech that is disrespectful, intimidating, harassing, or abusive. It is not even targeted at speech that could cause a victim to relive the alleged crime. Instead, it restricts all attempts to contact crime victims by Plaintiffs, who have no intention to treat victims disrespectfully or abusively, or to intimidate or harass them. This makes the Prohibition substantially overbroad because while it could apply in some situations to speech and conduct that the government may restrict (like harassment), those situations are dwarfed by others where protected speech is also prohibited, like respectful, polite speech directed at crime victims, including speech on topics of grave public concern.

**Third**, there are other measures that can adequately achieve the state's purpose without violating Plaintiffs' free-speech rights. Some provisions already in place sufficiently achieve this objective: Harassment and intimidation are unlawful in Arizona. A.R.S. § 13-2921 (defining the crime of harassment). And defense lawyers and investigators are subject to professional discipline for inappropriate conduct toward victims. *See* Ariz. R. Prof'l Conduct ("ER") 4.4(a) (lawyers may not "use means that have no substantial purpose other than to embarrass, delay, or burden any other person"); A.R.S. § 32-2457 (grounds for disciplinary action against private investigators). Moreover, neither the federal system nor any other state in the country restricts the

15

defense team's communications with victims the way that Arizona does. *E.g.*, 18 U.S.C. § 3771; Colo. Rev. Stat. Ann. § 24-4.1-302.5(1)(a); N.J. Stat. Ann. § 52:4B-36(c); S.C. Const. art. I, § 24(A)(1); Utah Const. art. I, § 28(1)(a). That Arizona has gone beyond all other jurisdictions in its stated attempt to address a common concern shows that the Prohibition is not narrowly tailored to that interest. *See Boos*, 485 U.S. at 329 (law is not narrowly tailored when "a less restrictive alternative is readily available").

**Fourth**, the Prohibition also threatens the state's compelling interest in the administration of justice. The statute substantially impedes the effective assistance of counsel for the criminally accused and prevents defense counsel from fulfilling their constitutionally mandated duty to provide effective assistance to their clients. *See Porter v. McCollum*, 130 S. Ct. 447 (2009) (per curiam) (finding that attorney's failure to interview witnesses in preparation for penalty phase of capital murder trial constituted ineffective assistance of counsel); *see also* Ariz. Const. art. II, §§ 4, 24 (constitutional rights to not be deprived of liberty without due process of law and to counsel).

**Fifth**, the Prohibition does not leave open ample alternative channels of communication. "An alternative is not ample if the speaker is not permitted to reach the intended audience." *Bay Area Peace Navy v. United States*, 914 F.2d 1224, 1229 (9th Cir. 1990) (citation and internal quotation marks omitted). The Prohibition prevents Plaintiffs from reaching their one intended audience: crime victims or their families. When a person or their family member has been a victim of a crime, the tone and content of the message could not be more important, and that cannot be preserved by a go-between, particularly the defense's litigation adversary. Allowing Plaintiffs to contact victims through prosecutors is thus not a viable alternative channel of communication.

## IV. IF THE COURT DISMISSES PLAINTIFFS' SAC, IT SHOULD BE WITH LEAVE TO AMEND.

In its previous rulings, the Court has not yet addressed all Defendants' arguments presented in their current motion. "The court should freely give leave [to amend a complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). Generally, a court should

16

108720843.1

deny leave to amend "only upon showing of bad faith, undue delay, futility, or undue prejudice to the opposing party." *Chudacoff v. Univ. Med. Ctr. of S. Nevada*, 649 F.3d 1143, 1152 (9th Cir. 2011) (citations omitted). If the Court dismisses the SAC for any reason not addressed in previous rulings, Plaintiffs should have the opportunity to cure any deficiencies with an amended complaint.

## V.      THE COURT SHOULD DENY DEFENDANTS' MOTION TO DISMISS

For the foregoing reasons, as well as those in Plaintiffs' previous filings, including their briefing in support of their motion for preliminary injunction, Docs. 11, 47, their filings regarding the Attorney General's previous motions to dismiss, Docs. 46, 59, 61, 66, 102, 110, 116, 136, 143,  and all attachments and exhibits thereto (all of which Plaintiffs expressly incorporate here), the Court should deny Defendant's Motion to Dismiss Second Amended Complaint.

RESPECTFULLY submitted this 18th day of July, 2019.

ACLU FOUNDATION OF ARIZONA
Martin Lieberman

MITCHELL | STEIN | CAREY | CHAPMAN
Kathleen E. Brody

KILLMER, LANE & NEWMAN, LLP
David A. Lane
Andrew McNulty

LEWIS ROCA ROTHGERBER CHRISTIE LLP

By:   /s/ Ian M. Fischer
Dan W. Goldfine
Ian M. Fischer

Attorneys for Plaintiffs

17

108720843.1

**CERTIFICATE OF SERVICE**

I hereby certify that on July 18, 2019, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all parties.

<u>/s/ Joye Allen</u>
Employee of Lewis Roca Rothgerber Christie LLP

18

108720843.1