**ACLU Foundation of Arizona**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85014
Telephone: 602-650-1854

Martin Lieberman (State Bar No. 007442)
Email: mlieberman@acluaz.org

**Mitchell | Stein | Carey | Chapman**
One Renaissance Square
2 North Central Avenue, Suite 1450
Phoenix, AZ 85004
Telephone: 602-358-0290

Kathleen E. Brody (State Bar No. 026331)
Email: kathy@mscclaw.com

**Killmer, Lane & Newman, LLP**
1543 Champa Street
Denver, Colorado 80202
Telephone: 303-571-1000

**David A. Lane** (pro hac vice)
Email: dlane@kln-law.com

**Andrew McNulty** (pro hac vice)
Email: amcnulty@kln-law.com

**Lewis Roca Rothgerber Christie LLP**
201 East Washington Street, Suite 1200
Phoenix, Arizona 85004-2595

**Dan W. Goldfine** (State Bar No. 018788)
Direct Dial: 602.262.5392
Direct Fax: 602.262.5747
E-mail:  DGoldfine@lrrc.com

**Ian M. Fischer** (State Bar No. 026239)
Direct Dial: 602.262.5724
Direct Fax: 602.262.5747
E-mail:  IFischer@lrrc.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona Attorneys for Criminal Justice; et al.,<br><br>                    Plaintiffs,<br><br>        vs.<br><br>Mark Brnovich, in his official capacity as Attorney General of the State of Arizona; et al.,<br><br>                    Defendants. | No. 2:17-cv-01422-SPL<br><br>**RESPONSE TO DEFENDANTS STATE BAR OF ARIZONA AND MARET VESSELLA'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>(Assigned to the Honorable Steven P. Logan) |

108724002.1

Plaintiffs, criminal-defense lawyers and investigators,[1] wish to speak directly with statutory crime victims in their cases, but A.R.S. § 13-4433(B) (the "Victim-Contact Prohibition") forbids them from doing so unless they first get permission from the prosecutor, their litigation adversary. If Plaintiffs attempt to contact victims directly, they are subject to discipline by either the Arizona State Bar (hereinafter "State Bar") or Department of Public Safety (hereinafter "DPS"). The State Bar and DPS are being sued by naming the Chief Bar Counsel, Maret Vessella, and Director, Colonel Frank Milstead, in their official capacities, as Defendants.

This Court ordered Plaintiffs to amend their First Amended Complaint to seek relief against "a defendant who has the power to prosecute or discipline violations of" the Victim-Contact Prohibition. [Doc. #147], p. 7. Plaintiffs did just that in their Second Amended Complaint, adding Vessella and Milstead. Nowhere in Defendants' Motion to Dismiss does either Defendant deny the State Bar and DPS have authority to discipline Plaintiffs for a violation of the Victim-Contact Prohibition. That is because both Defendants have such authority. Both Vessella and Milstead are proper defendants and Plaintiffs have standing to sue.

This Court has already held that Plaintiffs have standing to proceed against the newly named Defendants.[2] This Court has held that: Plaintiffs are injured by the Victim-Contact Prohibition, [Doc. #119], p. 5 ("The Court finds that Plaintiffs have sufficiently alleged an injury-in-fact for Article III standing."); Plaintiffs' injuries are traceable to the State Bar and DPS, the two entities with the authority to "prosecute, sanction, or otherwise carry out the vital steps in the disciplinary process" relating to the Victim-Contact Prohibition, [Doc. #119], p.7 ("The source of Plaintiffs' complained injury – restrain of protected speech – is the threat of professional discipline for violating Ariz.

---

[1] Arizona Attorneys for Criminal Justice ("AACJ") is a membership organization of criminal-defense lawyers and allied professionals who work on behalf of defendants in all types of criminal cases. *See* [Doc. #46], pp. 16-17 (describing AACJ and its standing), which Plaintiffs incorporate by this reference as if it were fully set out here.

[2] As outlined in Plaintiffs' Complaint, Plaintiffs only continue to name Defendant Brnovich at his insistence.

1

108724002.1

Rev. Stat. § 13-4433(B)"); and declaratory and injunctive relief against the State Bar and DPS, the entities with "direct involvement in or coercive effect over the prosecution of disciplinary violations for violations of" the Victim-Contact Prohibition, would redress Plaintiffs' injuries. [Doc. #119], p. 9; *see also* [Doc. #147] ("[T]he Court does not conclude that Plaintiffs would be unable to make a sufficient showing of Article III standing to seek redress against an appropriate defendant. An injunction against a defendant who has the power to prosecute or discipline violations of § 13-4433(B) would redress at least some of the Plaintiffs' alleged injuries[.]").

Given the Court's previous finding that Plaintiffs are suffering an injury because of the Victim-Contact Prohibition that is traceable to, and redressable by, the newly named Defendants, Plaintiffs deserve their day in court, and to have the statute's constitutionality decided by this Court. Nevertheless, if the Court decides that Plaintiffs' Second Amended Complaint ("SAC") should be dismissed, the Court should not dismiss without leave to amend.

## I.    PLAINTIFFS AGREE TO DISMISS THE STATE BAR.

Plaintiffs do not object to dismissing the State Bar without prejudice. Chief Bar Counsel Vessella is the proper defendant for Plaintiffs' claims against the State Bar, and Plaintiffs' suit against her is the functional equivalent of a suit against the State Bar itself. *Brandon v. Holt*, 469 U.S. 464, 471 (1985) ("[A] judgment against a public servant 'in h[er] official capacity' imposes liability on the entity [s]he represents.") (citation omitted); *see also Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

## II.    THIS COURT HAS ALREADY HELD THAT THE STATE  BAR IS A PROPER DEFENDANT.

This Court previously held in this case:

1. "Plaintiffs have sufficiently alleged an injury-in-fact for Article III standing." Doc. 119 at 5. "Plaintiffs' claim of self-censorship under the threat of enforcement sufficiently alleges that. . . they have sustained an injury to their First Amendment rights that is concrete and actual." *Id.*; Doc. 147 at 4.

2

108724002.1

2. Plaintiffs' injury is traceable to the State Bar. Doc. 119 at 6-8. "The source of Plaintiffs' complained injury – the restraint of protected speech – is the threat of professional discipline for violating Ariz. Rev. Stat. 13-4433(B). . . [and] the State Bar of Arizona 'initiate[s] disciplinary proceedings[.]" Doc. 119 at 7; Doc. 147 at 5.

3. Plaintiffs' injury is redressable by this Court through declaratory and injunctive relief directed at the State Bar. Doc. 119 at 9; Doc. 147 at 7. That action to stem "the prosecution of disciplinary proceedings for violations of Ariz. Rev. Stat. 13-4433(b)" would redress Plaintiffs' injuries. Doc. 119 at 9; Doc. 147 at 7.

The Court should affirm these holdings.

## III.     **PLAINTIFFS HAVE STANDING TO SUE VESSELLA.**

"Constitutional challenges based on the First Amendment present unique standing considerations." *Ariz. Right to Life PAC v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003). "[I]n the First Amendment-protected speech context, the Supreme Court has dispensed with rigid standing requirements . . . [and] . . . has endorsed a 'hold your tongue and challenge now' approach rather than requiring litigants to speak first and take their chances with the consequences." *Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1094 (9th Cir. 2003); *see Dombrowski v. Pfister*, 380 U.S. 479, 486 (1965) (recognizing the "sensitive nature of constitutionally protected expression," in permitting a pre-enforcement action involving the First Amendment); *see also Bland v. Fessler*, 88 F.3d 729, 736-37 (9th Cir. 1996) ("That one should not have to risk prosecution to challenge a statute is especially true in First Amendment cases . . . ." ). "Were it otherwise, 'free expression -- of transcendent value to all society, and not merely to those exercising their rights -- might be the loser.'" *Bayless*, 320 F.3d at 1006 (quoting *Dombrowski*, 380 U.S. at 486). Thus, "when the threatened enforcement effort implicates First Amendment rights, the inquiry tilts dramatically toward a finding of standing." *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1155 (9th Cir. 2000). As this Court has

3

already concluded, Plaintiffs have met the standing threshold to sue Vessella. Doc. 119 at 5; Doc. 147 at 4.

Even without the Court's prior holding, Vessella's standing argument – that Plaintiffs' First Amendment claim is "unripe" because no Plaintiff has been prosecuted by the State Bar for violating the Victim-Contact Prohibition – fails. Vessella's argument that there is not real threat of enforcement because the attorneys who were disciplined previously were also disciplined for other ethical violations concedes that Plaintiffs' fears are well-founded, and that their injury is traceable to the State Bar. As Vessella admits, the State Bar **has** disciplined attorneys in the past for violating the statute.

### A.     Plaintiffs Have Suffered An Injury-In-Fact.

Defendants make no attempt to contradict this Court's previous conclusion that Plaintiffs' self-censorship, standing alone, is an injury-in-fact, challenging only the fact of past enforcement of the Victim Contact Prohibition. Doc. 119 at 5-6. That is because the unambiguous facts (and allegations) demonstrate that Plaintiffs have, in fact, self-censored for fear of investigation, discipline, and prosecution for violating the Victim-Contact Prohibition. Doc. 150, ¶¶ 81-85. Plaintiffs' sworn declarations confirm that Plaintiffs have self-censored under the threat of enforcement of the statute. Doc. 46-1 at 40, 45, 49, 53, 57 (stating that "were it not for the restriction in A.R.S. 13-4433(B)," Plaintiffs "would contact victims directly in cases where [they] represent the accused"). This alone is sufficient to demonstrate Plaintiffs' injury-in-fact. *See Wolfson v. Brammer*, 616 F.3d 1045, 1059 (9th Cir. 2010) ("Self-censorship is a constitutionally recognized injury"); *Cal. Pro-Life Council*, 328 F.3d at 1095 (characterizing self-censorship as a constitutionally recognized injury).

Plaintiffs "need not show that the authorities have threatened to prosecute [them]; the threat is latent in the existence of the statute. [Because the Victim-Contact Prohibition] arguably covers [Plaintiffs' First Amendment-protected speech], and so may deter constitutionally protected expression . . . there is standing." *Cal. Pro-Life Council*, 328 F.3d at 1095 (quoting *Majors v. Abell*, 317 F.3d 719, 721 (7th Cir. 2003));

4

108724002.1

*see also Bayless*, 320 F.3d at 1006; *Saint Paul Area Chamber of Commerce v. Gaertner*, 439 F.3d 481 (8th Cir. 2006); *Planned Parenthood Ariz., Inc. v. Brnovich*, 172 F. Supp. 3d 1075, 1089 (D. Ariz. 2016).

Plaintiffs have made an adequate "pre-enforcement" challenge to the Victim-Contact Prohibition by: (1) articulating a "concrete plan" to violate the law in question; (2) demonstrating that the State Bar has communicated a threat to initiate proceedings by not disavowing future prosecution; and (3) showing a history of past enforcement of the Victim-Contact Prohibition. *Libertarian Party of L.A. Cnty. v. Bowen*, 709 F.3d 867, 870 (9th Cir. 2013).

> 1.  *Plaintiffs articulated a concrete plan to violate the Victim-Contact Prohibition.*

Plaintiffs' sworn declarations and SAC confirm they would contact crime victims, and their families, in the course of their work on behalf of criminal defendants if the threat of disciplinary proceedings was not hanging over their heads. *See* Doc. 150, ¶¶ 81-85; Doc. 46-1 at 40, 45, 49, 53, 57. Plaintiffs have abstained from engaging in speech directed at crime victims and their families so as to not put their professional licenses in jeopardy from the State Bar. Plaintiffs have specifically outlined "when, to whom, where, [and] under what circumstances" they will speak with crime victims. *Thomas*, 220 F.3d at 1139; *see also ACLU v. Heller*, 378 F.3d 979, 984 (9th Cir. 2004) (group had standing when a member alleged a desire to produce and distribute flyers regarding a specific ballot initiative); *Getman*, 328 F.3d at 1093 (group had standing when it showed, among other things, that it planned to spend over $1000 to defeat a specific ballot measure).

Plaintiffs' concrete plan is analogous to the plans that were sufficient to satisfy the injury-in-fact requirement in *Santa Monica Food Not Bombs v. City of Santa Monica (Food Not Bombs)*, 450 F.3d 1022 (9th Cir. 2006), and *Ariz. Right to Life PAC v. Bayless*, 320 F.3d 1002, 1007 (9th Cir. 2003). In those cases, the Ninth Circuit held that two organizations had established an injury-in-fact sufficient for pre-enforcement standing

108724002.1

because its members had altered their expressive activities to comply with the statutes at issue and specifically alleged apprehension that the relevant statutes would be enforced against them. *See Food Not Bombs*, 450 F.3d at 1034; *Bayless*, 320 F.3d at 1006.

        2.     *There is a continued threat of disciplinary action by the State Bar.*

Vessella does not pledge in her motion that the State Bar will not investigate or discipline Plaintiffs should they violate the Victim-Contact Prohibition. It obviously follows that Plaintiffs have a credible fear that the State Bar will enforce the statute against them should they contact crime victims (or their families). *See Virginia v. American Booksellers Assoc.*, 484 U.S. 383, 393 (1988) (plaintiffs have standing where the "State has not suggested that the newly enacted law will not be enforced, and we see no reason to assume otherwise"); *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 302 (1979) (noting the government's failure to state it would not prosecute parties like plaintiffs and concluding that plaintiffs "are thus not without some reason in fearing prosecution"); *Bayless*, 320 F.3d at 1007 (that "Arizona has not suggested that the legislation will not be enforced" weighed in favor of finding plaintiffs had satisfied the injury-in-fact requirement); *Majors*, 317 F.3d at 719 (holding in political advertising case that if a statute "may deter constitutionally protected expression because most people are frightened of violating criminal statutes . . . , there is standing"); *Humanitarian Law Project v. United States Dep't of Treasury*, 463 F. Supp. 2d 1049, 1068-69 (C.D. Cal. 2006) (plaintiffs alleged an injury-in-fact, in part, because "absent a disavowal by the Government of any intention to enforce this provision in the future, the passage of five years does not alone operate to render the possibility of enforcement not credible, especially in light of the relaxed standing requirement that applies in this First Amendment context").

        3.     *Vessella concedes the State Bar has a history of enforcing the Victim-Contact Prohibition.*

Vessella entered at least some of the State Bar's a history of past enforcement of the Victim-Contact Prohibition into the record. *See Am.-Arab Anti-Discrimination*

6

*Comm. v. Thornburgh*, 970 F.2d 501, 507 (9th Cir. 1992) (past prosecution under challenged provision supports standing). While conceding the statute, she does not even argue that she checked the State Bar records and those are the only occasions where an attorney was investigated and/or disciplined for violating the Prohibition.

Instead of arguing that the State Bar has no history of enforcement, she argues that examples of lawyers provided were disciplined only *in part* because of the Victim-Contact Prohibition. But in each State Bar matter in the record, the lawyer's violation of the Victim-Contact Prohibition played a part in both the investigation and eventual discipline for violating E.R. 8.4. Doc. 162 at 11-12.  And those are only the disciplinary proceedings available on Westlaw and known to Plaintiffs.

Even if the State Bar had never enforced the Prohibition, enforcement history alone is not dispositive. Courts have found standing where no one had ever been prosecuted under the challenged provision, particularly in cases where the challenged regulation infringes on First Amendment rights.[3] For example, when the State of Virginia passed a law banning the display of certain sexually-explicit material where juveniles could examine it, the Supreme Court found that booksellers had standing to object, even though the law had not yet been enforced. *See Virginia v. American Booksellers Ass'n, Inc.*, 484 U.S. 383, 386, 392-93 (1988). The Court explained:

> We are not troubled by the pre-enforcement nature of this suit. The State has not suggested that the newly enacted law will not be enforced, and we see no reason to assume otherwise. We conclude

[3] *See Farm Workers*, 442 U.S. at 302; *Bland*, 88 F.3d at 737; *Libertarian Party*, 709 F.3d at 872 (the "history of enforcement" factor is "not dispositive," especially where "the challenged provisions have not been commonly and notoriously violated" (internal quotation marks omitted)); *Fitzgerald v. Cty. of Orange*, 570 F. App'x 653, 656 n.1 (9th Cir. 2014) (that there was no history of enforcement of a regulation, which impinged upon the plaintiff's First Amendment rights was not dispositive); *Stevens*, 130 S. Ct. at 1591 (finding a statute facially invalid on First Amendment grounds, and refusing to "uphold an unconstitutional statute merely because the Government promised to use it responsibly"); *Vt. Right to Life*, 221 F.3d at 383 ("The State also argues that VRLC's fear of suit could not possibly be well-founded because the State has no intention of suing [plaintiff] VRLC for its activities. While that may be so, there is nothing that prevents the State from changing its mind."); *Mental Hygiene Legal Serv.*, 785 F. Supp. 2d at 220 (finding standing because although law enforcement officials said they would not enforce the statute against the plaintiffs, nothing prevented future law enforcement officials from taking a contrary position).

7

that plaintiffs have alleged an actual and well-founded fear that the law will be enforced against them. Further, the alleged danger of this statute is, in large measure, one of self-censorship; a harm that can be realized even without actual prosecution.

*Id*. at 393. The Ninth Circuit has noted that the tendency to find standing absent actual, impending enforcement against the plaintiff is stronger "in First Amendment cases, '[f]or free expression—of transcendent value to all society, and not merely to those exercising their rights—might be the loser.'" *Bland*, 88 F.3d at 736-37 (quoting *Dombrowski v. Pfister*, 380 U.S. 479, 486 (1965)); *accord Navegar, Inc. v. United State*s, 103 F.3d 994, 999 (D.C. Cir. 1997) ("Federal courts most frequently find pre-enforcement challenges justiciable when the challenged statutes allegedly 'chill' conduct protected by the First Amendment.").

Plaintiffs' decisions to comply with the Victim-Contact Prohibition "demonstrates a commendable respect for the rule of law," *Bland*, 88 F.3d at 737, and should not preclude them from challenging the statute. *See Mobil Oil Corp. v. Attorney Gen. of Va.*, 940 F.2d 73, 75 (4th Cir. 1991) ("Public policy should encourage a person aggrieved by laws he considers unconstitutional to seek a declaratory judgment against the arm of the state entrusted with the state's enforcement power, all the while complying with the challenged law, rather than to deliberately break the law and take his chances in the ensuing suit or prosecution.").

**B.    Case law demonstrates Plaintiffs have suffered an injury-in-fact.**

A number of analogous decisions highlight that this Court's previous conclusion that Plaintiffs have suffered an injury-in-fact caused by Vessella is correct.

In *Canatella v. California*. 304 F.3d 843 (9th Cir. 2002), a lawyer challenged attorney regulations (both statutory and regulatory) as overbroad, in violation of the First Amendment. *Id.* at 854. The Ninth Circuit held that he had standing to do so, and had satisfied the injury-in-fact requirement, reasoning:

[i]t is enough that [the plaintiff] shows that he and others in his position face a credible threat of discipline under the challenged statutes, and may consequently forego their expressive rights under the First Amendment. Nor have we reason to doubt that other California attorneys find themselves in [the plaintiff]'s dilemma. The

8

> alleged source of the harms that [the plaintiff] and others like him may face is the arguably vague and overbroad language of the challenged provisions under which California lawyers perform their jobs and are subject to discipline. He seeks an injunction preventing enforcement of the challenged provisions, and a declaration that they are unconstitutional. He alleges concrete and particularized harms to his First Amendment rights and demonstrates a sufficient likelihood that he and others may face similar harm in the future. . . . [T]his is enough to satisfy the prudential requirements of standing for a First Amendment overbreadth claim.

*Id.*

In *American Booksellers Assoc.*, plaintiffs challenged a Virginia statute that made it unlawful to knowingly display sexually explicit material. 484 U.S. at 383. The Supreme Court recognized that a plaintiff could have an actual and well-founded fear of prosecution even in the absence of criminal charges. The Court applied a relaxed standard and noted that allegations of "self-censorship" by the plaintiff met the injury-in-fact requirement. *Id*. at 393. The Court held that the true injury, in First Amendment pre-enforcement cases, is the dilemma a person faces having to choose between exercising First Amendment rights and following the law by refraining from exercising First Amendment rights (even when the plaintiff has not be expressly threatened with enforcement of the law). *Id.*

In *Bland*, the plaintiff challenged the constitutionality of a statute that regulated automatic dialing and announcing devices (machines that dial telephone numbers and deliver prerecorded messages). 88 F.3d at 729. Although the plaintiff had not received any actual threat of prosecution, the Ninth Circuit concluded that he had standing to raise a facial challenge to the statute. The court reasoned that the dilemma faced by the plaintiff, the choice between obeying the express dictates of the statute or risk substantial civil fines and private enforcement actions, was an injury-in-fact for purposes of establishing standing. *Id*. at 736-37.

In *New Mexicans for Bill Richardson v. Gonzales*, the plaintiff challenged a statute that prohibited the use in state election campaigns of contributions solicited for or received in a federal election campaign. 64 F.3d 1495, 1497 (10th Cir. 1995).

9

Although there was no evidence firmly establishing that the plaintiff intended to run for state office, the Tenth Circuit found that the plaintiff has suffered an adequate injury-in-fact because he was faced with the "dilemma" of following the statute or of soliciting money without restricting its use to federal elections and thereby violating the statute. *Id*. at 1500. The Tenth Circuit concluded that, because New Mexico had not disavowed any intent to prosecute if the plaintiff violated the statute prohibiting protected activity, the plaintiff faced a credible risk of prosecution. *Id*. at 1502.

Plaintiffs in this case face the same "dilemma" that the Supreme Court, Ninth Circuit, and Tenth Circuit have found constituted an injury-in-fact in a pre-enforcement First Amendment case: whether to exercise their First Amendment right to speak with crime victims and risk disciplinary proceedings or to obey the Victim-Contact Prohibition.

### C. Plaintiffs' Injury Is Traceable To The State Bar.

Vessella is the official charged with instituting disciplinary proceedings against Plaintiffs, including any alleged ethical violations that arise out of speaking with crime victims. *See Wolfson*, 616 F.3d at 1056-57. Plaintiffs' SAC, and the evidence in the record, demonstrate that the threat of attorney discipline by the State Bar, through Vessella, is the cause of Plaintiffs' injury. Doc. 150, ¶¶ 81-85; Doc. 46-1 at 40, 45, 49, 53, 57; Doc. 119 at 7 ("The source of Plaintiffs' complained injury – the restraint of protected speech – is the threat of professional discipline for violating Ariz. Rev. Stat. 13-4433(B). . . [and] the State Bar of Arizona 'initiate[s] disciplinary proceedings[.]'"); Doc. 147 at 5 (same).

### D. Plaintiffs' Injury Can Be Redressed Against Vessella.

Vessella's responsibilities establish the requisite causal connections with Plaintiffs' injury "such that relief against [Defendant] would provide redress." *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 919 (9th Cir. 2004). Preventing Vessella from instituting disciplinary proceedings against Plaintiffs for purported ethical violations arising out of violating the Victim-Contact Prohibition would redress their

10

injury: self-censorship for fear of losing their license. If the State Bar can no longer rely on a violation of the Victim-Contact Prohibition as the basis of an alleged violation of ER 8.4, Plaintiffs will no longer have to fear a threat to their licenses to practice law if they contact victims. Vessella's role is substantial and actionable, and she could appropriately respond to injunctive relief ordered by this Court.

Moreover, Vessella's argument that, even if this Court declared the Victim-Contact Prohibition unconstitutional and enjoined enforcement of the Victim-Contact Prohibition through disciplinary proceedings, Plaintiffs could still be disciplined for contacting victims in a threatening, harassing, or otherwise ethically inappropriate manner does not undermine standing. Doc. 162 at 16-17.[4] Plaintiffs need only show that the risk of harm "would be reduced to some extent if [they] received the relief they seek." *Massachusetts v. EPA*, 549 U.S. 497, 526 (2007). Plaintiffs' SAC demonstrates that enjoining Vessella from enforcing the Victim-Contact Prohibition would ameliorate the chilling effect the threat of enforcement has on the exercise of their First Amendment rights. Doc. 150, ¶¶ 39-43. It is "likely, as opposed to merely speculative, that [Plaintiffs'] injury will be redressed by a favorable decision." *Bennett v. Spear*, 520 U.S. 154, 167 (1997).

### E.      Plaintiffs' Claims Are Ripe For Review.

"The Ninth Circuit test for injury-in-fact is the same regardless of whether it is part of a ripeness or standing analysis[.]" *Humanitarian Law Project*, 463 F. Supp. 2d at 1067 n.13; *Wolfson*, 616 F.3d at 1058 ("The constitutional component of ripeness overlaps with the 'injury in fact' analysis for Article III standing."); *see Cal. Pro-Life Council, Inc.*, 328 F.3d 1088, 1094 n.2. Just as standing requirements are relaxed when the injury alleged implicates the First Amendment so too are ripeness requirements loosened. Thus, the ripeness inquiry is "largely the same" as the one for standing. *Wolfson*, 616 F.3d at 1058.

---

[4] As alleged in Plaintiffs SAC and outlined in Plaintiffs' sworn declarations, Plaintiffs do not wish to contact victims in such a manner. Doc. 150; Doc. 46-1, 40, 45, 49, 53, 57.

11

"First Amendment rights of free expression and association are particularly apt to be found ripe for immediate protection, because of the fear of irretrievable loss." *New Mexicans for Bill Richardson*, 64 F.3d at 1499-500. Legions of cases hold that First Amendment challenges to governmental actions or decrees that on their face are overbroad and threaten to chill protected speech present a live case or controversy for review by the judiciary. *See, e.g.*, *Freedom to Travel Campaign v. Newcomb*, 82 F.3d 1431, 1434-35 (9th Cir. 1996) (rejecting a ripeness defense to a challenge to blanket travel restrictions to Cuba under the First and Fifth Amendments, even though the plaintiff group had never applied for a license, because the case presented purely legal questions); *Forsyth County, Ga. v. Nationalist Movement*, 505 U.S. 123, 129-30 (1992) (addressing a First Amendment challenge to a licensing scheme even though the plaintiff had never applied for a permit); *Steffel v. Thompson*, 415 U.S. 452, 459 (1974) (concluding that petitioner had established an actual controversy based on his threatened criminal trespass arrest by state police for distributing political handbills and holding that he did not need to "first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights"). Thus, Plaintiffs claims present a live case or controversy for this Court to resolve.

**IV.   IF THE COURT DISMISSES PLAINTIFFS' SAC, IT SHOULD BE WITH LEAVE TO AMEND.**

This is the first time Plaintiffs have alleged claims against Vessella. If the Court grants her motion to dismiss, it should be with leave to amend.[5]

**V.   CONCLUSION**

For the foregoing reasons, as well as the arguments and authority outlined in Plaintiffs' previous filings, *see* Docs. 5, 11, 46, 47, 59, 61, 66, 102, 110, 116, 136, 142, the Court should deny Defendant Vessella's Motion To Dismiss Plaintiffs' Second Amended Complaint For Declaratory And Injunctive Relief.

---

[5] Plaintiffs incorporate their previous arguments and authorities demonstrating that dismissal of the complaint with prejudice is improper in Docs. 46 and 136.

12

108724002.1

RESPECTFULLY submitted this 18th day of July, 2019.

ACLU FOUNDATION OF ARIZONA
Martin Lieberman

MITCHELL | STEIN | CAREY | CHAPMAN
Kathleen E. Brody

KILLMER, LANE & NEWMAN, LLP
David A. Lane
Andrew McNulty

LEWIS ROCA ROTHGERBER CHRISTIE LLP

By:   /s/ Ian M. Fischer_____
Dan W. Goldfine
Ian M. Fischer

Attorneys for Plaintiffs

13

108724002.1

**CERTIFICATE OF SERVICE**

I hereby certify that on July 18, 2019, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all parties.

/s/ Joye Allen
Employee of Lewis Roca Rothgerber Christie LLP

14

108724002.1